```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                   WEST PALM BEACH DIVISION
                    CASE NO. 19-80181-CRIMINAL-RUIZ
 3

 4   UNITED STATES OF AMERICA,          West Palm Beach, Florida

 5                  Plaintiff,          June 8, 2020

 6          vs.

 7   MINAL PATEL,

 8                  Defendant.          Pages 1 to 47

 9   _____

10                     TELEPHONE CONFERENCE
            BEFORE THE HONORABLE BRUCE E. REINHART,
11                UNITED STATES MAGISTRATE JUDGE
             (TRANSCRIBED FROM THE AUDIO RECORDING)

12

13
     APPEARANCES:
14

15   FOR THE GOVERNMENT:       TIMOTHY P. LOPER, ESQ.
     (Appearing                U.S. DEPARTMENT OF JUSTICE
16    Telephonically)          CRIMINAL DIVISION, FRAUD SECTION
                               12020 Miramar Parkway
17                             Miramar, Florida 33025

18                             JERROB DUFFY, ESQ.
                               ASSISTANT UNITED STATES ATTORNEY
19                             99 Northeast Fourth Street
                               Miami, Florida 33132
20
                               JAMES V. HAYES, ESQ.
21                             JOHN KOSMIDIS, ESQ.
                               KATHRYN C. FURTADO, ESQ.
22                             SALLY MALLOY, ESQ.
                               U.S. DEPARTMENT OF JUSTICE
23                             CRIMINAL DIVISION, FRAUD SECTION
                               1400 New York Avenue, Northwest
24                             Eighth Floor
                               Washington, DC 20005
25
```

```
1    APPEARANCE, CONT'D:

2    FOR THE DEFENDANT:        STEVEN H. SADOW, ESQ.
     (Appearing              STEVEN H. SADOW, PC
3     Telephonically)        260 Peachtree Street, Northwest
                             Suite 2502
4                            Atlanta, Georgia 30303

5                            ROBYN SZTYNDOR, ESQ.
                             LAW OFFICES OF ROBYN SZTYNDOR
6                            233 Phoenetia Avenue
                             Suite 8
7                            Coral Gables, Florida 33134

8
     FOR INTERESTED          DONALD F. SAMUEL, ESQ.
9    THIRD PARTY             GARLAND, SAMUEL & LOEB
     LAB SOLUTIONS:          3151 Maple Drive, Northeast
10   (Appearing              Atlanta, Georgia 30305
      Telephonically)

11

12   TRANSCRIBED BY:         LISA EDWARDS, RDR, CRR
                             Official Court Reporter
13                           United States District Court
                             400 North Miami Avenue
14                           Twelfth Floor
                             Miami, Florida 33128
15                           (305) 523-5499

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  We're now on the record in Case No.

2     19-80181, the United States of America versus Minal Patel.

3          Let me begin with appearances.  And I'll start with

4     counsel for Mr. Patel.

5          MR. SADOW:  Good morning again, your Honor.  This is

6     Steve Sadow, and I am lead counsel for Mr. Patel.

7          THE COURT:  Good morning to you.

8          MS. SZTYNDOR:  And this is Robyn Sztyndor, and I'm

9     local counsel for Mr. Patel.

10         THE COURT:  Good morning, Ms. Sztyndor.

11         Okay.  Also on the call, I believe, are counsel for the

12    United States.  Let me start with them.  So I don't know

13    whatever order you want to go in, but go right ahead.

14         MR. LOPER:  Yes, your Honor.  This is Tim Loper on

15    behalf of the United States.

16         And I'm joined by Jim Hayes, who is also a member of

17    the prosecution team in this matter.  And then there are

18    additional attorneys from the United States Department of

19    Justice who are members of the filter team, and those

20    individuals are Sally Malloy, Jerrob Duffy, Kathryn Furtado and

21    John Kosmidis.

22         THE COURT:  All right.  Thank you very much, Mr. Loper.

23         Okay.  So -- and also I'll just note for the record

24    that Dr. -- that Mr. Patel is on the call as well as an

25    investigator working with the defense team is also on the call.

1          MR. LOPER:  And, Judge, this is Tim Loper.

2          I believe there's an attorney for Lab Solutions on the

3    line as well, Don Samuel.

4          THE COURT:  Yes.  Mr. Samuel.

5          MR. SAMUEL:  I'm on the line.

6          THE COURT:  Thank you, Mr. Samuel.

7          So I did receive -- and I'm going to be careful here,

8    because I don't know who has seen what.  So maybe let me start

9    with a question to Mr. Duffy.

10         The joint motion for status conference:  Have the

11   members of the prosecution team seen that or is that something

12   that's only been seen by the filter team and defense counsel?

13         MR. DUFFY:  Your Honor, the joint motion for status

14   conference has been seen by the prosecution team.

15         THE COURT:  Okay.  So I'm free to discuss what's in

16   that motion without tainting anybody who's not yet tainted.  Is

17   that correct?

18         MR. DUFFY:  We think.  So we think there might be some

19   substantive issues that could pose an issue.  So if you would

20   be so polite as if it comes to the point where we think that

21   that's happening, if you would allow us to attempt to

22   interject.  We have spoken with counsel for the Defendant about

23   this issue, and I think he also is amenable to trying to be

24   sensitive to that, if you will, exposure.

25         So --

1          THE COURT:  Yes.  Absolutely.  And you are all invited

2   to interrupt me if I start to trend into something that I

3   shouldn't trend into.  Know that I won't hold it against any of

4   you.

5          So let me just recap for a second what I perceive to be

6   the issues that are before the Court today, and then you all

7   can help me out with that.

8          Obviously, there's a criminal case pending.  My

9   understanding is the Government executed search warrants using

10  the filter team to make in the first instance a pass through

11  whatever was seized in the search warrant.

12         Certain documents have been segregated; certain

13  documents have been turned over.  And within the documents that

14  have been segregated and not yet turned over there is a

15  third-party objection to some of that and there is -- if I can,

16  maybe, phrase it this way, uncertainty within the filter team

17  whether certain materials can be turned over without violating

18  certain privileges.  And so the filter team is seeking rulings

19  from the Court on the discoverability of some of those

20  materials.

21         Now, Mr. Duffy, again, starting at a very high level --

22  and, Mr. Duffy, if you're not the right person to be calling on

23  on behalf of the filter team, I'm only calling you because I

24  know you and your name is first on the docket sheet.

25         MR. DUFFY:  Yeah.

1          THE COURT:  But I -- have I at least summarized it at a

2    very high level, the structure of what I'm facing here?

3          MR. DUFFY:  Yes, your Honor.  That is accurate, your

4    Honor.  And, yes, I will -- I will respond to you on these

5    subject matters.

6          THE COURT:  Okay.  Very good.

7          So that being said, I assume, then, Mr. Samuel, are you

8    here because your client is one of the entities -- or I guess

9    it's an entity -- is an entity that is objecting to the further

10   disclosure of certain materials that were taken during the

11   search warrant?

12         MR. SAMUEL:  That's correct, your Honor.

13         THE COURT:  Okay.  Mr. Duffy, are there other third

14   parties other than Mr. Samuel's client who have objected to

15   disclosure of materials that are in the possession of the

16   filter team?

17         MR. DUFFY:  Yes, your Honor.

18         THE COURT:  Okay.  How many of those are there?  And

19   let me just start with that.  How many of those are there?  And

20   if you can maybe state at a very high level, what is the nature

21   of their objection?  I believe what I understand from the

22   pleadings is that you have in your possession materials that

23   the third parties believe are covered by attorney-client

24   work-produce privileges that the third parties may hold.  Is

25   that correct?

1              MR. DUFFY:  That is correct.  Yes, your Honor.

2              Your Honor, there's a high-level description of those

3      items just for the record at Page 4 of 12 of the Government's

4      motion filed on June 5th, which is Docket Entry 49.

5              THE COURT:  I have that.

6              MR. DUFFY:  And the -- you know, so, you know, I don't

7      know that I can do a better job than is listed there.  But

8      really what these are are certain individuals and third parties

9      who among other things have alleged communications, for

10     example, with their own counsel or what have you that they --

11     that they are asserting privilege over and would like the

12     opportunity to be heard before their materials are disclosed.

13             THE COURT:  Okay.  And what's the Government's -- as a

14     procedural matter, what's the Government's position, the filter

15     team's position, as to whether I ought to at least allow those

16     people to be heard before any disclosures are made or any

17     rulings are made by me?

18             MR. DUFFY:  Yes, your Honor.

19             Your Honor, the Government's position is, I think, you

20     know, really set forward at some level of detail in the United

21     States' motion for discovery protocol.  We do believe that

22     under these circumstances it is appropriate for the Court to

23     allow these third parties to have an opportunity to be heard.

24             We also believe that in certain instances -- and I

25     don't want to go into the substance here -- there are materials

1    that the defense has argued should be subject to a claim of

2    privilege and not disclosed to the prosecution team.  So if you

3    will, we have cross-claims of privilege.

4          And we have proposed, your Honor, in that motion and in

5    we think the proposed order, which was attached to the motion

6    and also was emailed to chambers -- we think we have proposed

7    for you a method for sort of, you know, allowing first the

8    notice to these third parties or the Defendant for the

9    opportunity to know exactly what it is that is subject to the

10   potential disclosure.

11         And we think that notice is very important, your Honor,

12   because in the Eleventh Circuit, you know, a blanket claim of

13   privilege isn't -- you know, isn't necessarily cognizable.  We

14   think the notice is important to determine really what

15   privileges or what assertions of privilege we're really

16   facing -- the Court is going to be faced with.

17         And then, your Honor, in the proposed proposal, we have

18   built in an opportunity to essentially meet and confer amongst

19   the parties where the claims have been made and crystallized.

20   And we think that meet-and-confer process is very important

21   because it will, I think, allow not just narrowing of the

22   subject matters or the specific items for which privilege will

23   be asserted, but then also allow the parties to exchange some

24   of the context around the documents.

25         And then, your Honor, the proposal is that the

1    asserting party serve a privilege log because, again, as part

2    of this process, there really has to be, you know, a claim, an

3    itemized claim, so that we, the filter team, the parties in the

4    litigation, particularly the Defendant and to a degree the

5    prosecution team ultimately, and the Court can adjust those

6    claims.  Without a privilege log, it's extremely hard to do

7    that.

8           And then, your Honor, there would be the opportunity to

9    essentially either compel or have the Court review the claim on

10   an item-by-item basis to the extent that may be necessary for

11   an in-camera *ex parte* review by the Court with an ultimate

12   decision to follow.

13          The protocol that we've proposed, Judge, has, if you

14   will, relatively speaking, expedited time frames because we're

15   all cognizant that we want the Court to have -- we want this

16   process to be expeditious, recognizing that there are no trials

17   in the Southern District of Florida until September at the

18   earliest, but we want to be working on this process in the

19   meantime.

20          And I note, Judge, that some of the more thorny issues

21   that I think were addressed earlier in the joint motion for

22   status conference as well as the Government's letter, which is

23   not -- we don't think should be substantively discussed with

24   the prosecution team on the line, we think that those issues

25   can be disposed of through the protocol process because what

1    the protocol will allow is for the asserting party, whether it

2    be a common -- a claim of common-interest privilege or just

3    attorney-client privilege or work product, will -- the

4    privilege holder will have the opportunity to assert that

5    claim; and then the parties can through the framework narrow

6    the areas of disagreement and then put before your Honor the

7    issue.

8          I think that one of the problems, Judge, is that in a

9    vacuum, I'm not sure how feasible it is to really rule, for

10   example, on if a common-interest privilege existed or if

11   attorney-client privilege existed over certain materials if

12   asserting parties haven't had the chance to actually make the

13   claim and then crystallize those through a privilege log.

14         We all know, for example, that there could be a meeting

15   and the meeting may relate to, you know, substance X or

16   substance Y, but then also there could be logistics issues or

17   things that were discussed which have nothing to do with the

18   claim -- the legal claims, but might actually be relevant to

19   issues for trial.

20         So we think the protocol is a way in this relatively

21   complex fact pattern with third-party privilege claimants to

22   give them the opportunity to be heard and give the Defendant an

23   opportunity to assert his claims; and then we'll, if you will,

24   litigate those to the extent they have to be litigated.

25         So that's our proposal.  We have discussed this with

1  counsel for the Defendant.  While we didn't come to a complete

2  agreement with them, we did incorporate, I think, a number of

3  their suggestions as to time frame, as to how the materials

4  should be disclosed, and a couple of other items.  And we think

5  that the proposed order is relatively close to where it needs

6  to be.

7          And I do then finally, Judge, want to flag one issue

8  for you.  In addition, of course, to the assertion of privilege

9  and whether or not privilege applies to the document, whether

10 it be attorney-client or common-interest, there are two other

11 legal issues we think the Court may have to address with

12 respect to certain items.

13         One is whether or not there has been waiver.  It may

14 well be that the defense or somebody else wants to claim that

15 somebody's privilege has been waived based on circumstances.

16 But, of course, the Court couldn't reach waiver until there's

17 actually been an assertion of privilege, which we need to have

18 from the privilege holder, not the filter team, and then

19 finally whether or not the crime fraud exception applies.  And

20 the crime fraud exception would apply of course only if there's

21 an assertion of privilege that is cognizable at least in the

22 first instance.

23         And all of these, the assertion of privilege and the

24 waiver and/or crime fraud exception, they have burdens on the

25 part of the asserting parties that would be, we think, dealt

 1   with appropriately in the protocol because the asserting

 2   privilege and/or the claiming party would have the opportunity

 3   to assert either their claim of privilege or their exception.

 4        So that's why we have proposed this, Judge, relatively

 5   uncommon, we know in this district.  But it's something we

 6   think will give the Court a good framework to work -- to weed

 7   through the issues and for us all to work productively so that

 8   this case can get to trial in an expedited way.

 9        So that's our proposal, Judge.

10        THE COURT:  Thank you, Mr. Duffy.

11        So, Mr. Duffy, has the proposed order been shared with

12   the defense?

13        MR. DUFFY:  Yes, Judge.

14        THE COURT:  The final version?

15        I'm sorry.  I think you indicated they had some -- they

16   have some disagreement with some of the terms.  And I'm going

17   to hear from them in a second.

18        MR. DUFFY:  Yes, Judge.  We sent it to them last week.

19   We had a meet-and-confer session.  We went through a number of

20   their -- of the issues that they had raised and then we -- the

21   filed version from Friday was publicly filed and there was some

22   communication, I think, Friday evening; I'm not sure if over

23   the weekend.

24        We did send -- as the motion references, Judge, we sent

25   them a list of the materials that's more detailed than is set

```
1    out in the motion.  We sent them a letter with the materials

2    that are sort of -- that are sort of outstanding and would be

3    put through this protocol, if you will, so that they have that

4    list.

5         And, yes, there are, I think, a few outstanding issues.

6         But if I may, I think the protocol at least in

7    principle is something that both sides agree to.  But I won't

8    presume to speak for the very able Mr. Sadow.

9         THE COURT:  Yes.  I'm going to hear from them in a

10   second.

11        And what about the third party?  Obviously, it's been

12   filed publicly, so it's available.  But was it specifically

13   discussed with Mr. Samuel or were the counsel for these other

14   objectors involved in the compilation of this protocol?

15        MR. DUFFY:  Your Honor, we did not discuss it in

16   detail.  There may have been a high-level discussion with one

17   or two claiming counsel for claiming parties.  But we did not

18   go over the details with the third parties.

19        We do think, though, that it's a slightly awkward thing

20   because, you know, third parties aren't parties to the

21   litigation on the one hand, but it is sort of the rare

22   exception when a third party can, if you will, intervene or be

23   heard in a criminal case whether they do have a valid privilege

24   or a substantive right that's at issue.  But it's a little

25   awkward to go out to a third party.  And so -- and there are a
```

1   number of them.

2        So we do think that this proposed protocol does give

3   them a chance to be heard and does protect their interests to

4   the extent they have interests to protect.

5        And so I'm sorry to say that we haven't had extensive

6   dialogue with them, but we do think that they have a chance to

7   be heard as set forth in the proposed protocol.

8        THE COURT:  Understood.  I think this is my last

9   question for you right now, Mr. Duffy.  Then I'll turn to

10  Mr. Sadow.

11       What's the filter team's view on whether -- if these

12  third parties want to participate in this protocol, including

13  Mr. Samuel's client, whether they have to formally intervene,

14  like move to intervene and be admitted into the case by Judge

15  Ruiz for that purpose, or whether they can simply -- I'm just

16  not sure procedurally how they would appear.

17       What are --

18       MR. DUFFY:  Sure, your Honor.  Yes, your Honor.

19       Your Honor, my view is that if the proposed protocol

20  were ordered and substantially in the form -- substantially

21  similar to the form that has been proposed, that the third

22  parties have the opportunity to be heard without having to

23  formally intervene.

24       I can say, your Honor, that without getting into the

25  substance in grand jury litigation where a third-party

1    privilege claim that's in this district or third-party

2    privilege claims have sought to be heard that they've been

3    given notice and the opportunity to be heard.  Now, I can't

4    cite to you something that's of public record, but I think as a

5    procedural matter giving them an opportunity to make a

6    privilege claim, at least in the first instance, I don't think

7    they have to make a formal notice.

8            Really what we're talking about, Judge, it could be if

9    somebody didn't, if you will, like the ruling or wanted to

10   object further, you know, if they wanted to, for example, seek

11   mandamus or something that they would then, you know, seek to

12   intervene in some fashion.  But my hope is that we're not going

13   to come to that.

14           I think the items that we're really talking about are

15   not that voluminous.  I don't think that we're talking about,

16   you know, tranches and tranches and tranches of documents.  I

17   think we're talking about some cell phones, some email search

18   warrant accounts, some material seized from premises.  But

19   things that I think can be worked through where this Court is

20   not going to be faced with, you know, stacks of evidence sent

21   to chambers for you to then weed through.  Our hope is to

22   reduce that down and really get you only what's really

23   necessary to get this case to trial.

24           THE COURT:  I understand that.  I understand right now

25   all we're talking about is a protocol.

1          So let me turn now to Mr. Sadow and I'll hear from him.

2     And I guess, Mr. Sadow, again, to kind of frame the questions I

3     have, one is I have a proposed protocol.  If you do have

4     objections to the protocol, not turning to the substance of

5     what underlies it, but the protocol itself, I'd like to hear

6     you on that and any thoughts you have on whether -- I think I

7     do need to let third parties come in and make objections if

8     they have objections to make.  Any thoughts that you have on

9     what is the appropriate procedure that would allow them to do

10     that under the rules?

11          MR. SADOW:  Thank you, your Honor.

12          We were participants in a conference call on Thursday.

13     We were able to air some of our objections and we received, I

14     think, Friday the motion which has now put into practice some

15     of the thoughts that we had.

16          Our objections at this point are few.  We agree that

17     the protocol that is being suggested is workable here and that

18     the Court should follow it almost completely.

19          There are a couple things, though, that we still think

20     need to be fleshed out if I can go into that.

21          THE COURT:  Yes, please.  I'm looking at Docket Entry

22     49-1, which is the proposed protocol.

23          MR. SADOW:  Right.

24          THE COURT:  If you want to give me paragraph and page,

25     I'm happy to go through it with you.

1        MR. SADOW:  Well, it's not necessarily objections to

2   what's in the protocol or the motion itself; it's information

3   that we think we need to have in order to bring the protocol

4   into play fairly for both sides.

5        And --

6        THE COURT:  Okay.

7        MR. SADOW:  -- the first part of this is, we

8   received -- and I don't think the Court has this.  I know that

9   the prosecution team does.  I know the filter team does,

10  because the filter team sent it out to the prosecution team and

11  the defense.  But there was a letter sent out on June 5 that

12  had an attachment, two tables.  1 was items of third parties

13  that have not been produced; and then Table 2 was a list of

14  items that had been produced to the defense on two different

15  dates.

16       And those lists were very helpful.  One of the things

17  we wanted to bring out or had requested in our conference was

18  that we be given some more specifics about what it is that may

19  be potentially subject to privilege.

20       So this list helps out considerably.  If the Court had

21  the list in front of it, it might be able to follow this a

22  little better.  I don't know if there's a mechanism that I

23  could either forward or the filter team could forward that

24  list.  I'm not positive that it's absolutely necessary now, but

25  it may be helpful and that we think at least ought to be

1   considered in part of the protocol proposal of the Court.

2          THE COURT:  If you want to forward it or Ms. Sztyndor

3   wants to forward it to my email address here at the Court at my

4   desk, I can pull it up.

5          Or, Mr. Duffy, if you've got it conveniently handy, if

6   someone wants to email it to my address, I can pull it right

7   up.

8          MR. SADOW:  Robyn, do you have it immediately

9   available?

10         MS. SZTYNDOR:  I do.  Yes.

11         MR. SADOW:  Could you send that along?

12         MS. SZTYNDOR:  Yes.

13         THE COURT:  While we're waiting for that, Mr. Sadow, I

14  wanted to talk now about anything else I can cover while I'm

15  waiting to get that.

16         MR. SADOW:  Of course.

17         The second part of our concern that's not yet been

18  addressed, at least in the protocol order, but I think it's

19  part and parcel, is there were two areas that have been

20  identified.  One is the common-interest privilege and one has

21  to do with an attorney that was working for Lab Solutions who

22  was interviewed and otherwise provided information to the

23  Government.

24         I'm not saying that the Government agrees with us on

25  that, but that's our position.

```
 1              Whether you characterize those as  inadvertent

 2    disclosures or not, we have asked the Government to put forth

 3    at this point who on the prosecution team has had access to

 4    these items and both pre, that is, prior to the time that we

 5    raised our objection, and anything that has occurred after that

 6    so that there would be at least a record of that so that we can

 7    take our appropriate positions when we file our moving papers

 8    to claim the privilege.

 9              And in connection with the common-interest privilege,

10    we have a number of evidentiary items that we will be supplying

11    at the appropriate time to the Court.  We would obviously wish

12    to do so *ex parte* in camera.  We're not going to be able to

13    provide those to the filter team.

14              And then as a result of that, we're expecting that it

15    would be the most efficient use of judicial economy to have an

16    evidentiary hearing dealing with the common-interest privilege.

17    Now, I know that's kind of down the road a little bit.

18              And then in the list -- I don't know whether the Court

19    has received it yet.

20              THE COURT:  Let's see.  Not as of yet.  I haven't

21    received it yet, but it could be in the process.

22              MR. SADOW:  Well, I can reference for the Court's

23    purpose --

24              THE COURT:  Give me a general sense of what you're

25    talking about.
```

1          MR. SADOW:  Okay.  If the Court would look at the

2    motion filed -- let's see -- for the record, it is Docket Entry

3    49.

4          THE COURT:  Yes.

5          MR. SADOW:  Looking at I think Footnote 6.

6          THE COURT:  Okay.  Hold on.  Have you got a page number

7    for me?

8          MR. SADOW:  Yes.  Page 4, your Honor.

9          THE COURT:  All right.  Great.  Hold on.

10         Okay.

11         MR. SADOW:  The list that you're about to get has

12   references to consensually recorded calls.  And what we have

13   asked for in an email that we sent out to the taint team after

14   we received this list is that we would need to know all of the

15   members on those calls in order to be in the proper position to

16   voice our position as well as the approximate dates.  And I'm

17   not looking for April the 4th at 2:32 in the morning; I'm

18   looking for something that would tell us who the participants

19   are and the approximate date of the call.

20         In addition, which is not referenced in the protocol

21   motion yet -- again, this is waiting to --

22         THE COURT:  I did receive the email from Mr. Furtado

23   and I'm looking at Table 1 at this point.

24         MR. SADOW:  Okay.  Great.

25         You can see in Table 1, there are Nos. 1 through 4.

1   They make reference to consensually recorded calls.  They talk

2   about who I'm assuming is the individual that recorded, that

3   is, that was cooperating.  And I make that assumption because I

4   haven't heard back from the Government whether that's correct.

5   I'm sure they can tell us that in a moment.

6        But then we have the third parties.  So at least in my

7   experience -- I've been doing it for 40 years -- I find it

8   unusual that there would be a situation in which there would be

9   a privilege, a recognizable privilege, attorney-client, work

10  product, for an undercover operation consensually recorded

11  phone call, which is why I'm seeking more information about

12  that.

13        Now, of course, if there's ongoing investigation,

14  that's a whole other matter.  But I don't know that at this

15  point.  So we were seeking more information on 1 through 4 to

16  see whether those could even be the subject of an arguable

17  taint, particularly if the privilege is being raised by the

18  individual who was cooperating.

19        And then if you go to the number -- the next would be

20  my Page 2, starting at No. 7, we were seeking or would be

21  seeking more information, for example, on 7 and 8 and 9, 14 and

22  15, 17 and 18, all of which are consents.

23        And, of course, I understand the Court has been doing

24  this for some time, both as a practicing lawyer as well as a

25  United States magistrate judge.  You would understand we may be

1    in a position if we knew more about the consent, it would be

2    difficult, I think, for the party that is objecting, the third

3    party, if they're objecting and they consented or consensually

4    turned it over to the Government.  You may have an implied

5    waiver.

6         So we were seeking some more information as well on

7    that.

8         And then finally, in connection with this, if there are

9    search warrants that have to do with these potentially

10   privileged documents that we don't have a -- and we have a

11   number of them, so I can't say we don't have them -- but if

12   there are search warrants that we don't have and the moving

13   papers to go with it, we would want that as part of the

14   proposal.

15        Now, I'm not saying that that necessarily has to be

16   drafted into the order.  I'm sure that if the Government were

17   to agree to provide us that information, that would be

18   sufficient for our purposes.

19        But that would be in a position that moving things

20   along we wouldn't, for example, as the Government has

21   envisioned it -- and let's just give an example.  Let's say on

22   Table 1, No. 1, the individual that would potentially raise

23   that privilege would be Chris Miano.  And Chris Miano based on

24   the listings, if I understand, that is on Page 4, again, of

25   their motion, Miano objects basically to the Government

1    producing privileged materials.

2            So let's assume that's privileged material that Miano

3    objects to.  He would set forth why he objects or his counsel

4    would.  But we would already know the information about the

5    undercover operations and how that recorded call was received

6    or obtained.  And we would be able to in our response to their

7    claim of privilege say:  It's not privileged; it's implied

8    waiver, and this is why.

9            If we don't have any more than just what we've been

10   given so far, that would be incomplete; and I'd like to try to

11   make it on the first round as complete as possible.

12           And that would hold true, as I said, the undercover

13   operations, the consents; the search warrant would not be an

14   implied waiver, but that information helps us in the overall

15   position.

16           Now, we have also told the Government that to the

17   extent that someone is going to be cooperating as a witness at

18   trial, and they've indicated to us I think three individuals at

19   this point, we may be raising a waiver issue that is open in

20   the Eleventh Circuit under a case called *Almeida*, *United States*

21   *versus Almeida*, A-L-M-E-I-D-A, at 341 F.3d 1318; specifically,

22   Pages 13, 25 and 26, Note 20.  It's an Eleventh Circuit

23   decision, 2003.

24           So I guess I've said a lot that may go outside of the

25   realm of the broad scope of the protocol.  But we're not in

 1    disagreement with what the Government has put forward as long

 2    as we can get some of this other information so that we are in

 3    the best position to raise our claims either of privilege or to

 4    address claims of privileges of third parties.

 5             THE COURT:  Okay.  Thank you, Mr. Sadow.

 6             If I could distill that down a little bit, what I'm

 7    hearing you say is, the protocol is okay as long as you have

 8    sufficient information to meaningfully invoke the protocol when

 9    the time comes.  And your concerns today are simply that if you

10    don't have access to things like the actual search warrants and

11    other information that you've identified, that when your turn

12    comes to try to challenge a third party's assertion of

13    privilege, you won't be able to do that in a meaningful way

14    because you won't have enough information.

15             MR. SADOW:  Precisely.

16             THE COURT:  Is that more or less what you're saying?

17             MR. SADOW:  Absolutely what I'm saying.  Thank you,

18    your Honor.

19             THE COURT:  Okay.  Let me hear -- thank you.

20             And let me turn to Mr. Samuel.  I guess you'll be the

21    representative of the -- of third parties at least for the time

22    being, Mr. Samuel.

23             Any thoughts you want to share with me about the

24    protocol itself or the procedures the Government is suggesting

25    on behalf of your client?

1              MR. SAMUEL:  No, your Honor.  I don't have anything in

2    addition to that.

3              I share some of the same concerns that Mr. Sadow had

4    about getting more background information and more of the --

5    more information in order to help us use the protocol.  But we

6    don't have any objection to the protocol in general.  And I'm

7    not sure I speak for the other third parties here.

8              THE COURT:  No.

9              MR. SAMUEL:  But that's on behalf of Lab Solutions,

10   anyway.

11             THE COURT:  Right.  Let me -- actually, while I've got

12   you, Mr. Samuel, I'll ask you this question and then I'm going

13   to double back to Mr. Sadow.

14             On behalf of your own client, Mr. Samuel, do you

15   believe that formal intervention or some other formal step is

16   necessary for your client to have the legal ability to assert

17   third-party claims of privilege in this case or do you believe

18   the Eleventh Circuit case law would allow you to simply do it

19   without entering a formal intervention or appearance of some

20   kind?

21             MR. SAMUEL:  I can't think of any reason why we would

22   need to intervene, your Honor.  I mean, witnesses all the time

23   complain about privilege issues, including when they're on the

24   stand in the middle of a trial.

25             And I -- if you want me to intervene, I will.  I have

 1    local counsel.  But I don't see any need to do it if the

 2    Government doesn't want it.  And if the Court doesn't need to,

 3    I certainly don't see any need why Lab Solutions would need to

 4    intervene in order to assert a privilege.

 5         THE COURT:  Very good.  Again, I'm not -- trust me:

 6    I'll do the research.  I'm not trying to make extra work for

 7    anybody or costs for any clients here.

 8         But what I don't want to have happen is to go through

 9    this whole exercise and then it ends up being appealed to

10    either Judge Ruiz or to the Eleventh Circuit and they say:  The

11    third parties never had standing or they never had legal right

12    to be here because they didn't properly join the case, and all

13    this hard work that we're all going to do gets undone on that

14    sort of technicality.

15         So I'll do the research on my end.

16         But, Mr. Sadow, I assume you agree with Mr. Samuel that

17    you don't think there's a need for formal intervention by the

18    third parties?

19         MR. SADOW:  I guess the answer to that is kind of yes.

20    And I say it that way because with this protocol, would the

21    taint team, the prosecution team and the defense -- would we be

22    expecting that the third party would be filing its position,

23    for example, asserting a claim with a privilege log, would that

24    be filed of record or not of record?  If it's not of record,

25    then I'm in agreement that we're not going to need them to give

1    formal notice of intervention.

2         But at some point, I'm assuming that we're not going to

3    be able to resolve all the issues of privilege informally.  And

4    at that point, people are going to have to take a position on

5    the record for your Honor to get involved directly.

6         So that -- at that point is my question:  How does, for

7    example, a third party raise -- let's do it in this fashion.

8    Let's say a third party -- not Lab Solutions.  Lab Solutions is

9    a different third party.  They're more involved in Table 2.

10   They're not involved in Table 1, per se.  They're on the

11   defense end of this, potentially raising privileges as to the

12   items in Table 2 of the list that you received.

13        I'll go back to Mr. Miano just because I've used his

14   name already.  Let's assume he raises a privilege on a given

15   item.  And we take the position, the defense, that it's not

16   privileged.  We have our conference and we're unable to agree.

17        Then at that point, I'm assuming that in some form or

18   fashion the matter -- the taint team -- I'm not sure would give

19   a recommendation or not give a recommendation, but in any event

20   it'll wind up before your Honor, because it's still a contested

21   privilege.

22        How does the third party at that point put forth its

23   position?  That's the real issue.  Do they file something?  Do

24   they just essentially file something or do they have to file

25   notice of intervention then or do they just file a notice of

1    appearance and then file their objection?  That's the stage

2    where I see more of a difficulty with what position we're going

3    to take about formality.

4         THE COURT:  Understood.  All right.

5         Like I said, I'm going to -- I'll do the research.  I

6    can look at our local rule.  I want to talk to our clerk of

7    court as well just because logistically I think, Mr. Sadow,

8    you've hit it on the head.  If this gets resolved informally,

9    then it never comes before the Court and I don't have to worry

10   about this.  But if it's going to come before the Court, people

11   need to be able to actually get into the docket sheet and enter

12   an appearance and file what needs to be filed.  And so I'll --

13   that's a procedural issue that I'll address and research

14   myself.

15        All right.  Let me turn back to Mr. Duffy on behalf of

16   the United States.

17        Mr. Duffy, I want to give you a chance to respond if

18   you feel you need to.  But let me just tell you, I think the

19   issues that Mr. Sadow was raising can all be dealt with later.

20   I'm comfortable with this protocol.  I'm going to read it

21   again.  I may fly-speck a word here or two there.  But I'm

22   generally -- I think you all have done a very commendable job

23   of coming up with a process that allows everybody to have their

24   due process and to be heard, allows the Court to frame out the

25   issues that need to be framed and to address each one in a way

```
 1    that makes a record that if anybody wants to challenge it can
 2    be challenged to a higher court.
 3              So I think a protocol or something substantially
 4    similar to this protocol works.  So I'm inclined to enter that.
 5              Again, to the extent Mr. Sadow is raising objections to
 6    his ability to meaningfully invoke the protocol, I'd like to
 7    cross that bridge when we get there, because it's possible you
 8    all can work most of this out informally and I'll never have to
 9    rule on these things.
10              And certainly any protocol that I enter would be
11    without prejudice to any party, third party or Defendant in the
12    future seeking an order from the Court to require the filter
13    team to make further disclosures.
14              So, Mr. Duffy, with that wind-up, I'll ask you if you
15    have any response or anything else you'd like to add in
16    response to what Mr. Sadow and Mr. Samuel have said.
17              MR. DUFFY:  Thank you, Judge.  Not much.
18              As you indicated, I think during the meet-and-confer
19    and notice process, the Government is amenable to providing
20    additional information to Mr. Sadow.  We don't want there to be
21    a hide-the-ball.  We're not trying to do any kind of
22    hide-the-ball exercises.  So I just want to represent that to
23    the Court, that we will meet and confer in good faith with
24    Mr. Sadow to try to narrow the areas of disagreement.
25              And with respect to the formal entry of an appearance,
```

```
 1    you did ask me about that, by a third party.  You know, it's
 2    a -- we want to work with the third parties and the Court to
 3    give the third parties a meaningful opportunity to be heard.
 4          On the filter team's side, we're just looking for a
 5    mechanism to get the ball rolling and to make sure we're not
 6    running roughshod over anyone's ability to assert their claim
 7    and/or the Court to adjust the claim in due course.
 8          So we appreciate your observations.  And if you have
 9    any other questions for the Government or at least the filter
10    team's side, I'd be happy to respond.
11          THE COURT:  Actually, I do have one.  And I shudder to
12    ask this, but I'll ask it, because it'll at least inform me of
13    issues I might see coming down the road:
14          I know the Government's talking in terms of the -- the
15    filter team is talking mostly in terms of the fact that it has
16    in its possession information that may be privileged, either
17    the Government has a good-faith basis to believe it's
18    privileged on the Government's own analysis or the Government
19    has concerns about it being privileged because a third party
20    has affirmatively asserted a privilege.
21          Is there any concern here that the Government also may
22    have *Brady* material that could be privileged and that there
23    could be that sort of interlay and overlay between the
24    Government's *Brady* obligations vis-à-vis a third-party's
25    privilege?  Do you foresee that coming or is that really not an
```

1    issue here that you know of?

2         MR. DUFFY:  Your Honor, that is a question that we have

3    asked ourselves on an ongoing basis.  And we know and we

4    recognize that on the filter team's side there is a tension

5    between somebody's claim of privilege and potential *Brady*

6    information.

7         And we think that that issue is not entirely settled.

8    We think that we -- we know and we understand we have an

9    ongoing duty to identify and make available to the defense

10   *Brady* information.  If we came across *Brady* information and we

11   thought there was also a claim of privilege asserted with it,

12   we would bring that to the Court's attention at a minimum

13   *ex parte* so the Court could determine how to deal with that.

14        One of the things we think that this protocol allows to

15   happen is to get information to the defense really with the

16   sort of narrow exceptions of these claims by third parties and

17   then the third parties can in turn assert the claims and we'll

18   know and we'll have a much better idea as to, if you will,

19   what's not going to the defense in the first instance.  And so

20   that will allow us to focus on it a little bit more.

21        But you -- I will say, it's incredibly insightful,

22   Judge, for you to have spotted that issue.  It's one that --

23   it's one that we thought about quite a bit and it's one of the

24   motivators to put together this protocol.  It's why we on the

25   filter team's side thought this would be a good way to make

1    sure everything is going into a process that it can either be

2    discovered or it can be brought to the Court's attention.

3              THE COURT:  I appreciate that.

4              And my inclination is, again, to let the privilege

5    process work its way all the way to the end, as you previously

6    indicated.  It may be that, you know, we're going to have to

7    run through a number of traps here.  Is it privileged in the

8    first instance?  Even if it is, has there been a waiver?  Even

9    if there hasn't been a waiver, does the crime fraud exception

10   apply?  And then and only then do we perhaps have to cross the

11   bridge.

12             How does one balance or what's the interplay between

13   something that I have now found to be privileged but the

14   Government says, We think we have a *Brady* obligation to turn it

15   over?  I'd like to avoid trying -- if I don't have to reach

16   that issue, I'm not going to reach that issue.  But I just

17   wanted to put out there that I recognize that that may be there

18   at the very end of the day here, and we'll cross that bridge

19   when we get there as well.

20             MR. SADOW:  Your Honor, may I speak to that just for

21   one moment?  And I certainly understand what the Court said,

22   that that's the last thing that you're going to address in this

23   scheme of things.

24             THE COURT:  Yes, Mr. Sadow.

25             MR. SADOW:  But I just wanted to put if I could in the

1    back of your mind, our position is and the reason we are

2    fighting for this potentially privileged material is that there

3    will be a significant amount of *Brady* and *Giglio* material.  And

4    it will cause the interplay potentially of a constitutional

5    obligation or duty under the Fifth Amendment versus a

6    recognized privilege; and obviously, I don't have to explain to

7    the Court the Constitution wins on this.

8            But I also have a concern.  The taint team is not in

9    the posture, obviously, of the prosecution team and is

10   certainly not in the posture of the defense.

11           So my only request down the road -- and that's why I

12   said put it in the back of the Court's mind -- is if we get to

13   this point where the Court is recognizing a privilege, that if

14   the Government has any thought, even if it is the slightest

15   intimation, that it is potentially *Brady* or that there's

16   something potentially *Brady* in there, I think it's imperative

17   at that point for not just the Court to be alerted to that, but

18   that we be alerted to that so that we are able to bring forth

19   why we think it would override privilege in that scenario.

20           There is considerable amount -- just to give the Court

21   a 30-second background:  We know from some of the discovery so

22   far that the position of at least one of the cooperating

23   individuals now, which is that he was involved in illegal

24   activity along with the Defendant, that simply a couple months

25   before that he was praising the Defendant's work as legal and

1    the best in the business.

2           Since I know that kind of thing is out there, it

3    wouldn't surprise me that others may have said the same thing

4    in their conversations with their attorneys or in conversations

5    with others.  That's what we're looking for:  a change in

6    position vis-à-vis when the Government comes calling.

7           THE COURT:  Understood.

8           Let me just say that I -- first of all, you know, I

9    understand your position is that if there's a collision between

10   the attorney-client privilege and *Brady* that *Brady* wins.  I

11   understand that's your position.

12          I'm not taking a position on that yet.  If we ever got

13   to the point where I have to address that issue, I can assure

14   you both sides will have an opportunity to fully brief that

15   issue, because there are a lot of subtleties to *Brady* as well.

16   So I'm going to give everybody a full chance to be heard on

17   that.

18          So nothing that I would enter in this protocol would be

19   exclusive or would preclude any party from the future from

20   again seeking to invoke a different protocol or a supplemental

21   protocol to deal with *Brady* issues.

22          But as -- I think Mr. Duffy knows this, but to those of

23   you who don't, I have a long history and a lot of experience

24   both with privilege, *Brady*, *Giglio*.  Back in the 1990s I was

25   part of the national working group that developed the *Brady* and

1    *Giglio* policies for law enforcement.

2         For those of you in Atlanta, Ms. Alexander, so I'm sure

3    you're all familiar with, was on that working group with me.

4    My wife was the professional responsibility officer and the

5    *Brady* and *Giglio* specialist and trainer for the Southern

6    District of Florida for over 20 years.  And, you know, as a

7    prosecutor and as a defense lawyer, I had direct personal

8    experience dealing with *Brady*, *Giglio* and privilege issues.  So

9    I'm comfortable.

10        And I want to commend all because in my almost 30-plus

11   years of doing this, this situation happens all the time where

12   the Government does a search warrant and they get information

13   that is potentially privileged.  And to my knowledge, it's the

14   first time that someone's come up with this sort of a

15   meaningful protocol.  And I think it's a good thing.  I think

16   it creates exactly the kind of process that we should have to

17   make sure that Mr. Patel's rights are protected, the third

18   parties' rights are protected, and the Court can frame up the

19   issues and deal with them.  So I want to commend all of you.

20        And so like I said, I will -- now that I've heard from

21   all of you, and I appreciate your time this morning, I'm going

22   to go back and reread the proposed protocol.  But I will be

23   entering, if not word for word the protocol you sent me,

24   something substantially similar so you all can start to plan to

25   move forward on that.

1          I'll take under advisement the question of whether I'm

2    going to require any third party who wants to assert a formal

3    claim to intervene in the case, because it sounds to me like

4    there's some informal meet-and-confer processes that have to

5    occur before I get there.  But I'll do a separate order on that

6    if I think that's important.

7          And all other issues, I'll just wait until they're

8    properly framed by the parties.

9          So with that, let me turn just for a second to

10   Mr. Loper, Mr. Hayes.  You've been very patient, very quiet;

11   and I understand there's some stuff here that you're not

12   supposed to know, so I'm being careful not to disclose that.

13   But from the perspective of the -- I guess I'll call it the

14   trial team or the prosecutor team, were there any issues you

15   wanted to raise or any comments you wanted to make this

16   morning?

17          MR. LOPER:  Yes, Judge.  This is Tim Loper.

18          I did want to raise two items at the risk of extending

19   the hearing.

20          In document -- in Docket Entry 35, the original joint

21   motion for a status conference, in addition to setting forth --

22   you know, getting a protocol to turn over this third-party

23   material, there were two other items in that motion --

24          THE COURT:  Okay.

25          MR. LOPER:  -- that we had flagged, one of which I

1    think can be resolved very quickly.  The other might be a

2    little more difficult.

3           But they are -- we wanted to get in front of the Court

4    a potential conflict that we had identified as it relates to

5    Ms. Sztyndor.  And I can walk you through why we ultimately

6    concluded why there was not a conflict, but thought it was best

7    to have the Court weigh in.

8           THE COURT:  Okay.

9           MR. LOPER:  And then a second issue was raised in that

10   motion, which was whether or not a common-interest privilege

11   that Ms. Sztyndor had claimed on behalf of an individual named

12   Bucky Houser in fact existed.  And that's related to the

13   conflict issue.

14          I would propose -- and there was going to be some

15   litigation, I think, today, or some -- there was going to be

16   some substantive discussion about whether or not that common

17   interest actually existed.

18          But I think -- I would ask or submit that the protocol

19   the Court is contemplating putting in place would actually be

20   the more proper place for those issues to be raised.  So that

21   second issue of whether or not there was a common interest even

22   in place, maybe that needs go through the protocol the Court is

23   contemplating putting in.

24          I'm less certain that that would resolve the issue

25   related to the conflict.  But I'd be curious what your

1    thoughts, Judge, are on that particular issue.

2         THE COURT:  Okay.  If you could just clarify that for

3    me a little bit.  I'm sorry.  What -- when you say there's an

4    issue related to common-interest privilege, how does that

5    actuate itself vis-à-vis the prosecution team as opposed to the

6    filter team?  What is it the prosecutor team can or can't do or

7    needs guidance on a common-interest privilege to allow it to

8    do?

9         MR. LOPER:  I don't think the prosecution team.  I

10   think you're right.  That is an issue that's squarely for the

11   filter issue -- for the filter team.

12        I think the question for the prosecution team is

13   whether or not we need to address the potential conflict that

14   we identified that Ms. Sztyndor -- we potentially have.

15        THE COURT:  And is it -- trust me, Ms. Sztyndor.  If

16   you're listening, I'm going to give you and Mr. Sadow a chance

17   to respond to this, so you'll get your turn.

18        Mr. Loper, from what relationship does the conflict

19   arise?  Is it a prior representation?  A current -- concurrent

20   representation?  Is it a personal interest in the outcome?  I'm

21   just trying to quickly pigeonhole this from the ethical rules

22   side.  What kind of conflict do we have here?

23        MR. LOPER:  Yes, Judge.  A prior relationship.

24        So Ms. Sztyndor currently has entered an appearance as

25   defense counsel for Mr. Patel.  We produced discovery to

1    Defendant Patel that included some phone calls Mr. Miano, a

2    cooperating witness in our investigation, made with an

3    individual named Bucky Houser.  Ms. Sztyndor has notified the

4    prosecution team in early November -- she notified us that she

5    had previously represented Mr. Houser and that Mr. Houser and

6    Mr. Miano had entered into a common-interest agreement and she

7    was notifying us of that.

8            Eventually, that notice turned into an argument on

9    behalf of Mr. Patel that the prosecution team had used

10   improperly obtained privileged information to craft the

11   indictment against Mr. Patel; and in particular, that it was

12   information that Mr. Houser and Mr. Miano exchanged.

13           Mr. Houser and Mr. Miano, if there was a

14   common-interest agreement, there's no dispute that Mr. Patel

15   was not part of that common-interest agreement.  In fact, as

16   far as I'm aware, you know, Mr. Houser and Mr. Miano never even

17   knew Mr. Patel.

18           So what is essentially being -- the position that

19   Ms. Sztyndor has placed herself in or is in is that she is

20   asserting a common interest on behalf of a former client,

21   Mr. Houser, in order to advance the interest of her current

22   client, Mr. Patel.

23           And we were initially concerned that that -- this

24   raised two potential conflicts:  One was that Ms. Sztyndor was

25   divulging privileged information, communications that she may

1    have shared with Mr. Houser in order to advance the interest of

2    a different client, Mr. Patel.

3         And ultimately, we became comfortable that that was not

4    in fact the case because there is a rule, Rule 4-1.6 of the

5    federal rules governing the conduct of lawyers, that says a

6    lawyer can divulge privileged communications to a discreet --

7    in a discreet way in order to protect the interests of another

8    client.

9         And so we thought that Ms. Sztyndor's notification to

10   us that we might have this other privileged information of a

11   former client, Mr. Houser, we thought that that might be a

12   small amount of disclosure permitted under Rule 4-1.6.  So

13   ultimately, we were comfortable with her position.

14        And then separately, in the instance that Mr. Miano

15   actually testifies at Mr. Patel's trial, Ms. Sztyndor would be

16   in a position to cross-examine Mr. Miano, who she has notified

17   us or has alleged that her former client had a common interest

18   with.  So we were concerned:  Is that somebody that's

19   cross-examining a former client?

20        And there, we cited in Docket Entry 35 the case of the

21   *United States versus Almeida*, which Mr. Sadow previously

22   provided the citation for, that says that when one party to a

23   common-interest agreement or a joint defense agreement turns

24   State's evidence, they are not allowed to invoke that privilege

25   in order to disqualify the cross-examining attorney.

1          And so that case also gave us comfort.

2          But we thought it was prudent to at least get it in

3     front of the Court so that we're not dealing with this issue,

4     you know, years from now.

5          THE COURT:  Okay.  I appreciate that.  I'm going to

6     turn to Mr. Sadow and Ms. Sztyndor in a second.

7          But here's my sense of it.  My concern from what -- not

8     concern; the issue that I see from what you're raising actually

9     is the flip side, which is:  Mr. Patel has the right to be

10    represented by conflict-free counsel.  Obviously, he's got

11    Mr. Sadow, and there's no suggestion Mr. Sadow has any conflict

12    at all.

13         But, Mr. Sadow, I'd like to hear from you, your

14    thoughts on whether it would be prudent for the Court to go

15    ahead and have a hearing akin to a *Faretta*-type hearing with

16    Mr. Patel where the Court on the record would discuss with

17    Mr. Patel at least the potential conflicts that could arise if

18    Ms. Sztyndor has any ethical obligations that might prohibit

19    her ability to cross-examine other witnesses or not disclose

20    certain information because of the prior representation and

21    then have Mr. Patel acknowledge that he understands and if he

22    deems it appropriate, based upon advice of counsel from you, to

23    waive any conflict that exists, have him do so.

24         So it's my inclination to perhaps have a hearing like

25    that just so the record is ultimately very clear that Mr. Patel

1    was aware of the situation.  I'm not saying there is a

2    conflict.  I'm not suggesting Ms. Sztyndor has done anything

3    she shouldn't do.

4         But if there's at least even the potential that

5    Mr. Houser is a witness at trial and now we have the potential

6    specter of a former client being cross-examined by his lawyer

7    that we get that cleaned up ahead of time and make sure that

8    Mr. Patel's Fifth Amendment rights are protected.

9         Mr. Sadow, any thoughts on that?

10        MR. SADOW:  Yes.  First, your Honor, I wholeheartedly

11   agree that such a hearing be held.  I always reference it as

12   being kind of a pseudo-44(c) hearing.

13        THE COURT:  Right.

14        MR. SADOW:  That would be no problem whatsoever.  And I

15   would counsel Mr. Patel and he would make the determination on

16   the record whether to waive or not to waive in light of the

17   context that it comes up, of course.

18        So the Court knows, there is no reason to believe that

19   Houser is going to be a witness.  The relationship as a clear

20   attorney-client privilege was between Mr. --

21        I can never pronounce her name.  You do it much better

22   than I do.

23        Robyn, say it one more time, please.

24        MS. SZTYNDOR:  Yes.  "Sztyndor."

25        MR. SADOW:  "Sztyndor."  There we go.

1          -- between Ms. Sztyndor and Houser.  There was such a

2     relationship.  Ms. Sztyndor did not ever represent I guess

3     Mr. Miano or Mr. Alan or any of the other individuals, so

4     there's no formalized or even informal attorney-client

5     privilege between her and those people.

6          The common-interest privilege that is involved here

7     really pertains to one specific document that was prepared by

8     Ms. Sztyndor for Mr. Houser and shared with others that were

9     interested in her viewpoints on healthcare and healthcare law.

10    And that's the document that the Government has obtained.

11         The question how they obtained it is still kind of up

12    in the air as far as we're concerned.  But they obtained that

13    document, had that document prior to the time that at least as

14    far as we're concerned Mr. Patel was indicted.  And that

15    document lays out certain things that were the opinions,

16    advisory opinions of Ms. Sztyndor.  That's the common-interest

17    privilege issue.

18         So going back, taking a step back, a pseudo-44(c)

19    hearing would be fine.  We really aren't talking about

20    attorney-client relationship between Ms. Sztyndor and anyone

21    other than Houser for purposes of at this point.

22         And just to add to that, if there's going to be any

23    cross-examination of witnesses at trial, Ms. Sztyndor, who is a

24    nationally known healthcare expert, won't be doing that.  I

25    think I will.

```
 1              THE COURT:  I assumed as much.

 2              And there is at least precedent in this district where

 3    one lawyer on a trial team has a conflict that if the other

 4    lawyer conducts the cross-examination, the Courts have found

 5    that to be a sufficient remedy.

 6              And in terms of -- to the extent that there's some

 7    claim that -- or potential claim that the Government is

 8    violating certain privileges by obtaining this document or

 9    these documents and the way the Government is using these

10    documents, those -- that'll be addressed separately, if at all,

11    when the defense files a motion seeking a remedy based upon

12    that.

13              MR. SADOW:  Correct.

14              If I might, your Honor, that's actually -- the taint

15    team, the filter team, put forth on Page 5 that this issue

16    would be part of the protocol that the Court is considering in

17    its order.

18              THE COURT:  Okay.  Very good.

19              So, Mr. Loper, let me just go back to you.  Any

20    objection from the Government to the Court using -- I'll use

21    Mr. Sadow's language -- a Rule 44(c)-type hearing to confirm

22    that Mr. Patel is waiving any potential conflict?

23              MR. LOPER:  No, Judge.  No objection.

24              THE COURT:  Very good.  So I'll -- after we're done

25    here, I'll have my staff reach out to counsel for the parties
```

```
 1    and we'll schedule that hearing.  We'll do it by Zoom or by
 2    video teleconference.
 3          Mr. Sadow, I shouldn't -- Mr. Sadow, I assume your
 4    client will consent to do that hearing by video telephone
 5    conference?
 6          MR. SADOW:  He will, your Honor.
 7          THE COURT:  At some point I will ask you to do that.  I
 8    guess you haven't had a chance to confer with him.  But I'll
 9    require a waiver from you that he will -- he doesn't want a
10    personal appearance.  I'll do it by video.
11          MR. SADOW:  Of course.
12          THE COURT:  Okay.  All right.  Mr. Loper, have I at
13    least now addressed the issues that you wanted to raise here
14    this morning?
15          MR. LOPER:  Yes, Judge.  Thank you very much.
16          THE COURT:  All right.  So let me just run the table
17    real quick and make sure.
18          So, the Government, the prosecution team, I've
19    addressed all your issues?  Mr. Duffy, not waiving any
20    objections you may have to anything I ultimately do, have I at
21    least now addressed and heard you on all the issues you wanted
22    to be heard on this morning?
23          MR. DUFFY:  Yes, Judge.  Thank you very much.
24          THE COURT:  Mr. Sadow and Ms. Sztyndor, same question:
25    Without waiving any objections you may have to what I do or
```

 1   have done, have I at least heard you on all the issues you

 2   wanted to be heard on today?

 3            MR. SADOW:  Yes, your Honor.

 4            MS. SZTYNDOR:  Yes.

 5            THE COURT:  Finally, Mr. Samuel, any -- same question

 6   to you:  Anything else you wanted to be heard on here this

 7   morning?

 8            MR. SAMUEL:  Nothing.  Thank you, your Honor.

 9            THE COURT:  All right.  Well, thank you all very much.

10   Like I said, I'm going to go back and reread the protocol.

11   You'll get an order from me in that regard.  We'll set a

12   hearing date on the potential conflict issue.  And then beyond

13   that, if you need me, you know how to find me.

14            So thank you very much.  Good luck, everybody.  And

15   we'll be off the record at this time.

16            MR. SADOW:  Take care, your Honor.

17            MR. LOPER:  Thank you.

18            (Proceedings concluded.)

19

20

21

22

23

24

25

1

                              C E R T I F I C A T E
2

3           I hereby certify that the foregoing is an

4     accurate transcription of the proceedings in the

5     above-entitled matter to the best of my ability.

6

7
                              /s/Lisa Edwards
      _____          LISA EDWARDS, RDR, CRR
8        DATE                 Reporterlisaedwards@gmail.com
9                             (305) 439-7168

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25