```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
                     CASE NO.  19-80181-CR-RAR


    UNITED STATES OF AMERICA,

                Plaintiff,

        vs.
                                         West Palm Beach, Florida
                                         June 19, 2020
    MINAL PATEL,                          Pages 1-13

                Defendant.
    _____

              TRANSCRIPT OF GARCIA/RULE 44(c) HEARING
                CONDUCTED VIA ZOOM VIDEOCONFERENCING
              BEFORE THE HONORABLE BRUCE E. REINHART
                  UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:

    FOR THE PLAINTIFF:
                            United States Department of Justice
                            Fraud Section, Criminal Division
                            BY:  TIMOTHY LOPER, A.U.S.A.
                            12020 Miramar Parkway
                            Miramar, Florida 33025

                            United States Department of Justice
                            Fraud Section, Criminal Division
                            BY:  JAMES HAYES, A.U.S.A.
                            1400 New York Avenue, NW
                            Bond Building, 8th Floor
                            Washington, D.C. 20005

    FOR THE DEFENDANT:
                            BY:  STEVEN H. SADOW, ESQ.
                            260 Peachtree Street NW
                            Suite 2502
                            Atlanta, Georgia 30303

                            BY:  ROBIN LYNN SZTYNDOR, ESQ.
                            233 Pheonetia Avenue
                            Suite 8
                            Coral Gables, Florida 33134
```

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

```
1   TRANSCRIBED BY:    DAWN M. SAVINO, R.P.R., C.R.R.
                       Official Federal Court Stenographer
2                      400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
3                      Telephone:  305-523-5598
```

5                    P-R-O-C-E-E-D-I-N-G-S

6        THE COURT:  ...America versus Patel.

7        Let me start with counsel for the Government and allow
8   them to make their appearances.

9        MR. LOPER:  Good morning, Judge.  Tim Loper on behalf
10  of the United States, and also Jim Hayes.

11       THE COURT:  Good morning, Mr. Loper.  Good morning, Mr.
12  Hayes.

13       And on behalf of Mr. Patel?

14       MR. SADOW:  Good morning, Your Honor.  Steve Sadow on
15  behalf of Mr. Patel.  I'll let Robin introduce herself.

16       MS. SZTYNDOR:  Attorney Robin Sztyndor, local counsel
17  for Mr. Patel.

18       THE COURT:  Okay.  Good morning.

19       And good morning, Mr. Patel.  I can see you as well.

20       THE DEFENDANT:  Good morning.

21       THE COURT:  Okay.  So we're on this morning for a
22  conflict of interest hearing, and in a second I'm going to ask
23  the Government to articulate its understanding of the potential
24  conflict on the record.  But I just want to make sure everybody
25  agrees that's why we're here today.  It's my understanding that

1  Ms. Sztyndor, at some point, had represented a different client
2  who was involved in a joint defense agreement with someone who
3  may be a witness against Mr. Patel.  Is that -- Mr. Hayes, is
4  that your understanding of the situation that brings us here
5  today?  Or Mr. Loper?  Whoever wants to speak for the
6  Government.
7        MR. HAYES:  Yes, it is, Your Honor, although Mr. Loper,
8  it sounded like you had him on to speak for it.
9        THE COURT:  Mr. Loper, go ahead.  Do I have the
10  situation right?  That Ms. Sztyndor used to represent somebody
11  who was then in a joint defense agreement with a third party who
12  may be a witness -- the third party may be a witness against
13  Mr. Patel in this trial; is that correct?
14        MR. LOPER:  That is correct.
15        THE COURT:  Okay.  So Mr. Patel, when you have a
16  situation where one of your current lawyers has previously
17  represented someone who's got some association with the case, it
18  is possible, I'm not saying it is, it is possible that there
19  could be a conflict of interest that could affect that lawyer's
20  ability to represent you, and that is why we're here this
21  morning.  I just need to ask you some questions to make sure you
22  understand that it's possible, I'm not saying it's true, but
23  it's possible that Ms. Sztyndor has some divided loyalty here
24  and that you understand the consequences of that, and then to
25  determine whether, given that you understand those consequences,

1   you still want to proceed with her as your lawyer.
2           So Mr. Patel, do you understand that that's the purpose
3   of the hearing this morning?
4           THE DEFENDANT:  Yes, I do.
5           THE COURT:  All right.  If you would raise your right
6   hand.  Do you swear the statements you'll make this morning will
7   be the truth, the whole truth and nothing but the truth?
8           THE DEFENDANT:  Yes, I do.
9           THE COURT:  And before I question him -- you can put
10  your hand down.  Before I question Mr. Patel, Mr. Sadow, do you
11  agree that the hearing is what I just described it to be and the
12  purpose is what I described it to be?
13          MR. SADOW:  Yes, Your Honor.
14          THE COURT:  Okay.  Great.  All right.
15          So Mr. Patel, let me just start -- circle back a little
16  on what I just said a second ago.  As you said, your lawyer used
17  to represent a different client and her former client was in
18  what's called a joint defense agreement with -- what's the
19  gentleman's name, Mr. Sadow, that is the potential witness?  Or
20  Mr. Loper?
21          MR. SADOW:  We agreed that we should let the Government
22  answer.
23          THE COURT:  Okay.  Mr. Loper -- who is the -- just so I
24  can use some names, what's the name of the potential witness in
25  this case?

1   MR. LOPER: The potential witness is an individual
2   named Chris Miano.
3   THE COURT: Mr. Miano. Okay. And what was the name of
4   Ms. Sztyndor's former client?
5   MR. LOPER: Bucky Houser.
6   THE COURT: Houser. Okay. Easier if I use names. All
7   right.
8   So Mr. Patel, Ms. Sztyndor used to represent Mr.
9   Houser. At that time, Mr. Houser and Mr. Miano were in what is
10  called a joint defense agreement, meaning that they both
11  believed that they were being looked at by the government. And
12  sometimes when that happens, two or more people will enter into
13  an agreement where they agree that they and their lawyers will
14  be kind of a team together, and they'll work together and
15  they'll share information together in order to best defend
16  themselves collectively by being a team.
17  So do you understand that's essentially what a joint
18  defense agreement is?
19  THE DEFENDANT: Yes, I do.
20  THE COURT: Okay. And so Mr. Houser and Mr. Miano had
21  that, which would have meant Mr. Houser's lawyer would have
22  talked presumably to Mr. Miano's lawyer, may have spoken
23  directly to Mr. Miano, so she may have information about
24  Mr. Miano through that agreement. Do you understand?
25  THE DEFENDANT: Yes.

1    THE COURT: Okay. Now, because she represented Mr.
2 Houser during that joint defense agreement however, Ms. Sztyndor
3 can't use any information she learned about Mr. Miano to Mr.
4 Miano's detriment. So if Mr. Miano were to be a witness against
5 you, let's say, and Ms. Sztyndor knows something from having
6 represented Mr. Houser in that joint defense agreement, that
7 could be used to impeach or to show that Mr. Miano maybe isn't
8 telling the truth. She can't use that against Mr. Miano.
9    Do you understand that?
10   THE DEFENDANT: Yes, I do.
11   THE COURT: Now, had she never been in the joint
12 defense agreement, your defense team wouldn't know that anyway,
13 so it's not like you're unable to use something you would have
14 otherwise had. Do you understand that?
15   THE DEFENDANT: Yes, I do.
16   THE COURT: Okay. And then also it could be that
17 there's other information or other things that came up during
18 that representation where if Ms. Sztyndor were to take certain
19 actions on your behalf, maybe they would be bad for Mr. Houser.
20 You understand that. There's at least a theoretical
21 possibility.
22   I'll give you a crazy situation. Let's assume that you
23 knew -- I'm not suggesting you do know this, but let's assume
24 that you knew that Mr. Houser had committed some other crime
25 completely unrelated to this case, and in order to help yourself

1    in your case, you wanted to go to the government and say listen,
2    go easy on me because I'm going to hand you over Mr. Houser
3    because he's a real bad guy.  Okay?  You understand.  Miss --
4            THE DEFENDANT:  Yes.
5            THE COURT:  -- Sztyndor might know that.  Because she's
6    representing you, she can't help you do that.  Okay?  So if you
7    know that -- even if you know that information independently,
8    you know it from somebody else, Ms. Sztyndor can't help you go
9    to the government and turn on Mr. Houser.  Do you understand
10   that?
11           THE DEFENDANT:  Yes.
12           THE COURT:  Now, Mr. Sadow can, but Ms. Sztyndor can't.
13   Do you understand that?
14           THE DEFENDANT:  Yes.
15           THE COURT:  Okay.  And I suspect, I think Mr. Sadow
16   told me this at the last hearing, to avoid any concerns of this
17   nature, if Mr. Houser or Mr. Miano is a witness against you at
18   the trial, Mr. Sadow will be the one who does all the
19   questioning and cross-examination of those witnesses.  Do you
20   understand that?
21           THE DEFENDANT:  Yes.
22           THE COURT:  Okay.  And I guess the other thing is that
23   if you were at a trial and Ms. Sztyndor was your -- was
24   representing you for this purpose, she couldn't get up, for
25   example, in her opening statement or her closing argument and

1  point a finger at Mr. Houser and accuse Mr. Houser of being the
2  person that did the wrong thing here.  So she has a duty of
3  loyalty to him.  Do you understand that?
4           THE DEFENDANT:  Yes, I do.
5           THE COURT:  Okay.  So I think -- I'll turn to Mr. Loper
6  in a second, but I think those are all the kinds of the
7  hypothetical scenarios that could arise where Ms. Sztyndor's
8  prior relationship to Mr. Houser could affect your
9  representation.
10          But let me ask Mr. Loper.  Mr. Loper, do you think I've
11 covered the necessary hypotheticals here?
12          MR. LOPER:  Yes, Judge.  If I may, I would like to --
13 you've done a better job than I would have.  There is one, I
14 think, salient hypothetical I'd like to pose just given --
15          THE COURT:  Sure.
16          MR. LOPER:  -- the litigation --
17          THE COURT:  Sure.
18          MR. LOPER:  -- which is you talked about the potential
19 for cooperation or a plea, and the connection to Mr. Patel
20 hypothetically cooperating against Mr. Houser.  And you talked
21 about being *(unintelligible)* with cross-examination.  The
22 potential conflict could also extend to other realms such as the
23 one that's been raised, which is to the extent there is
24 information that Ms. Sztyndor might have that could advance
25 Mr. Patel's interests through a motion to suppress or some kind

of other litigation, her loyalty with Mr. Houser might limit her abilities to advance Mr. Patel's interests in those circumstances as well, just like any other circumstances.

THE COURT: Yes. Thank you. Thank you for reminding me of that.

So Mr. Patel, that's I guess one other thing. It's also possible that through her representation of Mr. Houser, Ms. Sztyndor may have information that you could use to defend this case. For example, let's say the government improperly got information against you, the government violated your rights, the government has -- that she knows that Mr. Houser -- let me give you the scenario, for example. Maybe Ms. Sztyndor says I know that Mr. Houser told the government Mr. Patel didn't do it, and the government has this exculpatory information but they haven't turned it over yet. That might be, you know -- the failure to turn over exculpatory information might be a way that you could defend your case, but Ms. Sztyndor can't tell you that. She can't tell you that Mr. Houser told the government that.

So do you understand that may be a limitation on her ability to represent you?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And that's a situation if you had never hired her in the first place you wouldn't know that anyway. You understand that?

```
1            THE DEFENDANT:  Yes.
2            THE COURT:  Okay.  So let me turn to Mr. Sadow.
3   Mr. Sadow, do you believe there's any other hypothetical
4   scenarios that I ought to cover with Mr. Patel before I do the
5   formal waiver colloquy with him?
6            MR. SADOW:  No, I think Your Honor's covered it.  I
7   would say though just as a caveat that Mr. Patel should
8   understand that Mr. Houser -- should there be any of these
9   situations that arise, particularly the last one that Mr. Loper
10  mentioned, that Mr. Houser could, if he chose to, he could waive
11  his side of the privilege and allow Ms. Sztyndor to work on
12  Mr. Patel's behalf, all of which of course is hypothetical, but
13  that waiver could take place.  It's not an all-or-nothing,
14  necessarily, determination.
15           THE COURT:  Yes.  Thank you for reminding me of that.
16  Mr. Patel, you understand all these things I'm telling you that
17  limit Ms. Sztyndor's ability to do certain things because of her
18  duties to Mr. Houser.  Mr. Houser could say I don't care, Ms.
19  Sztyndor can do whatever she needs to do to help Mr. Patel.  Now
20  that's a whole different question.  I would have to question Mr.
21  Houser as to who is giving him that advice and is he getting
22  that advice from a lawyer who wouldn't have a conflict, but
23  that's not your problem today.  But you understand I'm just
24  giving you some -- first of all, I don't know if any of these
25  situations have occurred or are going to occur.  You understand
```

1   that?

2   THE DEFENDANT:  Yes.

3   THE COURT:  I just need to ask you all these questions
4   and present these scenarios to you because what the Court can't
5   allow to happen is for your case to go all the way through to
6   conclusion, and then for the first time have you come out and
7   say wait a minute, if I had known that Ms. Sztyndor had these
8   potential problems, I would have gotten rid of her a long time
9   ago, gotten a different lawyer and now I want a do-over.  Okay.
10  So that's why we're having this conversation today because I'm
11  going to ask you in a second some questions about whether,
12  understanding some of these scenarios could occur, do you still
13  want to go ahead and keep Ms. Sztyndor as your lawyer.  And I
14  just want to let you know if you say that you do, and that's
15  fine, you're going to give up the right to come back later and
16  complain that I didn't know that she had these potential
17  problems and I would have gotten rid of her.

18  So you understand that's why I'm asking you these
19  questions?

20  THE DEFENDANT:  Yes, I do.

21  THE COURT:  So understanding that I've now covered with
22  you the potential conflicts that might arise in this case, is it
23  your desire today to continue to keep Ms. Sztyndor as your
24  lawyer, understanding some of the limitations that she may have
25  on her ability to represent you?

1  THE DEFENDANT: Yes, I do.
2  THE COURT: And did you have a chance to talk about
3  that with Mr. Sadow separate from Ms. Sztyndor, and get
4  Mr. Sadow's independent advice as to whether you should waive
5  that potential conflict?
6  THE DEFENDANT: I have.
7  THE COURT: Okay. And are you satisfied you've had
8  enough time to talk to Mr. Sadow?
9  THE DEFENDANT: I am.
10 THE COURT: Okay. Did he answer all the questions you
11 had regarding that issue?
12 THE DEFENDANT: Yes, he did.
13 THE COURT: Okay. All right. Well then, I will find
14 that Mr. Patel's decision to proceed with Ms. Sztyndor as his
15 counsel in this matter is a knowing and voluntary,
16 fully-informed decision based upon advice of counsel. He's
17 indicated he's had sufficient time to speak to his counsel.
18 I've had the opportunity to observe him using the video feed.
19 He's clearly intelligent and alert, and I can tell from his
20 demeanor he's following my questions, his responses are
21 responsive, and so I'm fully satisfied that this is a knowing,
22 voluntary and fully informed waiver.
23 Let me turn to Mr. Sadow. Mr. Sadow, do you believe
24 there's any other questions I should ask or any other findings I
25 need to make this morning?

1      MR. SADOW:  No, Your Honor.

2      THE COURT:  All right.  Mr. Loper, any further
3 questions or any other findings you believe I need to make this
4 morning?

5      MR. LOPER:  Not from the Government, Judge.

6      THE COURT:  All right.  Well then, thank you.  I don't
7 believe there's any other proceedings in this matter currently
8 pending before me, but I understand under the protocol we
9 discussed last time that I've now entered there may be
10 proceedings before me and if so, we'll take them accordingly.
11 But am I correct with that Mr. Loper, we don't have any further
12 hearings at this time?

13     MR. LOPER:  That is correct.

14     THE COURT:  Okay.  All right.  Well, good luck to you
15 Mr. Patel.  Mr. Sadow, Ms. Sztyndor, Mr. Loper, thank you very
16 much.  You all have a great day.

17     MR. SADOW:  You too, Your Honor.

18     (PROCEEDINGS CONCLUDED)
                    * * * * *

19
                    **C E R T I F I C A T E**
20 I certify that the foregoing is a correct transcript from the
   digital audio recording of Zoom videoconference proceedings in
21 the above-entitled matter.

22
   <u>6-24-2020</u>           <u>/s/ Dawn M. Savino, R.P.R., C.R.R.</u>
23 Date                  DAWN M. SAVINO, R.P.R., C.R.R.

24

25