UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   19-80181-CR-RAR

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MINAL PATEL,

                Defendant.
_____/

## ORDER ON MOTION FOR HEARING REGARDING POTENTIAL CONFLICT OF INTEREST [ECF No. 228]

In September 2019, Defendant Minal Patel was indicted on 13 counts of healthcare fraud, wire fraud, kickbacks, and money laundering offenses arising from his operating LabSolutions, LLC, an independent clinical laboratory.  ECF No. 1. Within days of the indictment, Steven Sadow, Esq. and Robin Sztyndor, Esq. entered permanent appearances as counsel for Mr. Patel.  ECF Nos. 10, 11.  For over two years, Mr. Sadow and Ms. Sztyndor have ably represented Mr. Patel.

On January 27, 2021, Judge Ruiz set this case for a jury trial starting over a year later on March 7, 2022.  ECF No. 195.  Seven months later, in August 2021, Donald Samuel, Esq. was admitted *pro hac vice* as co-counsel for Mr. Patel.  ECF Nos. 201, 202. Two months after that, on October 29, 2021, Brian Rafferty, Esq. was admitted *pro hac vice* as co-counsel for Mr. Patel.  ECF Nos. 219, 200.  At that time, Mr. Rafferty was affiliated with the law firm Polsinelli, PC.  In January 2022, he moved to the Baker Hostetler firm.

Separately, on September 26, 2019, James Simmons was indicted in this District in case number 19-CR-60273. He was charged with 24 counts of healthcare fraud, wire fraud conspiracy, and kickbacks. ECF No. 1 in Case No. 19-CR-60273. These charges arose from Mr. Simmons' ownership of telemedicine companies that, among other things, authorized cancer genomic tests. The indictment alleged (and Mr. Simmons later admitted during his plea colloquy) that part of the scheme was for clinical laboratories to pay kickbacks and bribes in return for referring Medicare beneficiaries for cancer genomic testing. Three weeks after the indictment, Brian McEvoy, Esq., Grace Zoller, Esq., and Jonathan Rosen, Esq. were admitted *pro hac vice* as counsel for Mr. Simmons. ECF No. 15 in Case No. 19-CR-60273. At the time, Mr. McEvoy, Ms. Zoller, and Mr. Rosen were all affiliated with Polsinelli, PC. Mr. McEvoy and Ms. Zoller joined Baker Hostetler in January 2022.

On February 27, 2020, Mr. Simmons pled guilty, pursuant to a plea agreement, to one count of healthcare fraud conspiracy. ECF Nos. 32, 33 in Case No. 19-CR-60273. The remaining 23 counts were dismissed as part of the plea agreement. Mr. Simmons also agreed to cooperate with the Government "by providing full, complete and truthful information regarding his knowledge, conduct and actions while involved in health care and by providing active cooperation in ongoing investigations if requested to do so." ECF No. 228-1 ¶ 7. If he fails to comply with this cooperation requirement, the Government can reinstate the 23 dismissed counts. *Id.* Mr. McEvoy signed the plea agreement as counsel for Mr. Simmons. *Id.* at 16.

On October 27, 2020, Mr. Simmons was sentenced to 35 months incarceration followed by three years of supervised release.  ECF No. 54, 55 in Case No. 19-CR-60273.  Mr. McEvoy and Ms. Zoller represented Mr. Simmons at the sentencing hearing.  ECF No. 55 in Case No. 19-CR-60273.

On or about December 23, 2020, the Government interviewed Mr. Simmons as part of his ongoing cooperation; Mr. McEvoy and Ms. Zoller were present for the interview.  ECF No. 228-3 at 1.  LabSolutions was discussed during the interview.  *Id.*  At that time, Mr. Rafferty had not yet entered an appearance as counsel for Mr. Patel.

On September 9, 2021, the Government filed a motion to reduce Mr. Simmons' sentence.  ECF Nos. 70, 71.  That motion was denied.  ECF No. 77.

Thereafter, the Government proposed to meet with Mr. Simmons to see if he had additional information about LabSolutions and Mr. Patel, and to determine whether to call him as a witness against Mr. Patel at trial in this matter.  The Government delayed interviewing Mr. Simmons because of concerns that a conflict of interest exists based on the same law firm (previously Polsinelli, now Baker Hostetler) representing both Mr. Simmons and Mr. Patel.

On December 21, 2021, the Government filed a Motion for Hearing Regarding Potential Conflict of Interest.  ECF No. 228.  The Government asked the Court to decide whether (1) a conflict of interest exists, (2) Mr. Patel has made a knowing, intelligent, and voluntary waiver of that conflict, and (3) the waiver should be

3

accepted. ECF No. 228 at 8. Judge Ruiz referred the Government's Motion to me for appropriate disposition. ECF No. 229.

In a December 30, 2021, Response to the Government's Motion signed by Mr. Rafferty and Ms. Sztyndor, "Polsinelli" took the position that neither an actual conflict nor "an appearance of a conflict" existed.[1] In the alternative, the Response said, "Counsel has discussed the matter with both parties, including their right to a conflict-free counsel of their choice, and both Mr. Patel and Mr. Simmons have informed counsel that they choose to waive said conflict." ECF No. 235 at 2. It also said that Polsinelli had retained independent counsel (1) to advise Mr. Simmons on the possible conflict and whether to waive it, and (2) to represent him in interviews with the Government. *Id.* It also said that the then-Polsinelli lawyers would not help prepare or conduct any cross-examination of Mr. Simmons at the trial. *Id.* The Response also said that Mr. Simmons had "informed counsel that he had no direct dealings with Mr. Patel and does not believe [sic] to have relevant information beyond what he previously provided to the Government in December 2020." *Id.* at 2.

I held *Garcia* hearings on January 24, 2022, and January 31, 2022, for the purpose of questioning Mr. Simmons and Mr. Patel about conflicts of interest and waiver.[2] *See United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), abrogated on other

---

[1] Although the Response references "an actual conflict, or the appearance of a conflict," the relevant inquiry is whether an actual or potential conflict exists. I treat the Response as having framed this inquiry.

[2] With Mr. Patel's consent, these hearings were held by video-teleconference.

grounds by *Flanagan v. United States,* 465 U.S. 259, 263 n.2 (1984). Mr. McEvoy and Ms. Zoller participated in the hearing as counsel for Mr. Simmons. Mr. Sadow and Ms. Sztyndor represented Mr. Patel. Mr. Rafferty and Mr. Samuels did not participate.

At the initial *Garcia* hearing, it was disclosed for the first time that Mr. McEvoy and Ms. Zoller now have a direct attorney-client relationship with Mr. Patel and may participate as co-counsel for him at his trial. It was also disclosed that Mr. Simmons had not yet spoken to independent counsel. Nevertheless, Mr. Simmons said he did not need to talk to independent counsel before deciding whether to waive any conflict. He then expressed a willingness to waive any conflict arising from Baker Hostetler representing Mr. Patel. Mr. Patel also expressed his willingness to waive his right to conflict free counsel, based on independent legal advice from Mr. Sadow and Ms. Sztyndor.

At the second *Garcia* hearing, Mr. McEvoy testified credibly that Mr. Simmons had retained independent counsel to advise him on any conflict waivers and to represent him in debriefings with the Government related to Mr. Patel. Mr. McEvoy also testified that Baker Hostetler continued to have an attorney-client relationship with Mr. Simmons and would represent him if he were asked by the Government to cooperate in other matters.

Mr. Sadow said at the second *Garcia* hearing that he had not been, and would not be, exposed to any confidential communications between Mr. Simmons and the Baker Hostetler lawyers.

5

I held a third *Garcia* hearing on February 24, 2022. At that time, Joshua Lowther, Esq., appeared as counsel for Mr. Simmons. It was credibly represented that Mr. Lowther would handle future negotiations with the Government concerning Mr. Simmons' potential cooperation in this matter, including facilitating an interview of Mr. Simmons.

I took the matter under advisement, then instructed the Government to provide a status report on whether it intended to call Mr. Simmons as a witness at trial. On June 16, 2022, the Government notified the Court that it did not intend to call Mr. Simmons. ECF No. 267.

## LEGAL PRINCIPLES

A criminal defendant has a sixth amendment right to conflict free counsel. He also has a qualified right to counsel of his choice. *Wheat v. United States,* 486 U.S. 153, 164 (1988). As the Eleventh Circuit has explained:

> Notwithstanding the importance of the right to counsel of choice, that right is not absolute. In determining whether or not to disqualify defense counsel, the court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest. *Id.* at 160. The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial. *See United States v. Casiano*, 929 F.2d 1046, 1052 (5th Cir. 1991). When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified. *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980), *cert. denied*, 450 U.S. 922 (1981). Indeed, even a potential conflict suffices for disqualification. *Wheat,* 486 U.S. at 164 ("a showing of a serious potential for conflict" overcomes presumption in favor of defendant's counsel of choice). Furthermore, if one attorney in a firm has an actual

> conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification. *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.), *cert. denied,* 444 U.S. 843 (1979). *See* Rules Regulating the Florida Bar §§ 4–1.7, 4–1.9 & 4–1.10 (incorporating above-described standards).

*United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir. 1994).

Under certain circumstances, a defendant can waive his right to conflict-free counsel, even where an otherwise-disqualifying conflict exists. *Ross,* 33 F.3d at 1524. But, the Court need not accept this waiver, even if it is knowing, intelligent, and voluntary. *Id.* (citing *Wheat,* 486 U.S. at 162). "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160; *see Ross,* 33 F.3d at 1523 (court must protect "its independent interest in ensuring the integrity of the judicial system is preserved and that trials are conducted within ethical standards"). That independent interest includes being "free from future attacks over the adequacy of the waiver or the fairness of the proceedings . . . and the subtle problems implicating the defendant's comprehension of the waiver." *Id.* at 162 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3rd Cir. 1978)); *see also Cuyler v. Sullivan* 446 U.S. 335, 348-49 (1980) (defendant is denied constitutionally-effective assistance of counsel where "an actual conflict of interest adversely affected his lawyer's performance"). The Court has "substantial latitude in refusing waivers of conflicts of interest." *Wheat,* 486 U.S. at 163.

In deciding whether an actual or potential conflict requires disqualification, the Court must consider factors such as whether the lawyer could (1) use privileged

7

communications in cross-examination, (2) be deterred from "intense probing of the witness on cross-examination" to protect privileged communications with the witness or "to advance the attorney's own personal interest." *Ross,* 33 F.3d at 1523. The Court may also consider whether an ethical rule prohibits the representation, but violating an ethical rule does not mandate disqualification. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2005) (collecting cases). Instead, the Court must look to "various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment." *Id.* at 1237.

As a matter of law, an actual conflict of interest exists when a lawyer represents both a defendant and a cooperating witness. *E.g., United States v. Ross,* 33 F.3d at 1523 (actual conflict exists when lawyer "previously represented a person who will be called as a witness against a current client at a criminal trial."); Fla. R. Prof. Cond. 4-1.7 (2022).

## DISCUSSION

Having questioned him multiple times at *Garcia* hearings and having observed his demeanor, I find that Mr. Patel's waiver of any Baker Hostelter conflict in this case is a knowing, voluntary, and fully-informed waiver. Given that Mr. Simmons will not be a witness against Mr. Patel, I further find that the Court's independent interest is not offended by allowing Baker Hostetler to represent Mr. Patel at trial.

The procedures currently in place are sufficient to protect Mr. Patel's sixth amendment rights and the Court's independent interest.

## CONCLUSION

WHEREFORE, the Government's request to disqualify Baker Hostetler from continuing to represent Mr. Patel in this matter is DENIED.

DONE and ORDERED in Chambers this 16th day of June, 2022, at West Palm Beach in the Southern District of Florida.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE