UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80181-RUIZ/REINHART

UNITED STATES OF AMERICA,

v.

MINAL PATEL,

    Defendant.

_____/

# DEFENDANT MINAL PATEL'S
# MOTION TO ENFORCE DUE PROCESS PROTECTION ACT

    Defendant Minal Patel moves to enforce the Due Process Protection Act and to compel the production of *Brady* and *Giglio* evidence. To protect Mr. Patel's constitutional rights to due process and a fair trial, Mr. Patel moves for an order to compel the government to (1) identify and (2) disclose all exculpatory and impeaching materials in its possession sufficiently in advance of trial.

    In criminal prosecutions, the government must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see* Fed. R. Crim. Pr. 5(f). The prosecution must *identify* and provide exculpatory evidence to the defense. *Brady,* 373 U.S. at 86-87.[1] This obligation includes evidence that casts a shadow of doubt on a government witness's credibility. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). There is no requirement that the information be in document format or that it be verified, corroborated, or admissible. *See Wright v. Hopper* 169 F.3d 695, 703, n.1 (11th Cir. 1999).

---

[1] *See also Emmett v. Rickets*, 397 F. Supp. 1025, 1043 (N.D. Ga. 1975) (holding that a prosecutor "retains the constitutional obligation of initially screening the materials before him and handing over to the defense those items to which the defense is unquestionably entitled under *Brady*.")

Exculpatory or impeachment information must be disclosed to the defense even if it was never memorialized. *See United States v. Rodriguez*, 496 F.3d 221, 226 (2nd Cir. 2007). The government's disclosure obligations extends to exculpatory or impeachment information communicated to the government by counsel for potential witnesses. *United States v. Triumph Capital Group, Inc.* 544 F.3d 149, 161-65 (2d. Cir. 2008). Thus, if the government learns about exculpatory information (orally or in writing), it must be presented to the defense.

The purpose of disclosing *Brady* materials is to ensure that defendants receive fair trials. *Brady*, 373 U.S. at 87. Disclosure should generally occur before trial. *United States v, Nagro*, 147 F.3d 875, 881 (9th Cir. 1998). Delaying disclosure serves no legitimate purpose other than to gain a tactical advantage at trial or potentially misleading the Court as to the strength or correctness of the government's factual submissions in its pretrial pleadings. *Brady* and *Giglio* material must therefore be disclosed in a timely manner.

Fulfillment of these requirements is exactly what Mr. Patel requests, nothing more and nothing less. In this case, the government has produced millions of documents, including more than 5 million pages of such material produced in the last month, three years after Mr. Patel was indicted and just weeks prior to trial. Much of this material was only recently released to the prosecution team, and thus has likely not even been reviewed.

The government's recent production of documents related to Marc Sporn illustrates the failures at issue. The government has explicitly identified Mr. Sporn, along with his associated companies, as unindicted co-conspirators. The government has recently produced millions of pages of paper and electronic records from Mr. Sporn, including dozens of boxes of paper documents made available for inspection by counsel for Mr. Patel just this week. In just an initial review of these boxes of documents, counsel for Mr. Patel discovered an email sent to multiple

individuals at the telemedicine companies owned by Mr. Sporn. In the email, titled "Resignation from employment," the sender says that he had just spoken with an investigator from a health insurer and was told that Mr. Sporn's "company [does] not meet telemedicine compliance standards and likely qualif[ies] as either fraud, waste, or abuse." The sender goes on to state that Mr. Sporn's "company [ ] assured me, that [the] company was following all regulations, as well as federal and state telemedicine laws…", and notifies Mr. Sporn of his resignation. This email is plainly exculpatory and impeachment evidence related to Mr. Sporn, as it is just one example of Mr. Sporn lying to others about the operations of his business.

The changes to the government's theory as set forth in Superseding Indictment further demonstrate the need for an order to identify and produce exculpatory evidence. Three years after indictment, and just weeks before trial, the government abruptly issued a Superseding Indictment, eliminating any reference to government cooperator Chris White. In the original Indictment filed in this case, Mr. White was a specifically identified coconspirator, and multiple substantive counts in the Indictment related to Mr. White and his businesses. Yet in the Superseding Indictment, Mr. White has now been stricken entirely. The circumstances surrounding the removal of any reference to Mr. White in the Superseding Indictment are highly unusual, and strongly suggest Mr. White may have said or done something that is favorable to Mr. Patel.

For all of these reasons, counsel for Mr. Patel has concerns that *Brady* and *Giglio* material has not been timely produced to the defense. Accordingly, counsel for Mr. Patel requests that the Court order the government to produce the following *Brady* and *Giglio* materials:

1. All statements by any cooperator or his counsel, whether memorialized in writing or not, indicating or tending to show the cooperator was not aware of any scheme to defraud, did not believe there was such a scheme, believed that the cooperator's

conduct was legal, and/or believed that the relationship between the cooperator and Mr. Patel and LabSolutions was legitimate. This request includes any notes taken by any member of the government team during any meeting, telephone call or discussion with counsel for the cooperator.

2. All communications or documents concerning or reflecting presentations, proffers, or other statements, whether memorialized or not, made to the government team, by counsel for any cooperator or any other individual or entity, defending the cooperator's conduct, justifying the cooperator's conduct, suggesting the cooperator's conduct was legal, changing the cooperator's version of events related to the scheme charged in this case, or that may tend to exculpate Mr. Patel or affect the weight or credibility of the evidence presented against him. This request includes any notes taken by any member of the government team during any meeting, telephone call or discussion with counsel for the cooperator.

3. Information, in whatever form, whether oral or in writing, in the possession, custody or control of the government that:

    a. The genetic tests at issue in this case were covered by the Medicare Program;

    b. Statements made by Minal Patel to others that he believed that genetic tests at issue in this case were covered by the Medicare Program;

    c. The genetic tests at issue in this case were medically necessary;

    d. Statements made by Minal Patel that he believed the genetic tests at issue in this case were medically necessary;

    e. The genetic tests at issue in this case had clinical utility;

f. Statements made by Minal Patel that he believed the genetic tests at issue in this case had clinical utility;

g. The genetic tests at issue in this case could be ordered through the use of telemedicine;

h. Statements made by Minal Patel that he believed the tests at issue in this case could be ordered through the use of telemedicine;

i. The operations of XGen Marketing and Alite Medical Solutions, had been reviewed and approved by lawyers;

j. Statements made by Minal Patel that he believed that the operations of XGen Marketing, Alite Medical Solutions, Medtech and any other marketing or telemedicine company that did business with LabSolutions was compliant and had been approved by lawyers;

k. The contracts between and among LabSolutions and any marketing company, including XGen Marketing and Alite Medical Solutions, were compliant and not violative of any law, including the federal antikickback statute;

l. Statements by government cooperators, including Mark Sporn, Chris McKeon, Chris White, Brett Hirsch, or any other coconspirator, stated, in words or in substance, orally or in writing, that the operations of their businesses were compliant and following all regulations, including federal and state antikickback statutes, telemedicine rules, regulations and laws;

m. Any and all statements by any telemedicine doctor who approved any genetic test in this case that they believed that their conduct in ordering, approving and authorizing the genetic tests was lawful, consistent with the usual course of

      medical practice, and compliant with federal and/or state telemedicine rules, regulations and laws;

n. Minal Patel statements to others, in words or in substance, that people doing business with LabSolutions must comply with all state and federal laws; and

o. Minal Patel statements to others, in words or in substance that he believed that his conduct and/or the conduct of LabSolutions was legal or compliant.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 88.9

Counsel has conferred with Counsel for the government pursuant to Local Rule 88.9 in a good faith effort to resolve the issues raised in this motion. The government states it is aware of its Brady/Giglio obligations, contends it has complied with those obligations, and therefore opposes the Due Process Protection Act Motion.

Respectfully submitted this 14th day of October, 2022.

<u>/s/ Brian Rafferty</u>
Brian T. Rafferty
Brian Fenton McEvoy
BAKERHOSTETLER
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Tel: (404) 256-8233
Email: bmcevoy@bakerlaw.com
Email: brafferty@bakerlaw.com

<u>/s/ Steven Sadow</u>
Steven H. Sadow
Georgia Bar No.: 622075
260 Peachtree St., N.W., Ste. 2502
Atlanta, GA 30303
Tel.: 404-577-1400
Email: stevesadow@gmail.com
*Lead Counsel for Minal Patel*

<u>/s/ Lindy K. Keown</u>
Lindy Keown, Esq.
Florida Bar No. 117888
Primary: lkeown@bakerlaw.com
Secondary: smmcoy@bakerlaw.com
BAKER & HOSTETLER LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served the foregoing Motion on all parties in this case in accordance with the notice of electronic filing using the CM/ECF system, which was generated as a result of the electronic filing with this Court.

This 14th day of October, 2022.

*/s/ Lindy K. Keown*
Lindy Keown, Esq.
