```
 1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                    WEST PALM BEACH DIVISION
                     CASE NO. 19-CR-80181-RAR-1
 3
    UNITED STATES OF AMERICA,            Miami, Florida
 4
                                         October 26, 2022
 5           vs.
                                         11:20 a.m. - 12:58 p.m.
 6
    MINAL PATEL,
 7
                 Defendant.              Pages 1 to 91
 8  _____

 9
                    TRANSCRIPT OF MOTION HEARING
10        BEFORE THE HONORABLE RODOLFO A. RUIZ, II
                    UNITED STATES DISTRICT JUDGE
11
    APPEARANCES:
12

13  FOR THE GOVERNMENT:        JAMIE DE BOER
                               EMILY GURSKIS
14                             REGINALD CUYLER
                               KATHERINE ROOKARD
15                             UNITED STATES DEPARTMENT OF JUSTICE
                               CRIMINAL DIVISION, FRAUD SECTION
16                             1400 New York Avenue, 8th Floor
                               Washington, D.C. 20005
17
    FOR THE DEFENDANT:         STEVEN H. SADOW
18                             LAW OFFICE OF STEVEN H. SADOW, PC
                               260 Peachtree Street NW
19                             Suite 2052
                               Atlanta, Georgia 30303
20
    STENOGRAPHICALLY REPORTED BY:
21

22                             ILONA LUPOWITZ, CRR, RPR, RMR
                               Official Court Reporter to:
23                             The Honorable Rodolfo A. Ruiz, II
                               United States District Court
24                             299 East Broward Boulevard
                               Fort Lauderdale, Florida 3301
25                             (954) 769-5568
```

```
 1    (Appearances continued)

 2
      FOR THE DEFENDANT:              DONALD F. SAMUEL
 3                                    GARLAND, SAMUEL & LOEB, PC
                                      3131 Maple Drive NE
 4                                    Atlanta Georgia 30305

 5                                    BRIAN T. RAFFERTY
                                      BAKER & HOSTETLER, LLP
 6                                    1170 Peactree Street
                                      Suite 2400
 7                                    Atlanta, Georgia 30309

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Call to the Order of the Court.)

 2              THE COURT:  We're here in the matter of United States

 3    of America versus Minal Patel.  This is Case No. 19-CR-80181.

 4              Who do we have here today on behalf of the United

 5    States?

 6              MS. DE BOER:  Good morning, Your Honor.  Jamie de Boer,

 7    Emily Gurskis.  Steven Michaels from the filter team.  Reginald

 8    Cuyler for the prosecution team.  Katie Rookard for the

 9    prosecution team.  And Marx Calderon from asset forfeiture.

10              THE COURT:  Good morning to all of you.  You brought

11    the entire strike force today, it seems.

12              MS. DE BOER:  Well, you accommodated us to bring it

13    down to Miami, so we reciprocated.

14              THE COURT:  I'm glad that worked for you all.  Thank

15    you.

16              And on behalf of Mr. Patel, who do we have here today?

17              MR. SAMUEL:  Your Honor, Don Samuel.  On the phone is

18    Steve Sadow, who's lead counsel.  Brian Rafferty is to my left.

19              MR. RAFFERTY:  Good morning, Your Honor.

20              THE COURT:  Good morning.

21              MR. SAMUEL:  And Minal Patel is seated to his left.

22              THE COURT:  Good morning, Mr. Patel.

23              I do want to make sure that Mr. Sadow can hear us.

24              Counsel, are you there on the line?  Can you hear me

25    clearly?
```

 1          MR. SADOW:  I am.  Yes, sir.

 2          THE COURT:  And thank you for joining us.  I know you

 3   are in Spain, I believe, and with the time change, it seemed

 4   like 11:00 o'clock was a little better for you.  I would have

 5   done this over Zoom so that you could also see us, but I will

 6   prompt you as much as I can.  We just did not have the Zoom

 7   capability to have you see us today.  But thanks, again, for

 8   joining us on the phone.

 9          So let me talk a little bit about housekeeping, and

10   then we're going to get into some of the motions.

11          So the plan today is to clear up a little bit of the

12   motion practice that has taken place over the last about a

13   month or so.  In particular, I'd like to address and clear up a

14   couple of documents.

15          We're going to do the motion for the release of *Brady*

16   materials and *Giglio* evidence, and that's Docket Entry 294.

17   We'll address the 404(b) response time on Docket Entry 295,

18   which is the motion to respond that the defense filed.  Then

19   we'll deal with the *James* hearing request on 296.

20          As you all may have seen yesterday, in an effort to

21   divide the labor, I went ahead and referred the most recent

22   entry of the motion for release of documents and hearing on the

23   potential conflict regarding the advice of counsel defense to

24   Judge Reinhart.  He has been assisting me throughout this case

25   and is familiar with the issues, and I thought it best to go

1  ahead and have him tackle that while I clear up some of the

2  other motions that are pending.

3        When we finish today, we will pick a time to have a

4  hearing on the remaining motions.  That would mean the motions

5  in limine from both sides and, presumably, the objections that

6  are going to be raised to 295, the 404(b).  We'll figure out

7  how long the defense camp wants to respond to that.  Then I

8  would like to address all of those motions together, in a

9  separate setting, while, again, Judge Reinhart clears up Docket

10  Entry 300.

11        That should, by my count, take into consideration

12  everything that is pending or active in the case right now and

13  start getting us ready to go for trial.

14        So let's all refresh our recollection.  We're set for

15  November 28th.  The trial will be conducted in Miami.  I'm

16  going to be doing the entire trial in Miami.  By that time, I

17  do not necessarily know for certain, but I may be duty

18  stationed in Miami.  So whether or not that is official, just

19  for scheduling purposes, I want to try the case down here.

20        I want to tell you that today because I need everyone

21  to have a maximum amount of time to get their affairs in order.

22  I don't think it's as much of an issue, as we see today, for

23  the government.  But to the extent the defense camp needs to

24  get their ducks in a row on location, I want everyone to

25  understand we're going to try it in Miami beginning on the

1    28th.  So that's the first thing I wanted everyone to be aware

2    of.

3            Today, we're also -- in addition to picking when we

4    want to hear the motion in limine and the 404(b), I'm going to

5    change the calendar call date.  It's currently set, I believe,

6    for the 15th of November.  I will be sitting in an Eleventh

7    Circuit argument that day, by designation that week, and so I'm

8    no longer able to have the calendar call that day.  So we're

9    going to open up our calendars today and find a good time to, I

10   think, to do everything together; essentially, the case

11   management, calendar call, hearing the motions in limine, hear

12   the 404(b).  We can take half a day, do it all, have it all

13   done.  And I would guess that the parties will probably want to

14   do that earlier, rather than later.  I've opened up some dates

15   on my calendar, coming into court today, for us to consider

16   setting those when we leave the bench and we're all done.

17           So that's kind of the scheduling issue.  We're still, I

18   think, approximating this case will take about three weeks.  If

19   we need a little more, we'll be fine.

20           The only thing I need to finalize for all of you is

21   what courtroom we will try the case in.  It's not guaranteed it

22   will be here.  There is a very strong likelihood it may be

23   tried in Judge Lenard's courtroom, which is just across the

24   way.  But I am going to finalize that by the time I see you all

25   at the next hearing for the calendar call.  I'll know exactly

1   what courtroom we're going to be in.  But it will be in Miami.

2   So that's all the scheduling stuff I wanted to make sure you

3   guys were aware of.

4        Before I get into the substance of some of the motions

5   set for today, let me check in now on scheduling with all of

6   you and make sure everybody is heard, and if there's anything

7   about my proposals that raise a red flag or there's a cause for

8   concern, certainly now would be the time to let me know.

9        So I'll turn it over to the government first.  I don't

10  know, Ms. de Boer, if you want to let me know any concerns with

11  my proposals for scheduling and getting everything ready to go

12  for the 28th.

13       MS. DE BOER:  No concern with the location change.  No

14  concern with an alternative date for the calendar call.  And we

15  would agree that it's efficient to sort of, you know, put all

16  this other -- these other motions into one.

17       I suppose there is -- the conflict motion that Judge

18  Reinhart will be hearing ties into the motion in limine, so it

19  might make sense to hear what Judge Reinhart has to say before

20  the motion in limine is decided, because I think those two

21  things are tied up.  So to the extent, you know, we can keep

22  that in mind for scheduling.  And it may not be possible if

23  Your Honor is sitting on the Eleventh Circuit, it may just not

24  work out that way, but that's one thing to keep in mind.

25       THE COURT:  Thank you for that.  I'll check in with him

1    today and see what he thinks the timeliness for him to have it.

2    Perhaps he can give me some guidance.  I suspect he has some

3    availability before I wanted to set my hearing, and so it may

4    work.  But I will reach out to him, and maybe we can work

5    around that.

6             And I do hope that we don't have any concerns about

7    consistency.  You know, in a perfect world, I wanted to keep

8    everything that has been filed lately.  I know that he's helped

9    upfront with a few discovery issues.  But it just doesn't seem

10   that with a need for multiple hearings that I can make myself

11   available and give you the time you need, and I don't want to

12   delay a ruling on Docket Entry 300.  But I'll confer with him.

13            Let me look to the defense now.  And I know, I have

14   Mr. Sadow on the line, but counsel is present here in court.

15   Any concerns regarding my proposal, scheduling, location,

16   resetting calendar call, setting the hearing after we're done

17   today on the remaining motions, et cetera?

18            MR. SAMUEL:  No, that's fine.  We don't know what dates

19   we're talking about.  But we'll have to confer and check with

20   Mr. Sadow.  I don't have his calendar in front of me, but he'll

21   let us know; we'll figure it out.

22            We are concerned, as you know, with the volume of

23   discovery we've been receiving.  I would say hourly would be a

24   fair description of how often we're getting notices of another

25   few thousand pages.  And that's in part of what we talked about

1    with regard to *Brady* and with the *James* hearing.  We previously

2    filed a motion to continue, which you summarily denied.

3         THE COURT:  I did.  Summarily is a good word, a good

4    way to put it.  That is true.  And I hope that you understand

5    that the reason it was summarily denied is because we had a lot

6    of discussions.  And I will recognize that you believe certain

7    things have changed because of the voluminous production.  But

8    this is a prepandemic case that we special set, and as far as

9    I'm being told in the government's pleadings, the production is

10   not haphazard, the production is not needle in a haystack, the

11   production is reportedly indexed, searchable, easy to find.  I

12   know there's a lot of co-conspirators, I understand there's a

13   lot of players, I understand things are very much in flux.

14   Some of these folks are having their own proffers, and other

15   things are happening.  And I recognize that.  If I felt like

16   you guys were down to one lawyer, maybe.  You have a very

17   capable team, and to ask for the continuance that you requested

18   to me, I just couldn't go ahead and give you that amount of

19   time.  We really special set this quite some time ago with a

20   focus in mind.

21        Now, I don't know that there's much I can do in terms

22   of alleviating the production.  If anything -- I know it's

23   voluminous, but I want the government, as you pointed out

24   multiple times, giving you anything and everything they have.

25   And my understanding is that they have been disclosing, in an

1    abundance of caution, as much as humanly possible.

2         Now, that being said, I would recognize it's going to

3    take a lot of round-the-clock effort for your team to get

4    through all this material between now and the 28th, and that's

5    why I felt I needed to get a swift ruling to you all so you

6    knew that we're really going to make this happen on the 28th.

7         So I do recognize that you guys are really digesting a

8    lot of discovery, but I do feel at the same time that this

9    case, it's time to try it.  At some point, it's not going to

10   get any better with time, we're better off just putting our

11   heads down and trying to get it ready.

12        MR. SAMUEL:  We understand.  I'm just reminding the

13   Court that we are deluged.

14        THE COURT:  Sure.

15        MR. SAMUEL:  And if it continues, we may need to renew

16   our motion again.  But we can talk about that at the next

17   hearing.

18        THE COURT:  And that's totally understandable.  I would

19   just urge the parties, I mean, circumstances change, and I

20   would have to carefully look at them.  But I urge you all as a

21   team to not count on any more time.  You're going to have to

22   try to make it work with what you've got.  And I don't think

23   voluminous production is going to disrupt the Court's desire to

24   have a trial on the 28th.

25        But that being said, let's continue to try and press on

1   with the time we have.  We still have about a month to go, if

2   not, a little more, so I'm optimistic that we'll have you guys,

3   given the ability of the defense team, to get it done.

4         So in terms of the scheduling, for sure, we'll

5   coordinate, and we'll throw out some dates when we're wrapping

6   up today's hearing.

7         But any other concerns regarding scheduling or the pace

8   of the litigation that I should be aware of from the defense

9   camp?  Just anything else on the defense team that you guys

10  need to --

11        MR. RAFFERTY:  Your Honor, the only other issue that I

12  would raise that in order to make sure we meet the Court's

13  calendar on the 28th, I just finished a trial in Jacksonville

14  with the fraud section where they were kind enough to provide

15  their exhibits well in advance of trial.  I don't know that

16  there's a calendar set or any date by which the Court has

17  ordered the government to turn over their exhibits.  But if the

18  government would be willing to provide us all those exhibits, I

19  think that would do a lot for us in terms of making sure we're

20  ready on the 28th.

21        THE COURT:  That's a fair point.  I'll turn to the

22  government on that.

23        Any concern, or maybe if we can get a proposed deadline

24  for the disclosure or exchange of exhibits by the parties, we

25  could do that, and I could put that into not necessarily a new

1    scheduling order, but certainly I could put it on the docket so

2    we have a date that guides us.  What do we think on the

3    government's side?

4         MS. DE BOER:  I think that's a great idea, Your Honor.

5    And I would suggest that perhaps the parties confer about the

6    schedule, and maybe by close of business tomorrow make a

7    proposal to the Court, if that's agreed.  If it's not agreed,

8    we'll let you know.

9         One quick thing on scheduling that I neglected to

10   mention.  Half of us travel from D.C., so we can be anywhere

11   you want us to be.  But I neglected to mention that our agents

12   and one prosecutor are in Broward County.  I know Your Honor

13   has in past trials sort of accommodated traffic with, like, a

14   later start time or an earlier start time.  I just wanted to

15   make the Court aware that we have a lot of people coming with

16   the traffic, and maybe Your Honor is as well.  I know that's

17   going to be a challenge for some of our folks.  You know,

18   especially in a lengthy trial it can be a bit taxing.  So I

19   just want to make the Court aware of that.

20        THE COURT:  Two things on that.  One, I think when we

21   finish today, I think it's a great idea that the parties sit

22   down and come up with a modified scheduling order here over the

23   next 30 days that will take into account not only the exhibit

24   exchange but anything else, right?  Anything else that we may

25   want to have a firm deadline on so that we know when things are

1    coming.  I think that would be a really good idea.  If my

2    memory serves me right, I believe Judge Reinhart set a

3    November 1st deadline for the advice of counsel disclosure;

4    right?  Am I correct on that, on the defense side?

5              MR. SAMUEL:  That's right.

6              THE COURT:  Okay.  So, for example, I don't think it

7    would be a bad idea to have this all in one place.  Perhaps we

8    could have a scheduling order that the parties meet and confer

9    on that stipulates when we want to have the exhibits,

10   memorializes, again, Judge Reinhart's cutoff for the advice of

11   counsel defense, and anything else that you guys do not think

12   has been adequately set forth in my scheduling order, we should

13   build it in.  I think having that expectation is really

14   important.  And so I look forward -- it may be just one or two

15   deadlines.  But certainly, I'll hold off and wait to get

16   something from you guys to my email that I can then memorialize

17   and docket to guide you all with some future deadlines.  So

18   let's certainly get together and do that.

19             On the second point, I can tell you now, because I've

20   already been discussing that with my team, I do not anticipate

21   starting early.  So my goal is to try to start a little later.

22   So I'm thinking about a schedule that starts around 10, to try

23   to build a buffer for any traffic.  And I had already thought

24   about that.  My trial schedule -- we'll get more into this at

25   calendar call.  But my trial schedule, in my mind, was

1    something between a 10 or 10:30 start, lunch break at around

2    12:30 for about an hour, hour and 15, and then go until about

3    5:30.  That's my -- 5:15, 5:30 at the latest.  That's how I

4    plan on trying the case.

5            I can tell you that, as far as I can think of, in terms

6    of scheduling, I don't believe that I have anything that I'm

7    going to be doing other than this trial during that time

8    period.  So I don't anticipate, for example, having breaks in

9    the trial, having two days with no trial.  I can't guarantee.

10   Things happen.  Maybe something takes a chunk of the trial

11   period or maybe an hour or something, or two hours of the day,

12   but my expectation is to try the case consistently, Monday

13   through Friday, from about 10, 10:30 to 5, 5:15.  That's what

14   I'm trying to do.

15           So that way, you guys can start -- I'm bringing this up

16   now because we have a month to go.  And I think because of the,

17   as defense counsel pointed out, how many moving parts we have

18   in this case, how many lawyers are involved, the voluminous

19   discovery, it's only fair that I give you guys as much of the

20   expectations as I can, and you could already talk to agents,

21   witnesses, you know, paralegals, tech staff, and let them know

22   this is how it's going to work, we'll be in Miami, it's going

23   start on the 28th, it's going to start at this time, et cetera.

24           So I do agree, it would be a good idea, as defense

25   counsel suggested, and with the government's agreement, that

1   you all provide me tomorrow with a proposed scheduling order,

2   if you will, that has some final deadlines that we want to hold

3   everybody to.  That'll help us in preparation.  And that can

4   include not only the exhibit exchange but anything else you

5   guys think would streamline the proceedings before we find

6   ourselves back here in trial.  All right?

7           Was there anything else on the defense side like that

8   you wanted to suggest?  Because I think that's a great idea.

9           MR. RAFFERTY:  No, Your Honor.  Thank you.

10          THE COURT:  Okay.  Let me check with Mr. Sadow on the

11  phone.  Counsel, I want to give you a chance, if there's

12  anything else you want to raise scheduling-wise, any other

13  concerns you may have.  Your co-counsels have expressed some of

14  the concerns you've pointed out to me among discovery fronts

15  and the volume.  I recognize that.  And I do appreciate the

16  defense camp's understanding of the Court's schedule and my

17  desire to try the case on the 28th.  I know it will be

18  challenging, but I also know that all of you are up to the

19  task.

20          Is there anything on the defense side, Mr. Sadow, that

21  you wanted to add that I need to cover?

22          MR. SADOW:  Not at this time, Your Honor.

23          THE COURT:  Thank you.  So with all of the housekeeping

24  done, let's move on to these few motions that I set for today.

25  They're not, in my opinion, terribly complicated, and I should

1    be able to move quite quickly through them.

2         Perhaps the first one -- and this works with scheduling

3    that we can just take care of now -- is the unopposed motion to

4    reserve the right to respond to the government's notice of

5    intent to introduce 404(b) evidence.

6         I'll turn to the defense team.  And this may be a

7    perfect example of something to build into the proposed

8    scheduling order tomorrow.  What, gentlemen, would you like?

9    Because, quite frankly, I'm looking at dates after next week.

10   So the earliest, for example, that I'm trying to set these

11   pending motions is maybe something like November 7th or 8th or

12   9th.  The latest I can set the motions is November 20th, 21st,

13   which is about a week before the trial.  Right?  So I'm

14   throwing out those ranges so you guys can tell me what you

15   think is best.  You may say to me, Judge, we would prefer that

16   we get a little more time, and so let's go ahead and set the

17   hearings a little later, and we can do our 404(b) response with

18   more of a window.

19        What's your sense?  Maybe you guys tell me that it

20   won't take you much longer to file a response.  What are you

21   thinking?

22        MR. SAMUEL:  As far as filing a response, I think we

23   can do it by next Friday.

24        THE COURT:  Okay.  That's perfect.  That's perfect.

25   Okay.  So we can set that.  Why don't we put it in our order

1    that just -- I'm going to grant that.  Essentially, it's a

2    request for an extension of time.

3            MR. SAMUEL:  Right.

4            THE COURT:  So I'm going to grant the unopposed motion.

5    And you know what?  To make it easier, I'll just do it in my

6    own paperless way.

7            But the Court will grant Docket Entry 295 that's

8    unopposed, and set a deadline for the response to the

9    government's notice of intent to introduce 404(b) in evidence.

10   We'll be setting that for November 4th.  That is next Friday.

11   Okay?  So I'll grant that, and I will put the deadline for

12   November 4th, which gives me enough time to digest it if I have

13   a hearing the following week.  Okay?  And the government can

14   reply, if you want.  But you're better off at that point

15   just -- we can hear argument when we get into court on that.

16   So that's going to be 295.  So that's the first one that we're

17   done with.

18           The next one we can talk about is 296.  This is the

19   motion for *James* hearing.  So, look, I think we're all very

20   well aware of the case law and the discretion, quite frankly,

21   that the Court has to determine whether or not it would make

22   sense, from a judicial economy perspective, to conduct a *James*

23   hearing and the need to get into all of the co-conspirator

24   statements.

25           And I understand the defense's concern here.  But the

1   reality is that the case law has afforded district courts the

2   ability to conditionally admit the co-conspirator statements

3   and allow the government, as they conclude their case-in-chief,

4   to connect these statements.  And that efficient presentation

5   will prohibit what, in a case like this, with so many different

6   co-conspirator statements and unindicted co-conspirators in

7   play, it would prevent the mini trial aspect that would

8   certainly begin and have to be handled if we did pretrial *James*

9   hearing on admissibility.

10          To the extent that the defense is worried, I can tell

11  you, I mean, a motion to strike is absolutely what the Court

12  will entertain if, at the conclusion of the government's

13  presentation, we find ourselves unable to connect up the

14  statements from the co-conspirators.  And, you know, just

15  looking at what the government believes they're going to be

16  relying on, just throwing out some numbers, 27,000 distinct

17  beneficiaries for cancer genetic testing alone.  And we are

18  talking about, you know, hundreds of millions of dollars that

19  were billed to Medicare, and all these different individuals

20  that were involved with the telemedicine and telemedicine

21  personnel.  It's a little unwieldy for the Court to start to

22  get into a full-blown *James* hearing here and go through some of

23  these communications, these emails, et cetera.  I just don't

24  see a universe where it would be efficient.  And I don't see

25  really a reason why I couldn't go ahead and cover and handle

1    the defense camp's concerns through the mechanism that's

2    provided by case law.

3         And I understand, you know, it would obviously be a lot

4    cleaner, I mean, the case law suggests if you have the time, if

5    you have the ability, sure, it's a lot easier to do the *James*

6    hearing.  Not easier in mechanics, but better to avoid, you

7    know, any surprise at trial and any issues with

8    co-conspirators.

9         But at least looking at the pleadings here, I feel like

10   I can go ahead and get my hands around this through the kind of

11   conditional admittance of the statements.

12        And one thing before I turn to the defense.  And you

13   guys let me know if I'm missing anything.  You know, it appears

14   that the government is also very clearly trying to streamline

15   the evidence.  They've represented, through their exhibit list,

16   that they anticipate the first cooperating defendant is going

17   to cover a number of issues regarding the conspiracy to defraud

18   Medicare and the scheme to pay, and receive bribes and

19   kickbacks.  They'll be able to define and describe the

20   defendant's leadership position in the conspiracy and identify

21   many of the co-conspirators.  You know, that's, to me at least,

22   a proffer from the government of the linkup so that I at least

23   feel comfortable that what they're attempting to get in under

24   801(d)(2)(E) is not going to be problematic.  That kind of

25   proffer in Bates 7 of Docket Entry 299 suggests that we're

1    going to have sufficient information as required by case law to

2    make the connection, right, to make the connection that we need

3    to make for 801(d)(2)(E) to permit the admissibility of those

4    statements.

5         And so let me hear on the defense side, gentlemen.  I

6    mean, I know that -- I don't fault you for asking for one.  I

7    think it was the right call.  Just looking at the nature of the

8    case, it seems like quite a difficult endeavor, whereas, I

9    could hold the government to their burden under 801 and make

10   sure that we do this right.  I can certainly confirm that a

11   conspiracy has existed.  I have to make sure the defendant

12   declarant, that both of them are members of the conspiracy and

13   the statement was made during the course or in furtherance of

14   the conspiracy.  And I will be on patrol for those things to

15   make sure that they're all checked off.  If not, I will

16   promptly be striking statements in violation of those

17   prerequisites under 801(d)(2)(E).

18        So tell me, counsel, what say you on this point?  How

19   else would you want me to consider it?  I don't know that

20   there's really any way to do this without having it become a

21   mini trial.

22        MR. SAMUEL:  It would be a large mini trial, indeed, if

23   we were going to at one point, over the course of a couple of

24   days, suddenly, you know, kind of go through every

25   co-conspirator's statement.

1          Here's what we propose.  We think that we should have

2     the obligation to particularize our problems with

3     co-conspirator statements.  We owe that to the Court and to the

4     government, for that matter.  But the only way we can do that

5     is if we have, you know, somewhat of a clear picture of what it

6     is that they're going to be offering.  It seems to me that what

7     we are probably looking at are emails and text messages, just

8     written communications from one conspirator -- one alleged

9     conspirator either back to the people at LabSolutions, or we're

10    going to have statements which are a little harder to track

11    down because they're not going to be on the exhibit list

12    necessarily.  It may be someone's *Jencks* material, but it's not

13    going to be on the exhibit list.

14          So I think what we can propose is, as part of our

15    scheduling order, why doesn't the government notify us, to the

16    best they can, where they think their actual co-conspirator

17    statements are going to be located.  And we understand things

18    are going to develop at trial, you know, witnesses won't show

19    up.  So everybody will act in good faith.  But if the

20    government could give us notice of where it is.  It may be that

21    there will be four or five that we want to challenge, instead

22    of, you know, in the middle of trial -- every morning, instead

23    of starting at 10:30, we'll have to start at 9:45 because we'll

24    have to have a motion in limine that day to challenge what for

25    the first time the night before, they've offered to tell us

 1    would be their 801(d)(2)(E) testimony.

 2         THE COURT:  Let me ask counsel to that point.  In

 3    response to the other motion we're going to deal with today

 4    regarding the government's obligations under *Brady* or *Giglio*.

 5    The government had at least explained to the Court that they

 6    have, and it pertains to cooperating witnesses, and some

 7    voluminous productions that have been recent, that they

 8    provided the list with the Bates stamps for documents that

 9    pertains specifically to the defendant or LabSolutions to help

10    assist you in focusing your review.

11         Has that assisted you?  Is that still falling short in

12    your view of your ability to identify clearly the

13    co-conspirator emails that they're going to be pointing to?  I

14    want to know because, obviously, I'm not in the production like

15    you are.  Is that still not enough to help you?

16         MR. SAMUEL:  It certainly helps, but it doesn't

17    identify specifically what 801(d)(2)(E) evidence is going to be

18    coming in.  We've got hundreds of 302s, of debriefings, we've

19    got thousands of emails, if not tens of thousands of emails

20    between people.  There's no way for us to figure out what they

21    actually intend to offer in evidence.  They're being very

22    generous.

23         And it's a Goldilocks problem, right?  Either the

24    government gives us too little or they're giving us too much.

25    This clearly falls in the too much category.  They're being

1    very generous in their discovery.  But it is overwhelming, so

2    we can't figure out what are you planning to introduce.

3            THE COURT:  Am I right, from your argument, and this is

4    more like I'm starting to roll up my sleeves and get more than

5    knee deep into this matter, as we're hearing now.  You had

6    mentioned in some of the pleadings that I was reviewing last

7    night that originally, I think, we had -- remember, there were

8    three key co-conspirators identified in the first indictment.

9    The superseding indictment then drops one.  Co-conspirator one,

10   I believe, is no longer at least being utilized.

11           MR. SAMUEL:  These are the substantive counts, right?

12           THE COURT:  The substantive counts, right.

13           So I'm just trying to get a sense -- how many -- again,

14   you guys had pointed this out to me.  There's a lot of email

15   traffic.  So I'm trying to get my hands around how many 801

16   co-conspirators are we talking about.  Because, you know, it

17   could be different if you got involved with a particular -- is

18   it more individuals versus communications?  I'm just trying to

19   get a sense of it all.

20           MR. SAMUEL:  Well, the bill of particulars indicates

21   that there's 23 co-conspirators.

22           THE COURT:  Okay.

23           MR. SAMUEL:  The witness list, which we've been shown,

24   has 13.

25           THE COURT:  Okay.

1             MR. SAMUEL:  So there's at least ten -- I think I have

2     those numbers right.  It's in the briefs.  So there's a

3     considerable number of co-conspirators we will not be hearing

4     from.  So, presumably -- but it's a light presumption -- many

5     of them are going to have written things that we -- that would

6     be unindicted co-conspirators, and we will be seeing things

7     they've written or perhaps things that they've said to someone

8     else and is going to be repeating it on the stand that we won't

9     be able to confront.  So that's the number, according to the

10    government's disclosures to us.

11            THE COURT:  Okay.

12            MR. SAMUEL:  And I don't think it's asking that much

13    for the government, you know, to say, here are the 23

14    co-conspirators.  I have the number right?  23, right?  I've

15    seen the number 23 and 13.

16            For them to say here's the 23, 5 of them we don't plan

17    to introduce anything they've ever said.  We've given you all

18    their proffers, anything you want to know about them.  Three of

19    them, we expect to have the emails which you received.  Here's

20    your Bates stamps, we're going to put these emails in evidence.

21    The trickier thing is the nonwritten.

22            THE COURT:  Right.

23            MR. SAMUEL:  We don't know where to find that.

24            THE COURT:  Right.

25            MR. SAMUEL:  We wouldn't know if they told some agent,

1    by the way, Minal Patel X, Y, Z said -- well, you understand

2    the point.  We're trying to avoid having to come to you every

3    morning and telling you, according to what the government told

4    us last night, in their daily briefing of what they plan to do

5    the next day, there's going to co-conspirator statements that

6    we don't think they're admissible, not only because they're not

7    members of the conspiracy or the conspirator doesn't exist.

8    You can rule on that after the first day of trial.  But it's

9    not in furtherance, it's double hearsay, it's repeating

10   something the co-conspirator heard, and -- or there's no

11   foundation for the witness to have said that.  There's lots of

12   things with 801(d)(2)(E) that you can challenge other than

13   there's no conspiracy.  And it also will give us an opportunity

14   to invoke, you know, Rule 806, which allows us to impeach the

15   co-conspirator whose statement is being introduced.

16           So listen, we're all acting in good faith, and we're

17   all sharing a lot of information among each other.  We talk to

18   each other frequently.  We've been sharing documents with each

19   other.  I think the solution, so that we can particularize it,

20   is for the government to give us -- you know, let's have a day

21   when they're in good faith going to say here's where you can

22   find the co-conspirator information.

23           THE COURT:  Okay.  Let me hear.  Ms. de Boer, what's

24   your take on the -- sounds to me that it's -- really, the

25   concern is the *James* hearing.  And I understand why it was

1    requested, but I think now we're getting a little more into the
2    weeds as to the main defense camp concern.  It's more about
3    just getting their hands around what really the government
4    intends on relying on in terms of 801(d)(2)(E) co-conspirator
5    statements.
6         Is it feasible or possible for us to try to better
7    focus or narrow these 23 co-conspirator statements,
8    understanding that the statements are a different matter, but
9    at least perhaps some of the emails that have been disclosed
10   and already Bates stamped, and that some categories of
11   documents could be flagged?  What do you think about the
12   possibility of that?
13        MS. DE BOER:  Yes.  A few things, Your Honor.  And to
14   the defense's credit, they've been extremely reasonable in many
15   of their requests.  And they're not shy about sending us
16   specific requests.
17        So, for example, with respect to the substantive
18   counts, which Your Honor and the defense brought up, they sent
19   a request for where are the documents and recordings pertaining
20   to these benefit charities?  Where are the reports?  And we've
21   been providing that information and identifying it in the pool
22   of voluminous discovery here.
23        And with respect to the co-conspirator statements, in
24   particular, a few things.  So number one, this is an extremely
25   document-heavy case, as the Court and the defense know.  And so

1   I think the Court's suggestion and the defense's suggestion

2   that we agree to deadlines to exchange exhibit lists is going

3   to help tremendously with respect to the defense's request for

4   what of this massive universe of stuff is actually going to be

5   presented to the jury.  So I think that's, you know, the number

6   one thing that's going to help them.

7          And in terms of oral statements, those are being

8   documented in interview reports.  And I can say, you know, as

9   the Court is probably aware, I'm maybe the third or fourth or

10  fifth prosecutor that you've seen on this case.  So we, this

11  prosecution team, is meeting with a lot of these witnesses for

12  the very first time, including this week, including next week.

13         So today, I'm not in a position to say what exactly

14  each of those witnesses are going to say on the stand.  But we

15  are generating reports on almost a daily basis that are being

16  disclosed to the defense that are extraordinarily thorough and

17  that do document these co-conspirator statements.  And they

18  talk about meetings and conversations and instructions and

19  things that, you know, actions that's beyond just

20  co-conspirator statements.  That is the type of stuff that I

21  would point the defense to.

22         They have our proposed witness list, which we will

23  amend slightly.  We won't be calling every conspirator on that

24  list, obviously.  I think the defense is correct, there are

25  approximately 11 cooperators that were listed on the witness

1   list.  More may be added, not many more.  But they will not all

2   be called.

3          There are more co-conspirators out there.  So, for

4   example, co-conspirator one in the indictment is not going to

5   testify in this trial, but there will be discussions from other

6   witnesses about what co-conspirator one said or did.  And those

7   are documented in interview reports that are being disclosed to

8   the defense.

9          So I would say a deadline for the reciprocal exchange

10  of exhibit lists will assist tremendously in identifying the

11  type of information that the defense wants, which we've already

12  agreed that we will submit that to the Court.  And then, two,

13  the continued disclosure of interview reports.

14         And I would say, you know, the defense is going to know

15  who we are focused on, because we're going to continue to

16  disclose new reports from those witnesses.  The witnesses we

17  are meeting with now, in the next month, are the witnesses that

18  they're going to see at trial.  And any new information is

19  going to be documented in reports produced on almost a daily

20  basis.

21         THE COURT:  And what do you think, Ms. de Boer, in

22  terms of the timeline as you guys are going through and meeting

23  these witnesses for the first time?  How far along are we, and

24  when do we think the government will have completed their

25  meetings with these individuals?

1      MS. DE BOER:  We're going to be meeting with these

2  individuals and preparing, you know, with them to testify up

3  until the moment they take the stand.

4      THE COURT:  All right.

5      MS. DE BOER:  Any new information will be disclosed --

6  you know, even if it's the morning of, we will send emails to

7  the defense or communicate it to them.

8      THE COURT:  Sure.

9      MS. DE BOER:  I don't expect a lot.  I think we're sort

10  of getting to the end of when the new information is coming and

11  sort of starting to get repetitive.  But I can't say that

12  someone won't say something new or say something different than

13  what they've said before, and we will, under Rule 16(c), of

14  course, continue to disclose that.

15      THE COURT:  And what do you think about trying to

16  address the defense camp's concern about the 801, in

17  particular?  You've pointed out that we have the 11

18  cooperators, much bigger universe of co-conspirators.  Is there

19  a way -- maybe it's not a situation where exhibits themselves

20  are identified, but certainly individuals that may be -- and

21  you're suggesting that it's going to be very obvious to the

22  defense.  But I'm just wondering if it's even feasible to let

23  them know that this is the universe of individuals.  And then,

24  at least from that, they can search presumably emails and

25  things of that nature, right?

1           I'm trying to figure out a way to make it a little
2     easier for the defense to kind of navigate the volume so they
3     can identify who exactly is the type of or what is the type of
4     co-conspirator statement that they need to be looking out for.
5     Is there a way that you can do that with the production?
6           MS. DE BOER:  Yes.  So -- and to some extent, we've
7     done that.  So they had -- the defense had suggested that they
8     would file a motion for a bill of particulars for a list of all
9     potential co-conspirators, among other things.  And we gave
10    them a preliminary list of many co-conspirators.  I think it's
11    quite comprehensive.  And that had approximately -- there's 20,
12    21 individuals listed on it.  And I think that, combined with
13    the witness list, is a way for them to focus their own review
14    and run their own searches.
15          I think another thing we can do, we can't -- it won't
16    be done today, and it will be sort of on a rolling basis, is to
17    perhaps provide an index of the interview reports and Bate
18    stamps corresponding to the witnesses who will testify.
19    Because the defense is, you know, obviously, correct that this
20    is an extreme amount of material, dozens of productions.  So
21    these reports are located in multiple different places, and
22    they've been produced over the course of several years.
23          So for, you know, a witness, let's say, Christian
24    McKeon, for example, we can provide an index that says here's a
25    list of reports we produced for this person, here's the Bates

1    stamps, so that they can then go see for themselves, and they

2    know, then they're not -- there's not some report in a

3    production from whatever that they've missed.

4           THE COURT:  That's floating out there, right?  Okay.

5           MS. DE BOER:  Right.

6           THE COURT:  Gentlemen, what do you think about that?

7    It sounds to me like, perhaps, it's not necessarily as detailed

8    as you would like it to be, but certainly we could build in --

9    and it's not a deadline issue, because it's rolling, but we

10   could build in this additional level of indexing of those who

11   will testify so that their reports are much more easily located

12   and identified for the defense team.  I think that might be one

13   way to assist you a little bit in trying to get your hands

14   around what the 801 material would be.

15          What do you all say?  And I certainly think that's a --

16   we should start there and go from there.  And that will help

17   you all.  I don't know that beyond that there's much I can do

18   since some of this is still in flux.  But what do you think?

19          MR. RAFFERTY:  That's all very helpful.  We agree, that

20   would be a great start.

21          The only other suggestion I have, Your Honor, is we're

22   going to need to exchange exhibits somewhere in advance of

23   trial, that's going to have a list of documents on it.  We've

24   all seen the exhibit list before.  We're going to see emails

25   and other text messages and stuff.  If we can also have the

1    government identify in that exhibit list those documents that

2    they intend on admitting pursuant to that exception to the

3    hearsay rule, I think that would go a long way towards

4    streamlining the trial, as well.  Because I'm sure we're going

5    to try to reach stipulations with respect to other documents,

6    the admissibility of other things, we're going to want to put

7    stuff in, they're going to want to put stuff in.  And I think

8    as part of that conference process, we can probably make this a

9    lot simpler in advance of the 28th.

10        THE COURT:  That's a fair point.  And I can't imagine,

11   Ms. de Boer, that would be too difficult to do.  Why don't we,

12   when we put together -- and I want to really make sure -- we'll

13   summarize where we're at now.  I think we're certainly going to

14   have kind of a mini scheduling order here that's going to

15   finalize some new deadlines, and we're going to get that turned

16   around here by Friday.  I'm going to have you guys all get

17   together and kind of pick some dates that you can all live

18   with.  But certainly, incorporating in that some language that

19   the exhibit lists that are going to be exchanged would have at

20   least some designation of the 801 material in it.

21        I will say, that would help the Court a lot, too,

22   because having an index where I know that that's where I have

23   to focus on any 801 argument would be really helpful, because

24   then I can make sure that I'm on patrol.

25        I'll say this.  I mean, the case law has this kind of

1    conditional view.  It doesn't seem to me that it would be

2    wholly unfair to tell the government, since you are getting it

3    conditionally, the Court should have a way to patrol what's

4    coming in upfront, and indexing it would be a good way by

5    telling me, Judge, this set of emails, this is going be an 801.

6    This is going to be an 801, you know, message.  However you

7    want to do it.

8          Is that feasible, Ms. de Boer?  Can we build that into

9    the exhibit list?

10          MS. DE BOER:  We can, Your Honor.  Although, I will

11   say, I think that's going to be most of the emails and text

12   messages that appear on the exhibit list.

13          THE COURT:  Right.  So you're saying it may not be

14   necessarily -- it may not be as fruitful as it sounds because

15   you're going to just kind of blanket notify that a bunch of

16   it's 801.

17          MS. DE BOER:  Well, the exhibit list itself is

18   fruitful, right, because, you know, there's however many, 20

19   million pages of stuff in this case, we're not putting in 20

20   million pages --

21          THE COURT:  Yes.  At least they know the universe has

22   been shrunk, and then shrunk a little further as to what part

23   of that is 801.  That seems that it would help out everyone

24   quite a bit, and I think we should be able to do that.

25          MR. RAFFERTY:  Yes.  And part of the benefit of that

1  would also be allowing us to identify the non-testifying

2  co-conspirator documents that are being introduced under that

3  section.

4         Obviously, Chris McKeon, using him as an example, on

5  the witness stand, that's one thing.  But if there's some other

6  co-conspirator on the list of 23 that is not testifying, it

7  would be useful to know if there's going to be documents that

8  are going to be admitted for that individual through this

9  exception.

10         THE COURT:  Right.  And the exhibit list will give us

11  that.  I mean, I think that's fine.

12         However we want to word it, I trust you guys.  You guys

13  have been getting along quite well, that I don't have to spell

14  it out today.  But I think that I would prefer, so we

15  memorialize our progress today, that we try to put as much of

16  this into this kind of modified scheduling order.  So we may

17  not have necessarily a deadline for some of this, right, like,

18  with the index.  I mean, that's kind of rolling.  But I think

19  that we should build into it that, as discussed at the hearing,

20  the index of those who will testify with the reports and Bates

21  stamps, so it's all in one place, shall be provided by the

22  government.

23         Additionally, we will set the deadline for exchange of

24  exhibit lists, and that the exhibit lists from the government

25  will have designations as to the material in there that they

1    seek to introduce under 801(d)(2)(E).

2              Does that work, Ms. de Boer?

3              MS. DE BOER:  Yes, Your Honor, thank you.

4              THE COURT:  Okay.  Very good.  So we'll build this out.

5              So with that being said, I think that the Court is

6    comfortable that, for the reasons stated on the record, I can

7    deny the formal request for a *James* hearing, but understanding

8    that we have given the defense a little more in line of what

9    they were seeking at the outset, which was trying to narrow the

10   universe of documents.

11             And so I think that, with this identification in the

12   exhibit list, we've accomplished that.  And I just wanted,

13   again, the defense to feel comfortable that the Court

14   recognizes its obligation, that even though this is coming in

15   conditionally, I will be looking to confirm that the

16   preponderance of the evidence standard is met, and that a

17   conspiracy existed, the defendant, and declarant, the members

18   of the conspiracy, and the statement was made during the course

19   of the furtherance of the conspiracy.  Just so that we have the

20   cite on the record, I'll cite *Magluta*, is probably the most

21   recent case, 418 F.3d 1166, from the Eleventh Circuit in 2005.

22             So that takes care of the second item on my list today.

23   And that would be, again, for the record, a ruling has been

24   made on Docket Entry 296.  And it's denied for the reasons

25   stated on the record.

1          We've already handled 295.  295 is, again, going to be

2     granted.  And I've given that extension through next Friday.

3          That brings me to the last formal motion that I set

4     today.  That was 294.

5          Now, we've started touching on some of this already.

6     294 really was the defense's concern that the government

7     continue to produce all *Brady* and *Giglio* material in its

8     possession.

9          Now, there are some categories here.  And I think maybe

10    the defense can share their view on it.  The response from the

11    government yesterday, I think, was very helpful in at least

12    identifying or directing responses to some of the line items,

13    the specific requests that were made by the defense.

14         For example, they point to some of the Bates labeling

15    for Marc Sporn, the physical records.  There's an explanation a

16    little bit more -- confirmation, if you will -- of Chris White

17    no longer being part of the government's case-in-chief.  And

18    there's little bit of speculation, his removal must have meant

19    that he did something favorable to defendant.  I wouldn't go

20    that far either.  But, certainly, it looks like the government

21    gives some more guidance as to their utilization of

22    co-conspirator one's emails that pertain to the defendant or

23    LabSolutions.  And that continues to be produced.

24         And then there's an outline that's in with the other

25    categories here.  Some of this really is just the government

1  outlining and confirming its obligations.  I will just handle

2  it because I don't know if it's really still an issue.

3        Under 16(a)(2), the Court agrees the rough notes, the

4  raw notes, are not part of the discovery obligations of the

5  government under Rule 16.  There's a number of cases that stand

6  for that proposition.  It really only comes up if we have

7  material inconsistencies.  And that's the *Jordan* case, 316 F.3d

8  1215, from the Eleventh Circuit in '03.

9        To me, it seems that the reports are being done right

10  now, from what I've heard from the government, and they're

11  quite thorough.  And so I don't see a reason why the Court

12  would be mandating, under existing case law, any rough note

13  production at this point.  And I don't see anything right now

14  that would jump out at me, from a materiality perspective under

15  *Brady*, that raises a cause for concern.

16        I'm also being told that the proffers are coming, that

17  they had been produced where possible.  There have been quite a

18  few, I believe, waivers that were even sought.  So to the

19  extent we have co-conspirators and folks who have defense

20  attorney proffers and other things, there is going to be some

21  privilege issues there, but certainly the government's

22  representing that some of that has been turned over and

23  continues to be turned over.

24        And there is expert notice, and experts will be

25  forthcoming, from the government's view, when it comes to some

1    of the Medicare rules and regulations.  That's been also shared

2    with the Court.  And a number of other representations have

3    been made by the government regarding some of the defendant's

4    operations, for example, the LabSolutions contracts and things

5    of that nature, some of the legal advice received.  There had

6    been some privilege waivers on that.  And I know that that may

7    start to dovetail a little bit into some of the advice of

8    counsel defense.

9         But I say that to say this:  It seems that the

10   government is well aware of their obligations and has attempted

11   to at least direct the defense camp to things they've already

12   produced that they believe are responsive.

13        So where does this leave me, in the long term, to the

14   defense here, in terms of your request?  It reminds me a little

15   bit of Judge Reinhart's similar view where he said, look, they

16   know their obligation, and I'm going to hold them to it.  And

17   they know their reciprocal obligations, and they understand

18   Rule 16, they understand Rule 26.  What are we thinking here on

19   the defense side?  Is there something like what happened just

20   now in *James* that you are more concerned about and I can help

21   you with on that?

22        MR. SAMUEL:  Well, here's the problem.  Unlike with the

23   *James* hearing and disclosure of 801(d)(2)(E), the exhibit list

24   and the witness list is not going to show us *Brady* information.

25        THE COURT:  Of course.

1          MR. SAMUEL:  The antithesis of a witness list and

2     exhibit list would be the *Brady* info.  That would be our

3     witness list and our exhibit list.

4          And it's not so easily solved as the *James* issue or the

5     801(d)(2)(E) issue.  We provided the list at the end to make

6     sure we all are at least in agreement as what we consider to be

7     *Brady*.  Because often as -- the first hurdle, is the government

8     says, well, that's not even available, so we're not going to

9     turn that over.  So we've at least laid down a marker of this

10     is what we consider to be *Brady*.

11          So the next problem is, given, you know, a million

12     documents, or a million pages, what we don't want to happen

13     is for the -- and I know it wouldn't be intentional, but I

14     don't want the government to say we gave you everything we had.

15     This is in a 2255 hearing, right?  We gave you everything we

16     had, so it's your problem if you didn't find it.  And there's

17     plenty of cases that cite if they had turned it over.  And then

18     there are even some cases that say that open file policy is

19     sufficient to comply with *Brady*.  But it just wouldn't be in

20     this case.

21          So what we are really asking is if, in fact, you

22     wouldn't have identified any of these categories of

23     information, A through, whatever it is, M3 or something, or L3.

24          THE COURT:  A through O.

25          MR. SAMUEL:  You can absolutely identify those

1    documents.

2         And it could be rough notes, by the way.  You said

3    rough notes isn't discoverable.  You're right, it's not

4    discoverable under *Jencks*, or Rule 16, but it's absolutely

5    discoverable --

6         THE COURT:  Oh, if it's a *Brady* issue, sure.

7         MR. SAMUEL:  Right.  I mean, if that's the only place

8    that the agents are writing down the things that help

9    Mr. Patel, then they're going to have to turn over the rough

10   notes or at least make a report of it.  And I'm sure the AUSAs

11   have instructed their agents about that.

12        So the best we can do, at this point, is just to say

13   let there be no mistake about what we consider to be favorable.

14   And if the government is aware of that -- and that applies to

15   the agents, it applies to the AUSA, the whole team -- then they

16   have a duty to absolutely produce it not just, you know, in the

17   Manhattan phone book version, but as a nice way to document, as

18   they have done on occasion with some things.

19        THE COURT:  And I was going to ask you this.  My

20   understanding, and you would know better than I, Counsel, is

21   that it hasn't been the open file phone book method.  I mean,

22   it's voluminous, but I'm told that the production is at least

23   searchable or there are some functions, that it's not unwieldy,

24   right?

25        MR. SAMUEL:  Correct.

1          THE COURT:  Okay.  All right.  So that's helpful.

2          MR. SAMUEL:  So wee phone books, these days.

3          THE COURT:  Sure.  That's true.  I don't know the last

4    time -- I don't remember the last time I had a Yellow Pages in

5    my house.  But I remember them being delivered, and they're

6    better for doorstops than they are for looking at anything else

7    now.

8          But let me ask you something.  I mean, other than kind

9    of framing this for -- heaven forbid -- I mean, the worst thing

10   you could tell me is -- mention 2255 before I try the case.

11   But one of the things I want to make sure -- so I'm with you.

12   I want to get ahead of it, and I think that's what you guys are

13   trying to do.  You're setting the goalpost of we believe this

14   is the kind of material that is certainly material to

15   Mr. Patel, and you've got to be on the lookout for it.  And I

16   can see a universe where, heaven forbid, we find ourselves with

17   a *Brady* issue down the line, and you guys want to make sure

18   that you were very clear upfront as to what the expectation

19   was.

20         I get the sense that there's a, you know, a very strong

21   agreement on the obligation, as far as the government's

22   concerned, and they -- the only issue, of course, as you

23   pointed out, would be that down the line someone doesn't think

24   something is necessarily material.

25         But, I guess -- what would you have me do, I guess, is

1    the question, right?  I mean, I think you're putting them on

2    notice.  I don't disagree with that.

3            And, you know, the government is saying, Judge, just

4    deny as moot because, at this point, we get it.  We're doing

5    everything we've got to do.  And it may be more of a

6    placeholder, if it's needed later.  And it's just to say, hey,

7    we knew this stuff was out there, and we want to make sure that

8    you know that we believe it's important, that it's *Brady* or

9    *Giglio*.

10           Is that -- I just want to know what I can do to help

11   your request.  And it seems like it's less about that and more

12   about drawing the line here about what you think you really

13   should be getting.

14           MR. SAMUEL:  Yes.  I mean, I think the government

15   should be obligated to say we agree with your definition of

16   what is *Brady* so we know -- we've crossed that bridge.  We all

17   agree that if A through M exists, that we are -- we will get

18   what we produced.  And then the next -- the best we could do is

19   ask you to direct them, don't hide it somewhere.  And I'm going

20   to repeat, I don't think they would do that intentionally.  I

21   want to be very clear about that.  But make sure that it's

22   open.  And if you see something, and it looks like it may have

23   been buried unintentionally, put it out in the open.

24           THE COURT:  All right.  So --

25           MR. SAMUEL:  And a continuing duty to do so.  And for

1    the people who aren't in the courtroom, the agents, and the

2    other people, maybe they're all, you know, just great agents

3    who would know to do that anyways.  Maybe they don't have that

4    much experience and they think they don't have the obligation.

5    Make sure the AUSAs talk to their agents about that.  And then,

6    you know, we'll all do the best we can to make sure we have it

7    and that they've provided it, if they have and know about it.

8           THE COURT:  All right.  I understand.

9           So, Ms. de Boer, let me word what it would look like

10   here in a paperless.  Something to the extent that would say

11   that this motion is denied as moot, given the government's

12   agreement -- not to put words in your mouth, but given the

13   government's agreement that any *Brady* and *Giglio* material

14   related to any of the enumerated categories in Docket

15   Entry 294, specifically A through O, shall be produced pursuant

16   to the government's continuing obligations, something to that

17   effect.

18          Does that give you pause?  I got the sense from your

19   response that you acknowledged that if there's *Brady* material

20   in these categories, that it would be produced.  So I don't

21   know that we're really in disagreement here.

22          What do you think?

23          MS. DE BOER:  It is being produced.  I don't think the

24   defense is suggesting that it's not being produced.  I think

25   what they're suggesting is we need help finding it.  I think

1    Mr. Samuel's suggestion is, government, if as you're preparing

2    for trial you come across a document that has potential

3    exculpatory value, just let us know.  It's my practice to do

4    that anyway.

5          As I mentioned to the Court, we're sort of all -- a lot

6    of people at this table are very new to this case, and we are

7    furiously working to get our arms around this case and get

8    prepared for trial.  I expect that we will come across

9    documents that may meet some of the categories that the defense

10   laid down, and if we do, we'll send a letter or email

11   identifying the Bates stamp of something that may be of

12   interest to them.  I have no problem doing that.

13         In terms of the production, I mean, that's happening,

14   and that has happened.  So I don't think there's any concerns.

15   I'm not hearing that concern from the defense, that there's

16   something they're not getting.  I think it's more about how do

17   we find it in this voluminous material.  And I'm not hearing

18   them suggest, at least today, that we have to, you know,

19   affirmatively go out and search through what they also have to

20   find it.  But as we prepare for trial, we may come across this

21   information, a witness may say it, it needs to be documented in

22   a report, we may find a document or an email, we need to

23   identify that Bates.  And we would be happy to do that.  We

24   will do that.

25         THE COURT:  I think the important thing -- and I agree

 1    with you.  I would think that defense camp's concern is that

 2    there has been any sort of stonewalling on production or delays

 3    in that regard.  If anything, I think it's going to firehose

 4    the production, and they are getting their hands around it as

 5    best they can.

 6            I think, as far as I -- what I'm hearing from the

 7    defense team is more of a desire for an acknowledgement, if you

 8    will, from the government.  And I'm hearing that, if the

 9    government agrees, that these category of documents,

10    specifically, A through O, that have been laid out, to the

11    extent there is material that would fall under the purview of

12    *Brady* or *Giglio* in the government's possession, that these

13    categories and documents are the defense's way of saying this

14    is the kind of stuff that, if it falls under *Brady* or *Giglio*,

15    would be important -- would be critical to disclose as part of

16    the government's ongoing obligations.

17            So I don't think there's a requirement, or at least a

18    desire, in the Court's mind, to enter an order that just

19    essentially piggybacks on the ongoing obligations of the

20    government.

21            But I definitely will memorialize the fact that the

22    government understands their obligations, that they've

23    continued to abide by them.  And to the extent -- it's almost

24    as if putting them on notice would be the way to phrase it.

25    The defense is just concerned that should they come across

1    these categories, and it would be *Brady* material, that falls

2    under these types of concerns regarding statements and tests

3    and medical necessity, that that be produced as part of the

4    ongoing obligations of the government.

5         And I will just craft, essentially, a paperless order

6    that will memorialize that in a few short lines.  But I don't

7    think there's anything to grant.  I mean, I think it is -- most

8    of the denial is moot because the production is ongoing, and

9    that the government has conceded or acknowledged they're

10   honoring their obligation, and that these areas of inquiry, to

11   the extent *Brady* material or *Giglio* material is uncovered, it

12   must be produced pursuant to their obligations.

13        And I think that will take care of it.  I'm not too

14   concerned that we need to delineate this any further.  I think

15   we have a good roadmap here of this material, and I'm

16   comfortable with what I'm hearing from the government.

17        So the Court will enter an order, again, on that,

18   customized.  But I think we all are walking out of court

19   knowing where we stand on that.  And with that, that would be

20   Docket Entry No. 294 that I will have ruled on.  And I will

21   have then come out of court today, and we'll enter paperless

22   orders on 294, 295, 296.  I will wait to get from you all --

23   I'm not going to put it in a paperless order.

24        I think you guys know -- I don't need to memorialize

25   it, but I suggest that by Friday I should get something.  Or,

1    hopefully, by tomorrow would be great, so I can docket Friday,

2    whatever you guys propose in terms of timing as to exhibit

3    lists and exchanging the 801(d)(2) designation issues that we

4    talked about, you know, all of that material, and setting those

5    deadlines.

6         And so I look forward to you guys submitting that.  It

7    will help us as we kind of look forward with the coming 30 days

8    or so and get ready for trial.  I think that would be really

9    valuable for everybody.  So I look forward to getting that from

10   you guys.

11        Once I check it, if it checks out to me -- I'm assuming

12   it will be jointly submitted and agreed to by all parties -- I

13   will go ahead and docket that, as well.

14        Once we docket that, it leaves me really, for

15   housekeeping, with only the motions in limine.  The forthcoming

16   404(b) will have its response.  We'll pick a date for that,

17   we'll talk about that next as we conclude.  And then I will be

18   standing by to see what we get from Judge Reinhart on Docket

19   Entry 300.  And I will probably reach out to him later today or

20   tomorrow to let him know about the timing issue.

21        So let me -- before I look at some of the scheduling

22   ideas, have I covered everything that I think we set out to do

23   today on the defense side?  Tell me if I missed anything or

24   anything else we want to talk about that we didn't discuss.

25        MR. SAMUEL:  The only thing I would say is just --

1   Mr. Sadow is texting me that he wants to add something.

2          THE COURT:  Thank you.  Mr. Sadow, I apologize, I have

3   not prompted you.

4          Anything else you want to weigh in on?  Really, on

5   anything.  It could be on the motions or scheduling, et cetera.

6   I'll turn it over to you, sir.

7          MR. SADOW:  I appreciate that, Your Honor.  There are a

8   couple of matters I'd like the Court to at least give some

9   consideration to.

10          It would appear that the government does not intend, at

11   least at this point, to call its case agents, which have been

12   numerous, that have worked this case from 2019 to the present.

13   By doing so, they eliminate the need, at least formally, to

14   turn over emails and text messages of those agents as *Jencks*

15   material.

16          On the other hand, that information could have material

17   which would be *Brady*.  And I'm asking whether or not the

18   government is willing to turn over the grand jury transcripts,

19   and emails and text messages of its case agents, regardless of

20   whether they're going to testify.

21          THE COURT:  Let's take it in turn.

22          Ms. de Boer, I'll turn to you.  Your position on -- I

23   believe the request is grand jury transcripts, and then any

24   emails or texts from the case agents, I believe, not so much

25   from a *Jencks* perspective, but it sounds like for potential

1    *Brady* concerns.

2         MS. DE BOER:  Yes.  And just to be clear, we did put on

3    our preliminary witness list, that was disclosed to the defense

4    on September 19th, the case agent.  We just put generically,

5    case agent, because I don't know who that's going to be yet or

6    if.  But I think it is possible, particularly given the number

7    of search warrants in this case, that we may need to put an

8    agent on, at a minimum, for authentication purposes.  So I do

9    think it's possible an agent will testify.  And, of course,

10   we're aware of our *Jencks* obligation in that regard.

11        And we would oppose the production of grand jury

12   transcripts, or agent text messages, emails.  If the agents are

13   creating or developing factual information that is

14   discoverable, that is being produced.  And agent text messages

15   and emails, otherwise, are not discoverable.

16        And so that would include, for example, if we're going

17   to put a witness on the stand, and that witness had

18   communications with an agent, we're gathering that, right?  So

19   that's going to be produced.  And absent, you know, something

20   that's more than mere speculation or suggestion that there's

21   something that happened in front of the grand jury, that

22   there's something that an agent did that would constitute *Brady*

23   information, we're not obligated to produce that material.

24        THE COURT:  So, Mr. Sadow, I'm not terribly surprised.

25   I wouldn't imagine the government was going to feel

1    comfortable, unless there was something there that got close to

2    a *Brady* concern on the emails and the texts, and, certainly,

3    the grand jury transcripts being more of the same.  Again,

4    there's no formal motion on this.  I think it's worth you

5    asking just to see the government's position.

6         But any response on your end regarding their take on

7    those requests?

8         MR. SADOW:  Yes.  I think that for purposes of the

9    Court having the ability to peruse and review, the government

10   should accumulate that information, text messages, emails, of

11   its agents.

12        In past experiences -- and I've been doing this a few

13   years -- sometimes agents make comments about witnesses, about

14   whether they think the witnesses are telling the truth, whether

15   they think a witness is being completely candid, whether

16   they're holding things back, all of which may impact and

17   potentially be admissible.  The only way we're going to know it

18   is if we see it.  The government's not going to give it to us

19   voluntarily.

20        So to the extent that there are emails or text messages

21   of agents [distorted audio] material, I think that should be

22   put together.  And should we seek further review, it would be

23   available for the Court, depending on circumstances.

24        Did the witness -- for example, we go back to Chris

25   White.  Something changed.  We know something changed, because

1     he was prominent when the case was first indicted in September

2     of '19, and he's no longer prominent as of the reindictment,

3     the superseding, in September of 2022.

4          We've asked why the change has taken place.  The

5     government essentially really hasn't told us, but something's

6     changed.  And why that has happened may be important because we

7     have reason to believe that Chris White has produced more

8     information in his conversations with government agents,

9     perhaps, that is favorable to Mr. Patel, then maybe we have --

10    we have no way to be positive of that, but the agent

11    communications with White, and with each other about White, may

12    have some bearing on that.

13         So that's the reason we're making that request.  I know

14    it's not formally done.  I'm just trying to bring those things

15    to the Court's attention before we get before a jury, because I

16    don't think you want us to bring these things up on a daily

17    basis, if they can at least be considered in advance.  So

18    that's -- the request there is, at least at this point, also

19    messages, text messages and emails between case agents.  Not

20    every agent, but they know who their case agents are who have

21    worked this case.

22         That would be in a position where the Court can review

23    it, if we request the Court to do so, if the Court decides, and

24    it would be appropriate, which would include grand jury

25    transcripts, as well.

1          THE COURT:  Okay.  I'll say this, Mr. Sadow.  Just

2    before we proceed to your next point.  I mean, I think it's

3    always valuable so we don't have any delays in the trial.  If,

4    for whatever reason, the government is able to have that

5    material at the ready, should something manifest itself, I

6    think that that would be a good idea.

7          I have had -- I'm trying to go off memory here, but I

8    do recall in a prior healthcare matter -- it's not coming to me

9    now -- having reviewed grand jury transcripts.  And, actually,

10   it might have been the last case I tried.  I had a full -- I

11   did an in-camera review of the grand jury transcript in that

12   matter.  And so I do think it was helpful.  It was situational.

13         To your point, Mr. Sadow, it actually manifested

14   because of a real concern during the trial.  And I was able to

15   recess and handle it.  I believe it was in *United States v.*

16   *Agresti*.

17         So I can certainly do that if it comes up.  I agree, if

18   the government's response on Mr. White was similar to your

19   concession, which is -- it's somewhat speculative right now.

20   None of this stuff is really out there.  I mean, who knows, in

21   terms of why he's no longer part of the superseding indictment.

22   I certainly don't.  But if something were to arise at trial,

23   I'm sure, Ms. de Boer, you can get the Court what the Court

24   needs if, indeed, I find myself in a position to review any

25   grand jury transcripts or emails or texts from the case agents,

1   right?

2           MS. DE BOER:  Yes, Your Honor.  And as I explained to

3   the defense with respect to Mr. White, we understand that if

4   there was exculpatory facts that came to light about Mr. --

5   with respect to Mr. White about this defendant, that that would

6   have to be disclosed.

7           But beyond that, why we made that decision does not

8   have to be disclosed.  And to the extent they're seeking

9   potential *Giglio* information, it's not exculpatory information,

10  but potential *Giglio* information for a witness who's not going

11  to testify, they're not entitled to that.

12          MR. SAMUEL:  Except under 806.

13          MR. SADOW:  Well --

14          THE COURT:  Go ahead, Mr. Sadow.

15          MR. SADOW:  I'm sorry, Your Honor.

16          THE COURT:  No, no, go ahead.  Go ahead, Mr. Sadow.

17          MR. SADOW:  Your Honor, we would be entitled to that

18  information under Federal Rule of Evidence 806, because there's

19  no question that the government intends to introduce

20  801(d)(2)(E) statements of Mr. White at trial.  And to the

21  extent that they are admitted, and, of course, that's the

22  Court's call in the first instance, 806 allows us to examine

23  that -- a non-testifying declarant in the same fashion as if he

24  was on the witness stand.

25          So *Giglio* materials are, are relevant, and they should

1   be disclosed when it comes to those individuals, under 806.

2   There's no question about that.  If you go back to -- I don't

3   have it in front of me because I'm sitting in Spain, but I

4   think the old case is *Wuagneaux*, W-U-A-G-N-E-A-U-X, that deals

5   with 806 and [distorted audio].  So the government's position

6   when it comes to non-testifying co-conspirators or declarants

7   whose information may come in under 801(d)(2)(E), we're in the

8   same posture as if that non-testifying declarant was on the

9   witness stand, which means he's all *Brady*, all *Giglio*, same

10  concerns as if he was present.  So to that extent, Your Honor,

11  we're in complete disagreement with the government.

12          THE COURT:  Okay.  Ms. de Boer, what's your position on

13  that?  Because I'd rather -- we don't have a pending motion on

14  this right now, and there may not be *Giglio* material to begin

15  with right now.  But I'm not sure exactly all the details

16  regarding Mr. White.

17          What's your position on the 806 issue?  Because it

18  would be better if the Court went ahead and at least addressed

19  this now, I would think, so that we won't find ourselves in

20  disagreement on the eve of trial.  What's your take?  And maybe

21  it's premature.

22          MS. DE BOER:  I think it is a bit premature, since it

23  hasn't been briefed.  But I would just say with respect to

24  Chris White, since this is the individual that they seem to be

25  focused on.

1    THE COURT:  It is, yes.  It's only about Mr. White, I
2    think right now, Ms. de Boer.
3    MS. DE BOER:  And despite the fact that we don't intend
4    to call him as a witness for gathering all of their -- his
5    interview reports and not release many, if not all of them,
6    including reports on completely different cases and topics than
7    the case at issue here, we produced a transcript of his prior
8    testimony, we produced all of his emails over which some --
9    many of which he recently waived privilege.  Even ones that
10   don't have anything to do with this case.
11   So to the extent there is the type of information that
12   the defense is concerned about in that material, they have it.
13   THE COURT:  So it sounds like, to the extent there's
14   even a disclosure concern, we're not really there yet.  I mean,
15   it sounds like anything Mr. White has said has already been
16   turned over anyway.  So it doesn't seem to me that we need to
17   get too caught up in the 806 analysis at this point.
18   I don't disagree with Mr. Sadow in his statement that
19   any evidence is admissible, and should be admissible if the
20   declarant testified as a witness.  I mean, that's pretty clear.
21   And confronting 801(d)(2)(E) with 806, qualifying material is
22   fair game.
23   I don't know that -- Mr. Sadow, the issue here, I think
24   is, the government's position is that anything that White has
25   said one way or the other has already been produced.  But I

1    think your view is anything further that may come out, that

2    that obligation be in the forefront of the government's mind.

3         It just sounds to me like there's not much here that

4    they haven't already turned over and that you guys can do with

5    it what you see fit, if you're finding yourself confronting

6    statements, co-conspirator statements from Mr. White.

7         Am I correct in that, Mr. Sadow?  I mean that sounds

8    like where we are at right now.

9         MR. SADOW:  I think the Court is correct insofar as you

10   stated it.  But the question, though, is are there statements

11   from the agents.  And we go back, and I realize we just touched

12   on this.  But are there statements of the agents in their own

13   emails and text messages to one another in which they question

14   what Mr. White has said, or they decided because he knows or

15   potentially has exculpatory information, might not be the best

16   witness for the government, he's been knocked out of the

17   government's case by and large?

18        And if that exists, if there's that communication by

19   agents or even with agents and prosecutors in which they in

20   some form or fashion are questioning Mr. White's credibility or

21   are uncomfortable with what he has said to them, we should be

22   getting that or at the very least the Court should be looking

23   at it to see whether or not it constitutes something that we

24   could use under 806.  That's the parameters of the argument.

25        THE COURT:  Can I ask you this question, Mr. Sadow,

1       before you proceed to the second part?

2             From an 806 perspective -- and I know that it's quite

3       an open -- open language in the rule, about attacking or

4       supporting the credibility of the hearsay declarant.  Maybe I'm

5       overly simplifying it, from maybe a 403, or really a 401 for

6       the relevance.  But in terms of discussions of an agent and a

7       prosecutor, two agents, about whether or not a witness seems

8       like a great witness -- I mean, forget about whether the story

9       is great or not great.  I mean, there's all sorts of reasons

10      why the government may decide that they feel strongly about a

11      certain witness's credibility or not.  And it may just be, you

12      know, general internal communications between agents.  I'm just

13      wondering -- again, we're a little ahead of ourselves.  This is

14      hypotheticals.

15            But I'm curious if the government's position on that,

16      and perhaps you disagree or you agree that that's a little far

17      afield for me to assess.  I mean, just internal communications

18      between two agents which, to me, you're essentially asking the

19      jury to take from that a credibility determination you need two

20      agents and their years of experience as to whether or not they

21      think this is a good witness or not a good witness, or if he

22      was presenting, in their view, in an honest way.

23            I mean, it just seems like a very difficult thing to

24      piggyback off the evaluation of a prosecutor to their agent

25      wondering about the internal credibility of a witness, and

1    using that to cast some doubt in the jurors' mind about their

2    801(d)(2)(E) statement.  I'm just trying to figure out how that

3    would even -- I'm trying to hypothetically think out loud how I

4    would get to a point where I would allow that entity existed

5    under 806.

6         And I don't have briefing on this.  I'd have to look.

7    But those seem to be internal deliberations on the government's

8    side.  I don't know how we would say, well, that goes to

9    credibility.  It goes to the determination of the case-in-chief

10   of the government and the strength of their case.  And it could

11   have nothing to do, quite honestly, with the fact that

12   Mr. White is not giving a fulsome debrief or explaining his

13   position.  It could just be that they believe they don't need

14   him.  I mean, you have other witnesses.  You have better

15   evidence, there's other options to do their case.

16        And what does the government think about that?  I'm

17   just trying to get ahead of this, and I don't really see -- I

18   mean, I'm with you, Mr. Sadow.  I will listen, and I will

19   completely review it.  I want to look at the case law.  If you

20   guys have a theory for me, I'm going to totally entertain it.

21   But I'm curious to the government's initial reaction to the

22   possibility of that being admissible under 806.

23        MS. DE BOER:  Yes.  And my initial reaction, and sort

24   of the same as the Court's, and this hasn't squarely been teed

25   up, so I would want the benefit of seeing their argument and

1    thinking it through on our side, as well.

2         My initial reaction is this is a bit of a stretch under

3    806.  But like I said before, to the extent there is factual

4    information, as opposed to deliberative information, we would

5    agree that that's discoverable, and if you've been endeavoring

6    to produce such information beyond our disclosure obligations

7    even with respect to Mr. White, given all that we've produced,

8    and given the defense's interest in that individual in

9    particular.

10        THE COURT:  So, for example, Ms. de Boer, you wouldn't

11   disagree that if you had agent communications indicating that

12   after four or five debriefs of Mr. White, internally the

13   government is recognizing his story's changed five times

14   factually.  Right?  Mr. White went from Point A to Point B.

15   Now there's another story.  And the story is metamorphasizing.

16   Not an evaluation of credibility, per se, but more so factual

17   determinations that it's not squaring up; he's a moving target.

18        Is that the kind of thing that then you will say, well

19   now we're a little more into the credibility of the declarant

20   under 806 because we have agents acknowledging to one another

21   that Mr. White has either omitted or changed his story, and

22   it's been constantly a moving target throughout the time the

23   government has worked for him?

24        I'm just throwing that out.  What would happen if that

25   came up?

1        MS. DE BOER:  Yes.  And I think the hypothetical is

2   still a little bit ambiguous, but I can see a world in which

3   there were things along those lines that could be discoverable.

4   But I could also see a world in which that evolution is

5   apparent in the interview reports.

6        THE COURT:  Okay.  Meaning, there's another -- there's

7   another way to -- right.  I mean, from an impeaching

8   perspective, we're confronting the declarant, we're going to

9   have -- that evolution could be explored in the interview

10  reports you guys are turning over, right?

11       MS. DE BOER:  Exactly.  In other words, if Chris White

12  said on day one, the light was green; on day two, the light was

13  red; on day three, the light was yellow; on day four, there was

14  no stop light, it was a stop sign, that would be documented in

15  the report.

16       THE COURT:  Okay.  All right.  So, Mr. Sadow, I think

17  we're on the same page.  Let me turn to you, though.  You heard

18  my hypothetical.  I'm not disagreeing that there may be a

19  universe under 806.  I don't want to get far into it just

20  because I think it's not fully teed up.

21            I recognize your theory and argument on this.  I think

22  I have to weigh the situation to see if it manifests.  I will

23  certainly give it a close look if it does.  But you heard my

24  hypothetical, trying to get my hands around what I think would

25  be less deliberative and strategy, per se, versus factual

1    discrepancies.  And you may say to me, Judge, those might not

2    be captured in the report, right, they may not be captured in

3    the indicator of your report, and that goes back to some of our

4    discussions about the admissibility or use of raw notes, would

5    raw notes create either *Brady* concerns or other issues, and

6    it's not captured or memorialized accurately in the actual

7    report.  You can, at some point, get into this raw note issue.

8           But what did you want to add to this point?  I think

9    you recognize we don't have it fully before the Court.  But I

10   want to give you the final word.

11          MR. SADOW:  Yes, of course.

12          As to Chris White, I would ask that the Court direct

13   the government to go ahead and accumulate anything that they

14   can from those agents in which communications about Chris White

15   have taken place, either text or email.  And I would ask the

16   Court to direct that to be disclosed, produced to the Court for

17   an in-camera review.  We're talking -- should be talking about

18   just a few pages of documents.

19          And I think -- we have reason to believe that Chris

20   White has told the agents, on occasion, with or without

21   government counsel present, that their understanding of how

22   this alleged scheme worked is wrong; they just flat out have

23   been told that they don't really understand how this was done.

24          Now, we may be incorrect from the information that

25   we've received, but that's information that we have at this

1    point in time.  And if that's so, and that's why Chris White

2    has been pulled from the witness list, that's significant.  And

3    the only way we're going to be able to know that is not going

4    to be in these 302s, it's not going to be in any report or

5    interview or memorandum interview, it's going to potentially be

6    in communications between the agents.

7          So to that extent, to Chris White only, I ask the Court

8    to at least direct the government to put that material

9    together.  Like I said, it shouldn't be substantial.  And let's

10   review back to see if there's anything in there.  If there's

11   not, the Court will say, you know, I've looked at it,

12   Mr. Sadow, and there's nothing for you there, and it's part of

13   the record, and let's move on.  At least as to Chris White.

14         The other problem with that is -- and let me -- it's

15   kind of a total position.

16         The government -- and I don't have the numbers, I

17   apologize.  I don't have the numbers in front of me.  But

18   assuming there's 23 alleged co-conspirators, we may hear about

19   801(d)(2)(E) statements.  And let's assume the government

20   chooses to call 11, or 10, or some number in that vicinity.  So

21   you've got -- potentially half of them are not going to be

22   testifying.  You're only just going to read their statements.

23   We're not going to be able to call a single one of these

24   witnesses because they will assert their Fifth Amendment

25   privilege, because they're all pursuant to agreements and so

1    forth, that they have with the government.

2          So to the extent that we don't have the ability to

3    bring those witnesses in to examine them, we have some

4    difficulty.  I only point that out because it does impact on

5    what we are suggesting might be the way to get more information

6    about those unindicted co-conspirators.  For example, if Mr. A

7    says I had a conversation with Mr. B, and Mr. A and Mr. B are

8    not testifying.  Mr. B says that Minal Patel claims that he was

9    immune to prosecution for whatever the reason may be, we're not

10   going to be able to ask A about it, we're not going to be able

11   to ask B about it.  And communications of that type make things

12   a little bit more difficult for us, when the government

13   basically is holding the string on whether they can testify or

14   not.

15         Now, if the government is willing to tell all of them

16   that nothing they say can be used against them as long as it's

17   not false, that's fine.  And defense witness immunity -- I know

18   Your Honor knows this -- it doesn't exist in the Eleventh

19   Circuit.

20         So we're just trying to make sure that we are able to

21   get our hands on everything that is available which might show

22   how the progression has -- the evolution of this case has taken

23   place.  That's all part of Chris White.

24         And I appreciate the Court hearing from me.  It's not

25   an issue that's been raised, but I'm telling you it's an issue

 1    that's coming.

 2         THE COURT:  I appreciate the heads-up.  I think, right

 3    now, my inclination is to just have the government collect the

 4    information.  I don't know that I'm in a place where I would do

 5    an in-camera review without a motion teeing it up so I know

 6    exactly what the request is.  Certainly, I understand why

 7    you're concerned, Mr. Sadow.  I will be at the ready.  If

 8    something requires me to review it, you can guarantee I will

 9    review it.  For now, what I will tell the government is to make

10    sure that we have all of the Chris White related email and

11    texts between the agents, and the grand jury testimony ready to

12    go.

13         I know that we're kind of -- not necessarily that we're

14    traveling a little bit on a hunch and on speculation.  I

15    recognize that you do have a firm belief, based upon your

16    sources and your work on the case and investigation, that there

17    may be inconsistencies here that need to be explored.

18    Certainly, I will do so if I feel like the production that

19    Ms. de Boer and the government have indicated they are making,

20    particularly, the interviews that would show the progression or

21    the, as you stated, or the theory evolving in this case will

22    already be in the hands of the defense camp.  If there's

23    something that's accurately captured in those interview reports

24    and you are concerned and it is brought to me by motion, and

25    triggers a need to do a review in camera, I will do it.

 1          I don't think, Ms. de Boer, that it would be a big lift

 2     because it sounds to me like you already have most of this

 3     stuff anyway.  But what's your take on that?

 4          I will decline on any request ore tenus to conduct an

 5     in-camera review at this stage of the game, but is there any

 6     other concern about you just having it at the ready if I end up

 7     being asked to look at it?

 8          MS. DE BOER:  We will, obviously, endeavor to gather

 9     all that, Your Honor.

10          The one thing that I would flag, which Your Honor may

11     just not be aware of, is Mr. White was prosecuted in a

12     different district.

13          THE COURT:  Okay.

14          MS. DE BOER:  So it's going to require going to a

15     different team and gathering their information, which we are

16     happy to do.  But I'm just making the Court aware of it's not

17     as simple as we go back to the office today and talk to the

18     agents that are there.

19          THE COURT:  Right.  I think the important thing is, to

20     Mr. Sadow's point, just accumulate it.  To the extent you can.

21     We're not in a rush on this.  There's not a motion pending.

22     The trial is still weeks away.  But, certainly, I want to have

23     it ready.  Then if we could get ahead of it, maybe this

24     manifests itself more fulsomely before trial, in which case

25     I'll handle it.  Maybe it's more of a situational development

1   at trial or during trial, which, of course, I would not prefer,

2   but sometimes things happen.

3        I just think the important thing is that I have

4   available to me, if necessary, the grand jury transcripts

5   regarding Mr. White, in particular, any emails, comments, and

6   texts from agents regarding his credibility and things of that

7   nature.  That would be good to have ready.  And I think that

8   with that, I will feel comfortable that if there really is a

9   need to look at it, I'll look at it.  I just think right now

10  it's a little premature to do that.  I think the important

11  thing is just having it so that we don't find ourselves

12  scrambling trying to get information that the Court may have to

13  review later.  That's all it is.  Does that make sense?

14        MS. DE BOER:  Understood, Your Honor.

15        THE COURT:  Yes, Mr. Sadow.  I'll throw it back to you.

16  Go ahead.

17        MR. SADOW:  I'm sorry to interrupt.  So I'm not quite

18  sure when -- I can't see who's saying that.

19        But I appreciate that.  I understand the Court.  It's

20  just that, if I might identify one other thing that deals with

21  this kind of area.

22        I believe that we have attempted to obtain

23  communications between indicted and unindicted co-conspirator,

24  attorneys, and the government, regarding what would either be

25  proffers or communications about testimony related to these

1    matters.  And I don't know whether or not the government had

2    agreed to turn that over to us or not.

3         For example, assume that unindicted Co-conspirator A's

4    attorney in negotiations has written to the government and

5    says, you know, I think our client can help you on this matter.

6    This is -- his present recollection is such and such.  And then

7    later, it turns out that that present recollection is not what

8    unindicted Co-conspirator A actually tells the government.  We

9    believe we're entitled to what his attorney, as an agent under

10   801(d) -- I guess it would be (2)(d) or (2) -- it would be

11   801(2)-- (d)(2)(C) or (D) as an agent authorized to speak on

12   his behalf.  We'd be entitled to what his attorney has told the

13   government.  Or if the government has written back to the

14   attorney and said that's not our understanding of what all the

15   facts are.  That kind of correspondence between the attorneys

16   for the government and the attorney for a co -- an unindicted

17   co-conspirator could be admissible under 806, obviously, if it

18   relates to the subject matter of what the witness is going to

19   testify.

20        I'm not talking about scheduling.  I'm not talking

21   about things that don't have to do with substance.  I'm talking

22   about sometimes, in fact, there's a case, and I think

23   Mr. Samuel could probably assist me on this.  There's a case in

24   New York where that was found to exist postconviction.  And as

25   a result of that, not only was the conviction vacated, but the

1    case was dismissed.

2         So I just to make -- it had to do with communications

3    between the attorneys for the government and attorneys for

4    testifying co-conspirators.  So my question is, is the

5    government going to provide that to us.  Because I don't

6    believe we have any evidence at this point in time.

7         THE COURT:  Ms. de Boer, go ahead.

8         MS. DE BOER:  Yes, Your Honor.  So I agree that there

9    could be -- I don't agree that writ large, you know,

10   communications between a defense attorney and a prosecutor are

11   discoverable.  But I do agree that there could be facts

12   communicated by a defense attorney to a prosecutor that could

13   become discoverable.

14        In many instances, you know, the witness later, once

15   they start cooperating, confirms, you know, X, Y, or Z facts.

16   And in that case, that's documented in our report and produced.

17   So emails or proffers of presentations from a defense attorney

18   to the government conveying facts that the witness later

19   confirms, I don't think -- you know, it's really duplicative of

20   what's documented in a report from the witness themselves.

21        But I do agree that there could be facts, potentially,

22   you know, discussed that could become discoverable.  And what

23   we are already starting to do, and we indicated this in our

24   response to the *Brady* motion, is collect those communications

25   and review them.  Obviously, there have been a number of

1    prosecutors on this case and cases with cooperating witnesses.

2    So this is sort of a work in progress.

3            But we understand the request, we understand our

4    obligations, and we are undertaking to review that material.

5            THE COURT:  Yes.  I noticed that, also.  I think

6    page 10 of your response in Docket Entry 304 noted interviews

7    the government's conducting with attorneys or meetings, and

8    reviews of operations by attorneys.

9            So, I think, Mr. Sadow, what I hear from the government

10   is no disagreement, to a certain extent.  Not as stated by

11   Ms. de Boer a writ large, but certainly that facts from the

12   defense to the prosecutor in certain situations could be

13   discoverable.  And so it sounds to me like they're aware of the

14   obligation and the concern that you're raising, and they will

15   be putting that together or they're working on it as we speak.

16   So, hopefully, that will address your concern.

17           MR. SADOW:  Thank you, Your Honor.

18           THE COURT:  Mr. Sadow, let me give you a minute,

19   because I think your co-counsel wanted to jump in on that, as

20   well.  Go ahead.

21           MR. RAFFERTY:  Just one example, Your Honor, consistent

22   with what Mr. Sadow is talking about.  I'm looking at a plea

23   agreement where Athanasios Ziros -- Athanasios is spelled

24   A-T-H-A-N-A-S-I-O-S.  Last name, is Ziros, spelled Z-I-R-O-S.

25   I believe he is on the government's witness list.

1          The plea agreement that was filed in the Southern

2     District of Florida, Docket 9:21-CR-80062.  This is Document

3     79.  In his plea agreement, the factual basis is attached to

4     the end on page 17.  And there's specific language about

5     knowledge concerning medical necessity, which, of course, is

6     one of the issues in this case.  And there's language added in

7     this particular plea agreement about how he knew the tests were

8     not medically necessary, or acted with reckless indifference as

9     to whether the tests were medically necessary.

10          Again, I'm just speaking from experience, Your Honor.

11     I suspect that when this plea agreement and factual basis was

12     initially drafted, it seems unlikely that the government would

13     have initially agreed to put in there or acted with reckless

14     indifference as to whether the tests were medically necessary.

15     I would suggest that that probably came from his lawyer.  I

16     would suggest that that would certainly be *Giglio* or *Brady*

17     material with respect to Mr. Ziros.  So the circumstances

18     surrounding the addition of that language is just one small

19     example to the point that Mr. Sadow is making.

20          THE COURT:  Okay.  Thank you for that.  Mr. Sadow --

21     did you want to respond to that, Ms. de Boer?  I don't think it

22     was much.  I just think it was Counsel's view on how that could

23     manifest itself.

24          MS. DE BOER:  I'm good, Your Honor.  Thank you.

25          THE COURT:  Okay.  Mr. Sadow, I didn't want to cut you

1    off if you had any other points you wanted to raise that I
2    haven't covered before we conclude.  Was there anything else
3    you wanted to flag for the Court?
4         MR. SADOW:  The answer to that is no, Your Honor.  I
5    would just say that I just got a --
6         THE COURT:  Was it Judge Reinhart?  I think he's maybe
7    sitting outside the courtroom, because he must have sent this
8    not knowing that we were talking about him.  His ears must have
9    been burning.  It looks like he set it for November 2nd, that
10   hearing on the Docket Entry 300, the government's motion.
11   Which is actually quite beneficial, because I wanted to finish
12   with trying to pick a day today, and we talked about wanting to
13   do it after that.
14        So what I wanted to suggest -- again, based upon what
15   I'm seeing in this case, you know, I think it's probably better
16   that it be done earlier rather than later in terms of any
17   rulings on motions in limine or 404(b).  So I was looking at
18   the 9th of November.  It's about a week after his hearing.
19        Now, I don't know how much he can rule on by then, but
20   it's one day I wanted to suggest.  I will do it here in Miami.
21   And I wanted to ask, Mr. Sadow, when do you return from your
22   travels?  Because, obviously, I would push it if it meant that
23   you could be here in person.  Is there a day when you return
24   already so I can plan ahead?
25        MR. SADOW:  The answer to that is tomorrow.

1          THE COURT:  Okay.  All right.  So you will be in town.

2     So the reason why I ask is because, as I stated, the Court will

3     be in Atlanta for a chunk there before the trial.  So we kind

4     of have two options here.  One would be to have this on the

5     9th.  And I think that might be a good option, because Judge

6     Reinhart just set his hearing on Wednesday, the 2nd.  So that

7     would be a good way to kind of dovetail off that.  And that's

8     at 1:00 p.m. in West Palm.  And my apologies.  I feel like we

9     have you guys driving all over the district at this point.

10          And then the other option, though, is when I return

11     from oral argument.  So that's the week before.  And I kind of

12     want to leave the week before and -- understanding, again,

13     that's also Thanksgiving.  I don't want to get too close to

14     anybody's family travels.  I want to give everyone some

15     breathing room.  Certainly, we have an option.  If we have an

16     emergency or last minute hearings, we have the 21st or the 22nd

17     are two days that I kind of set aside, essentially, as open

18     time in the event this case needs any more attention last

19     minute before beginning.

20          But I think it would be better to go ahead and have a

21     hearing on the 9th, probably something in the morning, here in

22     Miami, to address the motions in limine and the 404(b).  And if

23     you guys say to me, Judge, you know what, we need more time or

24     we want to wait on that, then I would offer you either the --

25     probably the 22nd would be the next day I'd offer you.  And

1    what I was thinking was doing the calendar call on the 22nd

2    already.

3         So let me start with the government.  I don't know if

4    the government has any strong feelings about these dates.  But

5    I wanted to flow them out to you because I would like to get

6    everyone's coordination now so I can calendar this.

7         What's your sense, Ms. de Boer, on this?

8         MS. DE BOER:  We're available on the 9th, and we agree

9    that it would be efficient to have rulings as early as possible

10   on these issues.  We're also available on the 22nd.

11        THE COURT:  Okay.  So what do you think, on the defense

12   camp, guys?  That also gives you until the 4th to file a

13   response on the 404(b).  It gives me a couple of days to read

14   it.  So I'd be in a better position to make rulings.  Are you

15   guys okay with that day?

16        MR. SAMUEL:  We're okay with the 4th.  And I can't talk

17   for Mr. Sadow.  We're okay for the 4th.  I'm okay with the 9th.

18   Of course, we could do it in Atlanta while you're up there.

19        THE COURT:  I have a feeling I'm going to have other

20   work to do when I'm up there, and I won't be able to handle

21   this matter.  But I appreciate the suggestion.  I think Judge

22   Wilson and Judge Pryor wouldn't be thrilled about that.  I

23   probably wouldn't get invited back either.  I'd like to go back

24   at least another time in the future, so...

25        But, Mr. Sadow, what do you think about that proposal?

1    You have then the 4th is the deadline, so you have time.  I

2    will set the three last key pending motions for the 9th, and I

3    would move our calendar call to the 22nd.

4         And the calendar call, I mean, I'm not going to make

5    anybody drive around.  I would do everything live on the 9th.

6    But once we get to the calendar call on the 22nd, I might just

7    even do that over Zoom to let everyone -- there's no need to

8    make you drive again.

9         So I think we need to be together when we do the

10   motions in limine, for sure, and I will be intending to rule

11   from the bench and giving everyone guidance right then and

12   there, so we'll clean house on that.

13        But on the 22nd, we'll do it over Zoom so everyone can

14   stay where they are.  You have travel plans for Thanksgiving,

15   so you can bank on not having to come and see me again after

16   the 9th until you see me on the 28th.  And the good news is, on

17   the 22nd, I plan on letting you know where in Miami we will be.

18   By then, I will know whether it is here, down the hall, or

19   elsewhere.  I could tell you the duty station, I just can't

20   tell you the courtroom just yet.

21        So, Mr. Sadow, what do you think about that proposal

22   and those dates?

23        MR. SADOW:  I think I'll be there on November 9th,

24   whatever time the Court deems appropriate.  Will it be in

25   Miami, or will it be in Lauderdale?

```
 1              THE COURT:  It will be in Miami.  I will do it in Miami
 2    on the 9th.
 3              MR. SADOW:  If there's a way --
 4              THE COURT:  I'm sorry.  Go ahead.
 5              MR. SADOW:  If there's a way that we can set it so
 6    that, essentially, the defense team could fly in that morning
 7    on an early flight, that would be great.
 8              THE COURT:  Yeah.
 9              MR. SADOW:  Otherwise, we'll be there.
10              THE COURT:  Well, you know what we can do, if you guys
11    prefer, I don't have an issue with it at all, I could set it up
12    so that it's an afternoon hearing.  So if you wanted to start
13    at, like, 1:00 o'clock even?  How does that sound?  That way,
14    everybody can fly in the morning.  Does that work, guys?
15              MR. RAFFERTY:  Yes, Your Honor.
16              THE COURT:  All right.  Consider it done.
17              MR. SADOW:  Yes, Your Honor.
18              THE COURT:  And it gives everybody the time to get in.
19    So I'm going to set it, and we'll those three pending motions
20    November 9th.  It's cross motions in limine, and the 404(b),
21    1:00 o'clock, November 9th.  Calendar call is going to be moved
22    from November 15th to -- it'll be 11:00 o'clock on the 22nd.
23    And that'll be on Zoom.  I'll make it clear.  No one has to fly
24    in or do anything for that.  And I'll give you some more
25    scheduling details on that day.
```

1          And that should take care of it.  And then, again, my

2     hope is we'll have some guidance from Judge Reinhart, or at

3     least have a sense where we're going when we see each other on

4     the 9th, inasmuch as there's a relationship between the pending

5     motion, Docket Entry 300, and some of the motions in limine.  I

6     know that there have been discussions in Docket Entry 304,

7     Footnote 5.  The government pointed out that there's some

8     concern there about the treatment of the evidence and the

9     conflicts that have been raised in the motion that the

10    government filed at Docket Entry 300.  So we'll keep an eye out

11    on that.

12         And again, as defense camp requested, we'll set a

13    deadline to file the response on the 404(b) from November 4th.

14    I'll enter that by separate order.

15         All right.  So I think we've done quite a bit.  I don't

16    want to take anyone else's time.  We've done some great

17    housekeeping.  Right now, as far as I'm concerned, aside from

18    the ones we've set, we've cleared out everything else pending,

19    and we're in position here to get this case ready to go.

20         Before I conclude, anything else that needs to be

21    raised at this time on behalf of the government?

22         MS. DE BOER:  No, Your Honor.  Thank you.

23         THE COURT:  Thank you.  Anything else from the defense

24    camp?

25         MR. SAMUEL:  I was just looking.  Mr. Sadow, I lost

1    track, but it says he's back on.  So nothing from us.

2         THE COURT:  All right.  Mr. Sadow, anything else you

3    need to address before we conclude?

4         MR. SADOW:  No, Your Honor.  Thank you again for your

5    courtesy.  I greatly appreciate it.

6         THE COURT:  I'm happy to help.  One thing I'm going to

7    ask you to do.  I will find myself in Spain somewhere between

8    Christmas and the New Year with my family.  So if you would be

9    so kind when I see you on the 9th, bring me some

10   recommendations of where you went, and I can go ahead and check

11   those out when I get out there.  All right?

12        MR. SADOW:  You've got it.

13        THE COURT:  All right.  Enjoy the rest of your travels.

14   Safe trip back.  We will see you all then on the 9th.  Keep an

15   eye out on the docket.  I will turn around some paperless

16   orders memorializing what we've done.

17        Please get me something, if you could, by the end of

18   tomorrow or Friday morning, if you need some more time.  I just

19   want to end the week with this schedule that the defense had

20   raised.  I think it's important that we get those dates on the

21   books.  So let's meet and coordinate like you guys have done so

22   well, and I'll get that done and docketed by the end of the

23   week.  Okay?

24        MS. DE BOER:  Thank you, Your Honor.

25        THE COURT:  All right.  Have a great rest of your day,

1    everyone.  Thank you all.

2              MR. SADOW:  Thank you, Your Honor.

3              THE COURT:  Thank you, Mr. Sadow.

4         (Court recessed at 12:58 p.m.)

5                       C E R T I F I C A T E

6

7

8         I hereby certify that the foregoing is an

9    accurate transcription of the proceedings in the

10   above-entitled matter.

11        This hearing was held telephonically in part and is

12   therefore subject to the technological limitations of

13   reporting remotely.

14

15

16   DATE:  November 4, 2022   /s/Ilona Lupowitz
                               ILONA LUPOWITZ, CRR, RPR, RMR
17                             Official Court Reporter
                               United States District Court
18                             299 East Broward Boulevard
                               Fort Lauderdale, Florida 33301
19                             (954) 769-5568

20

21

22

23

24

25

**26** [2] - 1:4, 38:18
**260** [1] - 1:18
**27,000** [1] - 18:16
**28th** [12] - 5:15, 6:1, 7:12, 10:4, 10:6, 10:24, 11:13, 11:20, 14:23, 15:17, 32:9, 74:16
**294** [6] - 4:16, 36:4, 36:6, 43:15, 46:20, 46:22
**295** [7] - 4:17, 5:6, 17:7, 17:16, 36:1, 46:22
**296** [4] - 4:19, 17:18, 35:24, 46:22
**299** [3] - 1:24, 19:25, 78:18
**2nd** [2] - 71:9, 72:6

**3**

**30** [2] - 12:23, 47:7
**300** [5] - 5:10, 8:12, 47:19, 71:10, 76:5, 76:10
**302s** [2] - 22:18, 62:4
**30303** [1] - 1:19
**30305** [1] - 2:4
**30309** [1] - 2:7
**304** [2] - 69:6, 76:6
**3131** [1] - 2:3
**316** [1] - 37:7
**3301** [1] - 1:24
**33301** [1] - 78:18

**4**

**4** [1] - 78:16
**401** [1] - 57:5
**403** [1] - 57:5
**404(b** [6] - 4:17, 6:4, 16:5, 16:17, 17:9, 47:16, 75:20, 76:13
**404(b)** [5] - 5:6, 6:12, 71:17, 72:22, 73:13
**418** [1] - 35:21
**4th** [7] - 17:10, 17:12, 73:12, 73:16, 73:17, 74:1, 76:13

**5**

**5** [3] - 14:13, 24:16, 76:7
**5:15** [2] - 14:3, 14:13
**5:30** [2] - 14:3

**7**

**7** [1] - 19:25
**769-5568** [2] - 1:25, 78:19
**79** [1] - 70:3
**7th** [1] - 16:11

**8**

**801** [10] - 20:9, 23:15, 29:16, 31:14, 32:20, 32:23, 33:5, 33:6, 33:16, 33:23
**801(2** [1] - 67:11
**801(d** [1] - 67:10
**801(d)(2** [1] - 47:3
**801(d)(2)(E** [13] - 19:24, 20:3, 22:1, 22:17, 25:12, 26:4, 38:23, 39:5, 53:20, 54:7, 55:21, 58:2, 62:19
**801(d)(2)(E)** [1] - 20:17, 35:1
**806** [17] - 25:14, 53:12, 53:18, 53:22, 54:1, 54:5, 54:17, 55:17, 55:21, 56:24, 57:2, 58:5, 58:22, 59:3, 59:20, 60:19, 67:17
**8th** [2] - 1:16, 16:11

**9**

**954** [2] - 1:25, 78:19
**9:21-CR-80062** [1] - 70:2
**9:45** [1] - 21:23
**9th** [16] - 16:12, 71:18, 72:5, 72:21, 73:8, 73:17, 74:2, 74:5, 74:16, 74:23, 75:2, 75:20, 75:21, 76:4, 77:9, 77:14

**A**

**A's** [1] - 67:3
**A-T-H-A-N-A-S-I-O-S** [1] - 69:24
**a.m** [1] - 1:5
**abide** [1] - 45:23
**ability** [6] - 11:3, 18:2, 19:5, 22:12, 50:9, 63:2
**able** [13] - 6:8, 16:1, 19:19, 24:9, 33:24, 52:4, 52:14, 62:3, 62:23, 63:10, 63:20, 73:20
**above-entitled** [1] - 78:10
**absent** [1] - 49:19
**absolutely** [4] - 18:11, 39:25, 40:4, 40:16
**abundance** [1] - 10:1
**accommodated** [2] - 3:12, 12:13
**accomplished** [1] - 35:12
**according** [2] - 24:9, 25:3
**account** [1] - 12:23
**accumulate** [3] - 50:10, 61:13, 65:20
**accurate** [1] - 78:9
**accurately** [2] - 61:6, 64:23
**acknowledged** [2] - 43:19,

**1**

**1** [1] - 1:7
**10** [5] - 13:22, 14:1, 14:13, 62:20, 69:6
**10:30** [3] - 14:1, 14:13, 21:23
**11** [3] - 27:25, 29:17, 62:20
**1166** [1] - 35:21
**1170** [1] - 2:6
**11:00** [2] - 4:4, 75:22
**11:20** [1] - 1:16
**1215** [1] - 37:8
**12:30** [1] - 14:2
**12:58** [2] - 1:5, 78:4
**13** [2] - 23:24, 24:15
**1400** [1] - 1:16
**15** [1] - 14:2
**15th** [2] - 6:6, 75:22
**16** [3] - 37:5, 38:18, 40:4
**16(a)(2** [1] - 37:3
**16(c** [1] - 29:13
**17** [1] - 70:4
**19-CR-80181** [1] - 3:3
**19-CR-80181-RAR-1** [1] - 1:2
**19th** [1] - 49:4
**1:00** [3] - 72:8, 75:13, 75:21
**1st** [1] - 13:3

**2**

**2** [1] - 67:10
**2)(d** [1] - 67:10
**20** [3] - 30:11, 33:18, 33:19
**20005** [1] - 1:16
**2005** [1] - 35:21
**2019** [1] - 48:12
**2022** [3] - 1:4, 51:3, 78:16
**2052** [1] - 1:19
**20th** [1] - 16:12
**21** [1] - 30:12
**21st** [2] - 16:12, 72:16
**2255** [2] - 39:15, 41:10
**22nd** [9] - 72:16, 72:25, 73:1, 73:10, 74:3, 74:6, 74:13, 74:17, 75:22
**23** [8] - 23:21, 24:13, 24:14, 24:15, 24:16, 26:7, 34:6, 62:18
**2400** [1] - 2:6

**'**

**'03** [1] - 37:8
**'19** [1] - 51:2

**/**

**/s/Ilona** [1] - 78:16

46:9
**acknowledgement** [1] - 45:7
**acknowledging** [1] - 59:20
**act** [1] - 21:19
**acted** [2] - 70:8, 70:13
**acting** [1] - 25:16
**actions** [1] - 27:19
**active** [1] - 5:12
**actual** [2] - 21:16, 61:6
**add** [3] - 15:21, 48:1, 61:8
**added** [1] - 28:1, 70:6
**addition** [2] - 6:3, 70:18
**additional** [1] - 31:10
**additionally** [1] - 34:23
**address** [7] - 4:13, 4:17, 5:8, 29:16, 69:16, 72:22, 77:3
**addressed** [1] - 54:18
**adequately** [1] - 13:12
**admissibility** [4] - 18:9, 20:3, 32:6, 61:4
**admissible** [6] - 25:6, 50:17, 55:19, 58:22, 67:17
**admit** [1] - 18:2
**admittance** [1] - 19:11
**admitted** [2] - 34:8, 53:21
**admitting** [1] - 32:2
**advance** [4] - 11:15, 31:22, 32:9, 51:17
**advice** [5] - 4:23, 13:3, 13:10, 38:5, 38:7
**affairs** [1] - 5:21
**affirmatively** [1] - 44:19
**afforded** [1] - 18:1
**afield** [1] - 57:17
**afternoon** [1] - 75:12
**agent** [16] - 24:25, 49:4, 49:5, 49:8, 49:9, 49:12, 49:14, 49:18, 49:22, 51:10, 51:20, 57:6, 57:24, 59:11, 67:9, 67:11
**agents** [35] - 12:11, 14:20, 40:8, 40:11, 40:15, 43:1, 43:2, 43:5, 48:11, 48:14, 48:19, 48:24, 49:12, 50:11, 50:13, 50:21, 51:8, 51:19, 51:20, 52:25, 56:11, 56:12, 56:19, 57:7, 57:12, 57:18, 57:20, 59:20, 61:14, 61:20, 62:6, 64:11, 65:18, 66:6
**ago** [1] - 9:19
**agree** [15] - 7:15, 14:24, 27:2, 31:19, 42:15, 42:17, 44:25, 52:17, 57:16, 59:5, 68:8, 68:9, 68:11, 68:21, 73:8
**agreed** [6] - 12:7, 28:12, 47:12, 67:2, 70:13
**agreement** [10] - 14:25,

39:6, 41:21, 43:12, 43:13,
69:23, 70:1, 70:3, 70:7,
70:11
  **agreements** [1] - 62:25
  **agrees** [2] - 37:3, 45:9
  **Agresti** [1] - 52:16
  **ahead** [23] - 4:21, 5:1, 9:18,
16:16, 18:25, 19:10, 41:12,
47:13, 53:14, 53:16, 54:18,
57:13, 58:17, 61:13, 65:23,
66:16, 68:7, 69:20, 71:24,
72:20, 75:4, 77:10
  **alleged** [3] - 21:8, 61:22,
62:18
  **alleviating** [1] - 9:22
  **allow** [2] - 18:3, 58:4
  **allowing** [1] - 34:1
  **allows** [2] - 25:14, 53:22
  **almost** [3] - 27:15, 28:19,
45:23
  **alone** [1] - 18:17
  **alternative** [1] - 7:14
  **ambiguous** [1] - 60:2
  **amend** [1] - 27:23
  **Amendment** [1] - 62:24
  **AMERICA** [1] - 1:3
  **America** [1] - 3:3
  **amount** [3] - 5:21, 9:18,
30:20
  **analysis** [1] - 55:17
  **answer** [2] - 71:4, 71:25
  **anticipate** [3] - 13:20, 14:8,
19:16
  **antithesis** [1] - 39:1
  **anyway** [3] - 44:4, 55:16,
65:3
  **anyways** [1] - 43:3
  **apologies** [1] - 72:8
  **apologize** [2] - 48:2, 62:17
  **apparent** [1] - 60:5
  **appear** [2] - 33:12, 48:10
  **Appearances** [1] - 2:1
  **APPEARANCES** [1] - 1:11
  **applies** [2] - 40:14, 40:15
  **appreciate** [7] - 15:15,
48:7, 63:24, 64:2, 66:19,
73:21, 77:5
  **appropriate** [2] - 51:24,
74:24
  **approximating** [1] - 6:18
  **area** [1] - 66:21
  **areas** [1] - 46:10
  **argument** [8] - 6:7, 17:15,
23:3, 32:23, 56:24, 58:25,
60:21, 72:11
  **arise** [1] - 52:22
  **arms** [1] - 44:7
  **aside** [2] - 72:17, 76:17
  **aspect** [1] - 18:7

  **assert** [1] - 62:24
  **assess** [1] - 57:17
  **asset** [1] - 3:9
  **assist** [4] - 22:10, 28:10,
31:13, 67:23
  **assisted** [1] - 22:11
  **assisting** [1] - 4:24
  **assume** [2] - 62:19, 67:3
  **assuming** [2] - 47:11, 62:18
  **Athanasios** [1] - 69:23
  **Atlanta** [5] - 1:19, 2:4, 2:7,
72:3, 73:18
  **attached** [1] - 70:3
  **attacking** [1] - 57:3
  **attempted** [2] - 38:10,
66:22
  **attempting** [1] - 19:23
  **attention** [2] - 51:15, 72:18
  **attorney** [9] - 37:20, 67:4,
67:9, 67:12, 67:14, 67:16,
68:10, 68:12, 68:17
  **attorneys** [6] - 66:24,
67:15, 68:3, 69:7, 69:8
  **audio** [1] - 50:21
  **audio]** [1] - 54:5
  **AUSA** [1] - 40:15
  **AUSAs** [2] - 40:10, 43:5
  **authentication** [1] - 49:8
  **authorized** [1] - 67:11
  **availability** [1] - 8:3
  **available** [7] - 8:11, 39:8,
50:23, 63:21, 66:4, 73:8,
73:10
  **Avenue** [1] - 1:16
  **avoid** [2] - 19:6, 25:2
  **aware** [13] - 6:1, 7:3, 11:8,
12:15, 12:19, 17:20, 27:9,
38:10, 40:14, 49:10, 65:11,
65:16, 69:13

**B**

  **bad** [1] - 13:7
  **BAKER** [1] - 2:5
  **bank** [1] - 74:15
  **based** [4] - 64:15, 71:14
  **basis** [6] - 27:15, 28:20,
30:16, 51:17, 70:3, 70:11
  **Bate** [1] - 30:17
  **Bates** [9] - 19:25, 22:8,
24:20, 26:10, 30:25, 34:20,
36:14, 44:11, 44:23
  **BEACH** [1] - 1:2
  **bearing** [1] - 51:12
  **become** [3] - 20:20, 68:13,
68:22
  **BEFORE** [1] - 1:10
  **begin** [2] - 18:8, 54:14
  **beginning** [2] - 5:25, 72:19
  **behalf** [4] - 3:4, 3:16, 67:12,

76:21
  **belief** [1] - 64:15
  **believes** [1] - 18:15
  **bench** [2] - 6:16, 74:11
  **beneficial** [1] - 71:11
  **beneficiaries** [1] - 18:17
  **benefit** [3] - 26:20, 33:25,
58:25
  **best** [4] - 4:25, 16:15,
21:16, 40:12, 42:18, 43:6,
45:5, 56:15
  **better** [13] - 4:4, 10:10,
17:14, 19:6, 26:6, 40:20,
41:6, 54:18, 58:14, 71:15,
72:20, 73:14
  **between** [14] - 10:4, 14:1,
22:20, 51:19, 57:12, 57:18,
62:6, 64:11, 66:23, 67:15,
68:3, 68:10, 76:4, 77:7
  **beyond** [4] - 27:19, 31:17,
53:7, 59:6
  **big** [1] - 65:1
  **bigger** [1] - 29:9
  **bill** [2] - 23:20, 30:8
  **billed** [1] - 18:19
  **bit** [15] - 4:9, 4:11, 12:18,
31:13, 33:24, 36:16, 36:18,
38:7, 38:15, 54:22, 59:2,
60:2, 63:12, 64:14, 76:15
  **blanket** [1] - 33:15
  **blown** [1] - 18:22
  **BOER** [30] - 1:13, 3:6, 3:12,
7:13, 12:4, 26:13, 29:1, 29:5,
29:9, 30:6, 31:5, 33:10,
33:17, 35:3, 43:23, 49:2,
53:2, 54:22, 55:3, 58:23,
60:1, 60:11, 65:8, 65:14,
66:14, 68:8, 70:24, 73:8,
76:22, 77:24
  **Boer** [19] - 3:6, 7:10, 25:23,
28:21, 32:11, 33:8, 35:2,
43:9, 48:22, 52:23, 54:12,
55:2, 59:10, 64:19, 65:1,
68:7, 69:11, 70:21, 73:7
  **book** [2] - 40:17, 40:21
  **books** [2] - 41:2, 77:21
  **Boulevard** [1] - 1:24, 78:18
  **Brady** [28] - 4:15, 9:1, 22:4,
36:7, 37:15, 38:24, 39:2,
39:7, 39:10, 39:19, 40:6,
41:17, 42:8, 42:16, 43:13,
43:19, 45:12, 45:14, 46:1,
46:11, 48:17, 49:1, 49:22,
50:2, 54:9, 61:5, 68:24,
70:16
  **break** [1] - 14:1
  **breaks** [1] - 14:8
  **breathing** [1] - 72:15
  **Brian** [1] - 3:18
  **BRIAN** [1] - 2:5

  **bribes** [1] - 19:18
  **bridge** [1] - 42:16
  **briefed** [1] - 54:23
  **briefing** [2] - 25:4, 58:6
  **briefs** [1] - 24:2
  **bring** [5] - 3:12, 51:14,
51:16, 63:3, 77:9
  **bringing** [1] - 14:15
  **brings** [1] - 36:3
  **brought** [3] - 3:10, 26:18,
64:24
  **Broward** [3] - 1:24, 12:12,
78:18
  **buffer** [1] - 13:23
  **build** [8] - 13:13, 13:23,
16:7, 31:8, 31:10, 33:8,
34:19, 35:4
  **bunch** [1] - 33:15
  **burden** [1] - 20:9
  **buried** [1] - 42:23
  **burning** [1] - 71:9
  **business** [1] - 12:6
  **BY** [1] - 1:20

**C**

  **Calderon** [1] - 3:9
  **calendar** [17] - 6:5, 6:8,
6:11, 6:15, 6:25, 7:14, 8:16,
8:20, 11:13, 11:16, 13:25,
73:1, 73:6, 74:3, 74:4, 74:6,
75:21
  **calendars** [1] - 6:9
  **camera** [5] - 52:11, 61:17,
64:5, 64:25, 65:5
  **camp** [9] - 5:7, 5:23, 11:9,
26:2, 38:11, 64:22, 73:12,
76:12, 76:24
  **camp's** [4] - 15:16, 19:1,
29:16, 45:1
  **cancer** [1] - 18:17
  **candid** [1] - 50:15
  **capability** [1] - 4:7
  **capable** [1] - 9:17
  **captured** [4] - 61:2, 61:6,
64:23
  **care** [4] - 16:3, 35:22,
46:13, 76:1
  **carefully** [1] - 10:20
  **Case** [1] - 3:3
  **CASE** [1] - 1:2
  **case** [66] - 4:24, 5:12, 5:19,
6:10, 6:18, 6:21, 9:8, 10:9,
14:4, 14:12, 14:18, 15:17,
17:20, 18:1, 18:3, 18:5, 19:2,
19:4, 20:1, 20:8, 26:25,
27:10, 32:25, 33:19, 35:21,
36:17, 37:7, 37:12, 39:20,
41:10, 44:6, 44:7, 48:11,
48:12, 48:19, 48:24, 49:4,

49:5, 49:7, 51:1, 51:19, 51:20, 51:21, 52:10, 52:25, 54:4, 55:7, 55:10, 56:17, 58:9, 58:10, 58:15, 58:19, 63:22, 64:16, 64:21, 65:24, 67:22, 67:23, 68:1, 68:16, 69:1, 70:6, 71:15, 72:18, 76:19

**case-in-chief** [3] - 18:3, 36:17, 58:9

**cases** [5] - 37:5, 39:17, 39:18, 55:6, 69:1

**cast** [1] - 58:1

**categories** [9] - 26:10, 36:9, 36:25, 39:22, 43:14, 43:20, 44:9, 45:13, 46:1

**category** [2] - 22:25, 45:9

**caught** [1] - 55:17

**caution** [1] - 10:1

**certain** [5] - 5:17, 9:6, 57:11, 69:10, 69:12

**certainly** [25] - 7:8, 12:1, 13:15, 13:18, 13:18, 20:10, 22:16, 29:20, 31:8, 31:15, 32:13, 32:18, 36:20, 37:21, 41:14, 50:2, 52:17, 52:22, 60:23, 64:6, 64:18, 65:22, 69:11, 70:16, 72:15

**certify** [1] - 78:8

**cetera** [4] - 8:17, 14:23, 18:23, 48:5

**challenge** [4] - 12:17, 21:21, 21:24, 25:12

**challenging** [1] - 15:18

**chance** [1] - 15:11

**change** [5] - 4:3, 6:5, 7:13, 10:19, 51:4

**changed** [6] - 9:7, 50:25, 51:6, 59:13, 59:21

**charities** [1] - 26:20

**check** [6] - 7:5, 7:25, 8:19, 15:10, 47:11, 77:10

**checked** [1] - 20:15

**checks** [1] - 47:11

**chief** [3] - 18:3, 36:17, 58:9

**chooses** [1] - 62:20

**Chris** [14] - 34:4, 36:16, 50:24, 51:7, 54:24, 60:11, 61:12, 61:14, 61:19, 62:1, 62:7, 62:13, 63:23, 64:10

**Christian** [1] - 30:23

**Christmas** [1] - 77:8

**chunk** [2] - 14:10, 72:3

**Circuit** [5] - 6:7, 7:23, 35:21, 37:8, 63:19

**circumstances** [3] - 10:19, 50:23, 70:17

**cite** [3] - 35:20, 39:17

**claims** [1] - 63:8

**clean** [1] - 74:12

**cleaner** [1] - 19:4

**clear** [9] - 4:11, 4:13, 5:1, 21:5, 41:18, 42:21, 49:2, 55:20, 75:23

**cleared** [1] - 76:18

**clearly** [4] - 3:25, 19:14, 22:12, 22:25

**clears** [1] - 5:9

**client** [1] - 67:5

**clock** [1] - 10:3

**close** [4] - 12:6, 50:1, 60:23, 72:13

**co** [49] - 9:12, 15:13, 17:23, 18:2, 18:6, 18:14, 19:8, 19:21, 20:25, 21:3, 21:16, 22:13, 23:8, 23:9, 23:16, 23:21, 24:3, 24:6, 24:14, 25:5, 25:10, 25:15, 25:22, 26:4, 26:7, 26:23, 27:17, 27:20, 28:3, 28:4, 28:6, 29:18, 30:4, 30:9, 30:10, 34:2, 34:6, 36:22, 37:19, 54:6, 56:6, 62:18, 63:6, 66:23, 67:16, 67:17, 68:4, 69:19

**Co** [2] - 67:3, 67:8

**co-conspirator** [25] - 17:23, 18:2, 18:6, 21:3, 21:16, 22:13, 23:9, 25:5, 25:10, 25:15, 25:22, 26:4, 26:7, 26:23, 27:17, 27:20, 28:4, 28:6, 30:4, 34:2, 34:6, 36:22, 56:6, 66:23, 67:17

**Co-conspirator** [2] - 67:3, 67:8

**co-conspirator's** [1] - 20:25

**co-conspirators** [20] - 9:12, 18:6, 18:14, 19:8, 19:21, 23:8, 23:16, 23:21, 24:3, 24:6, 24:14, 28:3, 29:18, 30:9, 30:10, 37:19, 54:6, 62:18, 63:6, 68:4

**co-counsel** [1] - 69:19

**co-counsels** [1] - 15:13

**collect** [2] - 64:3, 68:24

**combined** [1] - 30:12

**comfortable** [6] - 19:23, 35:6, 35:13, 46:16, 50:1, 66:8

**coming** [11] - 6:15, 12:15, 13:1, 22:18, 29:10, 33:4, 35:14, 37:16, 47:7, 52:8, 64:1

**comments** [2] - 50:13, 66:5

**communicate** [1] - 29:7

**communicated** [1] - 68:12

**communication** [1] - 56:18

**communications** [16] - 18:23, 21:8, 23:18, 49:18,

51:11, 57:12, 57:17, 59:11, 61:14, 62:6, 63:11, 66:23, 66:25, 68:2, 68:10, 68:24

**complete** [1] - 54:11

**completed** [1] - 28:24

**completely** [3] - 50:15, 55:6, 58:19

**complicated** [1] - 15:25

**comply** [1] - 39:19

**comprehensive** [1] - 30:11

**conceded** [1] - 46:9

**concern** [19] - 7:8, 7:13, 7:14, 11:23, 17:25, 25:25, 26:2, 29:16, 36:6, 37:15, 44:15, 45:1, 50:2, 52:14, 55:14, 65:6, 69:14, 69:16, 76:8

**concerned** [9] - 8:22, 38:20, 41:22, 45:25, 46:14, 55:12, 64:7, 64:24, 76:17

**concerning** [1] - 70:5

**concerns** [12] - 7:10, 8:6, 8:15, 11:7, 15:13, 15:14, 19:1, 44:14, 46:2, 49:1, 54:10, 61:5

**concession** [1] - 52:19

**conclude** [5] - 18:3, 47:17, 71:2, 76:20, 77:3

**conclusion** [1] - 18:12

**conditional** [2] - 19:11, 33:1

**conditionally** [3] - 18:2, 33:3, 35:15

**conduct** [2] - 17:22, 65:4

**conducted** [1] - 5:15

**conducting** [1] - 69:7

**confer** [4] - 8:12, 8:19, 12:5, 13:8

**conference** [1] - 32:8

**confirm** [2] - 20:10, 35:15

**confirmation** [1] - 36:16

**confirming** [1] - 37:1

**confirms** [2] - 68:15, 68:19

**conflict** [2] - 4:23, 7:17

**conflicts** [1] - 76:9

**confront** [1] - 24:9

**confronting** [3] - 55:21, 56:5, 60:8

**connect** [2] - 18:4, 18:13

**connection** [1] - 20:2

**consider** [6] - 6:15, 20:19, 39:6, 39:10, 40:13, 75:16

**considerable** [1] - 24:3

**consideration** [2] - 5:11, 48:9

**considered** [1] - 51:17

**consistency** [1] - 8:7

**consistent** [1] - 69:21

**consistently** [1] - 14:12

**conspiracy** [10] - 19:17,

19:20, 20:11, 20:12, 20:14, 25:7, 25:13, 35:17, 35:18, 35:19

**conspirator** [31] - 17:23, 18:2, 18:6, 21:3, 21:8, 21:9, 21:16, 22:13, 23:9, 25:5, 25:7, 25:10, 25:15, 25:22, 26:4, 26:7, 26:23, 27:17, 27:20, 27:23, 28:4, 28:6, 30:4, 34:2, 34:6, 36:22, 56:6, 66:23, 67:3, 67:8, 67:17

**conspirator's** [1] - 20:25

**conspirators** [20] - 9:12, 18:6, 18:14, 19:8, 19:21, 23:8, 23:16, 23:21, 24:3, 24:6, 24:14, 28:3, 29:18, 30:9, 30:10, 37:19, 54:6, 62:18, 63:6, 68:4

**constantly** [1] - 59:22

**constitute** [1] - 49:22

**constitutes** [1] - 56:23

**continuance** [1] - 9:17

**continue** [5] - 9:2, 10:25, 28:15, 29:14, 36:7

**continued** [3] - 2:1, 28:13, 45:23

**continues** [3] - 10:15, 36:23, 37:23

**continuing** [2] - 42:25, 43:16

**contracts** [1] - 38:4

**conversation** [1] - 63:7

**conversations** [2] - 27:18, 51:8

**conveying** [1] - 68:18

**conviction** [1] - 67:25

**cooperating** [4] - 19:16, 22:6, 68:15, 69:1

**cooperators** [2] - 27:25, 29:18

**coordinate** [2] - 11:5, 77:21

**coordination** [1] - 73:6

**correct** [6] - 13:4, 27:24, 30:19, 40:25, 56:7, 56:9

**correspondence** [1] - 67:15

**corresponding** [1] - 30:18

**Counsel** [1] - 40:20

**counsel** [14] - 3:18, 3:24, 4:23, 8:14, 13:3, 13:11, 14:17, 14:25, 15:11, 20:18, 22:2, 38:8, 61:21, 69:19

**Counsel's** [1] - 70:22

**counsels** [1] - 15:13

**count** [2] - 5:11, 10:21

**counts** [3] - 23:11, 23:12, 26:18

**County** [1] - 12:12

**couple** [4] - 4:14, 20:23, 48:8, 73:13

course [13] - 20:13, 20:23, 29:14, 30:22, 35:18, 38:25, 41:22, 49:9, 53:21, 61:11, 66:1, 70:5, 73:18
court [5] - 6:15, 8:14, 17:15, 46:18, 46:21
Court [53] - 1:22, 1:23, 3:1, 10:13, 11:16, 12:7, 12:15, 12:19, 17:7, 17:21, 18:11, 18:21, 21:3, 22:5, 26:25, 27:9, 28:12, 32:21, 33:3, 35:5, 35:13, 37:3, 37:11, 38:2, 44:5, 46:17, 48:8, 50:9, 50:23, 51:22, 51:23, 52:23, 54:18, 56:9, 56:22, 61:9, 61:12, 61:16, 62:7, 62:11, 63:24, 65:16, 66:12, 66:19, 71:3, 72:2, 74:24, 78:4, 78:17, 78:17
COURT [85] - 1:1, 3:2, 3:10, 3:14, 3:20, 3:22, 4:2, 7:25, 9:3, 10:14, 10:18, 11:21, 12:20, 13:6, 15:10, 15:23, 16:24, 17:4, 22:2, 23:3, 23:12, 23:22, 23:25, 24:11, 24:22, 24:24, 25:23, 28:21, 29:4, 29:8, 29:15, 31:4, 31:6, 32:10, 33:13, 33:21, 34:10, 35:4, 38:25, 39:24, 40:6, 40:19, 41:1, 41:3, 42:24, 43:8, 44:25, 48:2, 48:21, 49:24, 52:1, 53:14, 53:16, 54:12, 55:1, 55:13, 56:25, 59:10, 60:6, 60:16, 64:2, 65:13, 65:19, 66:15, 68:7, 69:5, 69:18, 70:20, 70:25, 71:6, 72:1, 73:11, 73:19, 75:1, 75:4, 75:8, 75:10, 75:16, 75:18, 76:23, 77:2, 77:6, 77:13, 77:25, 78:3
Court's [8] - 10:23, 11:12, 15:16, 27:1, 45:18, 51:15, 53:22, 58:24
courtesy [1] - 77:5
courtroom [6] - 6:21, 6:23, 7:1, 43:1, 71:7, 74:20
courts [1] - 18:1
cover [3] - 15:21, 18:25, 19:17
covered [2] - 47:22, 71:2
craft [1] - 46:5
create [1] - 61:5
creating [1] - 49:13
credibility [9] - 56:20, 57:4, 57:11, 57:19, 57:25, 58:9, 59:16, 59:19, 66:6
credit [1] - 26:14
CRIMINAL [1] - 1:15
critical [1] - 45:15
cross [1] - 75:20

crossed [1] - 42:16
CRR [2] - 1:22, 78:16
curious [2] - 57:15, 58:21
customized [1] - 46:18
cut [1] - 70:25
cutoff [1] - 13:10
CUYLER [1] - 1:14
Cuyler [1] - 3:8

# D

d)(2)(C [1] - 67:11
D.C [2] - 1:16, 12:10
daily [4] - 25:4, 27:15, 28:19, 51:16
DATE [1] - 78:16
date [5] - 6:5, 7:14, 11:16, 12:2, 47:16
dates [8] - 6:14, 8:18, 11:5, 16:9, 32:17, 73:4, 74:22, 77:20
days [7] - 12:23, 14:9, 20:24, 41:2, 47:7, 72:17, 73:13
DE [30] - 1:13, 3:6, 3:12, 7:13, 12:4, 26:13, 29:1, 29:5, 29:9, 30:6, 31:5, 33:10, 33:17, 35:3, 43:23, 49:2, 53:2, 54:22, 55:3, 58:23, 60:1, 60:11, 65:8, 65:14, 66:14, 68:8, 70:24, 73:8, 76:22, 77:24
de [19] - 3:6, 7:10, 25:23, 28:21, 32:11, 33:8, 35:2, 43:9, 48:22, 52:23, 54:12, 55:2, 59:10, 64:19, 65:1, 68:7, 69:11, 70:21, 73:7
deadline [11] - 11:23, 12:25, 13:3, 17:8, 17:11, 28:9, 31:9, 34:17, 34:23, 74:1, 76:13
deadlines [6] - 13:15, 13:17, 15:2, 27:2, 32:15, 47:5
deal [2] - 4:19, 22:3
deals [2] - 54:4, 66:20
debrief [1] - 58:12
debriefings [1] - 22:18
debriefs [1] - 59:12
decide [1] - 57:10
decided [2] - 7:20, 56:14
decides [1] - 51:23
decision [1] - 53:7
declarant [2] - 20:12, 35:17, 53:23, 54:8, 55:20, 56:2, 59:10, 60:8
declarants [1] - 54:6
decline [1] - 65:4
deems [1] - 74:24
deep [1] - 23:5

defendant [7] - 19:16, 20:11, 22:9, 35:17, 36:19, 36:22, 53:5
DEFENDANT [2] - 1:17, 2:2
Defendant [1] - 1:7
defendant's [2] - 19:20, 38:3
defense [66] - 4:18, 4:23, 5:7, 5:23, 8:13, 11:3, 11:8, 11:9, 13:4, 13:11, 14:17, 14:24, 15:7, 15:16, 15:20, 16:6, 18:10, 19:1, 19:12, 20:5, 26:2, 26:18, 26:25, 27:16, 27:21, 27:24, 28:8, 28:11, 28:14, 29:7, 29:16, 29:22, 30:2, 30:7, 30:19, 31:12, 35:8, 35:13, 36:10, 36:13, 37:19, 38:8, 38:11, 38:14, 38:19, 43:24, 44:9, 44:15, 45:1, 45:7, 45:25, 47:23, 49:3, 53:3, 55:12, 63:17, 64:22, 68:10, 68:12, 68:17, 69:12, 73:11, 75:6, 76:12, 76:23, 77:19
defense's [7] - 17:25, 26:14, 27:1, 27:3, 36:6, 45:13, 59:8
define [1] - 19:19
definitely [1] - 45:21
definition [1] - 42:15
defraud [1] - 19:17
delay [1] - 8:12
delays [2] - 45:2, 52:3
deliberations [1] - 58:7
deliberative [2] - 59:4, 60:25
delineate [1] - 46:14
delivered [1] - 41:5
deluged [1] - 10:13
denial [1] - 46:8
denied [4] - 9:2, 9:5, 35:24, 43:11
deny [2] - 35:7, 42:4
DEPARTMENT [1] - 1:15
describe [1] - 19:19
description [1] - 8:24
designation [3] - 6:7, 32:20, 47:3
designations [1] - 34:25
desire [4] - 10:23, 15:17, 45:7, 45:18
despite [1] - 55:3
detailed [1] - 31:7
details [2] - 54:15, 75:25
determination [2] - 57:19, 58:9
determinations [1] - 59:17
determine [1] - 17:21
develop [1] - 21:18
developing [1] - 49:13

development [1] - 65:25
different [9] - 18:5, 18:19, 23:17, 26:8, 29:12, 30:21, 55:6, 65:12, 65:15
difficult [4] - 20:8, 32:11, 57:23, 63:12
difficulty [1] - 63:4
digest [1] - 17:12
digesting [1] - 10:7
direct [5] - 38:11, 42:19, 61:12, 61:16, 62:8
directing [1] - 36:12
disagree [4] - 42:2, 55:18, 57:16, 59:11
disagreeing [1] - 60:18
disagreement [4] - 43:21, 54:11, 54:20, 69:10
disclose [3] - 28:16, 29:14, 45:15
disclosed [9] - 26:9, 27:16, 28:7, 29:5, 49:3, 53:6, 53:8, 54:1, 61:16
disclosing [1] - 9:25
disclosure [6] - 11:24, 13:3, 28:13, 38:23, 55:14, 59:6
disclosures [1] - 24:10
discoverable [11] - 40:3, 40:4, 40:5, 49:14, 49:15, 59:5, 60:3, 68:11, 68:13, 68:22, 69:13
discovery [8] - 8:9, 8:23, 10:8, 14:19, 15:14, 23:1, 26:22, 37:4
discrepancies [1] - 61:1
discretion [1] - 17:20
discuss [1] - 47:24
discussed [2] - 34:19, 68:22
discussing [1] - 13:20
discussions [5] - 9:6, 28:5, 57:6, 61:4, 76:6
dismissed [1] - 68:1
disrupt [1] - 10:23
distinct [1] - 18:16
distorted [2] - 50:21, 54:5
DISTRICT [3] - 1:1, 1:1, 1:10
District [1] - 1:23, 70:2, 78:17
district [3] - 18:1, 65:12, 72:9
divide [1] - 4:21
DIVISION [2] - 1:2, 1:15
docket [6] - 12:1, 13:17, 47:1, 47:13, 47:14, 77:15
Docket [16] - 4:16, 4:17, 5:9, 8:12, 17:7, 19:25, 35:24, 43:14, 46:20, 47:18, 69:6, 70:2, 71:10, 76:5, 76:6,

76:10
**docketed** [1] - 77:22
**document** [5] - 26:25,
27:17, 40:17, 44:2, 44:22
**Document** [1] - 70:2
**document-heavy** [1] -
26:25
**documented** [7] - 27:8,
28:7, 28:19, 44:21, 60:14,
68:16, 68:20
**documents** [18] - 4:14,
4:22, 22:8, 25:18, 26:11,
26:19, 31:23, 32:1, 32:5,
34:2, 34:7, 35:10, 39:12,
40:1, 44:9, 45:9, 45:13,
61:18
**dollars** [1] - 18:18
**Don** [1] - 3:17
**DONALD** [1] - 2:2
**done** [20] - 4:5, 6:13, 6:16,
8:16, 11:3, 15:24, 17:17,
30:7, 30:16, 37:9, 40:18,
51:14, 61:23, 71:16, 75:16,
76:15, 76:16, 77:16, 77:21,
77:22
**doorstops** [1] - 41:6
**double** [1] - 25:9
**doubt** [1] - 58:1
**dovetail** [2] - 38:7, 72:7
**down** [12] - 3:13, 5:19,
9:16, 10:11, 12:22, 21:11,
39:9, 40:8, 41:17, 41:23,
44:10, 74:18
**dozens** [1] - 30:20
**drafted** [1] - 70:12
**drawing** [1] - 42:12
**drive** [2] - 74:5, 74:8
**Drive** [1] - 2:3
**driving** [1] - 72:9
**drops** [1] - 23:9
**ducks** [1] - 5:24
**duplicative** [1] - 68:19
**during** [5] - 14:7, 20:13,
35:18, 52:14, 66:1
**duty** [4] - 5:17, 40:16,
42:25, 74:19

**E**

**earliest** [1] - 16:10
**early** [3] - 13:21, 73:9, 75:7
**ears** [1] - 71:8
**easier** [4] - 17:5, 19:5, 19:6,
30:2
**easily** [2] - 31:11, 39:4
**East** [2] - 1:24, 78:18
**easy** [1] - 9:11
**economy** [1] - 17:22
**effect** [1] - 43:17
**efficient** [4] - 7:15, 18:4,

18:24, 73:9
**effort** [2] - 4:20, 10:3
**either** [9] - 21:9, 22:23,
36:20, 59:21, 61:5, 61:15,
66:24, 72:24, 73:23
**Eleventh** [5] - 6:6, 7:23,
35:21, 37:8, 63:18
**eliminate** [1] - 48:13
**elsewhere** [1] - 74:19
**email** [6] - 13:16, 23:14,
44:10, 44:22, 61:15, 64:10
**emails** [28] - 18:23, 21:7,
22:13, 22:19, 24:19, 24:20,
26:9, 29:6, 29:24, 31:24,
33:5, 33:11, 36:22, 48:14,
48:19, 48:24, 49:12, 49:15,
50:2, 50:10, 50:20, 51:19,
52:25, 55:8, 56:13, 66:5,
68:17
**emergency** [1] - 72:16
**Emily** [1] - 3:7
**EMILY** [1] - 1:13
**end** [8] - 29:10, 39:5, 50:6,
65:6, 70:4, 77:17, 77:19,
77:22
**endeavor** [2] - 20:8, 65:8
**endeavoring** [1] - 59:5
**enjoy** [1] - 77:13
**enter** [4] - 45:18, 46:17,
46:21, 76:14
**entertain** [2] - 18:12, 58:20
**entire** [2] - 3:11, 5:16
**entitled** [5] - 53:11, 53:17,
67:9, 67:12, 78:10
**entity** [1] - 58:4
**Entry** [15] - 4:16, 4:17, 5:10,
8:12, 17:7, 19:25, 35:24,
43:15, 46:20, 47:19, 69:6,
71:10, 76:5, 76:6, 76:10
**entry** [1] - 4:22
**enumerated** [1] - 43:14
**especially** [1] - 12:18
**essentially** [8] - 6:10, 17:1,
45:19, 46:5, 51:5, 57:18,
72:17, 75:6
**et** [4] - 8:17, 14:23, 18:23,
48:5
**evaluation** [2] - 57:24,
59:16
**eve** [1] - 54:20
**event** [1] - 72:18
**evidence** [12] - 4:16, 16:5,
17:9, 19:15, 22:17, 22:21,
24:20, 35:16, 55:19, 58:15,
68:6, 76:8
**Evidence** [1] - 53:18
**evolution** [3] - 60:4, 60:9,
63:22
**evolving** [1] - 64:21
**exactly** [6] - 6:25, 27:13,

30:3, 54:15, 60:11, 64:6
**examine** [2] - 53:22, 63:3
**example** [17] - 13:6, 14:8,
16:7, 16:10, 26:17, 28:4,
30:24, 34:4, 36:14, 38:4,
49:16, 50:24, 59:10, 63:6,
67:3, 69:21, 70:19
**except** [1] - 53:12
**exception** [2] - 32:2, 34:9
**exchange** [7] - 11:24,
12:24, 15:4, 27:2, 28:9,
31:22, 34:23
**exchanged** [1] - 32:19
**exchanging** [1] - 47:3
**exculpatory** [4] - 44:3,
53:4, 53:9, 56:15
**exhibit** [21] - 12:23, 15:4,
19:15, 21:11, 21:13, 27:2,
28:10, 31:24, 32:1, 32:19,
33:9, 33:12, 33:17, 34:10,
34:24, 35:12, 38:23, 39:2,
39:3, 47:2
**exhibits** [7] - 11:15, 11:17,
11:18, 11:24, 13:9, 29:19,
31:22
**exist** [3] - 25:7, 63:18,
67:24
**existed** [3] - 20:11, 35:17,
58:4
**existing** [1] - 37:12
**exists** [2] - 42:17, 56:18
**expect** [3] - 24:19, 29:9,
44:8
**expectation** [3] - 13:13,
14:12, 41:18
**expectations** [1] - 14:20
**experience** [3] - 43:4,
57:20, 70:10
**experiences** [1] - 50:12
**expert** [1] - 37:24
**experts** [1] - 37:24
**explained** [2] - 22:5, 53:2
**explaining** [1] - 58:12
**explanation** [1] - 36:15
**explored** [2] - 60:9, 64:17
**expressed** [1] - 15:13
**extension** [2] - 17:2, 36:2
**extent** [20] - 5:23, 7:21,
18:10, 30:6, 37:19, 43:10,
45:11, 45:23, 46:11, 50:20,
53:8, 53:21, 54:10, 55:11,
55:13, 59:3, 62:7, 63:2,
65:20, 69:10
**extraordinarily** [1] - 27:16
**extreme** [1] - 30:20
**extremely** [2] - 26:14, 26:24
**eye** [2] - 76:10, 77:15

**F**

**F.3d** [2] - 35:21, 37:7
**fact** [5] - 39:21, 45:21, 55:3,
58:11, 67:22
**facts** [5] - 53:4, 67:15,
68:11, 68:15, 68:18, 68:21,
69:11
**factual** [6] - 49:13, 59:3,
59:16, 60:25, 70:3, 70:11
**factually** [1] - 59:14
**fair** [5] - 8:24, 11:21, 14:19,
32:10, 55:22
**faith** [3] - 21:19, 25:16,
25:21
**fall** [1] - 45:11
**falling** [1] - 22:11
**falls** [3] - 22:25, 45:14, 46:1
**false** [1] - 63:17
**familiar** [1] - 4:25
**family** [2] - 72:14, 77:8
**far** [10] - 9:8, 14:5, 16:22,
28:23, 36:20, 41:21, 45:6,
57:16, 60:19, 76:17
**fashion** [2] - 53:23, 56:20
**fault** [1] - 20:6
**favorable** [3] - 36:19,
40:13, 51:9
**feasible** [3] - 26:6, 29:22,
33:8
**Federal** [1] - 53:18
**feelings** [1] - 73:4
**felt** [2] - 9:15, 10:5
**few** [9] - 8:9, 8:25, 15:24,
26:13, 26:24, 37:18, 46:6,
50:12, 61:18
**fifth** [1] - 27:10
**Fifth** [1] - 62:24
**figure** [6] - 5:6, 8:21, 22:20,
23:2, 30:1, 58:2
**file** [6] - 16:20, 30:8, 39:18,
40:21, 73:12, 76:13
**filed** [5] - 4:18, 8:8, 9:2,
70:1, 76:10
**filing** [1] - 16:22
**filter** [1] - 3:7
**final** [2] - 15:2, 61:10
**finalize** [3] - 6:20, 6:24,
32:15
**fine** [4] - 6:19, 8:18, 34:11,
63:17
**finish** [3] - 5:3, 12:21, 71:11
**finished** [1] - 11:13
**firehose** [1] - 45:3
**firm** [2] - 12:25, 64:15
**first** [13] - 6:1, 7:9, 16:2,
17:16, 19:16, 21:25, 23:8,
25:8, 27:12, 28:23, 39:7,
51:1, 53:22

**fit** [1] - 56:5
**five** [3] - 21:21, 59:12, 59:13
**flag** [3] - 7:7, 65:10, 71:3
**flagged** [1] - 26:11
**flat** [1] - 61:22
**flight** [1] - 75:7
**floating** [1] - 31:4
**Floor** [1] - 1:16
**FLORIDA** [1] - 1:1
**Florida** [4] - 1:3, 1:24, 70:2, 78:18
**flow** [1] - 73:5
**flux** [2] - 9:13, 31:18
**fly** [3] - 75:6, 75:14, 75:23
**focus** [4] - 9:20, 26:7, 30:13, 32:23
**focused** [2] - 28:15, 54:25
**focusing** [1] - 22:10
**folks** [3] - 9:14, 12:17, 37:19
**following** [1] - 17:13
**Footnote** [1] - 76:7
**FOR** [3] - 1:13, 1:17, 2:2
**forbid** [2] - 41:9, 41:16
**force** [1] - 3:11
**forefront** [1] - 56:2
**foregoing** [1] - 78:8
**forfeiture** [1] - 3:9
**forget** [1] - 57:8
**form** [1] - 56:20
**formal** [3] - 35:7, 36:3, 50:4
**formally** [2] - 48:13, 51:14
**Fort** [2] - 1:24, 78:18
**forth** [2] - 13:12, 63:1
**forthcoming** [2] - 37:25, 47:15
**forward** [4] - 13:14, 47:6, 47:7, 47:9
**foundation** [1] - 25:11
**four** [3] - 21:21, 59:12, 60:13
**fourth** [1] - 27:9
**framing** [1] - 41:9
**frankly** [2] - 16:9, 17:20
**FRAUD** [1] - 1:15
**fraud** [1] - 11:14
**frequently** [1] - 25:18
**Friday** [8] - 14:13, 16:23, 17:10, 32:16, 36:2, 46:25, 47:1, 77:18
**front** [4] - 8:20, 49:21, 54:3, 62:17
**fronts** [1] - 15:14
**fruitful** [2] - 33:14, 33:18
**full** [2] - 18:22, 52:10
**full-blown** [1] - 18:22
**fully** [2] - 60:20, 61:9
**fulsome** [1] - 58:12
**fulsomely** [1] - 65:24
**functions** [1] - 40:23
**furiously** [1] - 44:7
**furtherance** [3] - 20:13, 25:9, 35:19
**future** [2] - 13:17, 73:24

## G

**game** [2] - 55:22, 65:5
**GARLAND** [1] - 2:3
**gather** [1] - 65:8
**gathering** [3] - 49:18, 55:4, 65:15
**general** [1] - 57:12
**generating** [1] - 27:15
**generically** [1] - 49:4
**generous** [2] - 22:22, 23:1
**genetic** [1] - 18:17
**gentlemen** [3] - 16:8, 20:5, 31:6
**Georgia** [3] - 1:19, 2:4, 2:7
**Giglio** [14] - 4:16, 22:4, 36:7, 42:9, 43:13, 45:12, 45:14, 46:11, 53:9, 53:10, 53:25, 54:9, 54:14, 70:16
**given** [10] - 11:3, 24:17, 35:8, 36:2, 39:11, 43:11, 43:12, 49:6, 59:7, 59:8
**glad** [1] - 3:14
**goal** [1] - 13:21
**goalpost** [1] - 41:13
**Goldilocks** [1] - 22:23
**government** [90] - 5:23, 7:9, 9:23, 11:17, 11:18, 11:22, 17:13, 18:3, 18:15, 19:14, 19:22, 20:9, 21:4, 21:15, 21:20, 22:5, 22:24, 24:13, 25:3, 25:20, 26:3, 28:24, 32:1, 33:2, 34:22, 34:24, 36:6, 36:11, 36:20, 36:25, 37:5, 37:10, 38:3, 38:10, 39:7, 39:14, 40:14, 42:3, 42:14, 44:1, 45:8, 45:9, 45:20, 45:22, 46:4, 46:9, 46:16, 48:10, 48:18, 49:25, 50:9, 51:5, 51:8, 52:4, 53:19, 54:11, 56:16, 57:10, 58:10, 58:16, 59:13, 59:23, 61:13, 61:21, 62:8, 62:16, 62:19, 63:1, 63:12, 63:15, 64:3, 64:9, 64:19, 66:24, 67:1, 67:4, 67:8, 67:13, 67:16, 68:3, 68:5, 68:18, 69:9, 70:12, 73:3, 73:4, 76:7, 76:10, 76:21
**GOVERNMENT** [1] - 1:13
**government's** [30] - 9:9, 12:3, 14:25, 16:4, 17:9, 18:12, 22:4, 24:10, 36:17,

37:21, 37:25, 41:21, 43:11, 43:13, 43:16, 45:12, 45:16, 50:5, 50:18, 52:18, 54:5, 55:24, 56:2, 56:17, 57:15, 58:7, 58:21, 69:7, 69:25, 71:10
**grand** [11] - 48:18, 48:23, 49:11, 49:21, 50:3, 51:24, 52:9, 52:11, 52:25, 64:11, 66:4
**grant** [5] - 17:1, 17:4, 17:7, 17:11, 46:7
**granted** [1] - 36:2
**great** [12] - 12:4, 12:21, 15:8, 31:20, 43:2, 47:1, 57:8, 57:9, 75:7, 76:16, 77:25
**greatly** [1] - 77:5
**green** [1] - 60:12
**guarantee** [2] - 14:9, 64:8
**guaranteed** [1] - 6:21
**guess** [4] - 6:13, 41:25, 67:10
**guidance** [4] - 8:2, 36:21, 74:11, 76:2
**guide** [1] - 13:17
**guides** [1] - 12:2
**Gurskis** [1] - 3:7
**GURSKIS** [1] - 1:13
**guys** [34] - 7:3, 9:16, 10:7, 11:2, 11:9, 13:11, 13:16, 14:15, 14:19, 15:5, 16:14, 16:19, 19:13, 23:14, 28:22, 32:16, 34:12, 41:12, 41:17, 46:24, 47:2, 47:6, 47:10, 56:4, 58:20, 60:10, 72:9, 72:23, 73:12, 73:15, 75:10, 75:14, 77:21

## H

**half** [3] - 6:12, 12:10, 62:21
**hall** [1] - 74:18
**hand** [1] - 48:16
**handle** [5] - 18:25, 37:1, 52:15, 65:25, 73:20
**handled** [2] - 18:8, 36:1
**hands** [8] - 19:10, 23:15, 26:3, 31:13, 45:4, 60:24, 63:21, 64:22
**haphazard** [1] - 9:10
**happy** [4] - 44:23, 65:16, 77:6
**harder** [1] - 21:10
**haystack** [1] - 9:10
**heads** [2] - 10:11, 64:2
**heads-up** [1] - 64:2
**healthcare** [1] - 52:8
**hear** [10] - 3:23, 3:24, 6:4, 6:11, 7:19, 17:15, 20:5, 25:23, 62:18, 69:9

**heard** [5] - 7:6, 25:10, 37:10, 60:17, 60:23
**HEARING** [1] - 1:9
**hearing** [36] - 4:19, 4:22, 5:4, 6:11, 6:25, 7:18, 8:3, 8:16, 9:1, 10:17, 11:6, 17:13, 17:19, 17:23, 18:9, 18:22, 19:6, 23:5, 24:3, 25:25, 34:19, 35:7, 38:23, 39:15, 44:15, 44:17, 45:6, 45:8, 46:16, 63:24, 71:10, 71:18, 72:6, 72:21, 75:12, 78:11
**hearings** [3] - 8:10, 16:17, 72:16
**hearsay** [3] - 25:9, 32:3, 57:4
**heaven** [2] - 41:9, 41:16
**heavy** [1] - 26:25
**held** [1] - 78:11
**help** [15] - 15:3, 22:9, 22:15, 27:3, 27:6, 31:16, 32:21, 33:23, 38:20, 40:8, 42:10, 43:25, 47:7, 67:5, 77:6
**helped** [1] - 8:8
**helpful** [5] - 31:19, 32:23, 36:11, 41:1, 52:12
**helps** [1] - 22:16
**hereby** [1] - 78:8
**hide** [1] - 42:19
**hold** [4] - 13:15, 15:2, 20:9, 38:16
**holding** [2] - 50:16, 63:13
**honest** [1] - 57:22
**honestly** [1] - 58:11
**Honor** [36] - 3:6, 3:17, 3:19, 7:23, 11:11, 12:4, 12:12, 12:16, 15:9, 15:22, 26:13, 26:18, 31:21, 33:10, 35:3, 48:7, 53:2, 53:15, 53:17, 54:10, 63:18, 65:9, 65:10, 66:14, 68:8, 69:17, 69:21, 70:10, 70:24, 71:4, 75:15, 75:17, 76:22, 77:4, 77:24, 78:2
**HONORABLE** [1] - 1:10
**Honorable** [1] - 1:23
**honoring** [1] - 46:10
**hope** [3] - 8:6, 9:4, 76:2
**hopefully** [2] - 47:1, 69:16
**HOSTETLER** [1] - 2:5
**hour** [3] - 14:2, 14:11
**hourly** [1] - 8:23
**hours** [1] - 14:11
**house** [2] - 41:5, 74:12
**housekeeping** [4] - 4:9, 15:23, 47:15, 76:17
**humanly** [1] - 10:1
**hunch** [1] - 64:14
**hundreds** [2] - 18:18, 22:18

**hurdle** [1] - 39:7
**hypothetical** [3] - 60:1, 60:18, 60:24
**hypothetically** [1] - 58:3
**hypotheticals** [1] - 57:14

---

## I

**idea** [7] - 12:4, 12:21, 13:1, 13:7, 14:24, 15:8, 52:6
**ideas** [1] - 47:22
**identification** [1] - 35:11
**identified** [4] - 23:8, 29:20, 31:12, 39:22
**identify** [9] - 19:20, 22:12, 22:17, 30:3, 32:1, 34:1, 39:25, 44:23, 66:20
**identifying** [4] - 26:21, 28:10, 36:12, 44:11
**II** [2] - 1:10, 1:23
**ILONA** [2] - 1:22, 78:16
**imagine** [2] - 32:10, 49:25
**immune** [1] - 63:9
**immunity** [1] - 63:17
**impact** [2] - 50:16, 63:4
**impeach** [1] - 25:14
**impeaching** [1] - 60:7
**important** [9] - 13:14, 42:8, 44:25, 45:15, 51:6, 65:19, 66:3, 66:10, 77:20
**in-camera** [4] - 52:11, 61:17, 64:5, 65:5
**inasmuch** [1] - 76:4
**inclination** [1] - 64:3
**include** [3] - 15:4, 49:16, 51:24
**including** [3] - 27:12, 55:6
**inconsistencies** [2] - 37:7, 64:17
**incorporating** [1] - 32:18
**incorrect** [1] - 61:24
**indeed** [2] - 20:22, 52:24
**index** [5] - 30:17, 30:24, 32:22, 34:18, 34:20
**indexed** [1] - 9:11
**indexing** [2] - 31:10, 33:4
**indicated** [2] - 64:19, 68:23
**indicates** [1] - 23:20
**indicating** [1] - 59:11
**indicator** [1] - 61:3
**indicted** [2] - 51:1, 66:23
**indictment** [4] - 23:8, 23:9, 28:4, 52:21
**indifference** [2] - 70:8, 70:14
**individual** [3] - 34:8, 54:24, 59:8
**individuals** [8] - 18:19, 23:18, 28:25, 29:2, 29:20, 29:23, 30:12, 54:1

**info** [1] - 39:2
**information** [32] - 20:1, 25:17, 25:22, 26:21, 28:11, 28:18, 29:5, 29:10, 38:24, 39:23, 44:21, 48:16, 49:13, 49:23, 50:10, 51:8, 53:9, 53:10, 53:18, 54:7, 55:11, 56:15, 59:4, 59:6, 61:24, 61:25, 63:5, 64:4, 65:15, 66:12
**initial** [3] - 58:21, 58:23, 59:2
**inquiry** [1] - 46:10
**insofar** [1] - 56:9
**instance** [1] - 53:22
**instances** [1] - 68:14
**instead** [2] - 21:21, 21:22
**instructed** [1] - 40:11
**instructions** [1] - 27:18
**intend** [4] - 22:21, 32:2, 48:10, 55:3
**intending** [1] - 74:10
**intends** [2] - 26:4, 53:19
**intent** [2] - 16:5, 17:9
**intentional** [1] - 39:13
**intentionally** [1] - 42:20
**interest** [2] - 44:12, 59:8
**internal** [4] - 57:12, 57:17, 57:25, 58:7
**internally** [1] - 59:12
**interrupt** [1] - 66:17
**interview** [10] - 27:8, 28:7, 28:13, 30:17, 55:5, 60:5, 60:9, 62:5, 64:23
**interviews** [2] - 64:20, 69:6
**introduce** [6] - 16:5, 17:9, 23:2, 24:17, 35:1, 53:19
**introduced** [2] - 25:15, 34:2
**investigation** [1] - 64:16
**invited** [1] - 73:23
**invoke** [1] - 25:14
**involved** [3] - 14:18, 18:20, 23:17
**issue** [18] - 5:22, 6:17, 11:11, 31:9, 37:2, 39:4, 39:5, 40:6, 41:17, 41:22, 47:20, 54:17, 55:7, 55:23, 61:7, 63:25, 75:11
**issues** [9] - 4:25, 8:9, 19:7, 19:17, 37:21, 47:3, 61:5, 70:6, 73:10
**it'll** [1] - 75:22
**item** [1] - 35:22
**items** [1] - 36:12
**itself** [4] - 33:17, 52:5, 65:24, 70:23

---

## J

**Jacksonville** [1] - 11:13

**James** [12] - 4:19, 9:1, 17:19, 17:22, 18:8, 18:22, 19:5, 25:25, 35:7, 38:20, 38:23, 39:4
**Jamie** [1] - 3:6
**JAMIE** [1] - 1:13
**Jencks** [5] - 21:12, 40:4, 48:14, 48:25, 49:10
**joining** [2] - 4:2, 4:8
**jointly** [1] - 47:12
**Jordan** [1] - 37:7
**JUDGE** [1] - 1:10
**Judge** [19] - 4:24, 5:9, 6:23, 7:17, 7:19, 13:2, 13:10, 16:15, 33:5, 38:15, 42:3, 47:18, 61:1, 71:6, 72:5, 72:23, 73:21, 73:22, 76:2
**judicial** [1] - 17:22
**jump** [2] - 37:14, 69:19
**jurors'** [1] - 58:1
**jury** [14] - 27:5, 48:18, 48:23, 49:11, 49:21, 50:3, 51:15, 51:24, 52:9, 52:11, 52:25, 57:19, 64:11, 66:4
**JUSTICE** [1] - 1:15

---

## K

**KATHERINE** [1] - 1:14
**Katie** [1] - 3:8
**keep** [5] - 7:21, 7:24, 8:7, 76:10, 77:14
**key** [2] - 23:8, 74:2
**kickbacks** [1] - 19:19
**kind** [26] - 6:17, 11:14, 19:10, 19:24, 20:24, 30:2, 32:14, 32:17, 32:25, 33:15, 34:16, 34:18, 41:8, 41:14, 45:14, 47:7, 59:18, 62:15, 64:13, 66:21, 67:15, 72:3, 72:7, 72:11, 72:17, 77:9
**knee** [1] - 23:5
**knocked** [1] - 56:16
**knowing** [2] - 46:19, 71:8
**knowledge** [1] - 70:5
**knows** [3] - 52:20, 56:14, 63:18

---

## L

**L3** [1] - 39:23
**labeling** [1] - 36:14
**labor** [1] - 4:21
**LabSolutions** [4] - 21:9, 22:9, 36:23, 38:4
**laid** [3] - 39:9, 44:10, 45:10
**language** [5] - 32:18, 57:3, 70:4, 70:6, 70:18
**large** [4] - 20:22, 56:17, 68:9, 69:11

**last** [10] - 4:12, 23:6, 25:4, 36:3, 41:3, 41:4, 52:10, 72:16, 72:18, 74:2
**Last** [1] - 69:24
**lately** [1] - 8:8
**latest** [2] - 14:3, 16:12
**Lauderdale** [3] - 1:24, 74:25, 78:18
**law** [8] - 17:20, 18:1, 19:2, 19:4, 20:1, 32:25, 37:12, 58:19
**LAW** [1] - 1:18
**lawyer** [2] - 9:16, 70:15
**lawyers** [1] - 14:18
**lead** [1] - 3:18
**leadership** [1] - 19:20
**least** [29] - 19:9, 19:21, 19:22, 22:5, 23:10, 24:1, 26:9, 29:24, 32:20, 33:21, 36:11, 38:11, 39:6, 39:9, 40:10, 40:22, 44:18, 45:17, 48:8, 48:11, 48:13, 51:17, 51:18, 54:18, 56:22, 62:8, 62:13, 73:24, 76:3
**leave** [3] - 6:16, 38:13, 72:12
**leaves** [1] - 47:14
**left** [2] - 3:18, 3:21
**legal** [1] - 38:5
**Lenard's** [1] - 6:23
**lengthy** [1] - 12:18
**less** [2] - 42:11, 60:25
**letter** [1] - 44:10
**letting** [1] - 74:17
**level** [1] - 31:10
**lift** [1] - 65:1
**light** [6] - 24:4, 53:4, 60:12, 60:13, 60:14
**likelihood** [1] - 6:22
**limine** [12] - 5:5, 6:4, 6:11, 7:18, 7:20, 21:24, 47:15, 71:17, 72:22, 74:10, 75:20, 76:5
**limitations** [1] - 78:12
**line** [7] - 3:24, 8:14, 35:8, 36:12, 41:17, 41:23, 42:12
**lines** [2] - 46:6, 60:3
**linkup** [1] - 19:22
**list** [32] - 19:15, 21:11, 21:13, 22:8, 23:23, 27:22, 27:24, 28:1, 30:8, 30:10, 30:13, 30:25, 31:23, 31:24, 32:1, 33:9, 33:12, 33:17, 34:6, 34:10, 35:12, 35:22, 38:23, 38:24, 39:1, 39:2, 39:3, 39:5, 49:3, 62:2, 69:25
**listed** [2] - 27:25, 30:12
**listen** [2] - 25:16, 58:18
**lists** [6] - 27:2, 28:10, 32:19, 34:24, 47:3

litigation [1] - 11:8
live [2] - 32:17, 74:5
LLP [1] - 2:5
located [3] - 21:17, 30:21,
31:11
location [3] - 5:24, 7:13,
8:15
LOEB [1] - 2:3
look [16] - 8:13, 10:20,
13:14, 17:19, 38:15, 43:9,
47:6, 47:7, 47:9, 47:21, 58:6,
58:19, 60:23, 65:7, 66:9
looked [1] - 62:11
looking [12] - 16:9, 18:15,
19:9, 20:7, 21:7, 30:4, 35:15,
41:6, 56:22, 69:22, 71:17,
76:25
lookout [1] - 41:15
looks [3] - 36:20, 42:22,
71:9
lost [1] - 76:25
loud [1] - 58:3
lunch [1] - 14:1
Lupowitz [1] - 78:16
LUPOWITZ [2] - 1:22, 78:16

**M**

M3 [1] - 39:23
Magluta [1] - 35:20
main [1] - 26:2
management [1] - 6:11
mandating [1] - 37:12
Manhattan [1] - 40:17
manifest [2] - 52:5, 70:23
manifested [1] - 52:13
manifests [2] - 60:22, 65:24
Maple [1] - 2:3
Marc [1] - 36:15
marker [1] - 39:9
Marx [1] - 3:9
massive [1] - 27:4
material [31] - 10:4, 21:12,
30:20, 31:14, 32:20, 34:25,
36:7, 37:7, 41:14, 41:24,
43:13, 43:19, 44:17, 45:11,
46:1, 46:11, 46:15, 47:4,
48:15, 48:16, 49:23, 50:21,
52:5, 54:14, 55:12, 55:21,
62:8, 69:4, 70:17
materiality [1] - 37:14
materials [2] - 4:16, 53:25
matter [10] - 3:2, 21:4, 23:5,
26:8, 52:8, 52:12, 67:5,
67:18, 73:21, 78:10
matters [2] - 48:8, 67:1
maximum [1] - 5:21
McKeon [2] - 30:24, 34:4
mean [29] - 5:4, 10:19,
18:11, 19:4, 20:6, 32:25,

34:11, 34:18, 40:7, 40:21,
41:8, 41:9, 42:1, 42:14,
44:13, 46:7, 52:2, 52:20,
55:14, 55:20, 56:7, 57:8,
57:9, 57:17, 57:23, 58:14,
58:18, 60:7, 74:4
meaning [1] - 60:6
means [1] - 54:9
meant [2] - 36:18, 71:22
mechanics [1] - 19:6
mechanism [1] - 19:1
medical [2] - 46:3, 70:5
medically [3] - 70:8, 70:9,
70:14
Medicare [3] - 18:19, 19:18,
38:1
meet [4] - 11:12, 13:8, 44:9,
77:21
meeting [4] - 27:11, 28:17,
28:22, 29:1
meetings [3] - 27:18, 28:25,
69:7
members [3] - 20:12, 25:7,
35:17
memorandum [1] - 62:5
memorialize [5] - 13:16,
34:15, 45:21, 46:6, 46:24
memorialized [1] - 61:6
memorializes [1] - 13:10
memorializing [1] - 77:16
memory [2] - 13:2, 52:7
mention [3] - 12:10, 12:11,
41:10
mentioned [2] - 23:6, 44:5
mere [1] - 49:20
message [1] - 33:6
messages [12] - 21:7,
31:25, 33:12, 48:14, 48:19,
49:12, 49:14, 50:10, 50:20,
51:19, 56:13
met [1] - 35:16
metamorphasizing [1] -
59:15
method [1] - 40:21
Miami [14] - 1:3, 3:13, 5:15,
5:16, 5:18, 5:25, 7:1, 14:22,
71:20, 72:22, 74:17, 74:25,
75:1
Michaels [1] - 3:7
middle [1] - 21:22
might [10] - 7:19, 31:12,
52:10, 56:15, 61:1, 63:5,
63:21, 66:20, 72:5, 74:6
million [3] - 33:19, 33:20,
39:11, 39:12
millions [1] - 18:18
Minal [4] - 3:3, 3:21, 25:1,
63:8
MINAL [1] - 1:6
mind [7] - 7:22, 7:24, 9:20,

13:25, 45:18, 56:2, 58:1
mini [4] - 18:7, 20:21,
20:22, 32:14
minimum [1] - 49:8
minute [3] - 69:18, 72:16,
72:19
missed [2] - 31:3, 47:23
missing [1] - 19:13
mistake [1] - 40:13
modified [2] - 12:22, 34:16
moment [1] - 29:3
Monday [1] - 14:12
month [4] - 4:13, 11:1,
14:16, 28:17
moot [3] - 42:4, 43:11, 46:8
morning [12] - 3:6, 3:10,
3:19, 3:20, 3:22, 21:22, 25:3,
29:6, 72:21, 75:6, 75:14,
77:18
most [5] - 4:21, 33:11,
35:20, 46:7, 65:2
MOTION [1] - 1:9
motion [28] - 4:12, 4:15,
4:18, 4:22, 6:4, 7:17, 7:18,
7:20, 9:2, 10:16, 16:3, 17:4,
17:19, 18:11, 21:24, 22:3,
30:8, 36:3, 43:11, 50:4,
54:13, 64:5, 64:24, 65:21,
68:24, 71:10, 76:5, 76:9
motions [21] - 4:10, 5:2,
5:4, 5:8, 6:11, 7:4, 7:16,
8:17, 15:24, 16:11, 16:12,
47:15, 48:5, 71:17, 72:22,
74:2, 74:10, 75:19, 75:20,
76:5
mouth [1] - 43:12
move [4] - 15:24, 16:1,
62:13, 74:3
moved [1] - 75:21
moving [3] - 14:17, 59:17,
59:22
MR [57] - 3:17, 3:19, 3:21,
4:1, 8:18, 10:12, 10:15,
11:11, 13:5, 15:9, 15:22,
16:22, 17:3, 20:22, 22:16,
23:11, 23:20, 23:23, 24:1,
24:12, 24:23, 24:25, 31:19,
33:25, 38:22, 39:1, 39:25,
40:7, 40:25, 41:2, 42:14,
42:25, 47:25, 48:7, 50:8,
53:12, 53:13, 53:15, 53:17,
56:9, 61:11, 66:17, 69:17,
69:21, 71:4, 71:25, 73:16,
74:23, 75:3, 75:5, 75:9,
75:15, 75:17, 76:25, 77:4,
77:12, 78:2
MS [29] - 3:6, 3:12, 7:13,
12:4, 26:13, 29:1, 29:5, 29:9,
30:6, 31:5, 33:10, 33:17,
35:3, 43:23, 49:2, 53:2,

54:22, 55:3, 58:23, 60:1,
60:11, 65:8, 65:14, 66:14,
68:8, 70:24, 73:8, 76:22,
77:24
multiple [3] - 8:10, 9:24,
30:21
must [4] - 36:18, 46:12,
71:7, 71:8

**N**

name [1] - 69:24
narrow [2] - 26:7, 35:9
nature [4] - 20:7, 29:25,
38:5, 66:7
navigate [1] - 30:2
NE [1] - 2:3
necessarily [8] - 5:17,
11:25, 21:12, 31:7, 33:14,
34:17, 41:24, 64:13
necessary [2] - 66:4, 70:8,
70:9, 70:14
necessity [2] - 46:3, 70:5
need [29] - 5:20, 6:19, 6:20,
8:10, 8:11, 10:15, 11:10,
15:21, 17:23, 20:2, 30:4,
31:22, 43:25, 44:22, 46:14,
46:24, 48:13, 49:7, 55:16,
57:19, 58:13, 64:17, 64:25,
66:9, 72:23, 74:7, 74:9, 77:3,
77:18
needed [2] - 10:5, 42:6
needle [1] - 9:10
needs [5] - 5:23, 44:21,
52:24, 72:18, 76:20
neglected [2] - 12:9, 12:11
negotiations [1] - 67:4
New [3] - 1:16, 67:24, 77:8
new [8] - 11:25, 28:16,
28:18, 29:5, 29:10, 29:12,
32:15, 44:6
news [1] - 74:16
next [16] - 6:25, 10:16,
12:23, 16:9, 16:23, 17:10,
17:18, 25:5, 27:12, 28:17,
36:2, 39:11, 42:18, 47:17,
52:2, 72:25
nice [1] - 40:17
night [3] - 21:25, 23:7, 25:4
NO [1] - 1:2
non [4] - 34:1, 53:23, 54:6,
54:8
non-testifying [4] - 34:1,
53:23, 54:6, 54:8
none [1] - 52:20
nonwritten [1] - 24:21
note [2] - 37:12, 61:7
noted [1] - 69:6
notes [7] - 37:3, 37:4, 40:2,
40:3, 40:10, 61:4, 61:5

**nothing** [4] - 58:11, 62:12, 63:16, 77:1
**notice** [6] - 16:4, 17:9, 21:20, 37:24, 42:2, 45:24
**noticed** [1] - 69:5
**notices** [1] - 8:24
**notify** [2] - 21:15, 33:15
**November** [15] - 5:15, 6:6, 13:3, 16:11, 16:12, 17:10, 17:12, 71:9, 71:18, 74:23, 75:20, 75:21, 75:22, 76:13, 78:16
**number** [12] - 19:17, 24:3, 24:9, 24:14, 24:15, 26:24, 27:5, 37:5, 38:2, 49:6, 62:20, 68:25
**numbers** [4] - 18:16, 24:2, 62:16, 62:17
**numerous** [1] - 48:12
**NW** [1] - 1:18

## O

**o'clock** [4] - 4:4, 75:13, 75:21, 75:22
**objections** [1] - 5:5
**obligated** [2] - 42:15, 49:23
**obligation** [7] - 21:2, 35:14, 38:16, 41:21, 43:4, 46:10, 49:10, 56:2, 69:14
**obligations** [13] - 22:4, 37:1, 37:4, 38:10, 38:17, 43:16, 45:16, 45:19, 45:22, 46:4, 46:12, 59:6, 69:4
**obtain** [1] - 66:22
**obvious** [1] - 29:21
**obviously** [9] - 19:3, 22:14, 27:24, 30:19, 34:4, 65:8, 67:17, 68:25, 71:22
**occasion** [2] - 40:18, 61:20
**October** [1] - 1:4
**OF** [5] - 1:1, 1:3, 1:9, 1:15, 1:18
**offer** [3] - 22:21, 72:24, 72:25
**offered** [1] - 21:25
**offering** [1] - 21:6
**OFFICE** [1] - 1:18
**office** [1] - 65:17
**official** [1] - 5:18
**Official** [2] - 1:22, 78:17
**often** [2] - 8:24, 39:7
**old** [1] - 54:4
**omitted** [1] - 59:21
**once** [4] - 47:11, 47:14, 68:14, 74:6
**one** [40] - 7:16, 7:24, 9:16, 12:9, 12:12, 12:20, 13:7, 13:14, 16:2, 17:16, 17:18, 19:12, 20:6, 20:23, 21:8,

23:9, 26:24, 27:6, 28:4, 28:6, 31:12, 34:5, 34:21, 41:11, 55:25, 56:13, 59:20, 60:12, 62:23, 65:10, 66:20, 69:21, 70:6, 70:18, 71:20, 72:4, 75:23, 77:6
**one's** [1] - 36:22
**ones** [2] - 55:9, 76:18
**ongoing** [4] - 45:16, 45:19, 46:4, 46:8
**open** [8] - 6:9, 39:18, 40:21, 42:22, 42:23, 57:3, 72:17
**opened** [1] - 6:14
**operations** [2] - 38:4, 69:8
**opinion** [1] - 15:25
**opportunity** [1] - 25:13
**oppose** [1] - 49:11
**opposed** [1] - 59:4
**optimistic** [1] - 11:2
**option** [3] - 72:5, 72:10, 72:15
**options** [2] - 58:15, 72:4
**oral** [2] - 27:7, 72:11
**Order** [1] - 3:1
**order** [17] - 5:21, 11:12, 12:1, 12:22, 13:8, 13:12, 15:1, 16:8, 16:25, 21:15, 32:14, 34:16, 45:18, 46:5, 46:17, 46:23, 76:14
**ordered** [1] - 11:17
**orders** [2] - 46:22, 77:16
**ore** [1] - 65:4
**originally** [1] - 23:7
**otherwise** [2] - 49:15, 75:9
**ourselves** [6] - 15:6, 18:13, 41:16, 54:19, 57:13, 66:11
**outline** [1] - 36:24
**outlining** [1] - 37:1
**outset** [1] - 35:9
**outside** [1] - 71:7
**overly** [1] - 57:5
**overwhelming** [1] - 23:1
**owe** [1] - 21:3
**own** [5] - 9:14, 17:6, 30:13, 30:14, 56:12

## P

**p.m** [3] - 1:5, 72:8, 78:4
**pace** [1] - 11:7
**page** [3] - 60:17, 69:6, 70:4
**pages** [5] - 8:25, 33:19, 33:20, 39:12, 61:18
**Pages** [1] - 1:7, 41:4
**Palm** [1] - 72:8
**PALM** [1] - 1:2
**paperless** [6] - 17:6, 43:10, 46:5, 46:21, 46:23, 77:15
**paralegals** [1] - 14:21
**parameters** [1] - 56:24

**part** [14] - 8:25, 21:14, 32:8, 33:22, 33:25, 36:17, 37:4, 45:15, 46:3, 52:21, 57:1, 62:12, 63:23, 78:11
**particular** [7] - 4:13, 23:17, 26:24, 29:17, 59:9, 66:5, 70:7
**particularize** [2] - 21:2, 25:19
**particularly** [2] - 49:6, 64:20
**particulars** [2] - 23:20, 30:8
**parties** [7] - 6:13, 10:19, 11:24, 12:5, 12:21, 13:8, 47:12
**parts** [1] - 14:17
**past** [2] - 12:13, 50:12
**Patel** [9] - 3:3, 3:16, 3:21, 3:22, 25:1, 40:9, 41:15, 51:9, 63:8
**PATEL** [1] - 1:6
**patrol** [3] - 20:14, 32:24, 33:3
**pause** [1] - 43:18
**pay** [1] - 19:18
**PC** [2] - 1:18, 2:3
**Peachtree** [1] - 1:18
**Peactree** [1] - 2:6
**pending** [9] - 5:2, 5:12, 16:11, 54:13, 65:21, 74:2, 75:19, 76:4, 76:18
**people** [2] - 12:15, 21:9, 22:20, 43:1, 43:2, 44:6
**per** [2] - 59:16, 60:25
**perfect** [4] - 8:7, 16:7, 16:24
**perhaps** [10] - 8:2, 12:5, 13:7, 16:2, 24:7, 26:9, 30:17, 31:7, 51:9, 57:16
**period** [2] - 14:8, 14:11
**permit** [1] - 20:3
**person** [2] - 30:25, 71:23
**personnel** [1] - 18:21
**perspective** [5] - 17:22, 37:14, 48:25, 57:2, 60:8
**pertain** [1] - 36:22
**pertaining** [1] - 26:19
**pertains** [2] - 22:6, 22:9
**peruse** [1] - 50:9
**phone** [6] - 3:17, 4:8, 15:11, 40:17, 40:21, 41:2
**phrase** [1] - 45:24
**physical** [1] - 36:15
**pick** [4] - 5:3, 32:17, 47:16, 71:12
**picking** [1] - 6:3
**picture** [1] - 21:5
**piggyback** [1] - 57:24
**piggybacks** [2] - 45:19
**place** [8] - 4:12, 13:7,

34:21, 40:7, 51:4, 61:15, 63:23, 64:4
**placeholder** [1] - 42:6
**places** [1] - 30:21
**plan** [6] - 4:11, 14:4, 24:16, 25:4, 71:24, 74:17
**planning** [1] - 23:2
**plans** [1] - 74:14
**play** [1] - 18:7
**players** [1] - 9:13
**plea** [5] - 69:22, 70:1, 70:3, 70:7, 70:11
**pleadings** [3] - 9:9, 19:9, 23:6
**plenty** [1] - 39:17
**point** [28] - 10:9, 11:21, 13:19, 17:14, 20:18, 20:23, 22:2, 25:2, 27:21, 32:10, 36:14, 37:13, 40:12, 42:4, 48:11, 51:18, 52:2, 52:13, 55:17, 58:4, 61:7, 61:8, 62:1, 63:4, 65:20, 68:6, 70:19, 72:9
**Point** [1] - 59:14
**pointed** [7] - 9:23, 14:17, 15:14, 23:14, 29:17, 41:23, 76:7
**pointing** [1] - 22:13
**points** [1] - 71:1
**policy** [1] - 39:18
**pool** [1] - 26:21
**position** [15] - 19:20, 27:13, 48:22, 50:5, 51:22, 52:24, 54:5, 54:12, 54:17, 55:24, 57:15, 58:13, 62:15, 73:14, 76:19
**positive** [1] - 51:10
**possession** [2] - 36:8, 45:12
**possibility** [2] - 26:12, 58:22
**possible** [7] - 7:22, 10:1, 26:6, 37:17, 49:6, 49:9, 73:9
**postconviction** [1] - 67:24
**posture** [1] - 54:8
**potential** [6] - 4:23, 30:9, 44:2, 48:25, 53:9, 53:10
**potentially** [5] - 50:17, 56:15, 62:5, 62:21, 68:21
**practice** [2] - 4:12, 44:3
**prefer** [4] - 16:15, 34:14, 66:1, 75:11
**preliminary** [2] - 30:10, 49:3
**premature** [3] - 54:21, 54:22, 66:10
**prepandemic** [1] - 9:8
**preparation** [1] - 15:3
**prepare** [1] - 44:20
**prepared** [1] - 44:8

preparing [2] - 29:2, 44:1
preponderance [1] - 35:16
prerequisites [1] - 20:17
present [6] - 8:14, 48:12,
54:10, 61:21, 67:6, 67:7
presentation [2] - 18:4,
18:13
presentations [1] - 68:17
presented [1] - 27:5
presenting [1] - 57:22
press [1] - 10:25
presumably [3] - 5:5, 24:4,
29:24
presumption [1] - 24:4
pretrial [1] - 18:8
pretty [1] - 55:20
prevent [1] - 18:7
previously [1] - 9:1
privilege [4] - 37:21, 38:6,
55:9, 62:25
problem [6] - 22:23, 38:22,
39:11, 39:16, 44:12, 62:14
problematic [1] - 19:24
problems [1] - 21:2
proceed [2] - 52:2, 57:1
proceedings [2] - 15:5,
78:9
process [1] - 32:8
produce [4] - 36:7, 40:16,
49:23, 59:6
produced [22] - 28:19,
30:22, 30:25, 36:23, 37:17,
38:12, 42:18, 43:15, 43:20,
43:23, 43:24, 46:3, 46:12,
49:14, 49:19, 51:7, 55:7,
55:8, 55:25, 59:7, 61:16,
68:16
production [17] - 9:7, 9:9,
9:10, 9:11, 9:22, 10:23,
22:14, 30:5, 31:3, 37:13,
40:22, 44:13, 45:2, 45:4,
46:8, 49:11, 64:18
productions [2] - 22:7,
30:20
proffer [2] - 19:22, 19:25
proffers [6] - 9:14, 24:18,
37:16, 37:20, 66:25, 68:17
progress [2] - 34:15, 69:2
progression [2] - 63:22,
64:20
prohibit [1] - 18:5
prominent [2] - 51:1, 51:2
prompt [1] - 4:6
prompted [1] - 48:3
promptly [1] - 20:16
proposal [4] - 8:15, 12:7,
73:25, 74:21
proposals [2] - 7:7, 7:11
propose [3] - 21:1, 21:14,
47:2

proposed [4] - 11:23, 15:1,
16:7, 27:22
proposition [1] - 37:6
prosecuted [1] - 65:11
prosecution [4] - 3:8, 3:9,
27:11, 63:9
prosecutor [7] - 12:12,
27:10, 57:7, 57:24, 68:10,
68:12, 69:12
prosecutors [2] - 56:19,
69:1
provide [6] - 11:14, 11:18,
15:1, 30:17, 30:24, 68:5
provided [5] - 19:2, 22:8,
34:21, 39:5, 43:7
providing [1] - 26:21
Pryor [1] - 73:22
pulled [1] - 62:2
purposes [5] - 5:19, 49:8,
50:8
pursuant [4] - 32:2, 43:15,
46:12, 62:25
purview [1] - 45:11
push [1] - 71:22
put [21] - 7:15, 9:4, 11:25,
12:1, 16:25, 17:11, 24:20,
32:6, 32:7, 32:12, 34:15,
42:23, 43:12, 46:23, 49:2,
49:4, 49:7, 49:17, 50:22,
62:8, 70:13
putting [5] - 10:10, 33:19,
42:1, 45:24, 69:15

Q

qualifying [1] - 55:21
questioning [1] - 56:20
quick [1] - 12:9
quickly [1] - 16:1
quite [15] - 9:19, 16:1, 16:9,
17:20, 20:8, 30:11, 33:24,
34:13, 37:11, 37:17, 57:2,
58:11, 66:17, 71:11, 76:15

R

Rafferty [1] - 3:18
RAFFERTY [8] - 2:5, 3:19,
11:11, 15:9, 31:19, 33:25,
69:21, 75:15
raise [4] - 7:7, 11:12, 15:12,
71:1
raised [5] - 5:6, 63:25, 76:9,
76:21, 77:20
raises [1] - 37:15
raising [1] - 69:14
ranges [1] - 16:14
rather [3] - 6:14, 54:13,
71:16
raw [4] - 37:4, 61:4, 61:5,

61:7
reach [3] - 8:4, 32:5, 47:19
reaction [3] - 58:21, 58:23,
59:2
read [2] - 62:22, 73:13
ready [12] - 5:13, 7:11,
10:11, 11:20, 47:8, 52:5,
64:7, 64:11, 65:6, 65:23,
66:7, 76:19
real [1] - 52:14
reality [1] - 18:1
realize [1] - 56:11
really [29] - 9:19, 10:6, 10:7,
13:1, 13:13, 18:25, 20:20,
25:24, 26:3, 32:12, 32:23,
36:6, 36:25, 37:2, 37:6,
39:21, 42:12, 43:21, 47:8,
47:14, 48:4, 51:5, 52:20,
55:14, 57:5, 58:17, 61:23,
66:8, 68:19
reason [9] - 9:5, 18:25,
37:11, 51:7, 51:13, 52:4,
61:19, 63:9, 72:2
reasonable [1] - 26:14
reasons [3] - 35:6, 35:24,
57:9
receive [1] - 19:18
received [3] - 24:19, 38:5,
61:25
receiving [1] - 8:23
recent [3] - 4:21, 22:7,
35:21
recently [1] - 55:9
recess [1] - 52:15
recessed [1] - 78:4
reciprocal [2] - 28:9, 38:17
reciprocated [1] - 3:13
reckless [2] - 70:8, 70:13
recognize [8] - 9:6, 9:15,
10:2, 10:7, 15:15, 60:21,
61:9, 64:15
recognizes [1] - 35:14
recognizing [1] - 59:13
recollection [3] - 5:14,
67:6, 67:7
recommendations [1] -
77:10
record [5] - 35:6, 35:20,
35:23, 35:25, 62:13
recordings [1] - 26:19
records [1] - 35:20
red [2] - 7:7, 60:13
referred [1] - 4:21
refresh [1] - 5:14
regard [3] - 9:1, 45:3, 49:10
regarding [12] - 4:23, 8:15,
11:7, 19:17, 22:4, 38:3, 46:2,
50:6, 54:16, 66:5, 66:6,
66:24
regardless [1] - 48:19

REGINALD [1] - 1:14
Reginald [1] - 3:7
regulations [1] - 38:1
reindictment [1] - 51:2
Reinhart [9] - 4:24, 5:9,
7:18, 7:19, 13:2, 47:18, 71:6,
72:6, 76:2
Reinhart's [2] - 13:10,
38:15
related [3] - 43:14, 64:10,
66:25
relates [1] - 67:18
relationship [1] - 76:4
release [3] - 4:15, 4:22,
55:5
relevance [1] - 57:6
relevant [1] - 53:25
relying [2] - 18:16, 26:4
remaining [2] - 5:4, 8:17
remember [3] - 23:7, 41:4,
41:5
reminding [1] - 10:12
reminds [1] - 38:14
remotely [1] - 78:13
removal [1] - 36:18
renew [1] - 10:15
repeat [1] - 42:20
repeating [2] - 24:8, 25:9
repetitive [1] - 29:11
reply [1] - 17:14
report [10] - 31:2, 40:10,
44:22, 60:15, 61:2, 61:3,
61:7, 62:4, 68:16, 68:20
REPORTED [1] - 1:20
reportedly [1] - 9:11
Reporter [2] - 1:22, 78:17
reporting [1] - 78:13
reports [18] - 26:20, 27:8,
27:15, 28:7, 28:13, 28:16,
28:19, 30:17, 30:21, 30:25,
31:11, 34:20, 37:9, 55:5,
55:6, 60:5, 60:10, 64:23
representations [1] - 38:2
represented [1] - 19:15
representing [1] - 37:22
request [14] - 4:19, 17:2,
26:19, 27:3, 35:7, 38:14,
42:11, 48:23, 51:13, 51:18,
51:23, 64:6, 65:4, 69:3
requested [3] - 9:17, 26:1,
76:12
requests [4] - 26:15, 26:16,
36:13, 50:7
require [1] - 65:14
required [1] - 20:1
requirement [1] - 45:17
requires [1] - 64:8
reserve [1] - 16:4
resetting [1] - 8:16

**respect** [9] - 26:17, 26:23, 27:3, 32:5, 53:3, 53:5, 54:23, 59:7, 70:17
**respond** [4] - 4:18, 5:7, 16:4, 70:21
**response** [15] - 4:17, 16:17, 16:20, 16:22, 17:8, 22:3, 36:10, 43:19, 47:16, 50:6, 52:18, 68:24, 69:6, 73:13, 76:13
**responses** [1] - 36:12
**responsive** [1] - 38:12
**rest** [2] - 77:13, 77:25
**result** [1] - 67:25
**return** [3] - 71:21, 71:23, 72:10
**review** [18] - 22:10, 30:13, 50:9, 50:22, 51:22, 52:11, 52:24, 58:19, 61:17, 62:10, 64:5, 64:8, 64:9, 64:25, 65:5, 66:13, 68:25, 69:4
**reviewed** [1] - 52:9
**reviewing** [1] - 23:6
**reviews** [1] - 69:8
**RMR** [2] - 1:22, 78:16
**roadmap** [1] - 46:15
**RODOLFO** [1] - 1:10
**Rodolfo** [1] - 1:23
**roll** [1] - 23:4
**rolling** [3] - 30:16, 31:9, 34:18
**Rookard** [1] - 3:8
**ROOKARD** [1] - 1:14
**room** [1] - 72:15
**rough** [5] - 37:3, 37:12, 40:2, 40:3, 40:9
**round** [1] - 10:3
**round-the-clock** [1] - 10:3
**row** [1] - 5:24
**RPR** [2] - 1:22, 78:16
**RUIZ** [1] - 1:10
**Ruiz** [1] - 1:23
**rule** [5] - 25:8, 32:3, 57:3, 71:19, 74:10
**Rule** [7] - 25:14, 29:13, 37:5, 38:18, 40:4, 53:18
**ruled** [1] - 46:20
**rules** [1] - 38:1
**ruling** [3] - 8:12, 10:5, 35:23
**rulings** [3] - 71:17, 73:9, 73:14
**run** [1] - 30:14
**rush** [1] - 65:21

## S

**SADOW** [23] - 1:17, 1:18, 4:1, 15:22, 48:7, 50:8, 53:13, 53:15, 53:17, 56:9, 61:11,

66:17, 69:17, 71:4, 71:25, 74:23, 75:3, 75:5, 75:9, 75:17, 77:4, 77:12, 78:2
**Sadow** [35] - 3:18, 3:23, 8:14, 8:20, 15:10, 15:20, 48:1, 48:2, 49:24, 52:1, 52:13, 53:14, 53:16, 55:18, 55:23, 56:7, 56:25, 58:18, 60:16, 62:12, 64:7, 66:15, 69:9, 69:18, 69:22, 70:19, 70:20, 70:25, 71:21, 73:17, 73:25, 74:21, 76:25, 77:2, 78:3
**Sadow's** [1] - 65:20
**safe** [1] - 77:14
**SAMUEL** [31] - 2:2, 2:3, 3:17, 3:21, 8:18, 10:12, 10:15, 13:5, 16:22, 17:3, 20:22, 22:16, 23:11, 23:20, 23:23, 24:1, 24:12, 24:23, 24:25, 38:22, 39:1, 39:25, 40:7, 40:25, 41:2, 42:14, 42:25, 47:25, 53:12, 73:16, 76:25
**Samuel** [2] - 3:17, 67:23
**Samuel's** [1] - 44:1
**schedule** [6] - 12:6, 13:22, 13:24, 13:25, 15:16, 77:19
**scheduling** [26] - 5:19, 6:17, 7:2, 7:5, 7:11, 7:22, 8:15, 11:4, 11:7, 12:1, 12:9, 12:22, 13:8, 13:12, 14:6, 15:1, 15:12, 16:2, 16:8, 21:15, 32:14, 34:16, 47:21, 48:5, 67:20, 75:25
**scheduling-wise** [1] - 15:12
**scheme** [2] - 19:18, 61:22
**scrambling** [1] - 66:12
**se** [2] - 59:16, 60:25
**search** [3] - 29:24, 44:19, 49:7
**searchable** [2] - 9:11, 40:23
**searches** [1] - 30:14
**seated** [1] - 3:21
**second** [3] - 13:19, 35:22, 57:1
**SECTION** [1] - 1:15
**section** [2] - 11:14, 34:3
**see** [30] - 4:5, 4:7, 5:22, 6:24, 8:1, 18:24, 28:18, 31:1, 31:24, 37:11, 37:13, 41:16, 42:22, 47:18, 50:5, 50:18, 56:5, 56:23, 58:17, 60:2, 60:4, 60:22, 62:10, 66:18, 74:15, 74:16, 76:3, 77:9, 77:14
**seeing** [3] - 24:6, 58:25, 71:15
**seek** [2] - 35:1, 50:22

**seeking** [2] - 35:9, 53:8
**seem** [5] - 8:9, 33:1, 54:24, 55:16, 58:7
**send** [2] - 29:6, 44:10
**sending** [1] - 26:15
**sense** [10] - 7:19, 16:19, 17:22, 23:13, 23:19, 41:20, 43:18, 66:13, 73:7, 76:3
**sent** [2] - 26:18, 71:7
**separate** [2] - 5:9, 76:14
**September** [3] - 49:4, 51:1, 51:3
**serves** [1] - 13:2
**set** [28] - 5:14, 6:5, 7:5, 8:3, 9:8, 9:19, 11:16, 13:2, 13:12, 15:24, 16:10, 16:12, 16:16, 16:25, 17:8, 33:5, 34:23, 36:3, 47:22, 71:9, 72:6, 72:17, 74:2, 75:5, 75:11, 75:19, 76:12, 76:18
**setting** [6] - 5:9, 6:16, 8:16, 17:10, 41:13, 47:4
**several** [1] - 30:22
**shall** [2] - 34:21, 43:15
**share** [1] - 36:10
**shared** [1] - 38:1
**sharing** [2] - 25:17, 25:18
**short** [2] - 22:11, 46:6
**show** [4] - 21:18, 38:24, 63:21, 64:20
**shown** [1] - 23:23
**shrunk** [2] - 33:22
**shy** [1] - 26:15
**side** [9] - 12:3, 13:4, 15:7, 15:20, 20:5, 38:19, 47:23, 58:8, 59:1
**sides** [1] - 5:5
**sign** [1] - 60:14
**significant** [1] - 62:2
**similar** [2] - 38:15, 52:18
**simple** [1] - 65:17
**simpler** [1] - 32:9
**simplifying** [1] - 57:5
**single** [1] - 62:23
**sit** [1] - 12:21
**sitting** [4] - 6:6, 7:23, 54:3, 71:7
**situation** [2] - 29:19, 60:22
**situational** [2] - 52:12, 65:25
**situations** [1] - 69:12
**sleeves** [1] - 23:4
**slightly** [1] - 27:23
**small** [1] - 70:18
**so.,** [1] - 73:24
**solution** [1] - 25:19
**solved** [1] - 39:4
**someone** [3] - 24:7, 29:12, 41:23

**something's** [1] - 51:5
**sometimes** [3] - 50:13, 66:2, 67:22
**somewhat** [2] - 21:5, 52:19
**somewhere** [3] - 31:22, 42:19, 77:7
**sorry** [3] - 53:15, 66:17, 75:4
**sort** [9] - 7:15, 12:13, 29:9, 29:11, 30:16, 44:5, 45:2, 58:23, 69:2
**sorts** [1] - 57:9
**sought** [1] - 37:18
**sound** [1] - 75:13
**sounds** [10] - 25:24, 31:7, 33:14, 48:25, 55:13, 55:15, 56:3, 56:7, 65:2, 69:13
**sources** [1] - 64:16
**SOUTHERN** [1] - 1:1
**Southern** [1] - 70:1
**Spain** [3] - 4:3, 54:3, 77:7
**speaking** [1] - 70:10
**special** [2] - 9:8, 9:19
**specific** [2] - 26:16, 36:13, 70:4
**specifically** [4] - 22:9, 22:17, 43:15, 45:10
**speculation** [2] - 36:18, 49:20, 64:14
**speculative** [1] - 52:19
**spell** [1] - 34:13
**spelled** [2] - 69:23, 69:24
**Sporn** [1] - 36:15
**squarely** [1] - 58:24
**squaring** [1] - 59:17
**staff** [1] - 14:21
**stage** [1] - 65:5
**stamp** [1] - 44:11
**stamped** [1] - 26:10
**stamps** [5] - 22:8, 24:20, 30:18, 31:1, 34:21
**stand** [9] - 24:8, 27:14, 29:3, 34:5, 37:5, 46:19, 49:17, 53:24, 54:9
**standard** [1] - 35:16
**standing** [1] - 47:18
**start** [16] - 5:13, 12:14, 13:21, 14:1, 14:15, 14:23, 18:21, 21:23, 31:16, 31:20, 38:7, 68:15, 73:3, 75:12
**started** [1] - 36:5
**starting** [5] - 13:21, 21:23, 23:4, 29:11, 68:23
**starts** [1] - 13:22
**statement** [7] - 20:13, 20:25, 25:15, 30:4, 35:18, 55:18, 58:2
**statements** [27] - 17:24, 18:2, 18:4, 18:6, 18:14, 19:11, 20:4, 20:16, 21:3,

21:10, 21:17, 25:5, 26:5, 26:7, 26:8, 26:23, 27:7, 27:17, 27:20, 46:2, 53:20, 56:6, 56:10, 56:12, 62:19, 62:22
**States** [5] - 1:23, 3:2, 3:5, 52:15, 78:17
**STATES** [4] - 1:1, 1:3, 1:10, 1:15
**station** [1] - 74:19
**stationed** [1] - 5:18
**stay** [1] - 74:14
**STENOGRAPHICALLY** [1] - 1:20
**Steve** [1] - 3:18
**STEVEN** [2] - 1:17, 1:18
**Steven** [1] - 3:7
**still** [8] - 6:17, 11:1, 22:11, 22:15, 31:18, 37:2, 60:2, 65:22
**stipulates** [1] - 13:9
**stipulations** [1] - 32:5
**stonewalling** [1] - 45:2
**stop** [2] - 60:14
**story** [4] - 57:8, 59:15, 59:21
**story's** [1] - 59:13
**strategy** [1] - 60:25
**streamline** [2] - 15:5, 19:14
**streamlining** [1] - 32:4
**Street** [2] - 1:18, 2:6
**strength** [1] - 58:10
**stretch** [1] - 59:2
**strike** [2] - 3:11, 18:11
**striking** [1] - 20:16
**string** [1] - 63:13
**strong** [3] - 6:22, 41:20, 73:4
**strongly** [1] - 57:10
**stuff** [11] - 7:2, 27:4, 27:20, 31:25, 32:7, 33:19, 42:7, 45:14, 52:20, 65:3
**subject** [2] - 67:18, 78:12
**submit** [1] - 28:12
**submitted** [1] - 47:12
**submitting** [1] - 47:6
**substance** [2] - 7:4, 67:21
**substantial** [1] - 62:9
**substantive** [3] - 23:11, 23:12, 26:17
**suddenly** [1] - 20:24
**sufficient** [2] - 20:1, 39:19
**suggest** [8] - 12:5, 15:8, 44:18, 46:25, 70:15, 70:16, 71:14, 71:20
**suggested** [2] - 14:25, 30:7
**suggesting** [4] - 29:21, 43:24, 43:25, 63:5
**suggestion** [6] - 27:1,

31:21, 44:1, 49:20, 73:21
**suggests** [2] - 19:4, 19:25
**Suite** [2] - 1:19, 2:6
**summarily** [3] - 9:2, 9:3, 9:5
**summarize** [1] - 32:13
**superseding** [3] - 23:9, 51:3, 52:21
**supporting** [1] - 57:4
**suppose** [1] - 7:17
**surprise** [1] - 19:7
**surprised** [1] - 49:24
**surrounding** [1] - 70:18
**suspect** [2] - 8:2, 70:11
**swift** [1] - 10:5

---

## T

**table** [1] - 44:6
**tackle** [1] - 5:1
**target** [2] - 59:17, 59:22
**task** [1] - 15:19
**taxing** [1] - 12:18
**team** [16] - 3:7, 3:8, 3:9, 9:17, 10:3, 10:21, 11:3, 11:9, 13:20, 16:6, 27:11, 31:12, 40:15, 45:7, 65:15, 75:6
**tech** [1] - 14:21
**technological** [1] - 78:12
**teed** [2] - 58:24, 60:20
**teeing** [1] - 64:5
**telemedicine** [1] - 18:20
**telephonically** [1] - 78:11
**ten** [1] - 24:1
**tens** [1] - 22:19
**tenus** [1] - 65:4
**term** [1] - 38:13
**terms** [13] - 9:21, 11:4, 11:19, 14:5, 26:4, 27:7, 28:22, 38:14, 44:13, 47:2, 52:21, 57:6, 71:16
**terribly** [1] - 15:25, 49:24
**testified** [1] - 55:20
**testify** [10] - 28:5, 29:2, 30:18, 31:11, 34:20, 48:20, 49:9, 53:11, 63:13, 67:19
**testifying** [8] - 34:1, 34:6, 53:23, 54:6, 54:8, 62:22, 63:8, 68:4
**testimony** [4] - 22:1, 55:8, 64:11, 66:25
**testing** [1] - 18:17
**tests** [4] - 46:2, 70:7, 70:9, 70:14
**text** [12] - 21:7, 31:25, 33:11, 48:14, 48:19, 49:12, 49:14, 50:10, 50:20, 51:19, 56:13, 61:15
**texting** [1] - 48:1
**texts** [5] - 48:24, 50:2,

52:25, 64:11, 66:6
**Thanksgiving** [2] - 72:13, 74:14
**that'll** [2] - 15:3, 75:23
**THE** [88] - 1:10, 1:13, 1:17, 2:2, 3:2, 3:10, 3:14, 3:20, 3:22, 4:2, 7:25, 9:3, 10:14, 10:18, 11:21, 12:20, 13:6, 15:10, 15:23, 16:24, 17:4, 22:2, 23:3, 23:12, 23:22, 23:25, 24:11, 24:22, 24:24, 25:23, 28:21, 29:4, 29:8, 29:15, 31:4, 31:6, 32:10, 33:13, 33:21, 34:10, 35:4, 38:25, 39:24, 40:6, 40:19, 41:1, 41:3, 42:24, 43:8, 44:25, 48:2, 48:21, 49:24, 52:1, 53:14, 53:16, 54:12, 55:1, 55:13, 56:25, 59:10, 60:6, 60:16, 64:2, 65:13, 65:19, 66:15, 68:7, 69:5, 69:18, 70:20, 70:25, 71:6, 72:1, 73:11, 73:19, 75:1, 75:4, 75:8, 75:10, 75:16, 75:18, 76:23, 77:2, 77:6, 77:13, 77:25, 78:3
**themselves** [3] - 29:19, 31:1, 68:20
**theory** [3] - 58:20, 60:21, 64:21
**therefore** [1] - 78:12
**they've** [12] - 19:15, 21:25, 24:7, 24:17, 26:14, 29:13, 30:22, 31:3, 38:11, 43:7, 45:22
**thinking** [5] - 13:22, 16:21, 38:18, 59:1, 73:1
**thinks** [1] - 8:1
**third** [1] - 27:9
**thorough** [2] - 27:16, 37:11
**thousand** [1] - 8:25
**thousands** [2] - 22:19
**three** [6] - 6:18, 23:8, 24:18, 60:13, 74:2, 75:19
**thrilled** [1] - 73:22
**throughout** [2] - 4:24, 59:22
**throw** [2] - 11:5, 66:15
**throwing** [3] - 16:14, 18:16, 59:24
**tied** [1] - 7:21
**ties** [1] - 7:18
**timeline** [1] - 28:22
**timeliness** [1] - 8:1
**timing** [1] - 47:2, 47:20
**today** [29] - 3:4, 3:11, 3:16, 4:7, 4:11, 5:3, 5:20, 5:22, 6:3, 6:9, 6:15, 7:5, 8:1, 8:17, 12:21, 15:24, 22:3, 27:13, 30:16, 34:14, 34:15, 35:22,

36:4, 44:18, 46:21, 47:19, 47:23, 65:17, 71:12
**today's** [1] - 11:6
**together** [9] - 5:8, 6:10, 13:18, 32:12, 32:17, 50:22, 62:9, 69:15, 74:9
**tomorrow** [7] - 12:6, 15:1, 16:8, 47:1, 47:20, 71:25, 77:18
**topics** [1] - 55:6
**total** [1] - 62:15
**totally** [2] - 10:18, 58:20
**touched** [1] - 56:11
**touching** [1] - 36:5
**towards** [1] - 32:3
**town** [1] - 72:1
**track** [2] - 21:10, 77:1
**traffic** [2] - 12:13, 12:16, 13:23, 23:15
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 52:11, 55:7
**transcription** [1] - 78:9
**transcripts** [8] - 48:18, 48:23, 49:12, 50:3, 51:25, 52:9, 52:25, 66:4
**travel** [2] - 12:10, 74:14
**traveling** [1] - 64:14
**travels** [3] - 71:22, 72:14, 77:13
**treatment** [1] - 76:8
**tremendously** [2] - 27:3, 28:10
**trial** [40] - 5:13, 5:15, 5:16, 10:24, 11:13, 11:15, 12:18, 13:24, 13:25, 14:7, 14:9, 14:10, 15:6, 16:13, 18:7, 19:7, 20:21, 20:22, 21:18, 21:22, 25:8, 28:5, 28:18, 31:23, 32:4, 44:2, 44:8, 44:20, 47:8, 52:3, 52:14, 52:22, 53:20, 54:20, 65:22, 65:24, 66:1, 72:3
**trials** [1] - 12:13
**trickier** [1] - 24:21
**tried** [2] - 6:23, 52:10
**triggers** [1] - 64:25
**trip** [1] - 77:14
**true** [2] - 9:4, 41:3
**trust** [1] - 34:12
**truth** [1] - 50:14
**try** [14] - 5:19, 5:25, 6:21, 10:9, 10:22, 10:25, 13:21, 13:22, 14:12, 15:17, 26:6, 32:5, 34:15, 41:10
**trying** [23] - 10:11, 14:4, 14:14, 16:10, 19:14, 23:13, 23:15, 23:18, 25:2, 29:15, 30:1, 31:13, 35:9, 41:13, 51:14, 52:7, 58:2, 58:3, 58:17, 60:24, 63:20, 66:12,

71:12
**turn** [15] - 7:9, 11:17, 11:21, 16:6, 19:12, 39:9, 40:9, 48:6, 48:14, 48:18, 48:21, 48:22, 60:17, 67:2, 77:15
**turned** [6] - 32:15, 37:22, 37:23, 39:17, 55:16, 56:4
**turning** [1] - 60:10
**turns** [1] - 67:7
**two** [12] - 7:20, 12:20, 13:14, 14:9, 14:11, 28:12, 57:7, 57:18, 57:19, 60:12, 72:4, 72:17
**type** [6] - 27:20, 28:11, 30:3, 55:11, 63:11
**types** [1] - 46:2

## U

**unable** [1] - 18:13
**uncomfortable** [1] - 56:21
**uncovered** [1] - 46:11
**under** [27] - 19:23, 20:9, 20:17, 22:4, 29:13, 34:2, 35:1, 37:3, 37:5, 37:12, 37:14, 40:4, 45:11, 45:14, 46:2, 53:12, 53:18, 54:1, 54:7, 56:24, 58:5, 58:22, 59:2, 59:20, 60:19, 67:9, 67:17
**understandable** [1] - 10:18
**understood** [1] - 66:14
**undertaking** [1] - 69:4
**unfair** [1] - 33:2
**unindicted** [7] - 18:6, 24:6, 63:6, 66:23, 67:3, 67:8, 67:16
**unintentionally** [1] - 42:23
**UNITED** [4] - 1:1, 1:3, 1:10, 1:15
**United** [5] - 1:23, 3:2, 3:4, 52:15, 78:17
**universe** [8] - 18:24, 27:4, 29:18, 29:23, 33:21, 35:10, 41:16, 60:19
**unless** [1] - 50:1
**unlike** [1] - 38:22
**unlikely** [1] - 70:12
**unopposed** [3] - 16:3, 17:4, 17:8
**unwieldy** [2] - 18:21, 40:23
**up** [30] - 4:11, 4:13, 5:1, 5:9, 6:9, 6:14, 7:21, 11:6, 12:22, 14:15, 15:18, 18:13, 21:19, 23:4, 26:18, 29:2, 37:6, 51:16, 52:17, 55:17, 58:25, 59:17, 59:25, 60:20, 64:2, 64:5, 65:6, 73:18, 73:20, 75:11
**upfront** [3] - 8:9, 33:4,

41:18
**urge** [2] - 10:19, 10:20
**useful** [1] - 34:7
**utilization** [1] - 36:21
**utilized** [1] - 23:10

## V

**vacated** [1] - 67:25
**valuable** [2] - 47:9, 52:3
**value** [1] - 44:3
**version** [1] - 40:17
**versus** [3] - 3:3, 23:18, 60:25
**vicinity** [1] - 62:20
**view** [8] - 22:12, 33:1, 36:10, 37:25, 38:15, 56:1, 57:22, 70:22
**violation** [1] - 20:16
**volume** [3] - 8:22, 15:15, 30:2
**voluminous** [8] - 9:7, 9:23, 10:23, 14:18, 22:7, 26:22, 40:22, 44:17
**voluntarily** [1] - 50:19
**vs** [1] - 1:5

## W

**wait** [3] - 13:15, 46:22, 72:24
**waived** [1] - 55:9
**waivers** [2] - 37:18, 38:6
**walking** [1] - 46:18
**wants** [3] - 5:7, 28:11, 48:1
**warrants** [1] - 49:7
**Washington** [1] - 1:16
**Wednesday** [1] - 72:6
**wee** [1] - 41:2
**weeds** [1] - 26:2
**week** [11] - 6:7, 16:9, 16:13, 17:13, 27:12, 71:18, 72:11, 72:12, 77:19, 77:23
**weeks** [2] - 6:18, 65:22
**weigh** [2] - 48:4, 60:22
**WEST** [1] - 1:2
**West** [1] - 72:8
**whereas** [1] - 20:8
**White** [19] - 36:16, 50:25, 51:7, 51:11, 54:16, 54:24, 55:1, 55:24, 60:11, 61:12, 61:14, 61:20, 62:1, 62:7, 62:13, 63:23, 64:10, 65:11
**white** [13] - 52:18, 53:3, 53:5, 53:20, 55:15, 56:6, 56:14, 58:12, 59:7, 59:12, 59:14, 59:21, 66:5
**White's** [1] - 56:20
**whole** [1] - 40:15
**wholly** [1] - 33:2

**willing** [3] - 11:18, 48:18, 63:15
**Wilson** [1] - 73:22
**window** [1] - 16:18
**wise** [1] - 15:12
**witness** [34] - 23:23, 25:11, 27:22, 27:25, 30:13, 30:23, 34:5, 38:24, 39:1, 39:3, 44:21, 49:3, 49:17, 50:15, 50:24, 53:10, 53:24, 54:9, 55:4, 55:20, 56:16, 57:7, 57:8, 57:21, 57:25, 62:2, 63:17, 67:18, 68:14, 68:18, 68:20, 69:25
**witness's** [1] - 57:11
**witnesses** [17] - 14:21, 21:18, 22:6, 27:11, 27:14, 28:6, 28:16, 28:17, 28:23, 30:18, 50:13, 50:14, 58:14, 62:24, 63:3, 69:1
**wondering** [3] - 29:22, 57:13, 57:25
**word** [4] - 9:3, 34:12, 43:9, 61:10
**words** [2] - 43:12, 60:11
**works** [1] - 16:2
**world** [3] - 8:7, 60:2, 60:4
**worried** [1] - 18:10
**worst** [1] - 41:9
**worth** [1] - 50:4
**wrapping** [1] - 11:5
**writ** [2] - 68:9, 69:11
**writing** [1] - 40:8
**written** [5] - 21:8, 24:5, 24:7, 67:4, 67:13
**Wuagneaux** [1] - 54:4
**WUAGNEAUX** [1] - 54:4

## Y

**Year** [1] - 77:8
**years** [3] - 30:22, 50:13, 57:20
**Yellow** [1] - 41:4
**yellow** [1] - 60:13
**yesterday** [2] - 4:20, 36:11
**York** [2] - 1:16, 67:24
**yourself** [1] - 56:5

## Z

**Z-I-R-O-S** [1] - 69:24
**Ziros** [3] - 69:23, 69:24, 70:17
**Zoom** [5] - 4:5, 4:6, 74:7, 74:13, 75:23