```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                      CASE NO. 19-CR-80181-RAR-1
 3

 4   UNITED STATES OF AMERICA,            Miami, Florida

 5                                        November 2, 2022
             vs.
 6                                        1:06 p.m. - 2:19 p.m.

 7   MINAL PATEL,

 8              Defendant.                Pages 1 to 71

 9   _____

10                  TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE BRUCE E. REINHART
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13
     FOR THE GOVERNMENT:        JAMIE DE BOER
14                              EMILY GURSKIS
                                UNITED STATES DEPARTMENT OF JUSTICE
15                              CRIMINAL DIVISION, FRAUD SECTION
                                1400 New York Avenue, 8th Floor
16                              Washington, D.C. 20005

17   FOR THE DEFENDANT:         STEVEN H. SADOW
                                LAW OFFICE OF STEVEN H. SADOW, PC
18                              260 Peachtree Street NW
                                Suite 2052
19                              Atlanta, Georgia 30303

20
     STENOGRAPHICALLY REPORTED BY:
21
                                ILONA LUPOWITZ, CRR, RPR, RMR
22                              Official Court Reporter to:
                                The Honorable Rodolfo A. Ruiz, II
23                              United States District Court
                                299 East Broward Boulevard
24                              Fort Lauderdale, Florida 3301
                                (954) 769-5568
25
```

```
1    (Appearances continued)

2
     FOR THE DEFENDANT:              DONALD F. SAMUEL
3                                    GARLAND, SAMUEL & LOEB, PC
                                     3131 Maple Drive NE
4                                    Atlanta Georgia 30305

5

6                                I N D E X
7

8

9                          GOVERNMENT'S EXHIBITS

10

11   Exhibit                                        Received

12   Composite 1                                    20

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1               (Call to the Order of the Court.)

 2          THE COURT:  Good afternoon.  This is Case No. 19-80181,

 3     United States of America versus Minal Patel.

 4          May I have appearances for the government, please.

 5          MS. DE BOER:  Good afternoon, Your Honor.  Jamie de

 6     Boer, Emily Gurskis, Mark Cipolletti, and Steven Michaels from

 7     the government.  Mr. Cipolletti and Mr. Michaels are here on

 8     behalf of the government's filter team in the event that there

 9     are any issues that the prosecution team should not be privy

10     to.

11          THE COURT:  Thank you.  I appreciate that.

12          For the defense?

13          MR. SADOW:  Good afternoon, Your Honor.  Steve Sadow,

14     lead counsel for Mr. Patel.  My co-counsel is Don Samuel.  And

15     Mr. Patel is here, as well.

16          THE COURT:  Good to see you all in person.

17          MR. SADOW:  I was going to say the same thing.  The

18     only time we've had contact was video, a long time ago.

19          THE COURT:  A long time ago.  I'm used to looking at

20     you all through the screens.

21          I see your investigator, Mr. Danik, is here, as well.

22     Good afternoon, Mr. Danik.

23          All right.  So we're here today on the government's

24     motion at Docket Entry 300 for three things.  For the release

25     of documents relating to potential conflict of interest, so

1    basically challenging some privilege designations for an order

2    compelling early production of documents under Rule 17(c).  And

3    for -- I'm not sure it's a *Garcia* hearing, but, in essence, a

4    conflict of interest hearing relating to an issue with regard

5    to Mr. Sadow's representation.

6             So let me probably take those in that order.

7             So I did have an -- first of all, if my understanding

8    is correct from reviewing the materials, a number of the

9    privilege disputes were resolved before the hearing.

10            So, Ms. de Boer, let me just turn to you.  The defense

11   submitted to me 15 items yesterday which included emails that I

12   could find that correlated to some of the disputed items in the

13   privilege log, one redacted and unredacted version of a bill or

14   an invoice from Fox Rothschild, and then a few other things

15   that I couldn't find on the privilege log, but maybe they were

16   there and I just couldn't find them.

17            Mr. Samuel?

18            MR. SAMUEL:  The remaining ones are from a different

19   privilege log.  They were from Exhibit C of the government's

20   motion, which is the LabSolutions privilege log that I prepared

21   whenever, two years ago.

22            THE COURT:  Got it.

23            MR. SAMUEL:  And you'll see that we have given them

24   everything except for the one, two, three -- four or five items

25   from that.

1          THE COURT:  All right.  And so maybe I'm asking the

2    wrong person.

3          Other than asking Ms. de Boer, who doesn't know what I

4    saw, let me turn to Mr. Samuel and Mr. Sadow, who do know what

5    I saw, and ask:  Are those the only things left that you all

6    are disputing that the government has asked for?

7          MR. SAMUEL:  There are eight emails from Fox

8    Rothschild, and because they're threads, they're actually more

9    than one email.

10          THE COURT:  Right.

11          MR. SAMUEL:  And we have isolated one portion of the

12    thread -- of two of the threads that we think should be

13    disclosed.  And I think they were because the government, in

14    fact, sent it back to us today, for some reason.  So there's

15    those eight items, but more than one email each.

16          THE COURT:  Right.

17          MR. SAMUEL:  And then -- what we gave you yesterday is

18    in, yes.

19          THE COURT:  Okay.  That's my question.

20          MR. SAMUEL:  Okay.  I'm sorry.

21          THE COURT:  You said eight, so I always prefer when you

22    number the exhibits.  So that's A through H, which is -- that's

23    eight.

24          All right.  So as far as the defense is concerned,

25    you're still asserting privilege as to the items that were

1    submitted to me in camera yesterday, but nothing else.

2             MR. SADOW:  That's correct, Your Honor.

3             THE COURT:  All right.  I'm up to speed on that now.

4             All right.  And this is going to be a little bit of an

5    awkward conversation for the government because, again, you

6    haven't seen these things, but I do have some high-level

7    questions for the defense as to those.

8             As to Exhibits A through H, so the eight items

9    Mr. Samuel just noted, is it your position that they don't need

10   to be produced because they are privileged, they don't need to

11   be produced because they simply are not relevant to an advice

12   of counsel defense, or both?

13            MR. SAMUEL:  Both.

14            THE COURT:  I assumed that, but I just want to make

15   sure.

16            I did review those in camera, and they don't have

17   anything to do with legal advice.  They are -- again, I think I

18   can say this at a high level without getting into -- they don't

19   have to do with legal advice that would be the basis for an

20   advice of counsel defense.  They are, in essence, conversations

21   among counsel after counsel became aware of the government's

22   investigation.  And the way I would categorize them as more

23   litigation strategy looking forward, not regulatory advice to

24   Mr. Patel looking backward.  So for that reason, I would find

25   that those exhibits which were marked as A through H in this

1    sealed exhibit are privileged and are not required to be

2    produced to the government.

3            So to the extent the government is moving to compel

4    those, I will deny that motion based upon my in camera review.

5            Items I and J -- so the ninth and tenth items -- were a

6    bill from the Fox Rothschild firm.  And the proposal was to

7    simply redact -- it looked like two entries, three that were

8    sequential on a page.

9            MR. SAMUEL:  On page 3, right.  One of them we're not

10   moving to -- one of them is just for your purposes, to see what

11   the entire bill was.

12           THE COURT:  Right.

13           MR. SAMUEL:  All of which they're going to get, they,

14   meaning the government, except page 3.

15           MR. SADOW:  I believe that's -- I think it was labeled

16   Document 113 by Fox Rothschild.

17           THE COURT:  Yes, I'm looking -- I have the exhibit

18   here.  I just want to make sure I'm making my record here.

19           So, yeah, it's Fox Rothschild's Bates No. 11 --

20   2002FOX113.  And so on that page, which is page 3 of the bill,

21   the defense proposes to redact three entries and not redact two

22   entries.

23           MR. SADOW:  Correct.

24           THE COURT:  Same question as to the first.  Is your

25   argument here that this is privileged, not relevant, or both?

1        MR. SADOW:  Correct.  And as the Court is able to tell,

2   if you look at the exhibits that you have just found to be --

3   to remain privileged not to be turned over on advice of

4   counsel, those entries relate to those same documents.

5        THE COURT:  Correct.  All right.  So for the same

6   reasons, I'm going to deny the government's motion to compel as

7   to that one page, as to the three entries on that one page.

8   Again, they simply summarize the fact that there were strategy

9   meetings amongst defense counsel.  They do not, within them,

10  contain any representations or evidence that could be used to

11  either support or attack an advice of counsel defense because

12  they're not talking about the underlying advice.  So I'll

13  sustain as to that.

14       All right.  As to exhibits, what were K through M, as

15  in Michael, those look like they were just emails from

16  Ms. Sztyndor to Mr. Sadow and Mr. Patel.  And once again, I've

17  reviewed those.  They have nothing to do with legal advice

18  relating to the charges in this case.  So having conducted an

19  in camera review of those, I will, again, sustain the objection

20  or deny the government's motion to compel.

21       As to Exhibit N, as in Nancy, it's a fee agreement

22  between one of the lawyers relating to this case and a party

23  who is not before the Court at this time.  I have no idea if

24  that person is a defendant, a witness, a cooperating -- I have

25  no idea.  All I know is I have a retainer agreement here that

1    makes absolutely no mention of any advice of counsel relating

2    to Mr. Patel.  So once again, I would sustain an objection and

3    deny the government's request to compel Exhibit N, as in Nancy.

4         As to O, candidly, counsel for the defense, I wasn't

5    sure what this was.  It certainly doesn't appear to be a

6    communication from a lawyer to a client.  So I guess my

7    question, back to the original question is, is your position

8    this is an attorney-client privileged communication or simply

9    that it's not relevant to the advice of counsel defense in this

10   case?

11        MR. SADOW:  More the latter than the former, although I

12   could give some context.

13        THE COURT:  Whatever you're comfortable saying on the

14   public record, I'm happy to hear.

15        MR. SADOW:  That's fine.  I believe that that is also

16   from the same Florida attorney that you just made reference to

17   and that was saved on a cell phone by the defendant, Mr. Patel,

18   which is why it shows up, in and of itself, as opposed to being

19   part of a communication.

20        THE COURT:  Okay.  Well, as to that, certainly, as to

21   the second part, the second piece of it, it appears to simply

22   be a publication by a third party.

23        And as to the rest, since I'm not as steeped in the

24   case as maybe you all are in terms of understanding exactly the

25   parameters of the claims, and the advice of counsel and all

1    that, I do find, as to that document, that the government

2    should get that document.  I don't think it really discloses

3    any legal advice.  It does potentially go to Mr. Patel's state

4    of mind.  I'm not even sure, on the face of it, when he got it.

5    But to the extent Mr. Patel is the party asserting a privilege

6    over this, I don't think he's met his burden of asserting a

7    privilege.

8           Mr. Sadow, Mr. Samuel, if you want to be heard further

9    on that, I'll hear you on that.

10          MR. SADOW:  The difficulty that we have with that is,

11   it doesn't have a date.

12          THE COURT:  Right.

13          MR. SADOW:  But I can proffer to the Court that the

14   author of that document was not involved until after the search

15   warrant was executed on August the 16th of 2019.

16          THE COURT:  Okay.

17          MR. SADOW:  So it has to be thereafter.  I just can't

18   be any more specific.

19          THE COURT:  Well, if that's the case, then presumably

20   you can make a motion to Judge Ruiz as to whether it should be

21   admissible at the trial.  But at least for discovery purposes,

22   I do find it should be turned over to the government.  So as to

23   that document only, I will grant the government's motion to

24   produce.

25          So I think that resolves the privilege claims; am I

1   correct?

2           Ms. de Boer, let me now turn to you.

3           Have I at least ruled on what you understand to be all

4   the disputed issues, not waiving your objections to any rulings

5   I've made?

6           MS. DE BOER:  I believe so, Your Honor.  And I do thank

7   the defense for releasing some of these documents and helping

8   narrow the scope of this.  I believe that's everything.  Thank

9   you.

10           THE COURT:  Absolutely, absolutely.

11           All right.  Related to that -- and maybe this is

12   also -- I was hoping that the Rule 17(c) issue was moot, as the

13   government -- because I understood -- somebody's position was,

14   whatever you're going to get, we've already given you.  Maybe

15   that was LabSolutions' position, or the government's position.

16           What's the government's position as to whether it

17   believes that it's gotten full compliance with its Rule 17(c)

18   subpoena?

19           MS. DE BOER:  It's not moot at this point, Your Honor,

20   because part of the issue is some of these attorneys'

21   involvement extends earlier, back earlier in time than the

22   conspiracy period at issue in this case.  And if the defense is

23   going to be advice of counsel -- and the lab was open and

24   operating before the conspiracy period at issue in this case.

25   And so in email search warrants and in terms of what was seized

1    in the physical search warrants, we seized what we were

2    authorized to seize, which was limited in scope and based on

3    the conspiracy period at issue.  So I think one big bucket of

4    material would be anything before that.

5            And we have issued trial subpoenas to Fox Rothschild,

6    to the attorneys involved.  The problem is, some of these

7    attorneys in the earlier time period were at now defunct law

8    firms or law firms that were acquired.  So in the process of

9    that transition, and with their ordinary retention policies, a

10   lot of this earlier in time material may not exist, and so we

11   would subpoena the company for that, the company, LabSolutions,

12   for that material.

13           THE COURT:  But I guess maybe I misunderstood what the

14   ask was here.  I wasn't -- if I have to address it, I'll

15   address it.  But it wasn't clear to me there was a substantive

16   debate over the production as much as there was just a timing

17   issue.  So if it's not a timing issue, if it's more than that,

18   let me hear from Mr. Samuel.

19           MR. SAMUEL:  It is a timing issue.  We have had trouble

20   finding earlier emails.  If there are earlier emails that deal

21   with advice of counsel, which is all that 17(c) asks for -- so

22   that's very clear.  There's not even a waiver issue.  It's just

23   if it deals with advice of counsel, it has to be produced.

24   Then we have to produce it.

25           Pre 2017 is more difficult for us, but we are going to

 1    comply with that.

 2          THE COURT:  Okay.  So you're not objecting to the 17(c)

 3    subpoena to LabSolutions insofar as it calls for advice of

 4    counsel evidence.

 5          MR. SAMUEL:  Advice of counsel.  There's some issues

 6    that we probably need to work out still.

 7          For example, if it involves things that are not

 8    involved in the indictment at all, and it's for things that

 9    we're not going to put in evidence, so it wouldn't be

10    reciprocal discovery, it may be still somewhat contentious.

11    But, you know, reciprocal discovery point of view, obviously,

12    we're giving them everything, obviously.

13          And for advice of counsel that doesn't relate to

14    anything we're going to be introducing, it might be more

15    complicated.  And if it doesn't deal with advice of counsel,

16    it's not complicated at all because we're not going to produce

17    that.

18          THE COURT:  So let me --

19          MR. SAMUEL:  The problem is there were other law firms.

20          THE COURT:  I get it.  Look, you can only produce what

21    you have.  Let's start with that.

22          MR. SAMUEL:  That's right.

23          THE COURT:  You're required to produce what's in your

24    possession, custody, and control.

25          Now, I'll be clear.  I've said this in civil cases a

1  lot.  If Mr. Patel has -- or LabSolutions, I guess, has the

2  legal ability to go and get the document, just because it's not

3  physically theirs, they have to go and get it, I think we all

4  understand that principle.

5          MR. SAMUEL:  We understand that.

6          THE COURT:  But if they don't have it and they can't

7  get it, it's gone, they can't go get it, it's gone.  That's

8  understood.  But here's, I guess -- here are the bumpers I'd

9  like to put around this.

10         First of all, to the extent the defense is going to

11  produce documents responsive to the 17(c) -- again, I keep

12  saying the defense.  LabSolutions, which is a third party.  I

13  misspoke.  To the extent LabSolutions is going to produce,

14  what's the government's request as to how far in advance you

15  would like it produced to you or when the rolling should start?

16  Give me some parameters the government would request.

17         MS. DE BOER:  I believe we requested November 10th, but

18  obviously we'd be willing to work with the defense to figure

19  out what is actually doable.  And I think, perhaps, as Your

20  Honor is suggesting, a rolling production may make sense.  Then

21  we can review as they have it available.

22         The other thing that I would flag is it's not just a

23  date issue.  I think this ties into the potential conflict

24  issue, is they've identified five attorneys over him, they have

25  waived privilege up to a certain point in time.  But we have

1    serious concerns that have grown more serious over the last

2    couple of days with additional documents we've reviewed, about

3    Mr. Sadow's role and the advice he was providing during the

4    time of the alleged conspiracy period that may be relevant to

5    the advice of counsel.  So I think that will help inform the

6    substantive scope of the Rule 17 subpoena.  And this is part of

7    why we hadn't issued the subpoena, is because Your Honor's

8    ruling today, both on privilege and on the scope of this

9    defense, and the conflict issues, I think, will inform what we

10   are permitted to request.

11        THE COURT:  Understood.  First of all, this is an

12   interesting case because you actually have a written waiver.  I

13   don't know how often I've seen a written waiver of the advice

14   of counsel defense.  But kudos to the defense for making a

15   clear record and making it clear to the government that they

16   were waiving.

17        But that, to me, is independent of once -- once an

18   advice of counsel defense is asserted, if by operation of

19   asserting that defense, there's a waiver that occurs, that may

20   be coextensive with the written waiver you've got, may be broad

21   or may be less.  I don't know.  Again, because I'm not steeped

22   in exactly the scope of the advice of counsel defense in this

23   case.

24        That all being said, what I'd like to do is, I'm going

25   to order LabSolutions to begin a rolling production no later

1    than November 10th.

2             Is that doable, Mr. Samuel?

3             MR. SAMUEL:  That's doable.

4             THE COURT:  All right.  And the parties thereafter can

5    work out -- and that the rolling production should be designed

6    to conclude by November 21st.  I think your trial date's

7    November 28th.  That's the week of Thanksgiving.  So it'll at

8    least give the government their documents a week before the

9    trial, recognizing that a lot of that evidence, if it's

10   introduced at the trial, won't even come up until the defense

11   case.  But I still think it's fair to the government to get it

12   pretrial.

13            That being said, both of those deadlines can be

14   adjusted by agreement of the parties.  So if the parties sit

15   down and they work something out, and the agreement with the

16   government is don't start producing until the 15th, and you can

17   have until December 3rd, you don't need to come back to me.

18   You can cooperatively agree to modify those dates.  But at

19   least now we've got some parameters around that.

20            The other parameter I did want to set is, if there's

21   going to have to be adjudication of substantive objections to

22   the subpoena -- so the subpoena is served, LabSolutions gets

23   it, LabSolutions looks at the four corners of the subpoena and

24   says, well, there's stuff that they're calling for that we

25   don't think they're entitled to, it's outside the scope of the

1   attorney-client -- it's outside the scope of the advice of

2   counsel defense, so it's not relevant.  I just want to have a

3   process in place or an understanding that we'll tee that up

4   somehow, some way, and allow the Court to rule on it in a

5   meaningful way.

6          So, Mr. Samuel, do you have any thoughts on that?

7          MR. SAMUEL:  Yes.  If it deals with one of the five

8   lawyers -- by the way, the five lawyers is actually two

9   different firms, members of the firms who were included, also,

10  not specifically identified.

11         If it's within the scope of the Smith Moore Leatherwood

12  firm, which is really what we're looking at, because they were

13  involved pre 2017, we are in the process of isolating all those

14  emails.  I don't think there's going to be any problem.  I

15  mean, we're not going to have a filter team with this group,

16  because this is 17(c), it's not a search warrant.  So we're

17  going to in good faith be producing everything that comes as

18  part of the advice of counsel defense.

19         THE COURT:  Right.  What I'm sort of focusing on --

20         MR. SAMUEL:  What gets more complicated -- I'm sorry to

21  interrupt --

22         THE COURT:  No, please.  No, I interrupted you.

23         MR. SAMUEL:  -- is if there are -- the government's

24  going to take the position that there's some other lawyers out

25  there who may have provided advice of counsel.  I mean, I don't

1    know how we would do that.  I mean, there's one in particular

2    that, obviously, we're going to be talking about today, so

3    we'll deal with that today.  But other than that, they were --

4    I mean, lots of lawyers were providing contract advice about

5    litigation, employee relations matters.

6            THE COURT:  Well, right.  That's my concern.  Until we

7    see the subpoena -- and I appreciate Ms. de Boer saying, look,

8    the government wants to wait and sort of try to craft a

9    subpoena that isn't overly broad, but --

10           MR. SAMUEL:  They've given you the subpoena already.

11           THE COURT:  Okay.  They just haven't served it yet.

12   That's right.

13           MR. SAMUEL:  It's an exhibit to their motion, so...

14           THE COURT:  Yes, you're right.

15           MR. SAMUEL:  I'm assuming that's what we're dealing

16   with.

17           THE COURT:  Yes.  That's right, they did.  And I

18   apologize.  I did look at it the other day when I was preparing

19   for this.

20           Look, it may be that LabSolutions looks at the subpoena

21   and, in good faith, says there's things that fall within the

22   four corners of this, as written, that we don't believe are

23   relevant to advice of counsel, and we are going to object to

24   producing those.  I'm not saying you should.

25           MR. SAMUEL:  Right.

1      THE COURT:  But I'm just saying, if that -- I can't

2   eliminate that possibility.  So I just want to make sure that

3   if that happens, we at least have a process in place where the

4   parties have an understanding that we'll figure out a way to

5   get that teed up so I can rule on it if I have to.

6      MR. SAMUEL:  Right.

7      THE COURT:  That's all.  I just want to make sure the

8   parties -- and maybe you all want to talk about it and confer

9   on that, and wait and see, Mr. Samuel, what you do.  But I

10   guess as a matter of what I would expect is that if

11   LabSolutions is going to withhold any documents that fall

12   within the four corners of the subpoena, that the government is

13   notified of that, whether a log is given or there's some other

14   communication as to why and what it is that allows the

15   government to then tee it up and get in front of me.  That's

16   all.

17      MR. SAMUEL:  We'll do that.

18      THE COURT:  I just want to make sure that we continue

19   the communications we've been having in this case, so we don't

20   get into middle of trial and all of a sudden Judge Ruiz goes,

21   hey, wait a minute, why is there this unresolved issue of

22   discovery that's popping up in the middle of trial after we've

23   given opening statements.  Okay.

24      I'll leave it to the parties to work out that process.

25   But I would ask you to do that.

1            All right.  So I think that's all that leaves us is the

2    conflict of interest issue.  Let me now turn back to the

3    government, and, Ms. de Boer, allow you to kind of flesh that

4    out as much as you'd like to.  I did read your motion.

5            MS. DE BOER:  Yes.  I think there's a little more to

6    say on it, Your Honor.  May I approach to hand over some

7    demonstratives?

8            THE COURT:  Absolutely.  If I could just ask you to use

9    the lectern while you speak so the court reporter can hear.

10           MS. DE BOER:  Yes.

11           THE COURT:  So what you've handed me, Ms. de Boer, does

12   the defense have this, as well?

13           MS. DE BOER:  They have some of it.  I'll hand them

14   copies as I go.  I have copies with me.

15           THE COURT:  And we'll just mark this, for purposes of

16   today, as a Composite Exhibit 1.  Since I am considering it, I

17   think it should be in the record.

18       (Government Composite Exhibit 1 was received in

19         evidence.)

20           MS. DE BOER:  So at a high level, Your Honor, I think

21   the issue -- and the defense identified this in their response

22   that they filed yesterday.  They're saying there's no dispute

23   here that Mr. Sadow was involved, that he was rendering advice,

24   and that he was meeting with Mr. Patel, others at the lab, and

25   with the attorneys who are squarely the subject of the advice

1    of counsel defense, and that was happening before the defendant

2    was indicted.  So that's, sort of, baseline facts that I think

3    everybody agrees on.

4         The defense has drawn this distinction in the brief

5    that they filed last night between compliance and criminal

6    advice.  And in the documents that we've been reviewing, and in

7    the information that we've been gathering about the advice of

8    counsel defense, that distinction really does not exist or has

9    become so blurred that it's difficult to disentangle.

10        Let me just walk the Court through a high-level

11   timeline.  Some of this is already in the brief, but some of

12   it, there's been some additional materials.

13        So going back to 2015.  At least by 2015, Mr. Sadow is

14   involved in representing LabSolutions, and there's a payment.

15   And this is Tab A for Your Honor.  And I'll give the defense a

16   copy, as well.

17        A $10,000 payment from LabSolutions to Mr. Sadow.  And

18   then later on, in 2017 -- and this was noted in the

19   government's brief.  It's not an additional exhibit that I've

20   handed up to Your Honor.  But Mr. Patel, at a civil deposition,

21   indicated that Steve Sadow represented LabSolutions at least as

22   of 2017.  And that, you know, makes perfect sense in light of

23   the fact that LabSolutions paid Mr. Sadow an additional $25,000

24   in 2016, which is Exhibit B --

25        THE COURT:  Knowing Mr. Sadow, I'm sure that was a

1    small partial payment toward his full fee.

2         MR. SADOW:  Without commenting, I don't disagree.

3         THE COURT:  Go on, Ms. de Boer.

4         MS. DE BOER:  And over time, Mr. Sadow's representation

5    of LabSolutions and/or Mr. Patel becomes more robust.

6         So, for example, in August of 2017, Mr. Patel -- and

7    this is Item C that I handed up to Your Honor, which I've

8    already showed a copy to the defense.

9         THE COURT:  Mmm-hmm.

10        MS. DE BOER:  Mr. Patel and Mr. Sadow exchange an email

11   regarding distributor contracts.  And distributor is the word

12   that LabSolutions used to describe marketers or patient brokers

13   in this case.

14        So, for example, Christian McKeon, Brett Hirsch, two of

15   the individuals identified as co-conspirators in the

16   superseding indictment, they would be considered distributors

17   by LabSolutions.

18        So Mr. Patel directs Mr. Sadow, whom he has been paying

19   from LabSolutions, for legal advice, to review the distributor

20   acknowledgement regarding -- it says "noncomplaint," but I

21   believe it's supposed to say "noncompliant practices."

22        And as additional context for the Court, one of the

23   attorneys at issue, Tobin Watt, had reviewed a distribution

24   agreement for -- that was being used with the marketers.  And

25   one of the things the marketers had to do every month, in order

1   to get paid by LabSolutions, was to sign an acknowledgment, a

2   certification, basically, that I've complied with the law and

3   that I've, you know, conducted my marketing in an appropriate

4   manner.  And that's going to be at issue in this case.  And

5   those documents are going to be presented in evidence, probably

6   by both sides in this trial.

7          And so Mr. Patel is directing Mr. Sadow to review that

8   acknowledgment.  And Mr. Sadow responds, sounds good to me, do

9   it.

10         So this is at least one instance early on where this is

11  compliance advice that is being provided.  Yes, it's being

12  provided by a criminal defense attorney, but this would fall

13  into the category of what has been put at issue in the advice

14  of counsel defense.

15         If you keep going, Mr. Sadow's involvement picks up in

16  2019, and two subpoenas are issued to LabSolutions at the

17  beginning of 2019, in February of 2019.  And they pertain to

18  investigations, one by the U.S. Attorney's Office in this

19  district, and one in South Carolina, pertaining to marketers

20  that were working for LabSolutions.  And as the government

21  noted in its brief, throughout 2019.

22         So from February through August of 2019, a six-month

23  period, Mr. Sadow is on numerous legal bills reflecting calls,

24  communications, meetings, between Mr. Sadow and the attorneys

25  involved, often with the defendant or others from LabSolutions

1   present.  And this includes meetings that we believe will be

2   put at issue in this case, either because information was

3   exchanged between two co-conspirators who were present at the

4   meeting or because it's impossible to address or rebut the

5   advice of counsel defense without fleshing out this

6   information.

7          And so the concern that stems from this is the

8   potential conflict that could arise or, frankly, already has

9   arisen in this case.

10         So, one:  The defense has moved to exclude evidence of

11   an entire meeting between co-conspirators and their attorneys

12   because of Mr. Sadow's presence and involvement at that

13   meeting.

14         MR. SADOW:  And let me just make it easy on the Court.

15   We're going to withdraw any motion to exclude that meeting.

16         THE COURT:  Okay.

17         MR. SADOW:  So that's not an issue anymore.

18         THE COURT:  Is that the meeting where

19   Mr. and Mrs. Raskin and their clients are put --

20         MR. SADOW:  Yes, that's correct.

21         So the record is clear, there may be issues as to what

22   should be disclosed, but not the meeting itself.

23         THE COURT:  Okay.  But nevertheless, I understand the

24   government's position.  The jury's not going to hear, though,

25   there was a meeting, and Mr. Sadow, who is now sitting here at

1   defense counsel table as the lawyer, was at that meeting.

2   That's the -- part of the government's concern.

3        MS. DE BOER:  Yes.  And then I think it's not just that

4   one meeting.  Right, Mr. Sadow?  It's all over the emails

5   between the lawyers and all over the legal bills.  And it's

6   impossible for us to either direct or cross-examine those

7   attorneys who the defense has said they are likely to put on

8   the stand without showing what did they actually do, what, in

9   fact, was disclosed.  And we're going to have to use the

10  documents to do it.

11       So Mr. Sadow is going to become a feature of this trial

12  even if there is a distinction between compliance and criminal

13  advice.

14       But what some of these early emails show of Mr. Sadow's

15  involvement from the very beginning of the alleged conspiracy

16  period through the end shows is that that distinction really

17  doesn't exist, because Mr. Sadow is involved in a number of

18  meetings and communications and phone calls where the

19  compliance attorneys are discussing a myriad of issues,

20  including the prospect of expanding the lab's operations to

21  include a new telemarketing and telemedicine venture, the type

22  of conduct that's at issue in this case.

23       So I understand part of this is Mr. Sadow is saying

24  here's how you respond to subpoenas, and that's one thing.  But

25  it's not just responding to, you know, a subpoena that has

1    really nothing to do with LabSolutions.  It's not like we sent

2    a subpoena to a bank to get information about a subject or

3    target of an investigation.  This is asking about conduct that

4    LabSolutions was engaging in.  And even though the subject of

5    those subpoenas were subjects of other investigations, if you

6    are a defense attorney reading this, you are reading between

7    the lines and assessing your client's exposure.

8           So the government's concern is, you know, in early

9    2019, Mr. Sadow gets paid $100,000 from LabSolutions, and then

10   all of a sudden he's in all of these meetings.  It's unlikely

11   that he was simply a wallflower in those meetings, that he was

12   simply observing and waiting for the day where his client gets

13   indicted.  It's actually to represent him in a criminal

14   proceeding, and be ready to hit the road running.  Maybe that's

15   possible.

16          But our concern -- and we don't have all the facts.  I

17   want to make that clear to the Court.  Our concern is, was

18   Mr. Sadow involved in the development of the advice that was

19   being rendered by the compliance attorneys.  Was he hearing

20   that advice or the information being provided by the compliance

21   attorneys, and then interpreting that for Mr. Patel in terms of

22   here's your exposure.  And by the way, the lab is still

23   operating and billing during this time.  So what advice is

24   being provided in that regard, in terms of this is appropriate,

25   you should continue to do this, you should shut down?

1    Whatever, right?  And was that consistent or inconsistent with

2    the advice that was being provided by the compliance attorneys?

3    Did Mr. Sadow ever give advice to Mr. Patel suggesting I'm not

4    sure these guys are giving you great advice.  And I'm not

5    saying that happened.  I'm just saying these are the open

6    questions that are suggested by Mr. Sadow's excessive

7    involvement, by the documents that we have gone into.

8         So I suppose I'll leave it there and see if the Court

9    has any further questions on where we are on this.

10        THE COURT:  Yeah.  I do have some questions.  I mean, I

11    will tell you all, when I was in private practice doing

12    criminal defense work, I represented a lot of labs.  So I'm

13    familiar with the situation, and certainly familiar with the

14    allegations in this case, and familiar with how a person who is

15    primarily a criminal defense lawyer, which is what I was, would

16    interface with regulatory lawyers when the aspect of -- a

17    brooding omnipresence of a government investigation is out

18    there.  So I do bring that experience to this discussion.  So I

19    just give that as background because that may inform some of my

20    questions.

21        I'd like you to address this.  I'm trying to reframe

22    this a little bit in the context of what's the potential

23    conflict and what's the appropriate remedy and what are the

24    appropriate steps for the Court to take.  And it seems to me

25    what you're describing, at least as potential problems, is will

1    there be an appearance problem, is there some appearance issue

2    going to the integrity of the trial that we're going to have a

3    lawyer who's participating in defending the case, but who's

4    being talked about in front of the jury as a participant in the

5    underlying facts.  So that seems to me to be one issue you're

6    fronting out for me.

7            Another one is how, if at all, does this affect

8    Mr. Patel's Sixth Amendment right to be effectively

9    represented.

10           Now, I'm aware from other rulings I've made in this

11   case that he has extremely good co-counsel who will be

12   participating with Mr. Sadow, and so I'm less concerned, at a

13   global level, that if Mr. Sadow's individual ability to

14   zealously represent Mr. Patel is arguably compromised -- I'm

15   not saying it is, but let's assume it is -- there's other

16   counsel available to do that.  But I think that's an issue we

17   should -- that's an issue on the table.

18           And I think the third issue really becomes:  Is there

19   some evidence in the case about which Mr. Sadow is a unique

20   witness?  It's one thing to say, look, there was a meeting,

21   there were five lawyers there, and he's one of them, but four

22   other people can testify to it.  That may put us in one spot.

23   Or Mr. Patel got advice from lots of people, including

24   Mr. Sadow, but it was the same advice.  As opposed to, is there

25   a unique fact that the jury will hear that Mr. Sadow knows, or

1    a unique piece of advice that nobody else gave Mr. Patel?  And

2    again, that's a black box to the government because you don't

3    know the conversations that were there.

4          But at least those are some thoughts.  I'm not sure

5    that leads us anywhere, but, Ms. de Boer, those are sort of the

6    thoughts I had.  And if you wanted to respond to those now, or

7    if you want to think about them and respond after I hear from

8    the other side, I'll give you that opportunity.

9          MS. DE BOER:  I agree that those are the issues, Your

10   Honor.  Let me just maybe add a little more on the third bucket

11   that you mentioned --

12         THE COURT:  Please.

13         MS. DE BOER:  -- which is, I think, you know, the

14   extent to which Mr. Sadow is a unique witness.  And I would

15   tend to agree.  This May meeting, there's a bunch of people,

16   there are other witnesses.  And I think there's been a lot of

17   focus on that meeting because it was teed up in a motion in

18   limine.

19         But what I'm hoping to convey to the Court is this is

20   involvement by Mr. Sadow that stretches all the way back before

21   the proposed conspiracy period, and during the conspiracy

22   period.  For example, this August 2017 email that I've showed

23   the Court, he's the only witness to that advice.  And it may be

24   that that advice is consistent with advice that was provided by

25   other attorneys.  But suppose we find ourselves down the road

1  in this trial and the government has rested its case, and Toby

2  Watt takes the stand as the defense's first witness.  And

3  suppose Toby Watt does not hold up on cross-examination, and

4  now the defense is in a worse spot.  Wouldn't it behoove

5  Mr. Patel to have the ability to say, well, another lawyer gave

6  me this advice, if that's true?  And if that lawyer is

7  Mr. Sadow, the defense is in a very tricky position.  Or

8  suppose we get to a point where, and we learn more -- and I

9  don't know the answer to this, but suppose Mr. Sadow did, in

10  fact, provide legal advice to Mr. Patel concerning his criminal

11  exposure based on what he was learning from the compliance

12  attorneys?

13       Number one, that is relevant when an advice of counsel

14  defense is being asserted.  And, in fact, I would posit to the

15  Court that advice from a criminal defense lawyer, when we are

16  dealing with criminal charges, is, in fact, more relevant than

17  the advice that a compliance attorney is rendering.  And,

18  normally, we wouldn't be here having this conversation about

19  what did the criminal attorney tell the defendant, but they

20  have raised this advice of counsel defense and they continue to

21  assert it.  So to the extent there is some distinction between

22  criminal and compliance advice of criminal, the advice from a

23  criminal defense attorney might actually be even more probative

24  in this situation.

25       And so it's -- I would say it's only -- is Mr. Sadow

1    the only unique witness that can testify to this?  I think, is

2    he a source of information that at some point, depending how

3    this trial unfolds, could become squarely relevant either to

4    the prosecution's evidence or to the defense's evidence?  I

5    think there's a lot of unanswered questions there that would be

6    needed before we could take a full position on that.  But I

7    don't know that it's limited just to is he a unique witness or

8    not.

9           THE COURT:  I hear you on that.  And that makes some

10   sense.

11          All right.  Well, let me hear from the other side, and

12   then, Ms. de Boer, I'll hear back from you.  I don't know if

13   Mr. Samuels is going to argue, Mr. Sadow, if you're going to

14   argue it.

15          At a minimum, look, it seems to me, at a minimum,

16   something that I need to do today -- and I'm pleased that

17   Mr. Patel is here, is Mr. Patel and I have had this

18   conversation in the past about him understanding the potential

19   conflicts and whether he's willing to waive those conflicts.

20   At a minimum, I think we need to put on the record that he

21   understands, for example, what Ms. de Boer just explained,

22   which is there could come a point in the trial when it would be

23   beneficial to him to have Mr. Sadow available as a witness.

24   And if Mr. Sadow introduces himself to the jury at the

25   beginning of the trial as a lawyer, he will not -- Judge Ruiz

1    isn't going to let him be a witness later on.

2         And so I think I just need to have a colloquy along

3    those lines with Mr. Patel.  And I'm prepared to do that.

4         But, Mr. Sadow, let me hear from you otherwise.  I saw

5    you nodding your head, so I think you agree with me at least to

6    that.

7         MR. SADOW:  100 percent.  I have indicated in the

8    response, and will indicate again, to the extent that there are

9    questions that deal with any and all advice that I would have

10   given, I'll be more than happy to go on, under oath, or as

11   officer of the court, whatever the Court pleases.  I would not

12   want to do that in front of the prosecution team.  I certainly

13   wouldn't want to do that.  The filter team could be present.

14   Although I must say, I've waived my personal -- there were a

15   lot of text messages that had been claimed to be privileged.

16   I've waived all of those.

17        THE COURT:  At this point, it doesn't seem to me that

18   there's disputed facts that I need to resolve.  If I get to

19   that point, I might want some testimony from somebody.  But at

20   this point, I'm not there yet.  So I appreciate that.  But

21   let's hold that in abeyance for the time being.

22        MR. SADOW:  Certainly, Your Honor.

23        Other than that, I can state, as a general matter --

24   high level, I think, is the terminology we're using today -- I

25   acted as a criminal defense counsel throughout.  Even as to the

1      August 27th email.  So to that extent --

2              THE COURT:  No, I --

3              MR. SADOW:  That was my role, be it for LabSolutions

4      and Mr. Patel.  But at that point, of course, there wasn't any

5      case.  But I've been Mr. Patel's lawyer for a long time.

6              You didn't do the bond hearing.  But if you had access

7      to that bond hearing, you would understand all the other little

8      matters that had occurred that I represented him in.

9              THE COURT:  Mmm-hmm.

10             MR. SADOW:  So this was not new.

11             THE COURT:  No, I understand that.  But I do think

12     there is, and I think you would probably agree with me, at some

13     point that distinction between criminal and compliance counsel,

14     particularly in this sort of an industry, it's very grey,

15     because a lot of what a criminal defense lawyer is trying to

16     advise a client is how to stay on this side of the compliance

17     line.

18             Often working with compliance counsel, I understand

19     that.  I had a partner in my old law firm.  She was the expert

20     on all the regulations having to do with labs, and then I would

21     sit there and say, yeah, do what she told you.  Because if you

22     don't do what she told you, here's what the OIG is going to do,

23     here's what the DOJ is going to do, et cetera.

24             And I also do think advice of counsel defense is a

25     defense to state of mind, and so it really is a defense as to

1    what Mr. Patel understood at the time.  Certainly, the fact

2    that a criminal defense lawyer is sitting in the room while

3    advice is given and doesn't say anything, maybe the government

4    is going to argue that has some impact, as well, on Mr. Patel's

5    state of mind, that the fact that Mr. Sadow didn't say anything

6    maybe gave credibility to what Mr. Watt was saying, or led

7    Mr. Patel to believe A, B, and C.  I don't know.

8         But at least it goes to that.  So, to me, that

9    formalistic distinction is less important than the fact of what

10   was being talked about in the room, who can testify to that,

11   and what do we need to do to preserve the integrity of the

12   ongoing prosecution here.

13        MR. SADOW:  Which is why I, just on behalf of

14   Mr. Patel, we can have him state on the record, if it's

15   necessary, as to the contents of the one meeting, the one

16   that's been made an issue, I think it's May 6, 2019.  You're

17   going to have three attorneys testify as to what was said

18   during that, separate and apart from me.

19        THE COURT:  But I think probably the better question

20   for me maybe to ask at this point is -- and I understand if the

21   defense doesn't want to answer this question, because it does

22   probe slightly into the defense that will be asserted at the

23   trial -- but is there likely to be a defense testimony or

24   evidence that will be based upon advice or communications --

25   let me rephrase that as a better statement.

1          Will there be evidence at the trial that there was

2   something that Mr. Sadow uniquely said to Mr. Patel that forms

3   the basis for Mr. Patel's advice of counsel defense?

4          MR. SADOW:  The answer to that is simply no.

5          THE COURT:  Okay.  You've represented him for a long,

6   long time, and talked about lots of other things.  But if all

7   discussions relating to the advice that he relied upon as to

8   the charges in this case came from other people, or can be

9   testified to by other people, then more importantly he's not

10  going to get on the witness stand and say, hey, I did that

11  because Steve Sadow told me so.

12         MR. SADOW:  If that was the situation, I wouldn't be

13  sitting here because I would understand that I couldn't be

14  counsel.

15         THE COURT:  Understood.  All right.  I appreciate that.

16         Let me turn back to the government.  I think I am going

17  to colloquy Mr. Patel.  I think that's very important that I do

18  that today.

19         I know the government, in your brief, you had raised

20  the issue, as well, of sort of -- a couple of the ethical rules

21  relating to lawyer as counsel or lawyer as witness and some

22  other things.  So if you wanted to flesh those out further, I'd

23  be happy hear you on that, as well, or any response you want to

24  give to my conversation with Mr. Sadow or to supplement what

25  you said earlier.

1          MS. DE BOER:  Yes, Your Honor.  I think it is

2     appropriate for the Court to colloquy Mr. Patel.  I think

3     that's a step in the right direction.  But I think what we just

4     heard was a reiteration, that was criminal counsel, not

5     compliance counsel.  Even when I sent this email about

6     compliance, I was still a criminal attorney.  That's not

7     enough, from the government's perspective, to flesh out what

8     Mr. Sadow's role was in fact.

9          And I understand Mr. Sadow to be saying, well, there's

10    going to be other witnesses to this.  That sort of doesn't

11    matter because maybe the defense doesn't want to put Mr. Sadow

12    on, but to Your Honor's point earlier, the moment they go into

13    court, in trial, and they say advice of counsel, the waiver is

14    over the entire subject matter pertaining to that advice.

15         THE COURT:  Mmm-hmm.

16         MS. DE BOER:  And the government's position is that it

17    is inconceivable that Mr. Sadow was not providing advice to

18    Mr. Patel, preindictment, pertaining to the implications of

19    what he was doing, helping the compliance attorneys develop the

20    advice that they were providing in real time, or interpreting

21    that advice from Mr. Patel in light of the investigations that

22    were coming to light in early 2019.  And it's not -- I haven't

23    heard answers to those questions yet today.

24         THE COURT:  Well, let me ask you, though.  You say the

25    investigations came to light in 2019.

1        What's the period of time in which the alleged criminal

2   activity occurred in this case?  Usually, by the time the

3   investigation comes to light, the government does something

4   that causes what it thinks to be the criminal activity to come

5   to an end.  So at that point, whatever advice the lawyer's

6   giving after that date seems, to me, irrelevant to an advice of

7   counsel defense, right?  It only has to be advice given during

8   the alleged period of criminality.

9        MS. DE BOER:  Well, and here, Your Honor, the

10   investigations I'm referring to were investigations of other

11   individuals that came to LabSolutions and Mr. Patel's -- that

12   they became aware of because subpoenas were issued to

13   LabSolutions.

14        But at least one of the emails that I've seen from one

15   of the advice of counsel attorneys from early on -- so these

16   two subpoenas come in in February of 2019.  One of the

17   attorneys says, well, I spoke to the prosecutor that issued

18   that subpoena, and LabSolutions is not a target.

19        So at that point, you know, the belief is they're not

20   aware of the government's investigation into Mr. Patel and

21   LabSolutions.  And as Mr. Sadow noted earlier, it's a bit

22   obvious when the accounts were -- the LabSolutions accounts

23   were seized and when the search warrant was conducted on

24   LabSolutions.  So there's six months of time where things are

25   brewing and conversations are happening.  But the conversations

1  are not limited only to the investigations and subpoena

2  responses for these other matters.  They're also about, hey, we

3  want to do this additional telemarketing and telemedicine

4  venture, and continuing the operation, and LabSolutions was

5  submitting bills up through August of 2019.

6        THE COURT:  No, I understand that.  I don't have the

7  indictment in front of me.

8        What's the period of time alleged in the indictment of

9  the underlying healthcare fraud scheme?

10        MS. DE BOER:  July of 2016 through August of 2019.

11        THE COURT:  So you have a period from July 2016,

12  through to at least early 2019, when at least, from the

13  government's perspective, Mr. Patel has no knowledge that he's

14  under any -- any reason to belive he's under investigation,

15  right?

16        MS. DE BOER:  Correct.

17        THE COURT:  And so it's just that coming, in early

18  2019, suddenly, he's on notice, hey, the government thinks what

19  you're doing with these genetic tests may be a little iffy, and

20  maybe he then is motivated to go and talk to Mr. Sadow and

21  other people to clean it up, right?

22        MS. DE BOER:  Correct.

23        THE COURT:  Okay.  I understand.  But presumably, if

24  he's going to assert an advice of counsel defense, his advice

25  of counsel defense has to go all the way back to 2016.  It

1    can't be I was doing it until 2018, and then they told me it

2    was okay.  Right?  The advice of counsel defense only negates

3    his intent.  He's got to negate intent all the way back to

4    2016, doesn't he?

5         MS. DE BOER:  And I think there is some advice that

6    goes back that far from Mr. Watt.  The only other attorney that

7    was involved at that time was Mr. Sadow.  And that's another

8    reason why the government is concerned that, you know,

9    Mr. Sadow has been involved with LabSolutions even before the

10   conspiracy period began.

11        And by the way, LabSolutions, before it got into

12   genetic testing, was doing urinalysis testing, which has all --

13   you know, I'm not saying LabSolutions is under scrutiny for

14   that, but I'm saying there's been a lot of enforcement in that

15   industry.  So there would be reason to speak to a criminal

16   defense attorney about kickbacks, about billing, about medical

17   necessity, about Medicare's rules and exposure.  So this is all

18   part of why we're raising these questions.

19        And my point is, number one, I haven't heard a

20   satisfactory answer to what it was that Mr. Sadow was advising

21   on.  I've heard him say it was criminal advice, it's always

22   been criminal advice, and there were other attorneys involved.

23   I don't dispute Mr. Sadow is a criminal defense attorney.  What

24   I'm saying is, that could be quite relevant, given the extent

25   of Mr. Sadow's involvement in this, to the defense that's being

1    asserted.

2         And even if there are other people available who can

3    speak to that, the government may still be prejudiced when this

4    defense is asserted if the government cannot explore the full

5    scope, or what should be the full scope, of a waiver attendant

6    to any advice of counsel defense, which would include criminal

7    advice provided on these topics.

8         The other thing that I don't hear being addressed by

9    the defense is the prejudice to the government when Mr. Sadow's

10   name is inevitably going to be brought up, either through

11   exhibits, through the legal bills, through discussions, and

12   testimony about these meetings, you know, inherent implication

13   of that, that Mr. Sadow was there all along, was in a number of

14   these meetings.  The only thing a jury can infer from that is

15   Mr. Sadow thought that this was okay and gave that advice.

16   Maybe that's true.  Maybe he did.  Maybe he didn't.  Maybe he

17   gave different advice.  Maybe he didn't give any advice at all

18   on it.  We still don't know the answers to those questions.

19   But the jury is going to infer that this was fine, and it's

20   almost implicit vouching of the advice that was given at the

21   time, and the conduct that was at issue at the time.  And I

22   don't see how that prejudice can be resolved, or I haven't

23   heard how that can be resolved so far in this hearing.

24         THE COURT:  I have a thought.  No one's asked me.  I

25   have a thought.

1          If Mr. Sadow was not uniquely the only person there,

2     why does his name have to be mentioned at all?  You can just

3     say Mr. Patel met with Mr. Rafferty and Mr. Samuel and two

4     other lawyers.

5          The only time you have to mention Mr. Sadow's name is

6     if there's some unique reason to mention Mr. Sadow's name as

7     opposed to somebody else.  And I suppose, maybe they'll

8     stipulate to that, or maybe Judge Ruiz can just order that.

9     But that's a way to mitigate the prejudice the government is

10    concerned about, isn't it?

11         MS. DE BOER:  And that may be achievable.  It's just

12    there are an awful lot of emails that would have to be

13    redacted, and an awful lot of bills that would have to be

14    redacted, and witnesses, you know, that would have to comply

15    with the instruction, you know, when we ask you who was at the

16    meeting, give us six of the seven people.  Don't say Mr. Sadow.

17    There's a risk there, Your Honor.

18         THE COURT:  I understand.  But we deal with that risk

19    all the time.  Or, you know, there's other ways to deal with

20    it.  Judge Ruiz is much smarter than I am; he'll figure it out.

21    You can also just instruct the jury, the mere fact that you may

22    hear that Mr. Sadow may have been present for a meeting is not

23    a fact you can consider, it's not evidence of anything, you

24    should disregard it.  I mean, we give juries instructions like

25    that all the time, and we presume that they follow them.

1    So I'm less concerned about that.  I hear you, but I'm

2  not concerned about that.  I hear you, but I'm not that

3  concerned about that potential prejudice to the government from

4  the fact that Mr. Sadow's name will be mentioned.

5    MS. DE BOER:  And fair enough, Your Honor, but I think

6  that still doesn't resolve the question of the moment, you

7  know, in opening statements, or wherever this defense is

8  asserted, the scope of the waiver and whether that ought to

9  include Mr. Sadow's advice --

10    THE COURT:  That's what I'm saying.  That's what I'm

11  trying to walk through in my own head.

12    So they have asserted a defense.  And the defense is

13  going to be Mr. Patel was told by the following lawyers, not

14  Mr. Sadow.  They're going to get up and say, he was told by

15  Mr. Watt, he was told Mr. Peterson, he was told by whoever

16  else, you can do this and you can't do that.  Assuming

17  Mr. Sadow's name was never mentioned, that's what the jury will

18  hear.

19    And then the government will get up and say, well,

20  isn't it true that Steve Sadow didn't tell you that, or Steve

21  Sadow told you something different?  I mean, how does Mr. Sadow

22  then become operative to the government?  The only way he

23  becomes operative is if he told Mr. Patel something different,

24  and now you want to cross-examine Mr. Patel and say, well, I

25  understand Mr. Watt told you that, but didn't Mr. Sadow tell

1   you something different?  Other than that, how does Mr. Sadow

2   come up in this trial?

3           MS. DE BOER:  Right.  And we have no way of knowing

4   what Mr. Sadow's advice was.  And our argument is, as soon as

5   that defense is asserted, we are entitled to investigate.  And,

6   frankly, the waiver is coextensive with the subject matter of

7   that advice, so...

8           THE COURT:  Right.  But he just said that the -- if you

9   explore that, what he's going -- the only way you can find out

10  is to ask him or ask Mr. Patel.  And Mr. Patel doesn't have to

11  talk to you.  Mr. Sadow is going to say I never told him

12  anything different than what Mr. Watt told him.

13          MS. DE BOER:  Okay.  And if that's the case -- I

14  haven't heard that today.  I've heard him say that I was a

15  criminal defense attorney and that I was not the only person

16  providing advice, and we're not going to put at issue anything

17  that I -- that only I told Mr. Patel.  But I haven't heard in

18  those only I conversations what that was.  And I'm not saying

19  that we ought to hear that.  I'm saying that that needs to be

20  explored by the Court.

21          THE COURT:  Well, then, let me explore that with

22  Mr. Sadow.  I mean, I'm assuming that to be -- and, again, you

23  may talk to Mr. Patel before you answer this.  So I'm not

24  trying to put you on the spot.

25          But would the defense be willing to stipulate that the

1   defense will not argue or try to introduce evidence at the

2   trial that Mr. Sadow gave any advice to Mr. Patel that was

3   different from the advice he was given by other lawyers as it

4   related to the advice of counsel defense?

5           MR. SADOW:  Not only will we stipulate to that, but

6   we'll stipulate that I didn't give him advice that had to do

7   with the advice of counsel defense at all.

8           THE COURT:  Okay.

9           MR. SADOW:  That's why I volunteered -- again, I know

10  the government has raised it, but that's why I volunteered to

11  answer any questions the Court might have, because I'm not

12  trying to keep something a secret.  I did what the Court asked

13  me to do.  If you wish to hear more, I'd be more than happy to

14  put it on the record.

15          THE COURT:  No, no.  I'm trying to hear the

16  government's concern, and I'm trying to address it.  And maybe

17  we've addressed the government's bigger concern, which is,

18  understandably, they don't want to get sandbagged at the trial

19  where, suddenly, for the first time, they hear that Mr. Patel

20  has a wonderful defense, based upon advice that Mr. Sadow gave

21  him, that the government has never heard of before.  And if

22  that's the biggest concern, I think -- Ms. de Boer, I think

23  we've just dealt with it, and they can reduce it to writing for

24  you as a stipulation, and you can tell Judge Ruiz that.  And

25  maybe that resolves the biggest issue that I hear from the

1    government.

2         So let's assume that resolves the one issue, hopefully,

3    to not mention Mr. Sadow at the trial maybe resolves another

4    concern the government had.

5         I'm going to colloquy Mr. Patel because of my concerns

6    about his rights, and making sure we don't have an issue for

7    collateral appeal later on, that Mr. Patel somehow was -- had

8    his Sixth Amendment rights compromised.

9         What else is it that the government wants me to

10   continue to address?  And if you've told me it already and I

11   just skipped over it, feel free to tell me it again, and I

12   won't be offended.

13        MS. DE BOER:  Well, you haven't skipped over it, Your

14   Honor.  I think it's maybe just a point of disagreement.

15        THE COURT:  Okay.

16        MS. DE BOER:  But whatever advice Mr. Sadow was

17   rendering related to the lab's operations and Mr. Patel's

18   exposure in light of what the lab was doing.  And so I don't

19   see how that's not relevant to Mr. Patel's state of mind when

20   an advice of counsel defense is being asserted.

21        And just hearing that, well, my advice isn't relevant

22   to advice of counsel, that's too conclusory of a statement for

23   me to agree, okay, we're done here.

24        THE COURT:  Well, I think -- and maybe you two need to

25   wordsmith better what maybe -- you're right.  Mr. Sadow kind of

1    modified my question.  My question was a different one.  I'm

2    not asking you to characterize the advice that was given.  I'm

3    just saying, there was a corpus of advice that Mr. Patel got on

4    how to run his lab.  He got it from multiple different lawyers.

5    There is nothing that falls within that purpose that somebody

6    else didn't -- that is unique to Mr. Sadow, right?  Whatever he

7    was told about how to run the lab, and that he relied upon in

8    running the lab, came from other people.  And to the extent it

9    also came from Mr. Sadow, that was cumulative to what other

10   people told, it was not unique.

11            Am I correct, Mr. Sadow?

12            MR. SADOW:  Correct, Your Honor.

13            THE COURT:  Does that resolve your issue, Ms. de Boer?

14            MS. DE BOER:  No.  Because if Mr. Sadow is now saying

15   I, in fact, advised on those issues, but my advice was

16   consistent with what the other attorneys were talking about,

17   then there's now a waiver, or there will be a waiver, once this

18   defense is asserted, as to Mr. Sadow, we're entitled to explore

19   that.  And I think that could lead to other questions or issues

20   that we just don't know about yet.

21            And this is my concern, is to how can this trial

22   proceed with this defense when any number of twists and turns

23   are possible, including that the attorneys that they intend to

24   call don't perform well in their testimony?  And now we're left

25   with one additional attorney that can't testify.

1          I understand Your Honor's saying, well, we're going to

2   colloquy Mr. Patel on that.  But what if there are nuggets of

3   information -- like, for example, the government's view is that

4   Mr. Patel did not disclose all relevant information to the

5   attorneys at issue.  And if Mr. Sadow is saying, my advice was

6   consistent with them, perhaps it's based on the same underlying

7   facts that those attorneys knew, and the same omissions, right?

8   And that's relevant.

9          So if Mr. Patel --

10          THE COURT:  It may be relative, but it's also

11   cumulative.  Right?  I mean, it doesn't need that.  That's

12   cumulative to the testimony you're going to get from Mr. Watt

13   and Mr. Peterson and everybody else who are going to say this

14   is what we told him, and this is what he told us.  And you're

15   going to say, but he didn't tell you this, did he?  He didn't

16   tell you that he was, you know, kicking back money on the side,

17   and he was paid in cash, and all the ways that the government

18   usually cross-examines on an advice of counsel defense.

19          Look, I hear you.  And at some point, I have to balance

20   Mr. Patel's Sixth Amendment right to effective representation

21   by counsel of his choice, which is a limited right.  I

22   understand that.  Versus the government's actual real-life need

23   for this evidence at the trial that's going to happen next

24   month.

25          And while I hear that there is a theoretical

1    possibility that the government may be prejudiced by its

2    inability to do what it wants to do, I think that is far

3    outweighed by we're in the eleventh hour of a lengthy,

4    contested investigation and pretrial.  I've ruled on very

5    significant, complicated pretrial matters.  We're on the eve of

6    trial.  And I don't see this as being -- I'm more concerned

7    about Mr. Patel's rights than I am about the government's

8    rights; let me just put it that way.  I think that's what I'm

9    required to do.

10             MR. SADOW:  May I say one more thing for the record --

11             THE COURT:  Sure.

12             MR. SADOW:  -- before you inquire of Mr. Patel?

13             THE COURT:  Sure.

14             MR. SADOW:  The last answer I gave you was because the

15    Court asked me a direct question.

16             THE COURT:  Mmm-hmm.

17             MR. SADOW:  If I remember correctly, the answer I gave

18    you prior to that was more inclusive, but that wasn't the

19    answer that the Court -- to the question asked.

20             THE COURT:  I understand.

21             MR. SADOW:  So I'm not suggesting that I gave any

22    advice.  So, again --

23             THE COURT:  I understand.  And I'm not trying to pin

24    you down to that.

25             MR. SADOW:  I don't want to make it sound as if I

1   somehow gave cumulative advice because I answered the Court's

2   question that you asked me.

3         THE COURT:  No, I understand.  But as I said before, I

4   think there's at least an argument that if you're sitting there

5   silent when something is said, you are, in effect -- under the

6   hearsay rules, that would be an adoptive admission that could

7   be imputed to you.  So that's sort of more what I was talking

8   about.

9         All right.  Let me colloquy Mr. Patel, and then let me

10  see where I land at that point.

11        So, Mr. Patel, would you raise your right hand, please,

12  sir?

13        (Defendant, MINAL PATEL, duly sworn.)

14        THE COURT:  Can you state your full name for the

15  record, please.

16        THE DEFENDANT:  Minal Patel.

17        THE COURT:  Mr. Patel, you've been present this

18  afternoon throughout the entire proceeding, correct?

19        THE DEFENDANT:  Yes.

20        THE COURT:  So the reason I need to talk to you, we've

21  had this conversation before, you as the defendant in this case

22  have an absolute right under the Sixth Amendment of the

23  Constitution to be effectively represented by counsel.  You

24  have a limited right to counsel of your choice.  And you have a

25  right to have conflict-free counsel.

1           Do you understand you have each of those rights?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Okay.  Now, the government is alleging here

4    that at least it is possible that at your trial, the way it

5    will unfold, there could create situations of conflict for

6    Mr. Sadow.  Now, that's what I want to explore with you.  Okay?

7           THE DEFENDANT:  Yes.

8           THE COURT:  So one scenario might be the following:

9    Because Mr. Sadow's name may be mentioned in front of the jury,

10   and the jury will be told that he is present for some of these

11   meetings, he could be incentivized to not pursue certain lines

12   of questioning or to pull his punches, if you will, to protect

13   himself, to protect his reputation, or to protect himself from

14   any accusation that he's done anything wrong.  Do you

15   understand that could happen?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Now, I know in this case you have other

18   lawyers, and I know we've had other hearings where the other

19   lawyers have said, well, in situations that -- similar to this,

20   but not exactly this, if that possibility existed they would

21   conduct the cross-examination, they would conduct the trial,

22   not Mr. Sadow.

23          But do you understand, at least, Mr. Sadow himself

24   could have motivations to not aggressively pursue the cases for

25   you?

 1            THE DEFENDANT:  Yes.

 2            THE COURT:  Okay.  As we've talked about here today, as

 3    well, there may become a situation where Mr. Sadow could be a

 4    valuable defense witness for you, that you might want to call

 5    him to say, hey, look, that thing the government is saying that

 6    Mr. Patel did wrong, I told him that was okay.  That's how an

 7    advice of counsel defense works.  And oftentimes you do call

 8    the lawyer.  If Mr. Sadow is your trial lawyer at this trial,

 9    you will not be allowed to call him as a witness, even if you

10    decide in the middle of the trial that's really what you need

11    to do.  You understand you're going to give that up?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Okay.  Also, as I mentioned earlier, the

14    jury very well may hear that Mr. Sadow was present for meetings

15    with you and was there when certain things were said to you.

16    And if the jury hears that evidence, perhaps the jury might

17    conclude Mr. Sadow's not a very good lawyer or he's a corrupt

18    lawyer, or they might draw some negative inference based upon

19    other evidence they hear, which would undercut his credibility

20    while he's standing in front of the jury trying to argue for

21    you.  Do you understand that theoretically could happen?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Okay.  And that would affect his ability to

24    fully and effectively represent you.  Do you understand that?

25            THE DEFENDANT:  Yes.

1       THE COURT:  Now, as to each of those possible

2   conflicts -- well, before I get into that, let me turn to the

3   government.

4       Not waiving any objection you may have to anything else

5   that's happening here this afternoon, are there other conflicts

6   or potential conflict scenarios you think I ought to explore

7   with Mr. Patel?

8       (Discussion between defense counsel off the record.)

9       THE COURT:  Or, Mr. Sadow, if you or Mr. --

10  MR. SADOW:  I'm sorry.

11      THE COURT:  -- Samuel believe there's another scenario

12  I should explore with Mr. Patel?

13      MR. SADOW:  No, no, no.  My concern is that -- maybe I

14  misunderstood.  I believe the gentleman that's now conferring

15  with the prosecution is from the filter team.  Am I wrong?

16      THE COURT:  I'm not going to impute some nefarious

17  event occurring.

18      MR. SADOW:  I just don't -- I'm not sure the

19  appropriateness of the filter team conferring with the

20  prosecution team on a matter that doesn't address the filter

21  team.  But, again, that's what I said.  I just didn't want you

22  to misunderstand.

23      THE COURT:  Oh, no, no.  Look, we have talented lawyers

24  in the courtroom.  Talented lawyers often have good ideas that

25  have nothing to do with the filter team.  So if counsel is

1    conferring because counsel has a good idea, I have no problem

2    with that.

3         MS. DE BOER:  And, Your Honor, may we confer for just

4    two minutes, briefly?

5         THE COURT:  Yes, yes, yes, of course.

6         MS. DE BOER:  Thank you.

7    (Discussion was held off the record.)

8         MR. MICHAELS:  Your Honor, this is Mr. Michaels.  If I

9    could just raise a point, because Mr. Sadow has raised a

10   question about Mr. Cipolletti's participation on the filter

11   team.  If I could just --

12        THE COURT:  If you want to make a record -- I'm not

13   concerned about it -- but, yes, if you want to put something on

14   the record about that, feel free.

15        MR. MICHAELS:  My understanding is that Mr. Cipolletti

16   has not been apprised of material that has not been released

17   yet, that he had a role today in the event that we would go in

18   camera, ex parte of the prosecution team.  And my understanding

19   is that's his role today.

20        THE COURT:  That's fine.  I have my own views on --

21   anyway, I don't need to get into that.  That's fine.  I

22   appreciate you making your record.

23        Mr. Cipolletti, you're free to speak to Ms. de Boer if

24   you want to.

25        MR. CIPOLLETTI:  Thank you, Your Honor.  And I have not

1   seen or heard any privileged information.  My sole purpose in

2   being here was if we did have an argument today that went to

3   privileged material, I would be present, and Mr. Michaels and I

4   would make those arguments.

5          THE COURT:  I appreciate that.  But, again, if you had

6   a good idea, and you want to suggest it to Ms. de Boer, feel

7   free to do that.

8          MR. CIPOLLETTI:  I don't know if I would qualify my

9   ideas as good, so I'll just sit down.

10          THE COURT:  All right.  Thank you.

11          Ms. de Boer?

12          MS. DE BOER:  He did have a good idea, Your Honor, in

13   terms of the colloquy.

14          I think one additional point to inquire about is the

15   mere presence of a criminal defense attorney at a meeting, a

16   juror could infer consciousness of guilt.  And I think that,

17   you know, I understand Your Honor is attempting to put some

18   limits about what could be said about Mr. Sadow's involvement,

19   but I think that, you know, there may -- something may come

20   out, intentionally or unintentionally, and so just, you know,

21   colloquy on that subject, as well, would be appropriate.

22          THE COURT:  Thank you.  Very good suggestion.

23          All right.  So back to Mr. Patel.  You're still under

24   oath.

25          So you understand, Mr. Patel, again, the jury is going

1    to hear, possibly, that while you were running your business,

2    you had a criminal defense lawyer sitting in the room with you,

3    and that can create an inference that you had the criminal

4    defense lawyer there for a reason, because you were concerned

5    that you might be violating the law.

6           Now, I understand there's an opposite inference that

7    can be drawn from that, and presumably your very fine lawyers

8    would argue that, which is, no, we were trying to stay on this

9    side of the line, not that side of the line.  But advice of

10   counsel defense goes to your state of mind.

11          So at least the fact that the jury would hear, not just

12   that you had a criminal defense lawyer, but you had the

13   criminal defense lawyer who is now defending you in the case

14   where you are charged with a crime --

15          THE DEFENDANT:  Yes.

16          THE COURT:  -- the jury could draw some sort of

17   negative inference against you and your defense team.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Okay.  So understanding each of those

21   scenarios that we've talked about -- let me say, do you want a

22   moment to speak maybe to Mr. Samuel or to Mr. Sadow privately

23   before I ask you whether you want to go ahead and waive the

24   potential conflicts or the potential issues that I've just

25   raised with you?  Do you want some time to talk to your

1   lawyers?

2           THE DEFENDANT:  No, I'm good.

3           THE COURT:  I'm assuming your lawyers anticipated I

4   might ask you those questions.  So have you at least had a

5   chance, before court today, to talk to Mr. Rafferty and/or

6   Mr. Sadow, Ms. Keown, or your other lawyers, about these

7   conflicts of interest that I've been exploring with you?

8           THE DEFENDANT:  Yes.

9           THE COURT:  All right.  Do you feel like you've had

10  enough time to think about that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And understanding the potential conflicts

13  that I've just explained to you, is it your desire to go ahead

14  and waive those, understanding that if you do waive them and

15  you are convicted, you're not going to be able to come back

16  later and claim that your conviction should be set aside

17  because one of those scenarios happened.  That's what you're

18  really waiving here today --

19          THE DEFENDANT:  Yes, I know.

20          THE COURT:  -- is your ability to come back after the

21  fact and try to get a conviction undone.

22          Do you understand that?

23          THE DEFENDANT:  I understand.

24          THE COURT:  And understanding all of that, is it your

25  desire to go ahead and waive the conflicts?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Okay.  Based upon my colloquy and my

3    observations of Mr. Patel, I do find that his decision to waive

4    those conflicts is a knowing and voluntary and fully informed

5    decision.  I'll accept that waiver.

6          I also find that he is fully informed and fully aware

7    of the consequences of the waiver, and he is accepting the

8    risks inherent in that.

9          All right.  So with that, here's where I'm going to

10   land, folks:  First of all, I want to be clear.  My earlier

11   suggestions about ways to sort of filter out issues as to

12   Mr. Sadow or simply my thoughts, obviously, they do not bind

13   Judge Ruiz.  I'm not ruling on those.  Those are not before me.

14   It was just simply a way for me to explore my analysis.

15         And the analysis I really do think I have to make at

16   the end of it all, having now gotten the waiver, is whether

17   this is effectively a motion to disqualify counsel.  That's

18   really the way I have to look at it.  And the party seeking

19   disqualification has the burden to justify disqualification.

20   And I do believe, in a case like this, that ultimately devolves

21   down to balancing Mr. Patel's Sixth Amendment rights against

22   any potential prejudice to the government and the government's

23   ability to fairly prosecute the case.

24         And looking at those two factors, I do find that

25   Mr. Patel's interests in retaining Mr. Sadow as his lawyer,

1    subject to the waiver that he's given and some of the other

2    prophylactic measures that Judge Ruiz could take, are

3    sufficient that I would not disqualify Mr. Sadow at this stage

4    of the proceedings.  And so I would deny the government's -- to

5    the extent the government is asking me to disqualify, I'm going

6    to deny the motion to disqualify.

7           Not waiving any objection that either side may have to

8    any rulings I've made this afternoon, let me turn first to the

9    government.

10          Is there any issue that you wanted to raise or any

11   clarifications that you needed?

12          MS. DE BOER:  Just two things, Your Honor.

13          I think, you know, we do maintain all of our

14   objections, as Your Honor noted, including -- we are not

15   comfortable that Mr. Sadow's -- the extent of his

16   representation was fleshed out enough for a motion to

17   disqualify to be decided.  But I understand that that's just a

18   point of disagreement.

19          And then the other thing that just occurred to me is,

20   in the colloquy you did ask about whether Mr. Patel had had an

21   opportunity to consult with some of the other members,

22   conflict-free members, on his defense team, but perhaps you can

23   ask did he have the opportunity to consult with them alone on

24   this issue.

25          THE COURT:  Yes, good point.  Thank you.  Thank you for

1    that.

2          Mr. Patel, again, reminding you you're under oath.  I

3    asked you -- here's what I want to make sure, so you can

4    understand.

5          There's sometimes a concern that if you say, well, go

6    talk to the lawyer who's about to get thrown off the case, and

7    tell me if he advised you whether you should waive your right

8    to get him thrown off the case; that's somewhat circular and

9    has its own inherent conflict.

10          So I guess the question is, not disrespecting Mr. Sadow

11    in any way, shape, or form, did you have a chance to talk

12    privately to either Mr. Rafferty, or Ms. Keown, or --

13          THE DEFENDANT:  I spoke to Mr. Rafferty last week.

14          THE COURT:  You did.  Okay.

15          THE DEFENDANT:  And I'm satisfied.

16          THE COURT:  Privately?

17          THE DEFENDANT:  I'm satisfied.

18          THE COURT:  Yes.  But you spoke to him privately?

19          THE DEFENDANT:  Privately, yeah.  It was just him and

20    I.

21          THE COURT:  Okay, very good.  Okay.  I'm not going to

22    delve into that because that is -- beyond that, that's

23    privileged.

24          And let me also clarify one other thing.  My ruling

25    would be the same -- I want to address the other point you

1   raised, Ms. de Boer, because I want you to have the record that

2   you need to have.

3           My ruling would be the same even if there was a

4   situation where a waiver occurred, and it is possible that

5   Mr. Sadow could offer some marginal evidence that would be

6   deemed helpful to the government.  My understanding of the

7   facts and of the role that Mr. Sadow seems to have played in

8   this case, the fact that other people were present at all the

9   other meetings, the fact that it doesn't appear he really gave

10  unique or independent advice to Mr. Patel when there is no one

11  else present, convinces me that the marginal value to the

12  government of getting access to Mr. Sadow and what his

13  conversations were with Mr. Patel is not material to the

14  government's ability to fairly prosecute the case, and is

15  firmly outweighed by Mr. Patel's interests here.

16          So that's why I didn't further factually develop that

17  area, because even if you're right, that would be my finding.

18          Okay.  So you've got your record, and you can obviously

19  take that up with Judge Ruiz, if you'd like to.

20          Anything else anyone wants me to put on the record?

21  Again, I want to make sure everybody has their record here

22  going forward.

23          Ms. de Boer, anything else?

24          MS. DE BOER:  No, nothing else, Your Honor.  Thank you.

25          THE COURT:  Thank you.

```
 1          Mr. Sadow or Mr. Samuel?

 2          MR. SAMUEL:  Nothing from us, Your Honor.  Thank you.

 3          THE COURT:  All right.  Well, I apologize to the folks

 4   from Atlanta for having to fly all the way down, and folks from

 5   D.C., if there's folks from D.C. who had to fly down.  But I

 6   figure you all have probably pretrial matters you can be

 7   working on while you're here.

 8          Mr. Patel, good to see you again.

 9          And everyone, we'll be in recess.  If you need me

10   again, I'm here.

11          Have a good day, everybody.

12          THE COURTROOM DEPUTY:  All rise.

13       (Court recessed at 2:19 p.m.)

14                       C E R T I F I C A T E

15

16

17          I hereby certify that the foregoing is an

18   accurate transcription of the proceedings in the

19   above-entitled matter.

20

21
     DATE:  November 4, 2022   /s/Ilona Lupowitz
22                             ILONA LUPOWITZ, CRR, RPR, RMR
                               Official Court Reporter
23                             United States District Court
                               299 East Broward Boulevard
24                             Fort Lauderdale, Florida 33301
                               (954) 769-5568
25
```

**$**

**$10,000** [1] - 21:17
**$100,000** [1] - 26:9
**$25,000** [1] - 21:23

**/**

**/s/Ilona** [1] - 61:21

**1**

**1** [4] - 1:8, 2:12, 20:16, 20:18
**100** [1] - 32:7
**10th** [2] - 14:17, 16:1
**11** [1] - 7:19
**113** [1] - 7:16
**1400** [1] - 1:15
**15** [1] - 4:11
**15th** [1] - 16:16
**16th** [1] - 10:15
**17** [1] - 15:6
**17(c** [6] - 11:12, 11:17, 12:21, 13:2, 14:11, 17:16
**17(c)** [1] - 4:2
**19-80181** [1] - 3:2
**19-CR-80181-RAR-1** [1] - 1:2
**1:06** [1] - 1:6

**2**

**2** [1] - 1:5
**20** [1] - 2:12
**20005** [1] - 1:16
**2002FOX113** [1] - 7:20
**2015** [2] - 21:13
**2016** [5] - 21:24, 38:10, 38:11, 38:25, 39:4
**2017** [6] - 12:25, 17:13, 21:18, 21:22, 22:6, 29:22
**2018** [1] - 39:1
**2019** [15] - 10:15, 23:16, 23:17, 23:21, 23:22, 26:9, 34:16, 36:22, 36:25, 37:16, 38:5, 38:10, 38:12, 38:18
**2022** [2] - 1:5, 61:21
**2052** [1] - 1:18
**21st** [1] - 16:6
**260** [1] - 1:18
**27th** [1] - 33:1
**28th** [1] - 16:7
**299** [2] - 1:23, 61:23
**2:19** [2] - 1:6, 61:13

**3**

**3** [3] - 7:9, 7:14, 7:20
**300** [1] - 3:24

**30303** [1] - 1:19
**30305** [1] - 2:4
**3131** [1] - 2:3
**3301** [1] - 1:24
**33301** [1] - 61:24
**3rd** [1] - 16:17

**4**

**4** [1] - 61:21

**6**

**6** [1] - 34:16

**7**

**769-5568** [2] - 1:24, 61:24

**8**

**8th** [1] - 1:15

**9**

**954** [2] - 1:24, 61:24

**A**

**abeyance** [1] - 32:21
**ability** [7] - 14:2, 28:13, 30:5, 51:23, 56:20, 57:23, 60:14
**able** [2] - 8:1, 56:15
**above-entitled** [1] - 61:19
**absolute** [1] - 49:22
**absolutely** [4] - 9:1, 11:10, 20:8
**accept** [1] - 57:5
**accepting** [1] - 57:7
**access** [2] - 33:6, 60:12
**accounts** [1] - 37:22
**accurate** [1] - 61:18
**accusation** [1] - 50:14
**achievable** [1] - 41:11
**acknowledgement** [1] - 22:20
**acknowledgment** [2] - 23:1, 23:8
**acquired** [1] - 12:8
**acted** [1] - 32:25
**activity** [2] - 37:2, 37:4
**actual** [1] - 47:22
**add** [1] - 29:10
**additional** [8] - 15:2, 21:12, 21:19, 21:23, 22:22, 38:3, 46:25, 54:14
**address** [8] - 12:14, 12:15, 24:4, 27:21, 44:16, 45:10, 52:20, 59:25

**addressed** [2] - 40:8, 44:17
**adjudication** [1] - 16:21
**adjusted** [1] - 16:14
**admissible** [1] - 10:21
**admission** [1] - 49:6
**adoptive** [1] - 49:6
**advance** [1] - 14:14
**advice** [110] - 6:11, 6:17, 6:19, 6:20, 6:23, 8:3, 8:11, 8:12, 8:17, 9:1, 9:9, 9:25, 10:3, 11:23, 12:21, 12:23, 13:3, 13:5, 13:13, 13:15, 15:3, 15:5, 15:13, 15:18, 15:22, 17:1, 17:18, 17:25, 18:4, 18:23, 20:23, 20:25, 21:6, 21:7, 22:19, 23:11, 23:13, 24:5, 25:13, 26:18, 26:20, 26:23, 27:2, 27:3, 27:4, 28:23, 28:24, 29:1, 29:23, 29:24, 30:6, 30:10, 30:13, 30:15, 30:17, 30:20, 30:22, 32:9, 33:24, 34:3, 34:24, 35:3, 35:7, 36:13, 36:14, 36:17, 36:20, 36:21, 37:5, 37:6, 37:7, 37:15, 38:24, 39:2, 39:5, 39:21, 39:22, 40:6, 40:7, 40:15, 40:17, 40:20, 42:9, 43:4, 43:7, 43:16, 44:2, 44:3, 44:4, 44:6, 44:7, 44:20, 45:16, 45:20, 45:21, 45:22, 46:2, 46:3, 46:15, 47:5, 47:18, 48:22, 49:1, 51:7, 55:9, 60:10
**advise** [1] - 33:16
**advised** [2] - 46:15, 59:7
**advising** [1] - 39:20
**affect** [2] - 28:7, 51:23
**afternoon** [7] - 3:2, 3:5, 3:13, 3:22, 49:18, 52:5, 58:8
**aggressively** [1] - 50:24
**ago** [3] - 3:18, 3:19, 4:21
**agree** [6] - 16:18, 29:9, 29:15, 32:5, 33:12, 45:23
**agreement** [5] - 8:21, 8:25, 16:14, 16:15, 22:24
**agrees** [1] - 21:3
**ahead** [3] - 55:23, 56:13, 56:25
**allegations** [1] - 27:14
**alleged** [5] - 15:4, 25:15, 37:1, 37:8, 38:8
**alleging** [1] - 50:3
**allow** [2] - 17:4, 20:3
**allowed** [1] - 51:9
**allows** [1] - 19:14
**almost** [1] - 40:20
**alone** [1] - 58:23
**Amendment** [5] - 28:8, 45:8, 47:20, 49:22, 57:21

**America** [1] - 3:3
**AMERICA** [1] - 1:4
**analysis** [2] - 57:14, 57:15
**answer** [9] - 30:9, 34:21, 35:4, 39:20, 43:23, 44:11, 48:14, 48:17, 48:19
**answered** [1] - 49:1
**answers** [2] - 36:23, 40:18
**anticipated** [1] - 56:3
**anyway** [1] - 53:21
**apart** [1] - 34:18
**apologize** [2] - 18:18, 61:3
**appeal** [1] - 45:7
**appear** [2] - 9:5, 60:9
**appearance** [2] - 28:1
**appearances** [1] - 3:4
**APPEARANCES** [1] - 1:12
**Appearances** [1] - 2:1
**appreciate** [6] - 3:11, 18:7, 32:20, 35:15, 53:22, 54:5
**apprised** [1] - 53:16
**approach** [1] - 20:6
**appropriate** [6] - 23:3, 26:24, 27:23, 27:24, 36:2, 54:21
**appropriateness** [1] - 52:19
**area** [1] - 60:17
**arguably** [1] - 28:14
**argue** [6] - 31:13, 31:14, 34:4, 44:1, 51:20, 55:8
**argument** [4] - 7:25, 43:4, 49:4, 54:2
**arguments** [1] - 54:4
**arise** [1] - 24:8
**arisen** [1] - 24:9
**aside** [1] - 56:16
**aspect** [1] - 27:16
**assert** [2] - 30:21, 38:24
**asserted** [10] - 15:18, 30:14, 34:22, 40:1, 40:4, 42:8, 42:12, 43:5, 45:20, 46:18
**asserting** [4] - 5:25, 10:5, 10:6, 15:19
**assessing** [1] - 26:7
**assume** [2] - 28:15, 45:2
**assumed** [1] - 6:14
**assuming** [4] - 18:15, 42:16, 43:22, 56:3
**Atlanta** [3] - 1:19, 2:4, 61:4
**attack** [1] - 8:11
**attempting** [1] - 54:17
**attendant** [1] - 40:5
**attorney** [15] - 9:8, 9:16, 17:1, 23:12, 26:6, 30:17, 30:19, 30:23, 36:6, 39:6, 39:16, 39:23, 43:15, 46:25, 54:15

**Attorney's** [1] - 23:18
**attorney-client** [2] - 9:8, 17:1
**attorneys** [23] - 12:6, 12:7, 14:24, 20:25, 22:23, 23:24, 24:11, 25:7, 25:19, 26:19, 26:21, 27:2, 29:25, 30:12, 34:17, 36:19, 37:15, 37:17, 39:22, 46:16, 46:23, 47:5, 47:7
**attorneys'** [1] - 11:20
**August** [7] - 10:15, 22:6, 23:22, 29:22, 33:1, 38:5, 38:10
**author** [1] - 10:14
**authorized** [1] - 12:2
**available** [4] - 14:21, 28:16, 31:23, 40:2
**Avenue** [1] - 1:15
**aware** [5] - 6:21, 28:10, 37:12, 37:20, 57:6
**awful** [2] - 41:12, 41:13
**awkward** [1] - 6:5

## B

**background** [1] - 27:19
**backward** [1] - 6:24
**balance** [1] - 47:19
**balancing** [1] - 57:21
**bank** [1] - 26:2
**based** [8] - 7:4, 12:2, 30:11, 34:24, 44:20, 47:6, 51:18, 57:2
**baseline** [1] - 21:2
**basis** [2] - 6:19, 35:3
**Bates** [1] - 7:19
**BEACH** [1] - 1:2
**became** [2] - 6:21, 37:12
**become** [5] - 21:9, 25:11, 31:3, 42:22, 51:3
**becomes** [3] - 22:5, 28:18, 42:23
**BEFORE** [1] - 1:10
**began** [1] - 39:10
**begin** [1] - 15:25
**beginning** [3] - 23:17, 25:15, 31:25
**behalf** [2] - 3:8, 34:13
**behoove** [1] - 30:4
**belief** [1] - 37:19
**believes** [1] - 11:17
**belive** [1] - 38:14
**beneficial** [1] - 31:23
**better** [3] - 34:19, 34:25, 45:25
**between** [11] - 8:22, 21:5, 23:24, 24:3, 24:11, 25:5, 25:12, 26:6, 30:21, 33:13, 52:8

**beyond** [1] - 59:22
**big** [1] - 12:3
**bigger** [1] - 44:17
**biggest** [2] - 44:22, 44:25
**bill** [4] - 4:13, 7:6, 7:11, 7:20
**billing** [2] - 26:23, 39:16
**bills** [5] - 23:23, 25:5, 38:5, 40:11, 41:13
**bind** [1] - 57:12
**bit** [3] - 6:4, 27:22, 37:21
**black** [1] - 29:2
**blurred** [1] - 21:9
**Boer** [18] - 3:6, 4:10, 5:3, 11:2, 18:7, 20:3, 20:11, 22:3, 29:5, 31:12, 31:21, 44:22, 46:13, 53:23, 54:6, 54:11, 60:1, 60:23
**BOER** [33] - 1:13, 3:5, 11:6, 11:19, 14:17, 20:5, 20:10, 20:13, 20:20, 22:4, 22:10, 25:3, 29:9, 29:13, 36:1, 36:16, 37:9, 38:10, 38:16, 38:22, 39:5, 41:11, 42:5, 43:3, 43:13, 45:13, 45:16, 46:14, 53:3, 53:6, 54:12, 58:12, 60:24
**bond** [2] - 33:6, 33:7
**Boulevard** [2] - 1:23, 61:23
**box** [1] - 29:2
**Brett** [1] - 22:14
**brewing** [1] - 37:25
**brief** [5] - 21:4, 21:11, 21:19, 23:21, 35:19
**briefly** [1] - 53:4
**bring** [1] - 57:12
**broad** [2] - 15:20, 18:9
**brokers** [1] - 22:12
**brooding** [1] - 27:17
**brought** [1] - 40:10
**Broward** [2] - 1:23, 61:23
**BRUCE** [1] - 1:10
**bucket** [2] - 12:3, 29:10
**bumpers** [1] - 14:8
**bunch** [1] - 29:15
**burden** [2] - 10:6, 57:19
**business** [1] - 55:1
**BY** [1] - 1:20

## C

**camera** [5] - 6:1, 6:16, 7:4, 8:19, 53:18
**candidly** [1] - 9:4
**cannot** [1] - 40:4
**Carolina** [1] - 23:19
**CASE** [1] - 1:2
**Case** [1] - 3:2
**case** [34] - 8:18, 8:22, 9:10, 9:24, 10:19, 11:22, 11:24,

15:12, 15:23, 16:11, 19:19, 22:13, 23:4, 24:2, 24:9, 25:22, 27:14, 28:3, 28:11, 28:19, 30:1, 33:5, 35:8, 37:2, 43:13, 49:21, 50:17, 55:13, 57:20, 57:23, 59:6, 59:8, 60:8, 60:14
**cases** [2] - 13:25, 50:24
**cash** [1] - 47:17
**categorize** [1] - 6:22
**category** [1] - 23:13
**causes** [1] - 37:4
**cell** [1] - 9:17
**certain** [3] - 14:25, 50:11, 51:15
**certainly** [6] - 9:5, 9:20, 27:13, 32:12, 32:22, 34:1
**certification** [1] - 23:2
**certify** [1] - 61:17
**cetera** [1] - 33:23
**challenging** [1] - 4:1
**chance** [2] - 56:5, 59:11
**characterize** [1] - 46:2
**charged** [1] - 55:14
**charges** [3] - 8:18, 30:16, 35:8
**choice** [2] - 47:21, 49:24
**Christian** [1] - 22:14
**Cipolletti** [4] - 3:6, 3:7, 53:15, 53:23
**CIPOLLETTI** [2] - 53:25, 54:8
**Cipolletti's** [1] - 53:10
**circular** [1] - 59:8
**civil** [2] - 13:25, 21:20
**claim** [1] - 56:16
**claimed** [1] - 32:15
**claims** [2] - 9:25, 10:25
**clarifications** [1] - 58:11
**clarify** [1] - 59:24
**clean** [1] - 38:21
**clear** [8] - 12:15, 12:22, 13:25, 15:15, 14:21, 26:17, 57:10
**client** [5] - 9:6, 9:8, 17:1, 26:12, 33:16
**client's** [1] - 26:7
**clients** [1] - 24:19
**co** [5] - 3:14, 22:15, 24:3, 24:11, 28:11
**co-conspirators** [3] - 22:15, 24:3, 24:11
**co-counsel** [2] - 3:14, 28:11
**coextensive** [2] - 15:20, 43:6
**collateral** [1] - 45:7
**colloquy** [10] - 32:2, 35:17, 36:2, 45:5, 47:2, 49:9, 54:13, 54:21, 57:2, 58:20

**comfortable** [2] - 9:13, 58:15
**coming** [2] - 36:22, 38:17
**commenting** [1] - 22:2
**communication** [4] - 9:6, 9:8, 9:19, 19:14
**communications** [4] - 19:19, 23:24, 25:18, 34:24
**company** [2] - 12:11
**compel** [4] - 7:3, 8:6, 8:20, 9:3
**compelling** [1] - 4:2
**compliance** [17] - 11:17, 21:5, 23:11, 25:12, 25:19, 26:19, 26:20, 27:2, 30:11, 30:17, 30:22, 33:13, 33:16, 33:18, 36:5, 36:6, 36:19
**complicated** [4] - 13:15, 13:16, 17:20, 48:5
**complied** [1] - 23:2
**comply** [2] - 13:1, 41:14
**Composite** [3] - 2:12, 20:16, 20:18
**compromised** [2] - 28:14, 45:8
**concern** [13] - 18:6, 24:7, 25:2, 26:8, 26:16, 26:17, 44:16, 44:17, 44:22, 45:4, 46:21, 52:13, 59:5
**concerned** [10] - 5:24, 28:12, 39:8, 41:10, 42:1, 42:2, 42:3, 48:6, 53:13, 55:4
**concerning** [1] - 30:10
**concerns** [2] - 15:1, 45:5
**conclude** [2] - 16:6, 51:17
**conclusory** [1] - 45:22
**conduct** [5] - 25:22, 26:3, 40:21, 50:21
**conducted** [3] - 8:18, 23:3, 37:23
**confer** [2] - 19:8, 53:3
**conferring** [3] - 52:14, 52:19, 53:1
**conflict** [12] - 3:25, 4:4, 14:23, 15:9, 20:2, 24:8, 27:23, 49:25, 50:5, 52:6, 58:22, 59:9
**conflict-free** [2] - 49:25, 58:22
**conflicts** [9] - 31:19, 52:2, 52:5, 55:24, 56:7, 56:12, 56:25, 57:4
**consciousness** [1] - 54:16
**consequences** [1] - 57:7
**consider** [1] - 41:23
**considered** [1] - 22:16
**considering** [1] - 20:16
**consistent** [4] - 27:1, 29:24, 46:16, 47:6
**conspiracy** [8] - 11:22,

11:24, 12:3, 15:4, 25:15, 29:21, 39:10

**conspirators** [3] - 22:15, 24:3, 24:11

**Constitution** [1] - 49:23

**consult** [2] - 58:21, 58:23

**contact** [1] - 3:18

**contain** [1] - 8:10

**contentious** [1] - 13:10

**contents** [1] - 34:15

**contested** [1] - 48:4

**context** [3] - 9:12, 22:22, 27:22

**continue** [4] - 19:18, 26:25, 30:20, 45:10

**continued** [1] - 2:1

**continuing** [1] - 38:4

**contract** [1] - 18:4

**contracts** [1] - 22:11

**control** [1] - 13:24

**conversation** [5] - 6:5, 30:18, 31:18, 35:24, 49:21

**conversations** [6] - 6:20, 29:3, 37:25, 43:18, 60:13

**convey** [1] - 29:19

**convicted** [1] - 56:15

**conviction** [2] - 56:16, 56:21

**convinces** [1] - 60:11

**cooperating** [1] - 8:24

**cooperatively** [1] - 16:18

**copies** [2] - 20:14

**copy** [2] - 21:16, 22:8

**corners** [3] - 16:23, 18:22, 19:12

**corpus** [1] - 46:3

**correct** [12] - 4:8, 6:2, 7:23, 8:1, 8:5, 11:1, 24:20, 38:16, 38:22, 46:11, 46:12, 49:18

**correctly** [1] - 48:17

**correlated** [1] - 4:12

**corrupt** [1] - 51:17

**counsel** [68] - 3:14, 6:12, 6:20, 6:21, 8:4, 8:9, 8:11, 9:1, 9:4, 9:9, 9:25, 11:23, 12:21, 12:23, 13:4, 13:5, 13:13, 13:15, 15:5, 15:14, 15:18, 15:22, 17:2, 17:18, 17:25, 18:23, 21:1, 21:8, 23:14, 24:5, 25:1, 28:11, 28:16, 30:13, 30:20, 32:25, 33:13, 33:18, 33:24, 35:3, 35:14, 35:21, 36:4, 36:5, 36:13, 37:7, 37:15, 38:24, 38:25, 39:2, 40:6, 44:4, 44:7, 45:20, 45:22, 47:18, 47:21, 49:23, 49:24, 49:25, 51:7, 52:8, 52:25, 53:1, 55:10, 57:17

**couple** [2] - 15:2, 35:20

**course** [2] - 33:4, 53:5

**Court** [26] - 1:22, 1:23, 3:1, 8:1, 8:23, 10:13, 17:4, 21:10, 22:22, 24:14, 26:17, 27:8, 27:24, 29:19, 29:23, 30:15, 32:11, 36:2, 43:20, 44:11, 44:12, 48:15, 48:19, 61:13, 61:22, 61:23

**COURT** [117] - 1:1, 3:2, 3:11, 3:16, 3:19, 4:22, 5:1, 5:10, 5:16, 5:19, 5:21, 6:3, 6:14, 7:12, 7:17, 7:24, 8:5, 9:13, 9:20, 10:12, 10:16, 10:19, 11:10, 12:13, 13:2, 13:18, 13:20, 13:23, 14:6, 15:11, 16:4, 17:19, 17:22, 18:6, 18:11, 18:14, 18:17, 19:1, 19:7, 19:18, 20:8, 20:11, 20:15, 21:25, 22:3, 22:9, 24:16, 24:18, 24:23, 27:10, 29:12, 31:9, 32:17, 33:2, 33:9, 33:11, 34:19, 35:5, 35:15, 36:15, 36:24, 38:6, 38:11, 38:17, 38:23, 40:24, 41:18, 42:10, 43:8, 43:21, 44:8, 44:15, 45:15, 45:24, 46:13, 47:10, 48:11, 48:13, 48:16, 48:20, 48:23, 49:3, 49:14, 49:17, 49:20, 50:3, 50:8, 50:17, 51:2, 51:13, 51:23, 52:1, 52:9, 52:11, 52:16, 52:23, 53:5, 53:12, 53:20, 54:5, 54:10, 54:22, 55:16, 55:20, 56:3, 56:9, 56:12, 56:20, 56:24, 57:2, 58:25, 59:14, 59:16, 59:18, 59:21, 60:25, 61:3

**court** [4] - 20:9, 32:11, 36:13, 56:5

**Court's** [1] - 49:1

**courtroom** [1] - 52:24

**COURTROOM** [1] - 61:12

**craft** [1] - 18:8

**create** [2] - 50:5, 55:3

**credibility** [2] - 34:6, 51:19

**crime** [1] - 55:14

**criminal** [32] - 21:5, 23:12, 25:12, 26:13, 27:12, 27:15, 30:10, 30:15, 30:16, 30:19, 30:22, 30:23, 32:25, 33:13, 33:15, 34:2, 36:4, 36:6, 37:1, 37:4, 39:15, 39:21, 39:22, 39:23, 40:6, 43:15, 54:15, 55:2, 55:3, 55:12, 55:13

**CRIMINAL** [1] - 1:15

**criminality** [1] - 37:8

**cross** [5] - 25:6, 30:3, 42:24, 47:18, 50:21

**cross-examination** [2] - 30:3, 50:21

**cross-examine** [2] - 25:6, 42:24

**cross-examines** [1] - 47:18

**CRR** [2] - 1:21, 61:22

**cumulative** [4] - 46:9, 47:11, 47:12, 49:1

**custody** [1] - 13:24

**D**

**D.C** [3] - 1:16, 61:5

**Danik** [2] - 3:21, 3:22

**date** [3] - 10:11, 14:23, 37:6

**DATE** [1] - 61:21

**date's** [1] - 16:6

**dates** [1] - 16:18

**days** [1] - 15:2

**DE** [33] - 1:13, 3:5, 11:6, 11:19, 14:17, 20:5, 20:10, 20:13, 20:20, 22:4, 22:10, 25:3, 29:9, 29:13, 36:1, 36:16, 37:9, 38:10, 38:16, 38:22, 39:5, 41:11, 42:5, 43:3, 43:13, 45:13, 45:16, 46:14, 53:3, 53:6, 54:12, 58:12, 60:24

**de** [18] - 3:5, 4:10, 5:3, 11:2, 18:7, 20:3, 20:11, 22:3, 29:5, 31:12, 31:21, 44:22, 46:13, 53:23, 54:6, 54:11, 60:1, 60:23

**deadlines** [1] - 16:13

**deal** [6] - 12:20, 13:15, 18:3, 32:9, 41:18, 41:19

**dealing** [2] - 18:15, 30:16

**deals** [2] - 12:23, 17:7

**dealt** [1] - 44:23

**debate** [1] - 12:16

**December** [1] - 16:17

**decide** [1] - 51:10

**decided** [1] - 58:17

**decision** [2] - 57:3, 57:5

**deemed** [1] - 60:6

**Defendant** [2] - 1:8, 49:13

**defendant** [6] - 8:24, 9:17, 21:1, 23:25, 30:19, 49:21

**DEFENDANT** [23] - 1:17, 2:2, 49:16, 49:19, 50:2, 50:7, 50:16, 51:1, 51:12, 51:22, 51:25, 55:15, 55:19, 56:2, 56:8, 56:11, 56:19, 56:23, 57:1, 59:13, 59:15, 59:17, 59:19

**defending** [2] - 28:3, 55:13

**defense** [93] - 3:12, 4:10, 5:24, 6:7, 6:12, 6:20, 7:21, 8:9, 8:11, 9:4, 9:9, 11:7, 11:22, 14:10, 14:12, 14:18, 15:9, 15:14, 15:18, 15:19, 15:22, 16:10, 17:2, 17:18,

**defense's** [2] - 30:2, 31:4

**defunct** [1] - 12:7

**delve** [1] - 59:22

**demonstratives** [1] - 20:7

**deny** [6] - 7:4, 8:6, 8:20, 9:3, 58:4, 58:6

**DEPARTMENT** [1] - 1:14

**deposition** [1] - 21:20

**DEPUTY** [1] - 61:12

**describe** [1] - 22:12

**describing** [1] - 27:25

**designations** [1] - 4:1

**designed** [1] - 16:5

**desire** [2] - 56:13, 56:25

**develop** [2] - 36:19, 60:16

**development** [1] - 26:18

**devolves** [1] - 57:20

**different** [10] - 4:18, 17:9, 40:17, 42:21, 42:23, 43:1, 43:12, 44:3, 46:1, 46:4

**difficult** [2] - 12:25, 21:9

**difficulty** [1] - 10:10

**direct** [2] - 25:6, 48:15

**directing** [1] - 23:7

**direction** [1] - 36:3

**directs** [1] - 22:18

**disagree** [1] - 22:2

**disagreement** [2] - 45:14, 58:18

**disclose** [1] - 47:4

**disclosed** [3] - 5:13, 24:22, 25:9

**discloses** [1] - 10:2

**discovery** [4] - 10:21, 13:10, 13:11, 19:22

**discussing** [1] - 25:19

**Discussion** [2] - 52:8, 53:7

**discussion** [1] - 27:18

**discussions** [2] - 35:7, 40:11

**disentangle** [1] - 21:9

**dispute** [2] - 20:22, 39:23

**disputed** [3] - 4:12, 11:4,

32:18
disputes [1] - 4:9
disputing [1] - 5:6
disqualification [2] - 57:19
disqualify [5] - 57:17, 58:3, 58:5, 58:6, 58:17
disregard [1] - 41:24
disrespecting [1] - 59:10
distinction [7] - 21:4, 21:8, 25:12, 25:16, 30:21, 33:13, 34:9
distribution [1] - 22:23
distributor [3] - 22:11, 22:19
distributors [1] - 22:16
district [1] - 23:19
District [2] - 1:23, 61:23
DISTRICT [2] - 1:1, 1:1
DIVISION [2] - 1:2, 1:15
doable [3] - 14:19, 16:2, 16:3
Docket [1] - 3:24
document [5] - 10:1, 10:2, 10:14, 10:23, 14:2
Document [1] - 7:16
documents [12] - 3:25, 4:2, 8:4, 11:7, 14:11, 15:2, 16:8, 19:11, 21:6, 23:5, 25:10, 27:7
DOJ [1] - 33:23
Don [1] - 3:14
DONALD [1] - 2:2
done [2] - 45:23, 50:14
down [8] - 16:15, 26:25, 29:25, 48:24, 54:9, 57:21, 61:4, 61:5
draw [1] - 51:18, 55:16
drawn [2] - 21:4, 55:7
Drive [1] - 2:3
duly [1] - 49:13
during [5] - 15:3, 26:23, 29:21, 34:18, 37:7

**E**

early [8] - 4:2, 23:10, 25:14, 26:8, 36:22, 37:15, 38:12, 38:17
East [2] - 1:23, 61:23
easy [1] - 24:14
effect [1] - 49:5
effective [1] - 47:20
effectively [4] - 28:8, 49:23, 51:24, 57:17
eight [5] - 5:7, 5:15, 5:21, 5:23, 6:8
either [7] - 8:11, 24:2, 25:6, 31:3, 40:10, 58:7, 59:12
eleventh [1] - 48:3
eliminate [1] - 19:2

email [7] - 5:9, 5:15, 11:25, 22:10, 29:22, 33:1, 36:5
emails [10] - 4:11, 5:7, 8:15, 12:20, 17:14, 25:4, 25:14, 37:14, 41:12
EMILY [1] - 1:14
Emily [1] - 3:6
employee [1] - 18:5
end [3] - 25:16, 37:5, 57:16
enforcement [1] - 39:14
engaging [1] - 26:4
entire [4] - 7:11, 24:11, 36:14, 49:18
entitled [4] - 16:25, 43:5, 46:18, 61:19
entries [5] - 7:7, 7:21, 7:22, 8:4, 8:7
Entry [1] - 3:24
essence [2] - 4:3, 6:20
et [1] - 33:23
ethical [1] - 35:20
eve [1] - 48:5
event [3] - 3:8, 52:17, 53:17
evidence [18] - 8:10, 13:4, 13:9, 16:9, 20:19, 23:5, 24:10, 28:19, 31:4, 34:24, 35:1, 41:23, 44:1, 47:23, 51:16, 51:19, 60:5
ex [1] - 53:18
exactly [3] - 9:24, 15:22, 50:20
examination [2] - 30:3, 50:21
examine [2] - 25:6, 42:24
examines [1] - 47:18
example [6] - 13:7, 22:6, 22:14, 29:22, 31:21, 47:3
except [2] - 4:24, 7:14
excessive [1] - 27:6
exchange [1] - 22:10
exchanged [1] - 24:3
exclude [2] - 24:10, 24:15
executed [1] - 10:15
exhibit [4] - 7:1, 7:17, 18:13, 21:19
Exhibit [7] - 2:11, 4:19, 8:21, 9:3, 20:16, 20:18, 21:24
exhibits [5] - 5:22, 6:25, 8:2, 8:14, 40:11
EXHIBITS [1] - 2:9
Exhibits [1] - 6:8
exist [3] - 12:10, 21:8, 25:17
existed [1] - 50:20
expanding [1] - 25:20
expect [1] - 19:10
experience [1] - 27:18
expert [1] - 33:19

explained [2] - 31:21, 56:13
explore [8] - 40:4, 43:9, 43:21, 46:18, 50:6, 52:6, 52:12, 57:14
explored [1] - 43:20
exploring [1] - 54:9
exposure [5] - 26:7, 26:22, 30:11, 39:17, 45:18
extends [1] - 11:21
extent [12] - 7:3, 10:5, 14:10, 14:13, 29:14, 30:21, 32:8, 33:1, 39:24, 46:8, 58:5, 58:15
extremely [1] - 28:11

**F**

face [1] - 10:4
fact [20] - 5:14, 8:8, 21:23, 25:9, 28:25, 30:10, 30:14, 30:16, 34:1, 34:5, 34:9, 36:8, 41:21, 41:23, 42:4, 46:15, 55:11, 56:21, 60:8, 60:9
factors [1] - 57:24
facts [6] - 21:2, 26:16, 28:5, 32:18, 47:7, 60:7
factually [1] - 60:16
fair [2] - 16:11, 42:5
fairly [5] - 57:23, 60:14
faith [2] - 17:17, 18:21
fall [3] - 18:21, 19:11, 23:12
falls [1] - 46:5
familiar [3] - 27:13, 27:14
far [5] - 5:24, 14:14, 39:6, 40:23, 48:2
feature [1] - 25:11
February [3] - 23:17, 23:22, 37:16
fee [2] - 8:21, 22:1
few [1] - 4:14
figure [4] - 14:18, 19:4, 41:20, 61:6
filed [2] - 20:22, 21:5
filter [9] - 3:8, 17:15, 32:13, 52:15, 52:19, 52:20, 52:25, 53:10, 57:11
fine [5] - 9:15, 40:19, 53:20, 53:21, 55:7
firm [3] - 7:6, 17:12, 33:19
firmly [1] - 60:15
firms [2] - 12:8, 13:19, 17:9
first [8] - 4:7, 7:24, 14:10, 15:11, 30:2, 44:19, 57:10, 58:8
five [5] - 4:24, 14:24, 17:7, 17:8, 28:21
flag [1] - 14:22
flesh [3] - 20:3, 35:22, 36:7
fleshed [1] - 58:16
fleshing [1] - 24:5

Floor [1] - 1:15
FLORIDA [1] - 1:1
Florida [4] - 1:4, 1:24, 9:16, 61:24
fly [2] - 61:4, 61:5
focus [1] - 29:17
focusing [1] - 17:19
folks [4] - 57:10, 61:3, 61:4, 61:5
follow [1] - 41:25
following [2] - 42:13, 50:8
FOR [3] - 1:13, 1:17, 2:2
foregoing [1] - 61:17
form [1] - 59:11
formalistic [1] - 34:9
former [1] - 9:11
forms [1] - 35:2
Fort [2] - 1:24, 61:24
forward [2] - 6:23, 60:22
four [5] - 4:24, 16:23, 18:22, 19:12, 28:21
Fox [6] - 4:14, 5:7, 7:6, 7:16, 7:19, 12:5
frankly [2] - 24:8, 43:6
FRAUD [1] - 1:15
fraud [1] - 38:9
free [6] - 45:11, 49:25, 53:14, 53:23, 54:7, 58:22
front [6] - 19:15, 28:4, 32:12, 38:7, 50:9, 51:20
fronting [1] - 28:6
full [6] - 11:17, 22:1, 31:6, 40:4, 40:5, 49:14
fully [4] - 51:24, 57:4, 57:6

**G**

Garcia [1] - 4:3
GARLAND [1] - 2:3
gathering [1] - 21:7
general [1] - 32:23
genetic [2] - 38:19, 39:12
gentleman [1] - 52:14
Georgia [2] - 1:19, 2:4
given [13] - 4:23, 11:14, 18:10, 19:13, 19:23, 32:10, 34:3, 37:7, 39:24, 40:20, 44:3, 46:2, 58:1
global [1] - 28:13
government [53] - 3:4, 3:7, 5:6, 5:13, 6:5, 7:2, 7:3, 7:14, 10:1, 10:22, 11:13, 14:16, 15:15, 16:8, 16:11, 16:16, 18:8, 19:12, 19:15, 20:3, 20:18, 23:20, 27:17, 29:2, 30:1, 34:3, 35:16, 35:19, 37:3, 38:18, 39:8, 40:3, 40:4, 40:9, 41:9, 42:3, 42:19, 42:22, 44:10, 44:21, 45:1, 45:4, 45:9, 47:17, 48:1, 50:3,

51:5, 52:3, 57:22, 58:5, 58:9, 60:6, 60:12

**GOVERNMENT** [1] - 1:13
**GOVERNMENT'S** [1] - 2:9
**government's** [28] - 3:8, 3:23, 4:19, 6:21, 8:6, 8:20, 9:3, 10:23, 11:15, 11:16, 14:14, 17:23, 21:19, 24:24, 25:2, 26:8, 36:7, 36:16, 37:20, 38:13, 44:16, 44:17, 47:3, 47:22, 48:7, 57:22, 58:4, 60:14
**grant** [1] - 10:23
**great** [1] - 27:4
**grey** [1] - 33:14
**group** [1] - 17:15
**grown** [1] - 15:1
**guess** [6] - 9:6, 12:13, 14:1, 14:8, 19:10, 59:10
**guilt** [1] - 54:16
**Gurskis** [1] - 3:6
**GURSKIS** [1] - 1:14
**guys** [1] - 27:4

**H**

**hand** [3] - 20:6, 20:13, 49:11
**handed** [3] - 20:11, 21:20, 22:7
**happy** [4] - 9:14, 32:10, 35:23, 44:13
**head** [2] - 32:5, 42:11
**healthcare** [1] - 38:9
**hear** [28] - 9:14, 10:9, 12:18, 20:9, 24:24, 28:25, 29:7, 31:9, 31:11, 31:12, 32:4, 35:23, 40:8, 41:22, 42:1, 42:2, 42:18, 43:19, 44:13, 44:15, 44:19, 44:25, 47:19, 47:25, 51:14, 51:19, 55:1, 55:11
**heard** [11] - 10:8, 36:4, 36:23, 39:19, 39:21, 40:23, 43:14, 43:17, 44:21, 54:1
**hearing** [8] - 4:3, 4:4, 4:9, 26:19, 33:6, 33:7, 40:23, 45:21
**HEARING** [1] - 1:10
**hearings** [1] - 50:18
**hears** [1] - 51:16
**hearsay** [1] - 49:6
**held** [1] - 53:7
**help** [1] - 15:5
**helpful** [1] - 60:6
**helping** [2] - 11:7, 36:19
**hereby** [1] - 61:17
**high** [5] - 6:6, 6:18, 20:20, 21:10, 32:24
**high-level** [2] - 6:6, 21:10

**himself** [4] - 31:24, 50:13, 50:23
**Hirsch** [1] - 22:14
**hit** [1] - 26:14
**hmm** [4] - 22:9, 33:9, 36:15, 48:16
**hold** [2] - 30:3, 32:21
**Honor** [28] - 3:5, 3:13, 6:2, 11:6, 11:19, 14:20, 20:6, 20:20, 21:15, 21:20, 22:7, 29:10, 32:22, 36:1, 37:9, 41:17, 42:5, 45:14, 46:12, 53:3, 53:8, 53:25, 54:12, 54:17, 58:12, 58:14, 60:24, 61:2
**Honor's** [3] - 15:7, 36:12, 47:1
**HONORABLE** [1] - 1:10
**Honorable** [1] - 1:22
**hopefully** [1] - 45:2
**hoping** [2] - 11:12, 29:19
**hour** [1] - 48:3

**I**

**idea** [5] - 8:23, 8:25, 53:1, 54:6, 54:12
**ideas** [2] - 52:24, 54:9
**identified** [4] - 14:24, 17:10, 20:21, 22:15
**iffy** [1] - 38:19
**II** [1] - 1:22
**ILONA** [2] - 1:21, 61:22
**impact** [1] - 34:4
**implication** [1] - 40:12
**implications** [1] - 36:18
**implicit** [1] - 40:20
**important** [2] - 34:9, 35:17
**importantly** [1] - 35:9
**impossible** [2] - 24:4, 25:6
**impute** [1] - 52:16
**imputed** [1] - 49:7
**inability** [1] - 48:2
**incentivized** [1] - 50:11
**include** [3] - 25:21, 40:6, 42:9
**included** [2] - 4:11, 17:9
**includes** [1] - 24:1
**including** [4] - 25:20, 28:23, 46:23, 58:14
**inclusive** [1] - 48:18
**inconceivable** [1] - 36:17
**inconsistent** [1] - 27:1
**independent** [2] - 15:17, 60:10
**indicate** [1] - 32:8
**indicated** [2] - 21:21, 32:7
**indicted** [2] - 21:2, 26:13
**indictment** [4] - 13:8, 22:16, 38:7, 38:8

**individual** [1] - 28:13
**individuals** [2] - 22:15, 37:11
**industry** [2] - 33:14, 39:15
**inevitably** [1] - 40:10
**infer** [3] - 40:14, 40:19, 54:16
**inference** [4] - 51:18, 55:3, 55:6, 55:17
**inform** [3] - 15:5, 15:9, 27:19
**information** [9] - 21:7, 24:2, 24:6, 26:2, 26:20, 31:2, 47:3, 47:4, 54:1
**informed** [2] - 57:4, 57:6
**inherent** [3] - 40:12, 57:8, 59:9
**inquire** [2] - 48:12, 54:14
**insofar** [1] - 13:3
**instance** [1] - 23:10
**instruct** [1] - 41:21
**instruction** [1] - 41:15
**instructions** [1] - 41:24
**integrity** [2] - 28:2, 34:11
**intend** [1] - 46:23
**intent** [2] - 39:3
**intentionally** [1] - 54:20
**interest** [4] - 3:25, 4:4, 20:2, 56:7
**interesting** [1] - 15:12
**interests** [2] - 57:25, 60:15
**interface** [1] - 27:16
**interpreting** [2] - 26:21, 36:20
**interrupt** [1] - 17:21
**interrupted** [1] - 17:22
**introduce** [1] - 44:1
**introduced** [1] - 16:10
**introduces** [1] - 31:24
**introducing** [1] - 13:14
**investigate** [1] - 43:5
**investigation** [7] - 6:22, 26:3, 27:17, 37:3, 37:20, 38:14, 48:4
**investigations** [7] - 23:18, 26:5, 36:21, 36:25, 37:10, 38:1
**investigator** [1] - 3:21
**invoice** [1] - 4:14
**involved** [12] - 10:14, 12:6, 13:8, 17:13, 20:23, 21:14, 23:25, 25:17, 26:18, 39:7, 39:9, 39:22
**involvement** [8] - 11:21, 23:15, 24:12, 25:15, 27:7, 29:20, 39:25, 54:18
**involves** [1] - 13:7
**irrelevant** [1] - 37:6
**isolated** [1] - 5:11

**isolating** [1] - 17:13
**issue** [37] - 4:4, 11:12, 11:20, 11:22, 11:24, 12:3, 12:17, 12:19, 12:22, 14:23, 14:24, 19:21, 20:2, 20:21, 22:23, 23:4, 23:13, 24:2, 24:17, 25:22, 28:1, 28:5, 28:16, 28:17, 28:18, 34:16, 35:20, 40:21, 43:16, 44:25, 45:2, 45:6, 46:13, 47:5, 58:10, 58:24
**issued** [5] - 12:5, 15:7, 23:16, 37:12, 37:17
**issues** [11] - 3:9, 11:4, 13:5, 15:9, 24:21, 25:19, 29:9, 46:15, 46:19, 55:24, 57:11
**it'll** [1] - 16:7
**Item** [1] - 22:7
**items** [8] - 4:11, 4:12, 4:24, 5:15, 5:25, 6:8, 7:5
**itself** [2] - 9:18, 24:22

**J**

**JAMIE** [1] - 1:13
**Jamie** [1] - 3:5
**Judge** [9] - 10:20, 19:20, 31:25, 41:8, 41:20, 44:24, 57:13, 58:2, 60:19
**JUDGE** [1] - 1:11
**July** [2] - 38:10, 38:11
**juries** [1] - 41:24
**juror** [1] - 54:16
**jury** [16] - 28:4, 28:25, 31:24, 40:14, 40:19, 41:21, 42:17, 50:9, 50:10, 51:14, 51:16, 51:20, 54:25, 55:11, 55:16
**jury's** [1] - 24:24
**JUSTICE** [1] - 1:14
**justify** [1] - 57:19

**K**

**keep** [3] - 14:11, 23:15, 44:12
**Keown** [2] - 56:6, 59:12
**kickbacks** [1] - 39:16
**kicking** [1] - 47:16
**kind** [2] - 20:3, 45:25
**knowing** [1] - 21:25, 43:3, 57:4
**knowledge** [1] - 38:13
**knows** [1] - 28:25
**kudos** [1] - 15:14

**L**

**lab** [7] - 11:23, 20:24, 26:22, 45:18, 46:4, 46:7,

46:8
 **lab's** [2] - 25:20, 45:17
 **labeled** [1] - 7:15
 **labs** [2] - 27:12, 33:20
 **LabSolutions** [37] - 4:20, 12:11, 13:3, 14:1, 14:12, 14:13, 15:25, 16:22, 16:23, 18:20, 19:11, 21:14, 21:17, 21:21, 21:23, 22:5, 22:12, 22:17, 22:19, 23:1, 23:16, 23:20, 23:25, 26:1, 26:4, 26:9, 33:3, 37:11, 37:13, 37:18, 37:21, 37:22, 37:24, 38:4, 39:9, 39:11, 39:13
 **LabSolutions'** [1] - 11:15
 **land** [2] - 49:10, 57:10
 **last** [4] - 15:1, 21:5, 48:14, 59:13
 **latter** [1] - 9:11
 **Lauderdale** [2] - 1:24, 61:24
 **law** [6] - 12:7, 12:8, 13:19, 23:2, 33:19, 55:5
 **LAW** [1] - 1:17
 **lawyer** [23] - 9:6, 25:1, 27:15, 28:3, 30:5, 30:6, 30:15, 31:25, 33:5, 33:15, 34:2, 35:21, 51:8, 51:17, 51:18, 55:2, 55:4, 55:12, 55:13, 57:25, 59:6
 **lawyer's** [1] - 37:5
 **lawyers** [20] - 8:22, 17:8, 17:24, 18:4, 25:5, 27:16, 28:21, 41:4, 42:13, 44:3, 46:4, 50:18, 50:19, 52:23, 52:24, 55:7, 56:1, 56:3, 56:6
 **lead** [2] - 3:14, 46:19
 **leads** [1] - 29:5
 **learn** [1] - 30:8
 **learning** [1] - 30:11
 **least** [20] - 10:21, 11:3, 16:8, 16:19, 19:3, 21:13, 21:21, 23:10, 27:25, 29:4, 32:5, 34:8, 37:14, 38:12, 49:4, 50:4, 50:23, 55:11, 56:4
 **Leatherwood** [1] - 17:11
 **leave** [2] - 19:24, 27:8
 **leaves** [1] - 20:1
 **lectern** [1] - 20:9
 **led** [1] - 34:6
 **left** [2] - 5:5, 46:24
 **legal** [10] - 6:17, 6:19, 8:17, 10:3, 14:2, 22:19, 23:23, 25:5, 30:10, 40:11
 **lengthy** [1] - 48:3
 **less** [4] - 15:21, 28:12, 34:9, 42:1
 **level** [6] - 6:6, 6:18, 20:20, 21:10, 28:13, 32:24

 **life** [1] - 47:22
 **light** [6] - 21:22, 36:21, 36:22, 36:25, 37:3, 45:18
 **likely** [2] - 25:7, 34:23
 **limine** [1] - 29:18
 **limited** [5] - 12:2, 31:7, 38:1, 47:21, 49:24
 **limits** [1] - 54:18
 **line** [3] - 33:17, 55:9
 **lines** [3] - 26:7, 32:3, 50:11
 **litigation** [2] - 6:23, 18:5
 **LOEB** [1] - 2:3
 **log** [5] - 4:13, 4:15, 4:19, 4:20, 19:13
 **look** [12] - 8:2, 8:15, 13:20, 18:7, 18:18, 18:20, 28:20, 31:15, 47:19, 51:5, 52:23, 57:18
 **looked** [1] - 7:7
 **looking** [6] - 3:19, 6:23, 6:24, 7:17, 17:12, 57:24
 **looks** [2] - 16:23, 18:20
 **Lupowitz** [1] - 61:21
 **LUPOWITZ** [2] - 1:21, 61:22

---

## M

 **MAGISTRATE** [1] - 1:11
 **maintain** [1] - 58:13
 **manner** [1] - 23:4
 **Maple** [1] - 2:3
 **marginal** [2] - 60:5, 60:11
 **mark** [1] - 20:15
 **Mark** [1] - 3:6
 **marked** [1] - 6:25
 **marketers** [4] - 22:12, 22:24, 22:25, 23:19
 **marketing** [1] - 23:3
 **material** [6] - 12:4, 12:10, 12:12, 53:16, 54:3, 60:13
 **materials** [2] - 4:8, 21:12
 **matter** [7] - 19:10, 32:23, 36:11, 36:14, 43:6, 52:20, 61:19
 **matters** [5] - 18:5, 33:8, 38:2, 48:5, 61:6
 **McKeon** [1] - 22:14
 **mean** [9] - 17:15, 17:25, 18:1, 18:4, 27:10, 41:24, 42:21, 43:22, 47:11
 **meaning** [1] - 7:14
 **meaningful** [1] - 17:5
 **measures** [1] - 58:2
 **medical** [1] - 39:16
 **Medicare's** [1] - 39:17
 **meeting** [17] - 20:24, 24:4, 24:11, 24:13, 24:15, 24:18, 24:22, 24:25, 25:1, 25:4, 28:20, 29:15, 29:17, 34:15, 41:16, 41:22, 54:15

 **meetings** [11] - 8:9, 23:24, 24:1, 25:18, 26:10, 26:11, 40:12, 40:14, 50:11, 51:14, 60:9
 **members** [3] - 17:9, 58:21, 58:22
 **mention** [4] - 9:1, 41:5, 41:6, 45:3
 **mentioned** [6] - 29:11, 41:2, 42:4, 42:17, 50:9, 51:13
 **mere** [2] - 41:21, 54:15
 **messages** [1] - 32:15
 **met** [2] - 10:6, 41:3
 **Miami** [1] - 1:4
 **Michael** [1] - 8:15
 **MICHAELS** [2] - 53:8, 53:15
 **Michaels** [3] - 3:6, 3:7, 53:8, 54:3
 **middle** [3] - 19:20, 19:22, 51:10
 **might** [10] - 13:14, 30:23, 32:19, 44:11, 50:8, 51:4, 51:16, 51:18, 55:5, 56:4
 **Minal** [2] - 3:3, 49:16
 **MINAL** [2] - 1:7, 49:13
 **mind** [5] - 10:4, 33:25, 34:5, 45:19, 55:10
 **minimum** [3] - 31:15, 31:20
 **minute** [1] - 19:21
 **minutes** [1] - 53:4
 **misspoke** [1] - 14:13
 **misunderstand** [1] - 52:22
 **misunderstood** [2] - 12:13, 52:14
 **mitigate** [1] - 41:9
 **mmm-hmm** [4] - 22:9, 33:9, 36:15, 48:16
 **modified** [1] - 46:1
 **modify** [1] - 16:18
 **moment** [3] - 36:12, 42:6, 55:22
 **money** [1] - 47:16
 **month** [3] - 22:25, 23:22, 47:24
 **months** [1] - 37:24
 **Moore** [1] - 17:11
 **moot** [2] - 11:12, 11:19
 **motion** [14] - 3:24, 4:20, 7:4, 8:6, 8:20, 10:20, 10:23, 18:13, 20:4, 24:15, 29:17, 57:17, 58:6, 58:16
 **MOTION** [1] - 1:10
 **motivated** [1] - 38:20
 **motivations** [1] - 50:24
 **moved** [1] - 24:10
 **moving** [2] - 7:3, 7:10
 **MR** [63] - 3:13, 3:17, 4:18, 4:23, 5:7, 5:11, 5:17, 5:20, 6:2, 6:13, 7:9, 7:13, 7:15,

 7:23, 8:1, 9:11, 9:15, 10:10, 10:13, 10:17, 12:19, 13:5, 13:19, 13:22, 14:5, 16:3, 17:7, 17:20, 17:23, 18:10, 18:13, 18:15, 18:25, 19:6, 19:17, 22:2, 24:14, 24:17, 24:20, 32:7, 32:22, 33:3, 33:10, 34:13, 35:4, 35:12, 44:5, 44:9, 46:12, 48:10, 48:12, 48:14, 48:17, 48:21, 48:25, 52:10, 52:13, 52:18, 53:8, 53:15, 53:25, 54:8, 61:2
 **MS** [32] - 3:5, 11:6, 11:19, 14:17, 20:5, 20:10, 20:13, 20:20, 22:4, 22:10, 25:3, 29:9, 29:13, 36:1, 36:16, 37:9, 38:10, 38:16, 38:22, 39:5, 41:11, 42:5, 43:3, 43:13, 45:13, 45:16, 46:14, 53:3, 53:6, 54:12, 58:12, 60:24
 **multiple** [1] - 46:4
 **must** [1] - 32:14
 **myriad** [1] - 25:19

---

## N

 **name** [8] - 40:10, 41:2, 41:5, 41:6, 42:4, 42:17, 49:14, 50:9
 **Nancy** [2] - 8:21, 9:3
 **narrow** [1] - 11:8
 **NE** [1] - 2:3
 **necessary** [1] - 34:15
 **necessity** [1] - 39:17
 **need** [17] - 6:9, 6:10, 13:6, 16:17, 31:16, 31:20, 32:2, 32:18, 34:11, 45:24, 47:11, 47:22, 49:20, 51:10, 53:21, 60:2, 61:9
 **needed** [2] - 31:6, 58:11
 **needs** [1] - 43:19
 **nefarious** [1] - 52:16
 **negate** [1] - 39:3
 **negates** [1] - 39:2
 **negative** [2] - 51:18, 55:17
 **never** [3] - 42:17, 43:11, 44:21
 **nevertheless** [1] - 24:23
 **New** [1] - 1:15
 **new** [2] - 25:21, 33:10
 **next** [1] - 47:23
 **night** [1] - 21:5
 **ninth** [1] - 7:5
 **NO** [1] - 1:2
 **nobody** [1] - 29:1
 **noncomplaint** [1] - 22:20
 **noncompliant** [1] - 22:21
 **normally** [1] - 30:18

**noted** [5] - 6:9, 21:18, 23:21, 37:21, 58:14
**nothing** [7] - 6:1, 8:17, 26:1, 46:5, 52:25, 60:24, 61:2
**notice** [1] - 38:18
**notified** [1] - 19:13
**November** [6] - 1:5, 14:17, 16:1, 16:6, 16:7, 61:21
**nuggets** [1] - 47:2
**number** [7] - 4:8, 5:22, 25:17, 30:13, 39:19, 40:13, 46:22
**numerous** [1] - 23:23
**NW** [1] - 1:18

**O**

**oath** [3] - 32:10, 54:24, 59:2
**object** [1] - 18:23
**objecting** [1] - 13:2
**objection** [4] - 8:19, 9:2, 52:4, 58:7
**objections** [3] - 11:4, 16:21, 58:14
**observations** [1] - 57:3
**observing** [1] - 26:12
**obvious** [1] - 37:22
**obviously** [6] - 13:11, 13:12, 14:18, 18:2, 57:12, 60:18
**occurred** [4] - 33:8, 37:2, 58:19, 60:4
**occurring** [1] - 52:17
**occurs** [1] - 15:19
**OF** [5] - 1:1, 1:4, 1:10, 1:14, 1:17
**offended** [1] - 45:12
**offer** [1] - 60:5
**Office** [1] - 23:18
**OFFICE** [1] - 1:17
**officer** [1] - 32:11
**Official** [2] - 1:22, 61:22
**often** [4] - 15:13, 23:25, 33:18, 52:24
**oftentimes** [1] - 51:7
**OIG** [1] - 33:22
**old** [1] - 33:19
**omissions** [1] - 47:7
**omnipresence** [1] - 27:17
**once** [5] - 8:16, 9:2, 15:17, 46:17
**one** [42] - 4:13, 4:24, 5:9, 5:11, 5:15, 7:9, 7:10, 8:7, 8:22, 12:3, 17:7, 18:1, 22:22, 22:25, 23:10, 23:18, 23:19, 24:10, 25:4, 25:24, 28:5, 28:7, 28:20, 28:21, 28:22, 30:13, 34:15, 37:14, 37:16, 39:19, 45:2, 46:1, 46:25,

48:10, 50:8, 54:14, 56:17, 59:24, 60:10
**one's** [1] - 40:24
**ones** [1] - 4:18
**ongoing** [1] - 34:12
**open** [2] - 11:23, 27:5
**opening** [2] - 19:23, 42:7
**operating** [2] - 11:24, 26:23
**operation** [2] - 15:18, 38:4
**operations** [2] - 25:20, 45:17
**operative** [2] - 42:22, 42:23
**opportunity** [3] - 29:8, 58:21, 58:23
**opposed** [3] - 9:18, 28:24, 41:7
**opposite** [1] - 55:6
**Order** [1] - 3:1
**order** [5] - 4:1, 4:6, 15:25, 22:25, 41:8
**ordinary** [1] - 12:9
**original** [1] - 9:7
**otherwise** [1] - 32:4
**ought** [3] - 42:8, 43:19, 52:6
**ourselves** [1] - 29:25
**outside** [2] - 16:25, 17:1
**outweighed** [2] - 48:3, 60:15
**overly** [1] - 18:9
**own** [3] - 42:11, 53:20, 59:9

**P**

**p.m** [3] - 1:6, 61:13
**page** [7] - 7:8, 7:9, 7:14, 7:20, 8:7
**Pages** [1] - 1:8
**paid** [4] - 21:23, 23:1, 26:9, 47:17
**PALM** [1] - 1:2
**parameter** [1] - 16:20
**parameters** [2] - 9:25, 14:16, 16:19
**part** [8] - 9:19, 9:21, 11:20, 15:6, 17:18, 25:2, 25:23, 39:18
**parte** [1] - 53:18
**partial** [1] - 22:1
**participant** [1] - 28:4
**participating** [2] - 28:3, 28:12
**participation** [1] - 53:10
**particular** [1] - 18:1
**particularly** [1] - 33:14
**parties** [6] - 16:4, 16:14, 19:4, 19:8, 19:24
**partner** [1] - 33:19
**party** [5] - 8:22, 9:22, 10:5, 14:12, 57:18

**past** [1] - 31:18
**PATEL** [2] - 1:7, 49:13
**Patel** [69] - 3:3, 3:14, 3:15, 6:24, 8:16, 9:2, 9:17, 10:5, 14:1, 20:24, 21:20, 22:5, 22:6, 22:10, 22:18, 23:7, 26:21, 27:3, 28:14, 28:23, 29:1, 30:5, 30:10, 31:17, 32:3, 33:4, 34:1, 34:7, 34:14, 35:2, 35:17, 36:2, 36:18, 36:21, 37:20, 38:13, 41:3, 42:13, 42:23, 42:24, 43:10, 43:17, 43:23, 44:2, 44:19, 45:5, 45:7, 46:3, 47:2, 47:4, 47:9, 48:12, 49:9, 49:11, 49:16, 49:17, 51:6, 52:7, 52:12, 54:23, 54:25, 57:3, 58:20, 59:2, 60:10, 60:13, 61:8
**Patel's** [13] - 10:3, 28:8, 33:5, 34:4, 35:3, 37:11, 45:17, 45:19, 47:20, 48:7, 57:21, 57:25, 60:15
**patient** [1] - 22:12
**paying** [1] - 22:18
**payment** [3] - 21:14, 21:17, 22:1
**PC** [2] - 1:17, 2:3
**Peachtree** [1] - 1:18
**people** [11] - 28:22, 28:23, 29:15, 35:8, 35:9, 38:21, 40:2, 41:16, 46:8, 46:10, 60:8
**percent** [1] - 32:7
**perfect** [1] - 21:22
**perform** [1] - 46:24
**perhaps** [4] - 14:19, 47:6, 51:16, 58:22
**period** [11] - 11:22, 11:24, 12:3, 12:7, 15:4, 23:23, 25:16, 29:21, 29:22, 37:1, 37:8, 38:8, 38:11, 39:10
**permitted** [1] - 15:10
**person** [6] - 3:16, 5:2, 8:24, 27:14, 41:1, 43:15
**personal** [1] - 32:14
**perspective** [2] - 36:7, 38:13
**pertain** [1] - 23:17
**pertaining** [3] - 23:19, 36:14, 36:18
**Peterson** [2] - 42:15, 47:13
**phone** [2] - 9:17, 25:18
**physical** [1] - 12:1
**physically** [1] - 14:3
**picks** [1] - 23:15
**piece** [2] - 9:21, 29:1
**pin** [1] - 48:23
**place** [2] - 17:3, 19:3
**played** [1] - 60:7

**pleased** [1] - 31:16
**pleases** [1] - 32:11
**point** [24] - 11:19, 13:11, 14:25, 30:8, 31:2, 31:22, 32:17, 32:19, 32:20, 33:4, 33:13, 34:20, 36:12, 37:5, 37:19, 39:19, 45:14, 47:19, 49:10, 53:9, 54:14, 58:18, 58:25, 59:25
**policies** [1] - 12:9
**popping** [1] - 19:22
**portion** [1] - 5:11
**posit** [1] - 30:14
**position** [11] - 6:9, 9:7, 11:13, 11:15, 11:16, 17:24, 24:24, 30:7, 31:6, 36:16
**possession** [1] - 13:24
**possibility** [3] - 19:2, 48:1, 50:20
**possible** [5] - 26:15, 46:23, 50:4, 52:1, 60:4
**possibly** [1] - 55:1
**potential** [12] - 3:25, 14:23, 24:8, 27:22, 27:25, 31:18, 42:3, 52:6, 55:24, 56:12, 57:22
**potentially** [1] - 10:3
**practice** [1] - 27:11
**practices** [1] - 22:21
**pre** [2] - 12:25, 17:13
**prefer** [1] - 5:21
**preindictment** [1] - 36:18
**prejudice** [5] - 40:9, 40:22, 41:9, 42:3, 57:22
**prejudiced** [2] - 40:3, 48:1
**prepared** [2] - 4:20, 32:3
**preparing** [1] - 18:18
**presence** [2] - 24:12, 54:15
**present** [10] - 24:1, 24:3, 32:13, 41:22, 49:17, 50:10, 51:14, 54:3, 60:8, 60:11
**presented** [1] - 23:5
**preserve** [1] - 34:11
**presumably** [3] - 10:19, 38:23, 55:7
**presume** [1] - 41:25
**pretrial** [4] - 16:12, 48:4, 48:5, 61:6
**primarily** [1] - 27:15
**principle** [1] - 14:4
**private** [1] - 27:11
**privately** [5] - 55:22, 59:12, 59:16, 59:18, 59:19
**privilege** [12] - 4:1, 4:9, 4:13, 4:15, 4:19, 4:20, 5:25, 10:5, 10:7, 10:25, 14:25, 15:8
**privileged** [9] - 6:10, 7:1, 7:25, 8:3, 9:8, 9:8, 32:15, 54:1, 54:3, 59:23

**privy** [1] - 3:9
**probative** [1] - 30:23
**probe** [1] - 34:22
**problem** [5] - 12:6, 13:19, 17:14, 28:1, 53:1
**problems** [1] - 27:25
**proceed** [1] - 46:22
**proceeding** [2] - 26:14, 49:18
**proceedings** [2] - 58:4, 61:18
**process** [5] - 12:8, 17:3, 17:13, 19:3, 19:24
**produce** [7] - 10:24, 12:24, 13:16, 13:20, 13:23, 14:11, 14:13
**produced** [5] - 6:10, 6:11, 7:2, 12:23, 14:15
**producing** [3] - 16:16, 17:17, 18:24
**production** [5] - 4:2, 12:16, 14:20, 15:25, 16:5
**proffer** [1] - 10:13
**prophylactic** [1] - 58:2
**proposal** [1] - 7:6
**proposed** [1] - 29:21
**proposes** [1] - 7:21
**prosecute** [2] - 57:23, 60:14
**prosecution** [6] - 3:9, 32:12, 34:12, 52:15, 52:20, 53:18
**prosecution's** [1] - 31:4
**prosecutor** [1] - 37:17
**prospect** [1] - 25:20
**protect** [3] - 50:12, 50:13
**provide** [1] - 30:10
**provided** [8] - 17:25, 23:11, 23:12, 26:20, 26:24, 27:2, 29:24, 40:7
**providing** [5] - 15:3, 18:4, 36:17, 36:20, 43:16
**public** [1] - 9:14
**publication** [1] - 9:22
**pull** [1] - 50:12
**punches** [1] - 50:12
**purpose** [2] - 46:5, 54:1
**purposes** [3] - 7:10, 10:21, 20:15
**pursue** [2] - 50:11, 50:24
**put** [16] - 13:9, 14:9, 23:13, 24:2, 24:19, 25:7, 28:22, 31:20, 36:11, 43:16, 43:24, 44:14, 48:8, 53:13, 54:17, 60:20

### Q

**qualify** [1] - 54:8
**questioning** [1] - 50:12

**questions** [13] - 6:7, 27:6, 27:9, 27:10, 27:20, 31:5, 32:9, 36:23, 39:18, 40:18, 44:11, 46:19, 56:4
**quite** [1] - 39:24

### R

**Rafferty** [4] - 41:3, 56:5, 59:12, 59:13
**raise** [3] - 49:11, 53:9, 58:10
**raised** [6] - 30:20, 35:19, 44:10, 53:9, 55:25, 60:1
**raising** [1] - 39:18
**Raskin** [1] - 24:19
**read** [1] - 20:4
**reading** [2] - 26:6
**ready** [1] - 26:14
**real** [2] - 36:20, 47:22
**real-life** [1] - 47:22
**really** [12] - 10:2, 17:12, 21:8, 25:16, 26:1, 28:18, 33:25, 51:10, 56:18, 57:15, 57:18, 60:9
**reason** [6] - 5:14, 6:24, 38:14, 39:8, 39:15, 41:6, 49:20, 55:4
**reasons** [1] - 8:6
**rebut** [1] - 24:4
**Received** [1] - 2:11
**received** [1] - 20:18
**recess** [1] - 61:9
**recessed** [1] - 61:13
**reciprocal** [2] - 13:10, 13:11
**recognizing** [1] - 16:9
**record** [19] - 7:18, 9:14, 15:15, 20:17, 24:21, 31:20, 34:14, 44:14, 48:10, 49:15, 52:8, 53:7, 53:12, 53:14, 53:22, 60:1, 60:18, 60:20, 60:21
**redact** [3] - 7:7, 7:21
**redacted** [3] - 4:13, 41:13, 41:14
**reduce** [1] - 44:23
**reference** [1] - 9:16
**referring** [1] - 37:10
**reflecting** [1] - 23:23
**reframe** [1] - 27:21
**regard** [2] - 4:4, 26:24
**regarding** [2] - 22:11, 22:20
**regulations** [1] - 33:20
**regulatory** [2] - 6:23, 27:16
**REINHART** [1] - 1:10
**reiteration** [1] - 36:4
**relate** [2] - 8:4, 13:13
**related** [3] - 11:11, 44:4, 45:17

**relating** [7] - 3:25, 4:4, 8:18, 8:22, 9:1, 35:7, 35:21
**relations** [1] - 18:5
**relative** [1] - 47:10
**release** [1] - 3:24
**released** [1] - 53:16
**releasing** [1] - 11:7
**relevant** [14] - 6:11, 7:25, 9:9, 15:4, 17:2, 18:23, 30:13, 30:16, 31:3, 39:24, 45:19, 45:21, 47:4, 47:8
**relied** [2] - 35:7, 46:7
**remain** [1] - 8:3
**remaining** [1] - 4:18
**remedy** [1] - 27:23
**remember** [1] - 48:17
**reminding** [1] - 59:2
**rendered** [1] - 26:19
**rendering** [2] - 20:23, 30:17, 45:17
**rephrase** [1] - 34:25
**REPORTED** [1] - 1:20
**reporter** [1] - 20:9
**Reporter** [2] - 1:22, 61:22
**represent** [3] - 26:13, 28:14, 51:24
**representation** [4] - 4:5, 22:4, 47:20, 58:16
**representations** [1] - 8:10
**represented** [6] - 21:21, 27:12, 28:9, 33:8, 35:5, 49:23
**representing** [1] - 21:14
**reputation** [1] - 50:13
**request** [4] - 9:3, 14:14, 14:16, 15:10
**requested** [1] - 14:17
**required** [3] - 7:1, 13:23, 48:9
**resolve** [3] - 32:18, 42:6, 46:13
**resolved** [3] - 4:9, 40:22, 40:23
**resolves** [4] - 10:25, 44:25, 45:2, 45:3
**respond** [3] - 25:24, 29:6, 29:7
**responding** [1] - 25:25
**responds** [1] - 23:8
**response** [3] - 20:21, 32:8, 35:23
**responses** [1] - 38:2
**responsive** [1] - 14:11
**rest** [1] - 9:23
**rested** [1] - 30:1
**retainer** [1] - 8:25
**retaining** [1] - 57:25
**retention** [1] - 12:9
**review** [6] - 6:16, 7:4, 8:19,

14:21, 22:19, 23:7
**reviewed** [3] - 8:17, 15:2, 22:23
**reviewing** [2] - 4:8, 21:6
**rights** [6] - 45:6, 45:8, 48:7, 48:8, 50:1, 57:21
**rise** [1] - 61:12
**risk** [2] - 41:17, 41:18
**risks** [1] - 57:8
**RMR** [2] - 1:21, 61:22
**road** [2] - 26:14, 29:25
**robust** [1] - 22:5
**Rodolfo** [1] - 1:22
**role** [6] - 15:3, 33:3, 36:8, 53:17, 53:19, 60:7
**rolling** [4] - 14:15, 14:20, 15:25, 16:5
**room** [3] - 34:2, 34:10, 55:2
**Rothschild** [5] - 4:14, 5:8, 7:6, 7:16, 12:5
**Rothschild's** [1] - 7:19
**RPR** [2] - 1:21, 61:22
**Ruiz** [10] - 1:22, 10:20, 19:20, 31:25, 41:8, 41:20, 44:24, 57:13, 58:2, 60:19
**Rule** [4] - 4:2, 11:12, 11:17, 15:6
**rule** [2] - 17:4, 19:5
**ruled** [2] - 11:3, 48:4
**rules** [3] - 35:20, 39:17, 49:6
**ruling** [4] - 15:8, 57:13, 59:24, 60:3
**rulings** [3] - 11:4, 28:10, 58:8
**run** [2] - 46:4, 46:7
**running** [3] - 26:14, 46:8, 55:1

### S

**SADOW** [36] - 1:17, 1:17, 3:13, 3:17, 6:2, 7:15, 7:23, 8:1, 9:11, 9:15, 10:10, 10:13, 10:17, 22:2, 24:14, 24:17, 24:20, 32:7, 32:22, 33:3, 33:10, 34:13, 35:4, 35:12, 44:5, 44:9, 46:12, 48:10, 48:12, 48:14, 48:17, 48:21, 48:25, 52:10, 52:13, 52:18
**Sadow** [52] - 3:13, 5:4, 8:16, 10:8, 20:23, 21:13, 21:17, 21:21, 21:23, 21:25, 22:10, 22:18, 23:7, 23:8, 23:23, 23:24, 24:25, 25:4, 25:11, 25:17, 25:23, 26:9, 26:18, 27:3, 28:12, 28:19, 28:24, 28:25, 29:14, 29:20, 30:7, 30:9, 30:25, 31:13, 31:23, 31:24, 32:4, 34:5,

35:2, 35:11, 35:24, 36:9,
36:11, 36:17, 37:21, 38:20,
39:7, 39:9, 39:20, 39:23,
40:13, 40:15, 41:1, 41:16,
41:22, 42:14, 42:20, 42:21,
42:25, 43:1, 43:11, 43:22,
44:2, 44:20, 45:3, 45:16,
45:25, 46:6, 46:9, 46:11,
46:14, 46:18, 47:5, 50:6,
50:22, 50:23, 51:3, 51:8,
51:14, 52:9, 53:9, 55:22,
56:6, 57:12, 57:25, 58:3,
59:10, 60:5, 60:7, 60:12,
61:1

**Sadow's** [21] - 4:5, 15:3,
22:4, 23:15, 24:12, 25:14,
27:6, 28:13, 36:8, 39:25,
40:9, 41:5, 41:6, 42:4, 42:9,
42:17, 43:4, 50:9, 51:17,
54:18, 58:15

**SAMUEL** [27] - 2:2, 2:3,
4:18, 4:23, 5:7, 5:11, 5:17,
5:20, 6:13, 7:9, 7:13, 12:19,
13:5, 13:19, 13:22, 14:5,
16:3, 17:7, 17:20, 17:23,
18:10, 18:13, 18:15, 18:25,
19:6, 19:17, 61:2

**Samuel** [13] - 3:14, 4:17,
5:4, 6:9, 10:8, 12:18, 16:2,
17:6, 19:9, 41:3, 52:11,
55:22, 61:1

**Samuels** [1] - 31:13
**sandbagged** [1] - 44:18
**satisfactory** [1] - 39:20
**satisfied** [2] - 59:15, 59:17
**saved** [1] - 9:17
**saw** [3] - 5:4, 5:5, 32:4
**scenario** [2] - 50:8, 52:11
**scenarios** [3] - 52:6, 55:21,
56:17
**scheme** [1] - 38:9
**scope** [11] - 11:8, 12:2,
15:6, 15:8, 15:22, 16:25,
17:1, 17:11, 40:5, 42:8
**screens** [1] - 3:20
**scrutiny** [1] - 39:13
**sealed** [1] - 7:1
**search** [5] - 10:14, 11:25,
12:1, 17:16, 37:23
**second** [2] - 9:21
**secret** [1] - 44:12
**SECTION** [1] - 1:15
**see** [12] - 3:16, 3:21, 4:23,
7:10, 18:7, 19:9, 27:8, 40:22,
45:19, 48:6, 49:10, 61:8
**seeking** [1] - 57:18
**seem** [1] - 32:17
**seize** [1] - 12:2
**seized** [3] - 11:25, 12:1,
37:23

**sense** [3] - 14:20, 21:22,
31:10
**sent** [3] - 5:14, 26:1, 36:5
**separate** [1] - 34:18
**sequential** [1] - 7:8
**serious** [2] - 15:1
**served** [2] - 16:22, 18:11
**set** [2] - 16:20, 56:16
**seven** [1] - 41:16
**shape** [1] - 59:11
**show** [1] - 25:14
**showed** [2] - 22:8, 29:22
**showing** [1] - 25:8
**shows** [2] - 9:18, 25:16
**shut** [1] - 26:25
**side** [7] - 29:8, 31:11,
33:16, 47:16, 55:9, 58:7
**sides** [1] - 23:6
**sign** [1] - 23:1
**significant** [1] - 48:5
**silent** [1] - 49:5
**similar** [1] - 50:19
**simply** [10] - 6:11, 7:7, 8:8,
9:8, 9:21, 26:11, 26:12, 35:4,
57:12, 57:14
**sit** [3] - 16:14, 33:21, 54:9
**sitting** [5] - 24:25, 34:2,
35:13, 49:4, 55:2
**situation** [5] - 27:13, 30:24,
35:12, 51:3, 60:4
**situations** [3] - 50:5, 50:19
**six** [3] - 23:22, 37:24, 41:16
**six-month** [1] - 23:22
**Sixth** [3] - 28:8, 45:8, 47:20,
49:22, 57:21
**skipped** [2] - 45:11, 45:13
**slightly** [1] - 34:22
**small** [1] - 22:1
**smarter** [1] - 41:20
**Smith** [1] - 17:11
**so..** [2] - 18:13, 43:7
**sole** [1] - 54:1
**sometimes** [1] - 59:5
**somewhat** [2] - 13:10, 59:8
**soon** [1] - 43:4
**sorry** [3] - 5:20, 17:20,
52:10
**sort** [10] - 17:19, 18:8, 21:2,
29:5, 33:14, 35:20, 36:10,
49:7, 55:16, 57:11
**sound** [1] - 48:25
**sounds** [1] - 23:8
**source** [1] - 31:2
**South** [1] - 23:19
**SOUTHERN** [1] - 1:1
**specific** [1] - 10:18
**specifically** [1] - 17:10
**speed** [1] - 6:3
**spot** [3] - 28:22, 30:4, 43:24

**squarely** [2] - 20:25, 31:3
**stage** [1] - 58:3
**stand** [3] - 25:8, 30:2, 35:10
**standing** [1] - 51:20
**start** [3] - 13:21, 14:15,
16:16
**state** [8] - 10:3, 32:23,
33:25, 34:5, 34:14, 45:19,
49:14, 55:10
**statement** [2] - 34:25,
45:22
**statements** [2] - 19:23,
42:7
**States** [3] - 1:23, 3:3, 61:23
**STATES** [4] - 1:1, 1:4, 1:11,
1:14
**stay** [2] - 33:16, 55:8
**steeped** [2] - 9:23, 15:21
**stems** [1] - 24:7
**STENOGRAPHICALLY** [1]
- 1:20
**step** [1] - 36:3
**steps** [1] - 27:24
**Steve** [5] - 3:13, 21:21,
35:11, 42:20
**STEVEN** [2] - 1:17, 1:17
**Steven** [1] - 3:6
**still** [10] - 5:25, 13:6, 13:10,
16:11, 26:22, 36:6, 40:3,
40:18, 42:6, 54:23
**stipulate** [4] - 41:8, 43:25,
44:5, 44:6
**stipulation** [1] - 44:24
**strategy** [2] - 6:23, 8:8
**Street** [1] - 1:18
**stretches** [1] - 29:20
**stuff** [1] - 16:24
**subject** [7] - 20:25, 26:2,
26:4, 36:14, 43:6, 54:21,
58:1
**subjects** [1] - 26:5
**submitted** [2] - 4:11, 6:1
**submitting** [1] - 38:5
**subpoena** [17] - 11:18,
12:11, 13:3, 15:6, 15:7,
16:22, 16:23, 18:7, 18:9,
18:10, 18:20, 19:12, 25:25,
26:2, 37:18, 38:1
**subpoenas** [6] - 12:5,
23:16, 25:24, 26:5, 37:12,
37:16
**substantive** [3] - 12:15,
15:6, 16:21
**sudden** [2] - 19:20, 26:10
**suddenly** [2] - 38:18, 44:19
**sufficient** [1] - 35:3
**suggest** [1] - 54:6
**suggested** [1] - 27:6
**suggesting** [3] - 14:20,
27:3, 48:21

**suggestion** [1] - 54:22
**suggestions** [1] - 57:11
**Suite** [1] - 1:18
**summarize** [1] - 8:8
**superseding** [1] - 22:16
**supplement** [1] - 35:24
**support** [1] - 8:11
**suppose** [6] - 27:8, 29:25,
30:3, 30:8, 30:9, 41:7
**supposed** [1] - 22:21
**sustain** [3] - 8:13, 8:19, 9:2
**sworn** [1] - 49:13
**Sztyndor** [1] - 8:16

# T

**Tab** [1] - 21:15
**table** [2] - 25:1, 28:17
**talented** [2] - 52:23, 52:24
**target** [2] - 26:3, 37:18
**team** [14] - 3:8, 3:9, 17:15,
32:12, 32:13, 52:15, 52:19,
52:20, 52:21, 52:25, 53:11,
53:18, 55:17, 58:22
**tee** [2] - 17:3, 19:15
**teed** [2] - 19:5, 29:17
**telemarketing** [2] - 25:21,
38:3
**telemedicine** [2] - 25:21,
38:3
**tend** [1] - 29:15
**tenth** [1] - 7:5
**terminology** [1] - 32:24
**terms** [5] - 9:24, 11:25,
26:21, 26:24, 54:13
**testified** [1] - 35:9
**testify** [5] - 28:22, 31:1,
34:10, 34:17, 46:25
**testimony** [5] - 32:19,
34:23, 40:12, 46:24, 47:12
**testing** [2] - 39:12
**tests** [1] - 38:19
**text** [1] - 32:15
**Thanksgiving** [1] - 16:7
**THE** [142] - 1:10, 1:13, 1:17,
2:2, 3:2, 3:11, 3:16, 3:19,
4:22, 5:1, 5:10, 5:16, 5:19,
5:21, 6:3, 6:14, 7:12, 7:17,
7:24, 8:5, 9:13, 9:20, 10:12,
10:16, 10:19, 11:10, 12:13,
13:2, 13:18, 13:20, 13:23,
14:6, 15:11, 16:4, 17:19,
17:22, 18:6, 18:11, 18:14,
18:17, 19:1, 19:7, 19:18,
20:8, 20:11, 20:15, 21:25,
22:3, 22:9, 24:16, 24:18,
24:23, 27:10, 29:12, 31:9,
32:17, 33:2, 33:9, 33:11,
34:19, 35:5, 35:15, 36:15,
36:24, 38:6, 38:11, 38:17,

38:23, 40:24, 41:18, 42:10,
43:8, 43:21, 44:8, 44:15,
45:15, 45:24, 46:13, 47:10,
48:11, 48:13, 48:16, 48:20,
48:23, 49:3, 49:14, 49:16,
49:17, 49:19, 49:20, 50:2,
50:3, 50:7, 50:8, 50:16,
50:17, 51:1, 51:2, 51:12,
51:13, 51:22, 51:23, 51:25,
52:1, 52:9, 52:11, 52:16,
52:23, 53:5, 53:12, 53:20,
54:5, 54:10, 54:22, 55:15,
55:16, 55:19, 55:20, 56:2,
56:3, 56:8, 56:9, 56:11,
56:12, 56:19, 56:20, 56:23,
56:24, 57:1, 57:2, 58:25,
59:13, 59:14, 59:15, 59:16,
59:17, 59:18, 59:19, 59:21,
60:25, 61:3, 61:12
**theirs** [1] - 14:3
**theoretical** [1] - 47:25
**theoretically** [1] - 51:21
**thereafter** [2] - 10:17, 16:4
**they've** [2] - 14:24, 18:10
**thinks** [2] - 37:4, 38:18
**third** [4] - 9:22, 14:12,
28:18, 29:10
**thoughts** [4] - 17:6, 29:4,
29:6, 57:12
**thread** [1] - 5:12
**threads** [2] - 5:8, 5:12
**three** [6] - 3:24, 4:24, 7:7,
7:21, 8:7, 34:17
**throughout** [3] - 23:21,
32:25, 49:18
**thrown** [2] - 59:6, 59:8
**ties** [1] - 14:23
**timeline** [1] - 21:11
**timing** [3] - 12:16, 12:17,
12:19
**Tobin** [1] - 22:23
**Toby** [2] - 30:1, 30:3
**today** [17] - 3:23, 5:14,
15:8, 18:2, 18:3, 20:16,
31:16, 32:24, 35:18, 36:23,
43:14, 51:2, 53:17, 53:19,
54:2, 56:5, 56:18
**topics** [1] - 40:7
**toward** [1] - 22:1
**TRANSCRIPT** [1] - 1:10
**transcription** [1] - 61:18
**transition** [1] - 12:9
**trial** [29] - 10:21, 12:5, 16:6,
16:9, 16:10, 19:20, 19:22,
23:6, 25:11, 28:2, 30:1, 31:3,
31:22, 31:25, 34:23, 35:1,
36:13, 43:2, 44:2, 44:18,
45:3, 46:21, 47:23, 48:6,
50:4, 50:21, 51:8, 51:10
**tricky** [1] - 30:7

**trouble** [1] - 12:19
**true** [3] - 30:6, 40:16, 42:20
**try** [3] - 18:8, 44:1, 56:21
**trying** [10] - 27:21, 33:15,
42:11, 43:24, 44:12, 44:15,
44:16, 48:23, 51:20, 55:8
**turn** [7] - 4:10, 5:4, 11:2,
20:2, 35:16, 52:2, 58:8
**turned** [2] - 8:3, 10:22
**turns** [1] - 46:22
**twists** [1] - 46:22
**two** [15] - 4:21, 4:24, 5:12,
7:7, 7:21, 17:8, 22:14, 23:16,
24:3, 37:16, 41:3, 45:24,
53:4, 57:24, 58:12
**type** [1] - 25:21

## U

**U.S** [1] - 23:18
**ultimately** [1] - 57:20
**unanswered** [1] - 31:5
**under** [9] - 4:2, 32:10,
38:14, 39:13, 49:5, 49:22,
54:23, 59:2
**undercut** [1] - 51:19
**underlying** [4] - 8:12, 28:5,
38:9, 47:6
**understandably** [1] - 44:18
**understood** [5] - 11:13,
14:8, 15:11, 34:1, 35:15
**undone** [1] - 56:21
**unfold** [1] - 50:5
**unfolds** [1] - 31:3
**unintentionally** [1] - 54:20
**unique** [10] - 28:19, 28:25,
29:1, 29:14, 31:1, 31:7, 41:6,
46:6, 46:10, 60:10
**uniquely** [2] - 35:2, 41:1
**United** [3] - 1:23, 3:3, 61:23
**UNITED** [4] - 1:1, 1:4, 1:11,
1:14
**unlikely** [1] - 26:10
**unredacted** [1] - 4:13
**unresolved** [1] - 19:21
**up** [21] - 6:3, 9:18, 14:25,
16:10, 17:3, 19:5, 19:15,
19:22, 21:20, 22:7, 23:15,
29:17, 30:3, 38:5, 38:21,
40:10, 42:14, 42:19, 43:2,
51:11, 60:19
**urinalysis** [1] - 39:12

## V

**valuable** [1] - 51:4
**value** [1] - 60:11
**venture** [2] - 25:21, 38:4
**version** [1] - 4:13
**versus** [2] - 3:3, 47:22

**video** [1] - 3:18
**view** [2] - 13:11, 47:3
**views** [1] - 53:20
**violating** [1] - 55:5
**voluntary** [1] - 57:4
**volunteered** [2] - 44:9,
44:10
**vouching** [1] - 40:20
**vs** [1] - 1:5

## W

**wait** [3] - 18:8, 19:9, 19:21
**waiting** [1] - 26:12
**waive** [7] - 31:19, 55:23,
56:14, 56:25, 57:3, 59:7
**waived** [3] - 14:25, 32:14,
32:16
**waiver** [16] - 12:22, 15:12,
15:13, 15:19, 15:20, 36:13,
40:5, 42:8, 43:6, 46:17, 57:5,
57:7, 57:16, 58:1, 60:4
**waiving** [5] - 11:4, 15:16,
52:4, 56:18, 58:7
**walk** [2] - 21:10, 42:11
**wallflower** [1] - 26:11
**wants** [4] - 18:8, 45:9, 48:2,
60:20
**warrant** [3] - 10:15, 17:16,
37:23
**warrants** [2] - 11:25, 12:1
**Washington** [1] - 1:16
**Watt** [9] - 22:23, 30:2, 30:3,
34:6, 39:6, 42:15, 42:25,
43:12, 47:12
**ways** [3] - 41:19, 47:17,
57:11
**week** [3] - 16:7, 16:8, 59:13
**WEST** [1] - 1:2
**willing** [3] - 14:18, 31:19,
43:25
**wish** [1] - 44:13
**withdraw** [1] - 24:15
**withhold** [1] - 19:11
**witness** [13] - 8:24, 28:20,
29:14, 29:23, 30:2, 31:1,
31:7, 31:23, 32:1, 35:10,
35:21, 51:4, 51:9
**witnesses** [3] - 29:16,
36:10, 41:14
**wonderful** [1] - 44:20
**word** [1] - 22:11
**wordsmith** [1] - 45:25
**works** [1] - 51:7
**worse** [1] - 30:4
**writing** [1] - 44:23
**written** [4] - 15:12, 15:13,
15:20, 18:22

## Y

**years** [1] - 4:21
**yesterday** [4] - 4:11, 5:17,
6:1, 20:22
**York** [1] - 1:15

## Z

**zealously** [1] - 28:14