```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                      CASE NO. 19-CR-80181-RAR-1
 3
       UNITED STATES OF AMERICA,            Miami, Florida
 4
                                            December 20, 2022
 5            vs.
                                            2:07 p.m. - 3:10 p.m.
 6
       MINAL PATEL,
 7
                      Defendant.            Pages 1 to 57
 8     _____

 9        TRANSCRIPT OF STATUS CONFERENCE VIA VIDEOCONFERENCING
               BEFORE THE HONORABLE RODOLFO A. RUIZ, II
10                    UNITED STATES DISTRICT JUDGE

11     APPEARANCES:

12

13     FOR THE GOVERNMENT:      JAMIE DE BOER
                                EMILY GURSKIS
                                REGINALD CUYLER
14                              JOHN SCANLAN
                                STEVEN MICHAELS
15                              UNITED STATES DEPARTMENT OF JUSTICE
                                CRIMINAL DIVISION, FRAUD SECTION
16                              1400 New York Avenue, 8th Floor
                                Washington, D.C. 20005
17
       FOR THE DEFENDANT:       STEVEN H. SADOW
18                              LAW OFFICE OF STEVEN H. SADOW, PC
                                260 Peachtree Street NW
19                              Suite 2052
                                Atlanta, Georgia 30303
20
       STENOGRAPHICALLY REPORTED BY:
21
                                ILONA LUPOWITZ, CRR, RPR, RMR
22                              Official Court Reporter to:
                                The Honorable Rodolfo A. Ruiz, II
23                              United States District Court
                                299 East Broward Boulevard
24                              Fort Lauderdale, Florida 3301
                                (954) 769-5568
25
```

```
 1   (Appearances continued)

 2
     FOR THE DEFENDANT:           DONALD F. SAMUEL
 3                                GARLAND, SAMUEL & LOEB, PC
                                  3131 Maple Drive NE
 4                                Atlanta Georgia 30305

 5                                BRIAN T. RAFFERTY
                                  BAKER & HOSTETLER, LLP
 6                                1170 Peactree Street, Suite
                                  2400
 7                                Atlanta, Georgia 30309

 8   ON BEHALF OF EDWARD C. WHITE:  JASON MEHTA
                                  NATALIE ADAMS
 9                                FOLEY & LARDNER, LLP
                                  100 N. Tampa Street, Suite 2700
10                                Tampa, Florida 33602

11   HEALTHCARE ATTORNEY FOR      ROBYN L. SZTYNDOR
     DEFENDANT MINAL PATEL:       PHYSICIANS LAW, P.A.
12                                123 N.E. 17th Avenue
                                  Fort Lauderdale, Florida 33301
13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1         (Call to the Order of the Court.)

 2         THE COURT:  We're here this afternoon in case number

 3    19-80181, United States of America v. Minal Patel.  I have a

 4    number of parties that are on today, following along, pursuant

 5    to the Court's instructions that all counsel of record appear.

 6         We'll go ahead and see if we can get as many

 7    appearances here for the record.  I know I have counsel for the

 8    government.  I don't know if Ms. de Boer or Ms. Gurskis will be

 9    taking the lead, if there's any information needed from the

10    government.  I'll let you both go ahead here and state

11    appearances.  I know the rest of your team is here too, but go

12    ahead.

13         MS. DE BOER:  Thank you, Your Honor.  Jamie de Boer,

14    Emily Gurskis, Reggie Cuyler, Jon Scanlon, and Steve Michaels,

15    for the government.

16         THE COURT:  Thank you.  And on behalf of the defense --

17    I see most of my defense team here.

18         Go ahead, Mr. Sadow.

19         MR. SADOW:  Good afternoon.  Steve Sadow.  And I'll let

20    each of the defense team introduce themselves.

21         THE COURT:  Sure.

22         MR. RAFFERTY:  Good afternoon, Your Honor.  This is

23    Brian Rafferty on behalf of Mr. Patel.

24         THE COURT:  Thank you.

25         MR. SAMUEL:  Don Samuel, also on behalf of Mr. Patel.

```
 1              THE COURT:  All right.  And --

 2              MS. SZTYNDOR:  And Robin Sztyndor, healthcare counsel

 3      for Mr. Patel.

 4              THE COURT:  And we're going to talk about what exactly

 5      that means here in just a moment, because I know, Ms. Sztyndor,

 6      you're now making an appearance in the case.

 7              I also have counsel for Mr. White, I believe.

 8      Mr. Mehta, you're here as well, right?

 9              MR. MEHTA:  Good afternoon.  Jason Mehta, along with

10      Natalie Adams, of Foley Lardner, on behalf of Christopher

11      White.

12              THE COURT:  Now, I have to say, I've been around for a

13      little bit of time in this role, and I'm not sure that I've had

14      anything close to the last 48 hours, that I've seen in a

15      criminal case, like the last day and the day before that I've

16      had in this case.  I think it was incumbent upon the Court to

17      bring everyone in immediately and have, number one, the

18      government aware of what was going on.  Certainly, I'm glad

19      Mr. Mehta is also here on behalf of Mr. White.  But perhaps,

20      most importantly, I needed to have my defense lawyers here,

21      Mr. Sadow, Mr. Samuel, and Mr. Rafferty, in light of the

22      filings that have been coming from Ms. Sztyndor in the last

23      couple of days.

24              I'm going to try to explain, briefly, the procedural

25      position we find ourselves in to hopefully get some clarity.
```

1    And, again, this is what was presented to the Court.

2         Transcripts have been filed as of moments ago, by my

3    court reporter, of the ex-parte hearings that were conducted at

4    the request of the defense before the start of this trial, and

5    I have no reason to keep any of those documents under seal.

6         Now, the contents of those transcripts, when the

7    government has a chance to read them, will certainly be

8    important to the government and may constitute material that's

9    incumbent upon them to disclose in future cases that may

10   involve Mr. White.

11        But that's really not the main concern I have here

12   today.  The concern I have is that the ex-parte hearing, as the

13   transcripts reflect, indicated, at least represented to me by

14   defense counsel and by third-party counsel, Mr. Mehta, that

15   Mr. White, a co-conspirator and potential witness in the Patel

16   trial, had numerous conversations with then counsel,

17   Ms. Sztyndor, who before the trial, as I saw it on the docket,

18   had withdrawn and had essentially become the potential for a

19   material witness.  Those conversations are the subject of

20   today's status, and the reason is because they were recorded.

21        Pursuant to what I heard from Mr. Mehta, they were

22   recorded surreptitiously, without the knowledge of Mr. White,

23   the witness, which would constitute a violation of Florida law;

24   not to mention, of course, numerous other concerns with

25   contacting represented witnesses, third-party witnesses who had

1    counsel, and engaging them in communications, pretrial, which

2    could form the basis for discipline in terms of professional

3    conduct and Florida Bar rules.

4         Now, that's what happened.  The Court made rulings on

5    the ability to use that evidence.  Ultimately, the defense team

6    in Mr. Patel's case did not have a need to use any of that

7    evidence, in large part because the government did not call

8    Mr. White, and I considered the matter essentially closed as

9    far as it impacted this trial.

10        Now, as Mr. Mehta asked me at the end, on behalf of his

11   client, he was concerned about what had taken place as to his

12   client and the fact that Ms. Sztyndor had potentially violated

13   the law in recording the client without his knowledge.  That

14   was where we left it, and there was no real further discussion

15   about its impact on this case.

16        Now, the Court is still digesting everything that

17   happened from that episode, and I thought it proper to do it

18   once the Patel trial was done, in terms of the trial itself.

19   The transcripts were not ready until moments ago, and now I'm

20   going to go back and look at them.

21        But the problem I'm having is it seems Ms. Sztyndor has

22   now become counsel again -- or I think you've termed it, ma'am,

23   postjudgment or postconviction counsel -- and is representing

24   Mr. Patel and asking for a number of different forms of relief.

25   The first one was one disputing the account given to me by

1   Mr. Sadow, Mr. Rafferty, and Mr. Mehta, at the ex parte

2   hearing.  You have an opportunity to now look at those

3   transcripts because today you've filed another motion

4   indicating to me that you wanted to see them.  And it was

5   always my intent, once the transcripts were ready, to make them

6   public so you can see exactly what was said in that hearing.

7   That was the first request.

8        Now, it was denied because we're not in the habit or

9   ability of correcting a record; the record is what it is.  It's

10  now on the docket.  It's the transcription of the proceedings.

11  The Court was advised, for the first time, of what was going on

12  when we got into that hearing.

13       Now, that's the first step of what happened.  That was

14  filed, and I denied it because there's no relief to be had.

15       Today's motion also made reference to the need for

16  those transcripts, and now I hope that I've covered that by

17  putting them up there.

18       But there's a bigger concern in another motion filed

19  yesterday evening.  I apologize to the lawyers who may have

20  opened that filing, as I did, at 9:30 at night, only to see

21  what can only be described as inappropriate and, quite frankly,

22  pornographic images that were attached as exhibits purporting

23  to be text messages from a witness, Mr. Sporn, who testified at

24  the trial, who was allegedly harassing, according to her

25  motion, Ms. Sztyndor, which led to her withdraw.  Now, that is

1    what was represented.

2         There was also a litany of representations in there

3    asserting that I, the judge in this cause, somehow did not give

4    Ms. Sztyndor protection or protected her from a witness.  My

5    understanding is -- it's a little difficult to completely get a

6    sense of the relief requested on what is being asserted, but --

7    that there was some sort of communication with Mr. Sadow, and

8    that Mr. Sadow asserted that I would take some action and that

9    I did not.  There's references being made to the Judicial

10   Qualifications Commission, which is a state entity that has no

11   bearing on me, as a federal judge, as well as a litany of

12   canons that deal with judicial behavior.

13        So not only have those been raised last night, along

14   with inappropriate, scandalous, and impertinent filings, but

15   then before this hearing, another motion, the same one

16   requesting the transcripts, was also filed asserting a number

17   of canons because the argument is now being made that

18   Ms. Sztyndor should have had the opportunity, although she was

19   no longer counsel of record, to sit in on an ex parte defense

20   strategy meeting simply to be able to rebut any of those

21   assertions.

22        Certainly, the Court did not know what it was going to

23   confront when it went into that hearing, and having no counsel

24   of record status -- not even the government, of course, would

25   have been part of that because it was an ex parte for a defense

1    theory, an appropriately broad ex parte, but there was really

2    no role for a witness, that was really a material witness at

3    the time, to have appeared at that hearing.

4         So I have in front of me a couple of motions that are

5    problematic, to say the least.  I have to imagine that some of

6    these, either they've not been authorized by the remaining

7    defense team or there has been a difference of opinion.  Some

8    of these motions seem to assert that Mr. Patel is advised and

9    is asking that these be filed.  Something tells me that his

10   defense team that I've been working with for the last three

11   weeks may not be aware of this, or may not be aware of the

12   material in it, and I can probably guess that a lot of what's

13   in there is being disputed.

14        But I'm going to turn it briefly to you, Ms. Sztyndor,

15   because you are treading --

16        MS. SZTYNDOR:  Thank you.

17        THE COURT:  You are treading on extremely dangerous

18   ground.  You have now filed at least three filings that, in my

19   view, have no merit.  They make very serious allegations,

20   including alleging behavior of the Court that I have never been

21   advised of or heard of.  They attach materials that, at a

22   minimum, should have been filed under seal.  Quite frankly,

23   they make assertions and references to other lawyers, the

24   canons, and say a whole host of things that I believe are not

25   being well thought out before they're being put to writing and

1    filed.  So I need to hear from you --

2         MS. SZTYNDOR:  Of course.

3         THE COURT:  -- and get a sense of where you think

4    you're going with these filings because, certainly, I am not of

5    the mind that I should be entertaining any further filings, and

6    most of what you're filing is probably better saved for the

7    grievance committee that will investigate what happened in this

8    case.  You can make your case in front of them.  I don't know

9    exactly what happened here; I only know what I have been told.

10   But I will put it in the hands of our ad hoc grievance

11   committee, and they'll have to deal with that, and you will

12   have a full opportunity, at that point, to explain exactly what

13   happened with the purported recording of a witness, unbeknownst

14   or known to that witness.

15        Certainly, aside from whatever you want to tell the

16   disciplinary committee, who will get the referral from me --

17   and that'll be up to my Chief Judge.  It'll go through the

18   proper channels.  I will provide it with the transcripts, et

19   cetera.

20        These other arguments that you're making, I'm sure the

21   defense team would agree, are not beneficial to Mr. Patel who

22   awaits sentencing in March.  I don't think you, in consulting

23   with him and your defense team, want to continue to attempt to

24   defend whatever it is you did or did not do, through your

25   client, with these types of filings.  So I'm concerned for not

1    only the team as a whole, but certainly the client because I

2    cannot imagine that Mr. Patel has authorized filings regarding

3    your relationship with other witnesses.

4         You've styled this as if he did not have his counsel of

5    choice because you had to withdraw.  It is a very unusual

6    claim.  And I can tell you, from presiding over the trial, that

7    I saw nothing that would support any concerns from Mr. Patel.

8         So I'm going to, I have to say reluctantly, going to

9    turn over the microphone to you because I don't know what I'm

10   going to get after what I've just seen for the last two days.

11   So I caution you, as we take a transcript here as well, that

12   whatever it is you're going to say is also going to be turned

13   over to the disciplinary committee.

14        But I'm not going to sit here and get filings at 9:00

15   o'clock at night with attached pornographic images.  I'm not

16   going to sit here and have you malign the Court over

17   information that you have no knowledge of because you weren't

18   present, nor have you read transcripts.  So I caution you, as I

19   turn it over to you, to tread lightly.

20        So could you please tell me and the fellow lawyers what

21   exactly is going on?

22        MS. SZTYNDOR:  First and foremost, I visit Mr. Patel

23   every day, so I would never file anything without him okaying

24   it.

25        So I've been to the jail every day, I've seen him every

1   day, and he was very upset that he sat through an ex parte

2   hearing and there were, basically, what I was told, scandalous

3   and false statements made about various recordings.

4        Now, per your opening, apparently Mr. Mehta and

5   Mr. Sadow were permitted to make representations at ex parte

6   hearings how various content made its way to my law firm files.

7   That's not appropriate.  They have no personal knowledge of how

8   anything comes to my firm.  They've never worked here.  They

9   don't know --

10        THE COURT:  I'm sorry.  Your law firm bio?  Because I

11   don't recall anything about your law firm bio.

12        MS. SZTYNDOR:  I'm saying, the files that they're

13   discussing.

14        THE COURT:  Just so that we're clear, what I was given

15   was recordings that were --

16        MS. SZTYNDOR:  Okay.

17        THE COURT:  This is what I was shown, and the

18   transcript will indicate it.  I was sent a transcript of a

19   recording that you purportedly made of speaking with Mr. White.

20   That was all I was sent.

21        MS. SZTYNDOR:  Okay.  I have never heard this recording

22   or -- I don't know what transcript this is, so I can't defend

23   it right now.  I did order the transcripts this morning from

24   your court reporter.  Apparently, just moments before we came

25   on, they were unsealed.

1       But I've been getting a litany of calls.  I have a very

2   upset client that's telling me I'm being defamed, and

3   disparaged, and that there were false statements made.  I would

4   tend to want to think that's not true; however, your opening

5   statement here said that there's apparently representations

6   made ex parte, by Mr. Mehta and Mr. Sadow, about me recording

7   this particular interaction.

8       What proof was presented to the Court?  I guess when I

9   get the transcript, I'll find out.

10      THE COURT:  Well, I can tell you there was emails from

11  you to Mr. Sadow attaching and saying "yes" with all

12  exclamation points, and it was an attached transcript that you

13  provided him that you had -- I guess had -- I don't know how

14  you took it.  Maybe someone else took it.  But all I know is it

15  was represented to the Court that you had recorded a

16  conversation, and there was shown to me a number of

17  conversations -- I want to say, if my memory serves me right,

18  something like ten conversations -- with Mr. White, all of

19  which had been recorded presumably by you.  There was some

20  sound.  Some of it was played for me.

21      I distinctly remember him calling you, there was a

22  discussion, and then there was an assertion that it was being

23  recorded.  It was provided to me, at least in the format I saw

24  it, as you having engaged in the recording, in a conversation

25  between you and Mr. White, that you then submitted to the rest

 1    of your defense team.  That's how it was shown to me.

 2          You have to remember, you were no longer counsel of

 3    record; you withdrew.

 4          MS. SZTYNDOR:  Right.

 5          THE COURT:  My first question -- and I haven't read the

 6    transcript, but I can remember what I said.  I said, well, what

 7    happens if we call Ms. Sztyndor as a witness.

 8          MS. SZTYNDOR:  Yes.

 9          THE COURT:  And I was told something to the effect of,

10    well, she may also have her own counsel and that she may also

11    invoke the Fifth Amendment.  And I asked it because I didn't

12    know if you were going to play any role in the trial.  It

13    ultimately didn't matter; it didn't come to pass.

14          But certainly, nothing that has been said in that

15    hearing has any impact on Mr. Patel.  I know that you're saying

16    he's upset, but I can tell you it was solely dealing with

17    whatever you may or may not have done in investigation of the

18    case.  And you had withdrawn.

19          So the Court is in the position not to invite a

20    nonlawyer in the case, into an ex parte defense strategy

21    meeting.  I don't know why on earth I would ever do such a

22    thing since you were no longer counsel of record.  I was told

23    that you were no longer going to be on the team, but you could

24    be a witness.  That's what I was presented with, and that will

25    be shown in the transcript.

1            MS. SZTYNDOR:  And then aside from that, none of those

2    attorneys that were at that hearing have any basis to say how

3    anything was recorded or obtained.  They have no personal

4    knowledge.  So if those representations were made to you,

5    that's my apology to you, but they are without merit.  And when

6    I read the transcripts and I see at least what was presented,

7    or what was reported, I could go back to see what was obtained

8    and how it was.

9            And just to give you an idea, there's been these

10   allegations made before, and they were in reference to me

11   having a call with a billing person that was recorded.  It was

12   record in Louisiana, which is a one party consent state, by a

13   client who then texted me that recording.  I didn't even know

14   it was being recorded.  I'm on it.  Me and the biller are on

15   it.  We didn't know.

16           But what am I going to do, tell a client you can't

17   record in a one party consent state, in Louisiana, where your

18   lab is?  I can't do that.

19           So I'm happy to look into whatever it is, but what I

20   wanted the Court to know is that you should not take at face

21   value any representations of how anything was obtained, from

22   either Mr. Mehta or Mr. Sadow, who have no personal knowledge.

23           THE COURT:  Well, I guess, here's my point:  This is

24   not the venue, nor the vehicle, for you to file anything with

25   me going forward.  If this leads to any sort of investigation,

```
 1    that would be the forum for you to be able to be heard --
 2           MS. SZTYNDOR:  Okay.
 3           THE COURT:  -- and contest anything.  To file in an
 4    attempt to give your explanation, which I understand is your
 5    view of how this happened, and I haven't gotten the full
 6    picture, is not something that should be done with filings,
 7    certainly filings directly to me that have no bearing on any
 8    decision I will make as to Mr. Patel, because nothing that
 9    happened in these conversations actually manifested itself at
10    trial; none of it became an issue.  So all of this, to me, is
11    ancillary.  It would be the substance of an ongoing
12    investigation and/or any sort of Bar proceedings.
13           But to keep filing these things, in this court, is what
14    is concerning me.  And it has to stop, because I'm not going to
15    have you trying to counteract allegations now, in this trial,
16    through filings that I do not see have anything to do with
17    Mr. Patel, postconviction matters, or anything regarding
18    sentence.
19           MS. SZTYNDOR:  I'll be happy to clarify, if you need
20    some clarification.
21           The other issue that has arose, or arisen, is related
22    to the fact that I wasn't at the trial.  As you know, I
23    withdrew several weeks before.
24           Apparently, in relation to some email, which I have not
25    seen, but there was some sort of email that allegedly came from
```

1    your law clerk.  People are saying that you made some finding

2    that I illegally recorded something and that's why I withdrew.

3    That's not why I withdrew.  I withdrew because I wasn't

4    comfortable being in the courthouse with a particular

5    individual that I felt, as you well stated, sent inappropriate

6    emails, which, by the way, I did redact.  And I believe it is

7    under seal because I just looked on my phone and it isn't

8    opening.

9         THE COURT:  No.  It's filed under seal because I sealed

10   it.  I sealed it at 9:30 last night because it was really not

11   material that should be in public view.  I'm the one that

12   sealed it.

13        MS. SZTYNDOR:  I agree with you.  And that's the

14   redacted version.  So you can imagine how upset I would be when

15   I have to deal with the unredacted version on an ongoing basis.

16        THE COURT:  I guess -- but I have to stop you.  And I'm

17   not sure -- you have to understand.  I am not sure -- and I'm

18   looking at the quizzical face of a number of people on the Zoom

19   --

20        MS. SZTYNDOR:  Mmm-hmm.

21        THE COURT:  -- because I have no idea what you're

22   talking about.

23        MS. SZTYNDOR:  Okay.

24        THE COURT:  An email from -- and again, I don't think

25   you do either.  You're going by third-hand accounts.  And I can

1    tell you -- there's a transcript you'll be able to read, but my

2    staff made no findings whatsoever.

3         There has been an argument made to me by Mr. Mehta, on

4    behalf of his client, about how these recordings took place.

5    What I said in that transcript, and what I've said from the

6    beginning is, that is no longer my concern other than to turn

7    it over to the appropriate ad hoc committees of my court for

8    further investigation, at which point full due process will be

9    afforded, interviews will be taken, and this will be

10   investigated.

11        But there was never -- and I'm going to hear from the

12   government.  I'm going to make sure I'm not missing anything.

13   Certainly, I want to hear from the rest of the defense team.  I

14   cannot remember issuing an order.  Certainly, no law clerk of

15   mine is going to write anything that would even make a finding

16   and send it to the parties.

17        So I think that what happened was, we had

18   communications with the lawyers because -- I asked for case law

19   over the weekend because it was an emergency ex parte decision

20   that I had to make before trial started.  Over the weekend,

21   both Mr. Mehta and Mr. Samuel provided the Court with cases

22   that would govern recording of a witness and whether or not

23   there was actually a client contact professional rule or

24   responsibility violation.  None of this -- and it's not because

25   of whether or not you had any issue with that finding, but

1    because it had a material impact on admissibility of evidence

2    that ultimately, I found, could be used.  It didn't come into

3    trial.

4         But I need to make clear -- because I have to tell you,

5    to throw things like that in a filing and accuse the bench of

6    sending out and making findings in emails, or of violating

7    canons, without knowing or having access to any of the

8    transcripts, knowing full well that you are not on solid

9    footing to me, is hard to comprehend given the stakes --

10        MS. SZTYNDOR:  I understand.

11        THE COURT:  Given the stakes for your law license, it

12   is hard to comprehend.  Because you, at this point, I think are

13   in the best position to explain this before a disciplinary

14   committee if my Chief Judge --

15        MS. SZTYNDOR:  And I will do that.

16        And Judge, most respectfully, the reality is that just

17   as you don't appreciate -- and by the way, my filings

18   intentionally said "upon information and belief" because I

19   tried to get access to this stuff, and I couldn't until Your

20   Honor opened it up.  So my filings had to start that way, and

21   they did for a very intentional reason.  This is what I'm

22   hearing.  I don't know if it's true, but I'm saying,

23   reportedly, allegedly, upon information and belief.

24        THE COURT:  I would make a recommendation as a practice

25   pointer.  I would never allege or accuse a federal district

1  court judge of doing something unless you really know he did

2  it.  I don't think you need to be, in filings, accusing lawyers

3  of doing things unless you really know they did it.  Putting

4  "reportedly" or "allegedly" in front of these filings is not a

5  qualifier as a member of the Bar, or having admission in this

6  district, to say what you think might have happened in a

7  filing.  You have requirements as an officer of the court.

8  This is just unbelievable amounts of hearsay, and it's not

9  supportive of the record.

10       MS. SZTYNDOR:  Exactly.

11       THE COURT:  I have read your motions in stunned

12  silence.  I do not understand where half of the allegations

13  come from, and I'm going to venture a guess that neither do any

14  of the lawyers on this case.  I don't understand --

15       MS. SZTYNDOR:  I'll tell you --

16       THE COURT:  Listen, I don't know who's feeding you

17  information.

18       MS. SZTYNDOR:  My client.

19       THE COURT:  I don't know what version of this you're

20  getting.  Okay?

21       And I have to tell you, your client also may not have

22  the full picture of everything that happened because it was

23  dealing with recordings that were made on an evidentiary basis.

24  He was not part of the Court's analysis on that point because

25  it was an emergency basis for the defense counsel to figure out

1    if they could even use it.  And ultimately, it did not come to

2    pass, most of which would have been impeachment at best.  And

3    since he was never called, it was a nonstarter.

4         So as far as I can tell, the only thing that we're

5    filing and arguing about now is what you did or did not do to

6    procure that information from Mr. White, and that has no

7    bearing.  But you have made essentially some sort of due

8    process violation argument that insinuates that I am not

9    offering you protection from a witness and that you were not

10   able to attend the trial.

11        You were not counsel of record.  There is no way for a

12   Court or anyone else to know.  You had withdrawn.

13        MS. SZTYNDOR:  Right.

14        THE COURT:  You understand, you had withdrawn.

15        What am I to do in that situation?

16        MS. SZTYNDOR:  Well, here's what was represented to me,

17   that a motion couldn't be made where I could come for partial

18   days of the trial.  So then I had to make a decision, and I

19   just chose to -- withdrew because I wasn't comfortable coming.

20        But setting that aside, as upset as you are that

21   there's allegations being made against you, that you feel are

22   unsupported, that's how I feel.

23        There is an ex parte hearing.  I was counsel of record

24   for three and a half years in this case.  I just withdrew.

25   Chris White's not counsel of record.  His attorney was able to

1   go.  I don't know why I wasn't invited if there was a question

2   as to how certain recordings that were at my firm were

3   procured.  Because I have emails.  I have text messages.  I can

4   show you that some person or client sent that to me, if it was

5   on a, you know, Uber recording, whatever it is.  I have

6   evidence, and I wasn't even asked to go.  But literally --

7        THE COURT:  You understand, though, as a matter of

8   procedure why someone who is not counsel of record is not

9   invited to a defense strategy.  The government is not there

10  either.  It's purely a defense strategy impacting the rights of

11  the third-party witness, which is why Mr. Mehta was there.

12  There is no place for the person that has withdrawn.  At that

13  point, it would have been improper to --

14       MS. SZTYNDOR:  I was a third-party witness; that's what

15  I'm saying.  Just like Chris White was the third-party witness,

16  and he got to have his attorney, I'm a third-party witness.

17  That's what you said.

18       THE COURT:  I don't think I'm making myself clear.

19       The third-party witness, okay, you turned into one upon

20  reportedly recording statements.

21       MS. SZTYNDOR:  Right.

22       THE COURT:  Correct.  But it's not about what you did

23  and didn't do; it's about its admissibility.  That is the

24  question.  And that has no bearing.  It's defense counsels'

25  call to figure out what they want to do with that.

1          So at that point, because you were a witness, it was

2    not proper to include you.  And I don't think there's a single

3    -- quite honestly, I can't even compute a single argument that

4    would support you being present in that meeting.  And

5    truthfully, nothing impacted Mr. Patel at trial.

6          So everything we're talking about here is only relevant

7    if indeed you ultimately have to engage in disciplinary

8    proceedings.  None of this should be filed on the docket.  I'm

9    not here to have an open criminal case, pending sentencing, for

10   you to have yourself heard on something that has no bearing on

11   the rest of this case.  It is purely a disciplinary issue now.

12   It will go through the proper channels.  I'm not going to make

13   any decisions on it.  I'm simply going to finish reading

14   everything and determine whether a referral is appropriate.

15   You will then get an opportunity to make all of these

16   arguments.

17          But you cannot be filing things in the district court

18   case that have nothing to do with Mr. Patel, his sentencing,

19   postconviction.  And certainly, you shouldn't be filing things,

20   without knowing anything about what happened in that hearing,

21   that would somehow avert or assert that there is district court

22   wrongdoing, including making reference to canons governing

23   judicial behavior.  I am completely in disbelief that you would

24   think any of that was appropriate.  I'm going to chalk it up to

25   a moment where you didn't think it through because you were

1    obviously upset about what was said in these proceedings

2    regarding what you did or did not do.

3            But I caution you --

4            MS. SZTYNDOR:  Exactly.

5            THE COURT:  -- you should not be filing any of these

6    things, certainly nothing that has impertinent or scandalous

7    material attached to it, on the public docket.  I mean, none of

8    this should have been filed.  If you have a concern, you will

9    have the appropriate venue and forum to raise it if indeed

10   disciplinary proceedings call on you to do so.

11           Am I making myself clear on that front?

12           MS. SZTYNDOR:  Yes.  And I did file everything under

13   seal, or ex parte, in person yesterday, so I'm a little

14   confused.  I did it under seal for the electronic one, but I

15   don't know why anything wouldn't be sealed on your end.  I

16   looked at the docket and it's sealed.

17           THE COURT:  Well, unless I'm missing something, I think

18   everyone here knows the filing that came in yesterday was not

19   redacted and it was not sealed.

20           MS. SZTYNDOR:  Was it not redacted?

21           THE COURT:  Well, if you call the images somewhat

22   redacted, then maybe it's a little prudish of me.  But to me,

23   those should have been completely sealed.  So I took care of

24   that anyway because that shouldn't be something on the docket.

25           MS. SZTYNDOR:  My understanding was, they were.

1          THE COURT:  What I think you need to understand is

2     everything you have filed, including anything I haven't ruled

3     on yet, is going to be denied because none of the relief you

4     requested -- like the one you did yesterday, number one,

5     there's nothing to correct.  The record is what it is.

6          Number two, the transcripts are there and you can order

7     them.  So the relief you asked for today is going to go ahead

8     and be granted in part because we have the transcripts for you

9     to order.

10         But the filing from yesterday, I'm not even sure --

11    maybe you want to tell me you want to withdraw it because I

12    don't even know what to do with the --

13         MS. SZTYNDOR:  That's fine.  I'll withdraw it.  My

14    concern was that my client was upset that I couldn't be there,

15    and there was false rumors perpetuated about why that was.  And

16    it's not because of some illegal recording issue; it's because

17    I was uncomfortable from a particular standpoint.  I'm sorry if

18    that offended you.  Trust me, nobody on this Zoom is more

19    offended by that stuff than me.  So, yes, I --

20         THE COURT:  Well, I guess the important thing to tell

21    you is that none of these filings are helping your client.

22    Your client awaits sentencing.

23         And I want you to know, because I brought Mr. Sadow and

24    Mr. Rafferty sidebar and I told them on the record, after

25    trial, that none of this was going to impact their client

1    because I didn't want anyone to think that anything that

2    happened here will have any bearing.  And it will not; nor will

3    anything you have filed have any bearing on Mr. Patel.  But it

4    certainly cannot advance the ball, for a concerted defense

5    effort, to be trying and air out grievances through the docket

6    regarding what was said and not said at an ex parte hearing.

7    That certainly is not the way to go.  It's not the way you want

8    to practice.  It's definitely not the way you want to practice

9    in front of me.  And you certainly shouldn't want to do that if

10   you think there's going to being further investigation.

11           You have your documents.  You have your recordings.

12   You have your information.

13           MS. SZTYNDOR:  Yes.

14           THE COURT:  It is best left for an investigative

15   committee of the Bar to look into it.

16           MS. SZTYNDOR:  Yes.

17           THE COURT:  There is nothing I'm going to do at this

18   point.

19           MS. SZTYNDOR:  Okay.

20           THE COURT:  So what I'd like to do now -- because I'm

21   not really even sure where to begin.  I have to think that the

22   defense team -- maybe I'm wrong, but I have to think the

23   defense team is just as beside themselves with the filings as I

24   am, because all of this was a complete surprise to me.  And I

25   don't know if we have even conferred and figured out who is

1    leading the effort, but certainly my understanding has been

2    that between Mr. Sadow, Mr. Rafferty, and Mr. Samuel, that has

3    been my primary defense team.  As I head into sentencing, now

4    I've had all these new filings.

5           I think we can put this behind us after today, but I

6    just want to be clear:  If there's anything to clear the air

7    on, without getting into what could come in an investigation

8    from the ad hoc committee, I'd like to know because I'm in a

9    bit of a disbelief as to what exactly is going on.  I can't

10   imagine any of this was reviewed, or authorized, or even

11   predicted, by anyone on the defense side.

12          I don't know, Mr. Sadow, if you want to take the lead.

13   Your name is all over half of these filings, so I would turn to

14   you first.

15          MR. SADOW:  I dare say not too much except for the fact

16   that the defense team, the three individuals that you made

17   reference to, were unaware that the filings were going to take

18   place.

19          At the same time, I'm very concerned about how the

20   three of us are going to continue to represent Mr. Patel in

21   light of some of the things that have been said so far.  I

22   understand -- look, I'll be the first one to say, no one was

23   happy about him being convicted.  Clearly, Mr. Patel was not;

24   the defense team neither.  But I also said you gave us one hell

25   of a trial, and I continue to say that.  But things that have

1   been said now are concerning to me as to how Mr. Patel is going

2   to come out of this in light of certain matters and allegations

3   having been made.  I don't have control over that aspect of it

4   at all, period.

5          THE COURT:  No, I know you don't.  And I think that the

6   number one thing that has to be done is, in my view, we have to

7   stop with these filings.  They're not helping anyone.  They're

8   not helping Mr. Patel.  And if he's frustrated, then everyone

9   needs to sit down with him and talk to him to figure out what

10  you want to focus on.

11         I'm going to grant the joint motion and give everybody

12  until the 20th for postconviction motions, the 20th of

13  February, to respond.  I'm going to give you all that.  But

14  everyone needs to focus on sentencing, and prepping, and all of

15  that.  This is just a massive distraction, and I think everyone

16  is catching stray bullets on these filings because it's just

17  insinuating or making mention of all sorts of other issues that

18  are happening in the periphery that, at least as far as I'm

19  concerned, have no bearing on Mr. Patel's sentencing.  And I'll

20  continue to say that because none of this is going to impact

21  him.

22         But there's a lot of lawyers I respect in this case who

23  are taking flack in the filings from a reputational

24  perspective, and I don't take that lightly.  It takes a long

25  time to build it up, and it only takes a few bad filings to

 1    lose it.  So I think it's in everyone's best interest that if a

 2    conversation's not going to be had when we get off the call

 3    today, these filings cease.  There will be a time and a place,

 4    and it is not in this case with these filings.  I mean, it

 5    certainly isn't.

 6         And what I've said from the beginning, so the

 7    government understands -- I think the government will read the

 8    transcripts and understand fully why they were sealed when they

 9    were sealed, and the rulings I made, which I will confess were

10    not easy rulings to make.  Mr. Mehta knows that.

11         It did not happen.  I thought that I made the right

12    ruling.  The defense had an opportunity.  They decided they

13    didn't need it.  It didn't come to pass.

14         But there were conversations in some of those

15    transcripts, what was said, that I think the government needs

16    to have, and that I think could play a role in future

17    prosecutions, and I thought it incumbent upon myself to get

18    those public, on the record, so that's why they're out there.

19    The government will have to decide what, if anything, they do

20    with those documents involving future cases that might have

21    Mr. White as a witness or any other future prosecutions.

22         So I don't know, Ms. de Boer, on that front, if there's

23    anything you want to chime in on, but I hope the government

24    understands why I held off and why I immediately, once the

25    trial was done, which I thought was a proper timeline, it would

1   be proper to unseal it because it's going to have no bearing on

2   sentencing.  But I think there may be some disclosure concerns

3   that you may be facing, given that, and you probably have to

4   sit down and digest it all.  I wanted to see what you want to

5   say about that, Ms. de Boer.

6        MS. DE BOER:  Yes.  Thank you, Your Honor, for

7   unsealing that.  We will take a look and make sure that the

8   prosecutors on Mr. White's case and the prosecutors on any

9   other matters in which Mr. White may be a witness are aware of

10   what has occurred and the information in those transcripts and

11   filings.

12        THE COURT:  Yes.  I mean, you guys asked about it at

13   trial, and the time was not right.  You obviously felt the need

14   to know.  Now it is capable of being released, so do with it

15   what you will.  But at this point, I don't think there's

16   anything in there that required a further seal, and that's why

17   I unsealed it.  There really isn't even a motion.  It was done

18   ore tenus, so it's all pretty much in those transcripts.

19        I don't think, Mr. Samuel or Mr. Rafferty, you need to

20   be heard on this.  I will ask you.  I think you probably would

21   agree with Mr. Sadow, that at this point you would prefer to

22   continue some further investigation, and perhaps the three of

23   you need to figure out what, if anything, is going to go

24   forward on Mr. Patel's representation.  Because if this has

25   been created by the client, who is engaging now with

1    Ms. Sztyndor, who had withdrawn, and she is now essentially

2    postjudgment, as she says it, or postconviction counsel -- we

3    all have to speak in one voice.  I know the three of you, after

4    this trial, I think are of one strategy.  She may be of a

5    different one.  So obviously, if there's a change in

6    circumstances and it delays sentencing, I want to give you a

7    chance to figure that out.  But just let me know.  It's

8    probably too premature to figure this out until you've digested

9    all of this.  There's been a lot of stuff that's happened in

10    the last 48 hours.

11         MS. SZTYNDOR:  Judge Ruiz, I can weigh in.

12         THE COURT:  Yes.

13         MS. SZTYNDOR:  In speaking with the client every single

14    day -- I visit him every single day.  He just is in a

15    transition to bring on an appellate attorney that's more of,

16    like, a focus on criminal appellate.  So, you know, he retained

17    somebody, and that transition is in process.

18         And obviously, if the filings -- if you don't want

19    filings, that's fine.  I was just concerned about preserving

20    the record because I didn't know the time frame.  Obviously, I

21    was out for two months, so I'm coming back and hearing all this

22    stuff happened, and things are not accurate, and I just wanted

23    to preserve that in case there's an appellate issue.  But there

24    is new counsel, I think, coming on that's going to spearhead

25    that.  It's not me, but, yeah.

1           THE COURT:  Well, I will just say this:  Unless my

2     understanding of appellate procedure is off, I don't see that

3     anything in this regard is an appellate issue, in large part

4     because although the ruling was a ruling that permitted the

5     defense to use this testimony in limited circumstances,

6     primarily for impeachment, it was never used.  So as far as I

7     can tell, this particular issue never became impeachment in the

8     trial, and it was not the part of any major rulings in the

9     trial, so I certainly don't think it will have to make its way

10    to the appellate court in the brief.  I don't think there's any

11    place for it.

12          But understanding that you want to preserve it, I can

13    only tell you I'm only worried about this case getting to

14    sentencing, making sure we have a fair hearing at that phase.

15    We still have to do our forfeiture, which may be resolved.

16    There's stuff I have to do to get this case finished and done

17    right.  I just want to focus on that; I don't want to focus on

18    a he said, she said, over these recordings, which to me is not

19    going to impact the case anymore.

20          MS. SZTYNDOR:  Okay.

21          THE COURT:  All it will be, at this point, is be an

22    issue for the disciplinary committee to investigate, and that

23    is something that I send off.  I'm not going to be overseeing

24    that.  It can be done independently.

25          MS. SZTYNDOR:  Okay.

1            THE COURT:  So that's where I'm at.

2            So the venue for all this -- you will get a chance to

3    preserve and argue it, but it shouldn't be making its way into

4    this docket where it really has no impact on what's happening

5    with Mr. Patel.

6            Do you understand what I mean?

7            MS. SZTYNDOR:  Yes.  And that actually makes me feel a

8    lot better because what I was being told was that it was

9    impacting him.  So now that you've said that, I don't really

10   feel the need to file stuff.  But I do appreciate the

11   opportunity to correct the record because based on what I

12   heard, I was just, like -- anyway, we'll deal with that at a

13   future time.  I appreciate that.

14           THE COURT:  Mr. Samuel, I don't know if you wanted to

15   chime in.  I don't know -- again, I don't know where the

16   information is necessarily coming from, but I don't think -- I

17   think I said it to you all at sidebar, and I've made it very

18   clear, this has no -- and I've done it again today -- this has

19   no impact on the case going forward.  This is for a separate

20   issue.  So I'll hear from you, if you want add anything off the

21   heels of what Mr. Sadow said.

22           MR. SAMUEL:  I have nothing to add, Your Honor.  Thank

23   you.

24           THE COURT:  All right.  And Mr. Rafferty, I imagine

25   nothing on your front either?

1       MR. RAFFERTY:  The only thing I would add, Your Honor,

2   is that I echo everything Mr. Sadow said.  I was not consulted

3   at all in connection with any of these motions.  I do not

4   endorse them, do not believe that they are in Mr. Patel's best

5   interest.

6       THE COURT:  Thank you for that.

7       Mr. Sadow, did you want to add on anything?  Go ahead.

8       MR. SADOW:  Yes.  Very briefly, Your Honor.

9       I just want the Court to be on notice that the question

10  of representation, at this point, is up in the air.  I can't

11  have my client reaching out to do two different things at this

12  point in time.  We're going to have to figure out what it is

13  that he chooses to do.

14      I appreciate the Court -- you may need to give us some

15  more time, but this is the tip of the iceberg; it is not the

16  only matter that is going on.  So I just let the Court

17  understand it in that context, so if you hear from us again,

18  you have an idea that something else, potentially, could be

19  coming.

20      THE COURT:  And I appreciate that, as long as you guys

21  keep me in the loop.  And I certainly don't need to know all

22  the details.  All I want to know is if we need more time.  If

23  other issues arise in representation, I know you'll keep me

24  fully informed.  I'll keep an eye on it.  We'll keep the dates

25  as we have them.  I'll still be granting extension of time on

1    the posttrial motions.  But certainly, if there's some sort of

2    change in the leadership while we investigate this, let me

3    know.  But I will be very attune to it, as I prepare my own

4    notes, and the PSI gets underway, and everything else happens

5    in advance of March and the forfeiture proceedings that are

6    currently scheduled.  But I do appreciate that and advising the

7    Court that there may be more to come.

8             As far as more to come doesn't mean that we get

9    anything like what I've received in my NEF inbox over the last

10   48 hours, then, I think that I can handle that.  The problem is

11   when this stuff, which is really internal attorney emails -- I

12   mean, I don't need to be seeing -- no one needs to be seeing

13   any emails between lawyers filed on the docket.  It is not good

14   for anyone.  I don't want this to be out in the space where

15   anyone can take a look at this stuff, which some of it is

16   confidential communication.  So I think it needs to be, as I

17   did, sealed.

18            I will take care of all pending motions.  As soon as

19   we're done today, I will start preparing some paperless orders

20   and clear up these last two that were filed because we all

21   understand, going forward, what's at stake, and we have a

22   better sense on what to expect.

23            Mr. Mehta, I have not had a chance to have you -- I'm

24   sure there is a lot you want to say.  Some of it, you might not

25   want to say, but certainly -- I don't know if you want to be on

1    record on some of these issues because there's been a lot of

2    narrative here.  I can only tell you what I sat through when we

3    all did our ex parte hearing and I heard from you for the first

4    time.  Some of it is brand new to me, and some of it, I have to

5    confess, is perturbing and inflammatory.

6         Certainly, any insinuation that I was somehow involved

7    in permitting proceedings to go forward inappropriately, or was

8    told to protect a lawyer and did not, I mean, those aren't

9    things that I've seen in a filing, and haven't seen them, if

10   ever, in the last ten years I've served as a jurist on the

11   state and federal bench.  So I'm a little beside myself with

12   some of those filings.  We're going to go ahead and rule on

13   them and move on.

14        Is there anything you want to add about your concerns,

15   at this point, and what you've heard?

16        MR. MEHTA:  Very briefly, Your Honor.

17        First of all, the integrity of the Court has never been

18   at issue for Mr. White or for counsel, no concern whatsoever

19   there.

20        Second, Your Honor, Ms. Sztyndor has reached out to us.

21   I understand she's represented, so I have not communicated with

22   her, and I will continue to go through her Counsel.

23        Most importantly, though, Your Honor, I understand the

24   Court's reasoning and logic in unsealing these transcripts.

25   However, for the reasons we said at the ex parte hearing, we

1    believe these recordings were made in violation of state law.

2    We believe their dissemination is in violation of the state

3    law.  Obviously, we understand the prerogative of the Court.

4         But we believe that the hearing transcript, which has

5    now been unsealed, that contains these illegally recorded

6    conversations, legally, that should not be public record.  We

7    believe that if the Court's inclined to keep that transcript

8    available to the government, then at least it should be sealed

9    so that the public does not further see it.  But we would also

10   request that any copies ordered be destroyed because we think

11   they were obtained in violation of state law here.

12        THE COURT:  So let me ask you that.  Certainly, I can

13   understand that.  And I think that because I felt there could

14   be disclosure obligations contained therein from the

15   government, they certainly, I think, need to have it.

16        I don't have a problem if your concern is airing that

17   out for other parties that may be able to order it.  Right now,

18   I know there have been some orders already made of it.  I don't

19   know that there's a massive concern with sealing it again.  I

20   mean, the government can now order it.

21        But if your issue is that it's out there, certainly I

22   don't have a problem sealing it because, quite frankly, to me

23   the most important thing was making sure that copies were

24   available for the defense team, for yourself, and for

25   Ms. Sztyndor and her counsel, that I can have copies sent to

1    the appropriate disciplinary and grievance committees, and that

2    the government would be able to see it because I do think there

3    may be material in there -- forget about its use; I'm with you

4    there.  That is extremely debatable and continues to be, in my

5    view.  I think it's a very close call and could go either way.

6    But in terms of having it, whether it be viewed as potential

7    *Brady* material and things like that, it just felt like we had

8    to go ahead and make it available.

9           So at this point, I'm not adverse to your suggestion.

10   If you want me to reseal the transcripts -- certainly, I think

11   we all agree this would be something you'd have to cross the

12   bridge on in the middle district, right?  We talked about this.

13   Because I think Mr. White still hasn't been sentenced, correct?

14   So this is going to be an issue for him down the road,

15   unfortunately, right?

16           MR. MEHTA:  That is correct, Your Honor.

17           And Your Honor, if the Court would consider sealing it

18   --

19           THE COURT:  Yes.

20           MR. MEHTA:  -- that would be our --

21           MS. SZTYNDOR:  Judge can I inquire on one issue?

22   Mr. Mehta just said that these are illegal recordings.  What is

23   the basis for that?

24           THE COURT:  Well, not to get into this again because,

25   again, it's -- you'll see it in the transcript.

1          MS. SZTYNDOR:  Okay.

2          THE COURT:  I think the transcript has the best

3     summation of Mr. Mehta's argument in this front, but mostly

4     that it was a nonconsensual recording, in violation of Florida

5     law; that was the main genesis of it.  And so --

6          MS. SZTYNDOR:  I'm not aware of any recordings that

7     occurred in Florida, but, okay.

8          THE COURT:  Okay.  I don't know all the details, but

9     I'm telling you that was the position advanced to me.

10          So the important thing here is to make sure that you

11     all get a copy.  But I would imagine -- on the defense team,

12     Mr. Sadow, any objection to me sealing it?  I can't imagine you

13     guys have a problem with that either.

14          MR. SADOW:  We do not.  And what was just raised by,

15     for lack of better term, fellow defense counsel, are the very

16     things that I was suggesting could come back to the Court in a

17     different context.  I mean, clearly, one interest is Mr. Patel.

18     That should be the only interest.

19          THE COURT:  Right, yes.  That's my agreement too.  I

20     mean, I think that what we need to focus on is Mr. Patel and

21     his case; it is separate and distinct from anything regarding

22     these recordings.

23          Certainly, I don't have a problem then, Mr. Mehta --

24     and I'm assuming the government can procure them.  You can make

25     an evaluation, Ms. de Boer, on their use and what you might

1    need to do with them.  But if that's the feeling, then I will

2    promptly seal the transcripts after we're done today.  You guys

3    can still order a copy.  We know who's going to have it.

4         I don't think we need to do anything else besides that,

5    Mr. Mehta.  I think that we'll just seal that.  It just came

6    out a couple of hours ago, so I think we can go ahead and put

7    that under seal so it's not in the public domain.

8         Be aware, obviously, I do believe it's going to have to

9    be sent to our disciplinary committee, and they'll have to look

10   into this for some context, but aside from that, I have no need

11   for it to be public anymore.

12        So I'll go ahead -- Ms. de Boer, no issue on that, I

13   assume?

14        MS. DE BOER:  No issue.

15        And I think what Your Honor is saying is that the

16   government is authorized to disclose, you know, and to satisfy

17   its disclosure obligations in other cases, and I would assume

18   that most of the other cases have protective orders as well,

19   which would prevent further dissemination.  But as long as, you

20   know, the Court is authorizing us to disclose information as

21   necessary, to satisfy our obligations, then no objection to it

22   being under seal otherwise.

23        THE COURT:  Yes.  I'm going to put it under seal, but

24   obviously with that caveat that to the extent you have

25   disclosure obligations with regard to Mr. White in related

1   cases, you're not prohibited from adhering to those

2   obligations.  And certainly, I think, protective orders that

3   limit dissemination for relevant parties will protect him as

4   well.  I think that's the key.

5       So that's on the record.  That is the caveat that I'm

6   sealing it with.  So you guys aren't prohibited from using it

7   in that limited fashion.

8       But to your point, Mr. Mehta, we will get off the horn

9   today, we will seal those transcripts.

10      Number one:  We will deny the motion under seal.  Quite

11  frankly, I think Ms. Sztyndor has essentially withdrawn it, so

12  to simplify things, I will deny it as withdrawn.  And then I

13  will deny the one today, in part, but grant, in part, because

14  she's been given the opportunity to get those transcripts

15  already, which is really what she wanted.

16      MS. SZTYNDOR:  Yes.

17      THE COURT:  So I'm going to take care of those pending

18  issues, and then it I will sit back -- I think judicial

19  involvement, at this point, is done other than extending the

20  time for posttrial motions and waiting to see if there's been

21  any change at the helm between now and sentencing.  I think

22  this, hopefully, will have cleared it up.

23      Mr. Mehta, does that take care of your main concern?

24      MR. MEHTA:  It does.  Thank you, Your Honor.

25      THE COURT:  All right.  So unless anybody else needs to

1   be heard, I --

2          MS. SZTYNDOR:  I have a question.

3          If it turns out that, you know, comments that were

4   made, like, that I recorded somebody in Florida, criminally,

5   are not true, is that something I can seek relief through this

6   Court, or is that more something, like, a disciplinary

7   proceeding?  Because I'm constantly hearing that I am breaking

8   Florida laws and, to my knowledge, that's never occurred.  So

9   it feels slanderous to me.  And to protect my reputation, just

10  like you want yours protected, what's the vehicle to do that?

11  Because they're being made in this proceeding.

12         THE COURT:  Well, the point of this is that there would

13  be no more filings in this proceeding regarding this

14  communication that was recorded.  As far as I'm concerned,

15  there were no actual filings made other than requesting a

16  hearing, and they were in the transcript, which is now going to

17  be sealed.  So if you're concerned about that being out

18  there --

19         MS. SZTYNDOR:  Yes.

20         THE COURT:  -- it won't be out there for you either.

21         MS. SZTYNDOR:  Thank you.

22         THE COURT:  So now that's sealed, as Mr. Mehta

23  requested.  There will be no concern that there's something, in

24  your view, quote, unquote, "slanderous" in the transcript.

25         MS. SZTYNDOR:  Yes.

1          THE COURT:  It's going to be sealed.

2          Now, in terms of you trying to correct or combat any

3    representations done, as a withdrawn attorney who's not a party

4    in this case, there really is no basis by which you would begin

5    to ask for relief from this Court on something that is not a

6    pending issue, has no relevance to the proceedings, and

7    certainly has no impact on Mr. Patel and his sentencing or any

8    rulings on any other motions.  So to me, the vehicle that

9    you're asking is not available through this case.  In fact --

10         MS. SZTYNDOR:  Understood.

11         THE COURT:  -- the only thing you would have to deal

12   with is if indeed any disciplinary proceedings are initiated,

13   which will be up to our committee, that would be the time where

14   you would get more than a sufficient opportunity to contest

15   anything that was said in that transcript.  But we're not in a

16   position now for you to start filing things in this case

17   because I'm not going to correct anything.  I only know what I

18   was told.

19         So you understand, when you look at the transcript, the

20   Court had to make a ruling on the admissibility of the

21   evidence.  I made no ruling -- and Mr. Sadow, Mr. Mehta,

22   Mr. Samuel, and Mr. Rafferty, can all show you what's in the

23   transcript.  There was never a ruling about you breaking any

24   laws.

25         MS. SZTYNDOR:  I understand.

1          THE COURT:  There was never any ruling about anything.

2    In fact, I had to assume that if you had violated a law, would

3    I have allowed it in.  That really was an assumption, but I had

4    to make an assumption with what I had to determine

5    admissibility.

6          MS. SZTYNDOR:  I understand.

7          THE COURT:  But there's not a finding.  There's no

8    order.  The only ruling I made was on a piece of evidence, and

9    its limited use, and that I would have to refer this to a

10   proper investigation.  That is all that was done.  So there

11   really is -- there's no vehicle or need for any more filings in

12   this regard because there's really nothing that I would correct

13   or that you can correct, at this point.

14         Does that make sense?

15         MS. SZTYNDOR:  Yes, I see.  So if it's all false, then

16   I'll just deal with that later, basically.  And if there's some

17   defamation of something, then that's a separate suit for me to

18   file.

19         THE COURT:  Yes.  I mean, if you are pursuing other

20   lawsuits that are not related to the criminal proceeding, then,

21   absolutely, there would be no filings in this case.

22         And I just want to be very clear that I don't expect to

23   see another filing from you, Ms. Sztyndor, in this case unless

24   it is something related directly to representing Mr. Patel,

25   whether it be a sentencing memorandum, a motion for variance,

1    or something to that effect, where you become the lead person

2    on postjudgment motions.  That is what's left to be done in

3    this case.  But anything regarding your views on what you did

4    or did not do, and concerns about your professional reputation,

5    cannot and will not be addressed by any more filings like the

6    ones I've seen in this case.

7              Am I making on myself clear?

8              MS. SZTYNDOR:  Yes.  If I have an issue, don't file it

9    in this case; go through a different medium.

10             THE COURT:  Listen, if you have an issue, I will tell

11   you that this issue is to be resolved internally, between your

12   client, co-counsels, and if there's any other proceeding that

13   requires you to respond, you will be given that opportunity.

14   But this case is no longer the vehicle for that.

15             And certainly, I want to be very clear that -- if I

16   haven't been already -- and Mr. Mehta, I think, pointed it out

17   -- I have no knowledge of any of the allegations that you've

18   put in your motion pertaining to me, the Court.  Okay?  This is

19   not something about being told or not told something.

20             There are citations to canons that are essentially

21   asserting that I somehow had an improper proceeding, where you

22   weren't allowed to attend, which legally you were not supposed

23   to be in that proceeding because you were a witness and not

24   counsel of record.

25             And when it comes to this issue about a witness

1  intimidating you, I was never advised that there was any

2  concern about that.  The first I ever heard about that and your

3  purported basis now for withdraw, so you understand, that was

4  not brought to the Court.

5         MS. SZTYNDOR:  Understood.

6         THE COURT:  Well, I'm just telling you; I'm just

7  telling you.

8         MS. SZTYNDOR:  Okay.

9         THE COURT:  I'm telling you so you know.  I'm not sure

10  who's presenting you that information, but I think that every

11  counsel, government included here, can tell you nothing in

12  those motions regarding what I knew, or not knew, or was told,

13  is accurate.  So I'm just telling you -- and that includes any

14  communication from my chambers, which never happened.

15        MS. SZTYNDOR:  Okay.

16        THE COURT:  So, again, I caution you, going forward on

17  that, wherever that information is coming from --

18        MS. SZTYNDOR:  It's not true.

19        THE COURT:  -- I can tell you it's not true and it's

20  incorrect.  And I think all the lawyers on this case will agree

21  with me, that they are similarly completely flabbergasted by

22  some of those representations because I don't think any of them

23  knew anything like that or heard anything like that either.

24        So I don't know what to tell you other than there

25  should be no such allegations in any future filings because

1    they're not based in reality, and anything else that you do

2    should not be filed in this case.  Okay?

3         MS. SZTYNDOR:  That makes me relieved, to hear that

4    that stuff didn't occur because I had heard that it had.

5         THE COURT:  Well, I can tell you -- I don't know you,

6    and this is the first time I met you in any medium, but I can

7    tell you it's not my course of conduct, and none of that was

8    raised or brought to my attention.

9         So with that being said, I think we have an

10   understanding, when we get off today's call, about what the

11   Court will do with the transcripts and the pending motions.  I

12   will take care of all of that.  I expect to see no future

13   filings from you, Ms. Sztyndor, unless they're directly related

14   to the representation of Mr. Patel.

15        I want to be clear:  If a single one comes through, it

16   will be stricken, so don't even bother writing it.  It will be

17   stricken by the Court, because I have now advised you, and it

18   would be inappropriate to file.  So anything that is dealing

19   with this issue, which we have now put to bed and we've

20   addressed, should not be raised in this proceeding.

21        Am I making myself clear?

22        MS. SZTYNDOR:  The issues that were addressed in the

23   motions.

24        THE COURT:  Yes, yes.  Quite frankly -- let me be very

25   clear:  Any issue regarding any representation in this case,

1    about you, your representation, your professional bona fides,

2    or your conduct, should not be filed in this case.  There is no

3    place for any of those filings in this case.

4             MS. SZTYNDOR:  I understand.

5             THE COURT:  Okay?  I'm just being very clear.

6             MS. SZTYNDOR:  Filing stuff for Minal is good, but

7    nothing else.

8             THE COURT:  If you are filing -- if you are counsel of

9    record that is filing motions on his behalf seeking relief that

10   could be provided under the rules of criminal procedure, then

11   that is fine, but I'm not going to have these filings that are

12   not based upon Mr. Patel's best interest.  They are more

13   concerns about your professional reputation.  They are

14   understood, I get it, but this is not the time or the place.

15            So I don't expect to see them anymore.  Okay?

16            MS. SZTYNDOR:  Yes.

17            THE COURT:  All right.  Anyone else need to be heard on

18   this before we conclude?  I think we have a good understanding

19   of what the Court's going to do.  Anyone who needs the

20   transcript now has it.

21            Mr. Sadow, I will be standing by.  If anything changes

22   in the coming months -- I'll keep an on the docket.  If I need

23   another status, I'll reach out to you guys, but I think we've

24   taken care of everything.  I appreciate everyone's time on

25   short notice.  Okay?

1          All right, everyone.  We're in recess.  Thank you very

2     much.

3          (Court recessed at 3:05 p.m.)

4

5                    C E R T I F I C A T E

6

7          I hereby certify that the foregoing is an

8     accurate transcription of the proceedings in the

9     above-entitled matter.

10

11    DATE:  December 27, 2022 /s/Ilona Lupowitz
                                  ILONA LUPOWITZ, CRR, RPR, RMR
12                                Official Court Reporter
                                  United States District Court
13                                299 East Broward Boulevard
                                  Fort Lauderdale, Florida 33301
14                                (954) 769-5568

15

16

17

18

19

20

21

22

23

24

25

## /

**/s/Ilona** [1] - 49:11

## 1

**1** [1] - 1:7
**100** [1] - 2:9
**1170** [1] - 2:6
**123** [1] - 2:12
**1400** [1] - 1:16
**17th** [1] - 2:12
**19-80181** [1] - 3:3
**19-CR-80181-RAR-1** [1] - 1:2

## 2

**20** [1] - 1:4
**20005** [1] - 1:16
**2022** [2] - 1:14, 49:11
**2052** [1] - 1:19
**20th** [2] - 28:12
**2400** [1] - 2:6
**260** [1] - 1:18
**27** [1] - 49:11
**2700** [1] - 2:9
**299** [2] - 1:23, 49:13
**2:07** [1] - 1:5

## 3

**30303** [1] - 1:19
**30305** [1] - 2:4
**30309** [1] - 2:7
**3131** [1] - 2:3
**3301** [1] - 1:24
**33301** [2] - 2:12, 49:13
**33602** [1] - 2:10
**3:05** [1] - 49:3
**3:10** [1] - 1:5

## 4

**48** [3] - 4:14, 31:10, 35:10

## 7

**769-5568** [2] - 1:24, 49:14

## 8

**8th** [1] - 1:16

## 9

**954** [2] - 1:24, 49:14
**9:00** [1] - 11:14
**9:30** [2] - 7:20, 17:10

## A

**ability** [2] - 6:5, 7:9
**able** [7] - 8:20, 16:1, 18:1, 21:10, 21:25, 37:17, 38:2
**above-entitled** [1] - 49:9
**absolutely** [1] - 44:21
**access** [2] - 19:7, 19:19
**according** [1] - 7:24
**account** [1] - 6:25
**accounts** [1] - 17:25
**accurate** [3] - 31:22, 46:13, 49:8
**accuse** [2] - 19:5, 19:25
**accusing** [1] - 20:2
**action** [1] - 8:8
**actual** [1] - 42:15
**ad** [3] - 10:10, 18:7, 27:8
**Adams** [1] - 4:10
**ADAMS** [1] - 2:8
**add** [5] - 33:20, 33:22, 34:1, 34:7, 36:14
**addressed** [3] - 45:5, 47:20, 47:22
**adhering** [1] - 41:1
**admissibility** [4] - 19:1, 22:23, 43:20, 44:5
**admission** [1] - 20:5
**advance** [2] - 26:4, 35:5
**advanced** [1] - 39:9
**adverse** [1] - 38:9
**advised** [5] - 7:11, 9:8, 9:21, 46:1, 47:17
**advising** [1] - 35:6
**afforded** [1] - 18:9
**afternoon** [4] - 3:2, 3:19, 3:22, 4:9
**ago** [3] - 5:2, 6:19, 40:6
**agree** [5] - 10:21, 17:13, 30:21, 38:11, 46:20
**agreement** [1] - 39:19
**ahead** [10] - 3:6, 3:10, 3:12, 3:18, 25:7, 34:7, 36:12, 38:8, 40:6, 40:12
**air** [3] - 26:5, 27:6, 34:10
**airing** [1] - 37:16
**allegations** [8] - 9:19, 15:10, 16:15, 20:12, 21:21, 28:2, 45:17, 46:25
**allege** [1] - 19:25
**allegedly** [4] - 7:24, 16:25, 19:23, 20:4
**alleging** [1] - 9:20
**allowed** [2] - 44:3, 45:22
**Amendment** [1] - 14:11
**America** [1] - 3:3
**AMERICA** [1] - 1:3
**amounts** [1] - 20:8
**analysis** [1] - 20:24

**ancillary** [1] - 16:11
**anyway** [2] - 24:24, 33:12
**apologize** [1] - 7:19
**apology** [1] - 15:5
**appear** [1] - 3:5
**appearance** [1] - 4:6
**APPEARANCES** [1] - 1:11
**Appearances** [1] - 2:1
**appearances** [2] - 3:7, 3:11
**appeared** [1] - 9:3
**appellate** [6] - 31:15, 31:16, 31:23, 32:2, 32:3, 32:10
**appreciate** [7] - 19:17, 33:10, 33:13, 34:14, 34:20, 35:6, 48:24
**appropriate** [6] - 12:7, 18:7, 23:14, 23:24, 24:9, 38:1
**appropriately** [1] - 9:1
**argue** [1] - 33:3
**arguing** [1] - 21:5
**argument** [5] - 8:17, 18:3, 21:8, 23:3, 39:3
**arguments** [2] - 10:20, 23:16
**arise** [1] - 34:23
**arisen** [1] - 16:21
**arose** [1] - 16:21
**aside** [4] - 10:15, 15:1, 21:20, 40:10
**aspect** [1] - 28:3
**assert** [2] - 9:8, 23:21
**asserted** [2] - 8:6, 8:8
**asserting** [3] - 8:3, 8:16, 45:21
**assertion** [1] - 13:22
**assertions** [2] - 8:21, 9:23
**assume** [2] - 40:13, 40:17, 44:2
**assuming** [1] - 39:24
**assumption** [2] - 44:3, 44:4
**Atlanta** [3] - 1:19, 2:4, 2:7
**attach** [1] - 9:21
**attached** [4] - 7:22, 11:15, 13:12, 24:7
**attaching** [1] - 13:11
**attempt** [2] - 10:23, 16:4
**attend** [2] - 21:10, 45:22
**attention** [1] - 47:8
**ATTORNEY** [1] - 2:11
**attorney** [5] - 21:25, 22:16, 31:15, 35:11, 43:3
**attorneys** [1] - 15:2
**attune** [1] - 35:3
**authorized** [4] - 9:6, 11:2, 27:10, 40:16
**authorizing** [1] - 40:20
**available** [4] - 37:8, 37:24, 38:8, 43:9
**Avenue** [2] - 1:16, 2:12

**avert** [1] - 23:21
**awaits** [2] - 10:22, 25:22
**aware** [6] - 4:18, 9:11, 30:9, 39:6, 40:8

## B

**bad** [1] - 28:25
**BAKER** [1] - 2:5
**ball** [1] - 26:4
**Bar** [4] - 6:3, 16:12, 20:5, 26:15
**based** [3] - 33:11, 47:1, 48:12
**BEACH** [1] - 1:2
**bearing** [9] - 8:11, 16:7, 21:7, 22:24, 23:10, 26:2, 26:3, 28:19, 30:1
**became** [2] - 16:10, 32:7
**become** [3] - 5:18, 6:22, 45:1
**bed** [1] - 47:19
**BEFORE** [1] - 1:9
**begin** [2] - 26:21, 43:4
**beginning** [2] - 18:6, 29:6
**BEHALF** [1] - 2:8
**behalf** [8] - 3:16, 3:23, 3:25, 4:10, 4:19, 6:10, 18:4, 48:9
**behavior** [3] - 8:12, 9:20, 22:23
**behind** [1] - 27:5
**belief** [2] - 19:18, 19:23
**bench** [2] - 19:5, 36:11
**beneficial** [1] - 10:21
**beside** [2] - 26:23, 36:11
**best** [7] - 19:13, 21:2, 26:14, 29:1, 34:4, 39:2, 48:12
**better** [4] - 10:6, 33:8, 35:22, 39:15
**between** [5] - 13:25, 27:2, 35:13, 41:21, 45:11
**bigger** [1] - 7:18
**biller** [1] - 15:14
**billing** [1] - 15:11
**bio** [2] - 12:10, 12:11
**bit** [2] - 4:13, 27:9
**BOER** [4] - 1:12, 3:13, 30:6, 40:14
**Boer** [6] - 3:8, 3:13, 29:22, 30:5, 39:25, 40:12
**bona** [1] - 48:1
**bother** [1] - 47:16
**Boulevard** [2] - 1:23, 49:13
**Brady** [1] - 38:7
**brand** [1] - 36:4
**breaking** [2] - 42:7, 43:23

**Brian** [1] - 3:23
**BRIAN** [1] - 2:5
**bridge** [1] - 38:12
**brief** [1] - 32:10
**briefly** [4] - 4:24, 9:14, 34:8, 36:16
**bring** [2] - 4:17, 31:15
**broad** [1] - 9:1
**brought** [3] - 25:23, 46:4, 47:8
**Broward** [2] - 1:23, 49:13
**build** [1] - 28:25
**bullets** [1] - 28:16
**BY** [1] - 1:20

# C

**cannot** [5] - 11:2, 18:14, 23:17, 26:4, 45:5
**canons** [6] - 8:12, 8:17, 9:24, 19:7, 23:22, 45:20
**capable** [1] - 30:14
**care** [6] - 24:23, 35:18, 41:17, 41:23, 47:12, 48:24
**case** [39] - 3:2, 4:6, 4:15, 4:16, 6:6, 6:15, 10:8, 14:18, 14:20, 18:18, 20:14, 21:24, 23:9, 23:11, 23:18, 28:22, 29:4, 30:8, 31:23, 32:13, 32:16, 32:19, 33:19, 39:21, 43:4, 43:9, 43:16, 44:21, 44:23, 45:3, 45:6, 45:9, 45:14, 46:20, 47:2, 47:25, 48:2, 48:3
**CASE** [1] - 1:2
**cases** [6] - 5:9, 18:21, 29:20, 40:17, 40:18, 41:1
**catching** [1] - 28:16
**caution** [4] - 11:11, 11:18, 24:3, 46:16
**caveat** [2] - 40:24, 41:5
**cease** [1] - 29:3
**certain** [2] - 22:2, 28:2
**certainly** [30] - 4:18, 5:7, 8:22, 10:4, 10:15, 11:1, 14:14, 16:7, 18:13, 18:14, 23:19, 24:6, 26:4, 26:7, 26:9, 27:1, 29:5, 32:9, 34:21, 35:1, 35:25, 36:6, 37:12, 37:15, 37:21, 38:10, 39:23, 41:2, 43:7, 45:15
**certify** [1] - 49:7
**cetera** [1] - 10:19
**chalk** [1] - 23:24
**chambers** [1] - 46:14
**chance** [4] - 5:7, 31:7, 33:2, 35:23
**change** [3] - 31:5, 35:2, 41:21
**changes** [1] - 48:21

**channels** [2] - 10:18, 23:12
**Chief** [2] - 10:17, 19:14
**chime** [2] - 29:23, 33:15
**choice** [1] - 11:5
**chooses** [1] - 34:13
**chose** [1] - 21:19
**Chris** [2] - 21:25, 22:15
**Christopher** [1] - 4:10
**circumstances** [2] - 31:6, 32:5
**citations** [1] - 45:20
**claim** [1] - 11:6
**clarification** [1] - 16:20
**clarify** [1] - 16:19
**clarity** [1] - 4:25
**clear** [5] - 12:14, 19:4, 22:18, 24:11, 27:6, 33:18, 35:20, 44:22, 45:7, 45:15, 47:15, 47:21, 47:25, 48:5
**cleared** [1] - 41:22
**clearly** [2] - 27:23, 39:17
**clerk** [2] - 17:1, 18:14
**client** [21] - 6:11, 6:12, 6:13, 10:25, 11:1, 13:2, 15:13, 15:16, 18:4, 18:23, 20:18, 20:21, 22:4, 25:14, 25:21, 25:22, 25:25, 30:25, 31:13, 34:11, 45:12
**close** [2] - 4:14, 38:5
**closed** [1] - 6:8
**co** [2] - 5:15, 45:12
**co-conspirator** [1] - 5:15
**co-counsels** [1] - 45:12
**combat** [1] - 43:2
**comfortable** [2] - 17:4, 21:19
**coming** [8] - 4:22, 21:19, 31:21, 31:24, 33:16, 34:19, 46:17, 48:22
**comments** [1] - 42:3
**Commission** [1] - 8:10
**committee** [10] - 10:7, 10:11, 10:16, 11:13, 19:14, 26:15, 27:8, 32:22, 40:9, 43:13
**committees** [2] - 18:7, 38:1
**communicated** [1] - 36:21
**communication** [4] - 8:7, 35:16, 42:14, 46:14
**communications** [2] - 6:1, 18:18
**complete** [1] - 26:24
**completely** [4] - 8:5, 23:23, 24:23, 46:21
**comprehend** [2] - 19:9, 19:12
**compute** [1] - 23:3
**concern** [12] - 5:11, 5:12, 7:18, 18:6, 24:8, 25:14, 36:18, 37:16, 37:19, 41:23,

42:23, 46:2
**concerned** [7] - 6:11, 10:25, 27:19, 28:19, 31:19, 42:14, 42:17
**concerning** [2] - 16:14, 28:1
**concerns** [6] - 5:24, 11:7, 30:2, 36:14, 45:4, 48:13
**concerted** [1] - 26:4
**conclude** [1] - 48:18
**conduct** [3] - 6:3, 47:7, 48:2
**conducted** [1] - 5:3
**CONFERENCE** [1] - 1:9
**conferred** [1] - 26:25
**confess** [2] - 29:9, 36:5
**confidential** [1] - 35:16
**confront** [1] - 8:23
**confused** [1] - 24:14
**connection** [1] - 34:3
**consent** [2] - 15:12, 15:17
**consider** [1] - 38:17
**considered** [1] - 6:8
**conspirator** [1] - 5:15
**constantly** [1] - 42:7
**constitute** [2] - 5:8, 5:23
**consulted** [1] - 34:2
**consulting** [1] - 10:22
**contact** [1] - 18:23
**contacting** [1] - 5:25
**contained** [1] - 37:14
**contains** [1] - 37:5
**content** [1] - 12:6
**contents** [1] - 5:6
**contest** [2] - 16:3, 43:14
**context** [3] - 34:17, 39:17, 40:10
**continue** [6] - 10:23, 27:20, 27:25, 28:20, 30:22, 36:22
**continued** [2] - 2:1
**continues** [1] - 38:4
**control** [1] - 28:3
**conversation** [2] - 13:16, 13:24
**conversation's** [1] - 29:2
**conversations** [7] - 5:16, 5:19, 13:17, 13:18, 16:9, 29:14, 37:6
**convicted** [1] - 27:23
**copies** [3] - 37:10, 37:23, 37:25
**copy** [2] - 39:11, 40:3
**correct** [9] - 22:22, 25:5, 33:11, 38:13, 38:16, 43:2, 43:17, 44:12, 44:13
**correcting** [1] - 7:9
**counsel** [29] - 3:5, 3:7, 4:2, 4:7, 5:14, 5:16, 6:1, 6:22, 6:23, 8:19, 8:23, 11:4, 14:2,

14:10, 14:22, 20:25, 21:11, 21:23, 21:25, 22:8, 31:2, 31:24, 36:18, 37:25, 39:15, 45:24, 46:11, 48:8
**Counsel** [1] - 36:22
**counsels** [1] - 45:12
**counsels'** [1] - 22:24
**counteract** [1] - 16:15
**couple** [3] - 4:23, 9:4, 40:6
**course** [4] - 5:24, 8:24, 10:2, 47:7
**court** [9] - 5:3, 12:24, 16:13, 18:7, 20:1, 20:7, 23:17, 23:21, 32:10
**COURT** [76] - 1:1, 3:2, 3:16, 3:21, 3:24, 4:1, 4:4, 4:12, 9:17, 10:3, 12:10, 12:14, 12:17, 13:10, 14:5, 14:9, 15:23, 16:3, 17:9, 17:16, 17:21, 17:24, 19:11, 19:24, 20:11, 20:16, 20:19, 21:14, 22:7, 22:18, 22:22, 24:5, 24:17, 24:21, 25:1, 25:20, 26:14, 26:17, 26:20, 28:5, 30:12, 31:12, 32:1, 32:21, 33:1, 33:14, 33:24, 34:6, 34:20, 37:12, 38:19, 38:24, 39:2, 39:8, 39:19, 40:23, 41:17, 41:25, 42:12, 42:20, 42:22, 43:1, 43:11, 44:1, 44:7, 44:19, 45:10, 46:6, 46:9, 46:16, 46:19, 47:5, 47:24, 48:5, 48:8, 48:17
**Court** [36] - 1:22, 1:23, 3:1, 4:16, 5:1, 6:4, 6:16, 7:11, 8:22, 9:20, 11:16, 13:8, 13:15, 14:19, 15:20, 18:21, 21:12, 34:9, 34:14, 34:16, 35:7, 36:17, 37:3, 38:17, 39:16, 40:20, 42:6, 43:5, 43:20, 45:18, 46:4, 47:11, 47:17, 49:3, 49:12, 49:12
**Court's** [5] - 3:20, 20:24, 36:24, 37:7, 48:19
**courthouse** [1] - 17:4
**covered** [1] - 7:16
**created** [1] - 30:25
**CRIMINAL** [1] - 1:15
**criminal** [5] - 4:15, 23:9, 31:16, 44:20, 48:10
**criminally** [1] - 42:4
**cross** [1] - 38:11
**CRR** [2] - 1:21, 49:11
**Cuyler** [1] - 3:14
**CUYLER** [1] - 1:13

# D

**D.C** [1] - 1:16
**dangerous** [1] - 9:17

dare [1] - 27:15
DATE [1] - 49:11
dates [1] - 34:24
days [3] - 4:23, 11:10, 21:18
DE [4] - 1:12, 3:13, 30:6, 40:14
de [6] - 3:8, 3:13, 29:22, 30:5, 39:25, 40:12
deal [6] - 8:12, 10:11, 17:15, 33:12, 43:11, 44:16
dealing [3] - 14:16, 20:23, 47:18
debatable [1] - 38:4
December [2] - 1:4, 49:11
decide [1] - 29:19
decided [1] - 29:12
decision [3] - 16:8, 18:19, 21:18
decisions [1] - 23:13
defamation [1] - 44:17
defamed [1] - 13:2
defend [2] - 10:24, 12:22
DEFENDANT [3] - 1:17, 2:2, 2:11
Defendant [1] - 1:7
defense [32] - 3:16, 3:17, 3:20, 4:20, 5:4, 5:14, 6:5, 8:19, 8:25, 9:7, 9:10, 10:21, 10:23, 14:1, 14:20, 18:13, 20:25, 22:9, 22:10, 22:24, 26:4, 26:22, 26:23, 27:3, 27:11, 27:16, 27:24, 29:12, 32:5, 37:24, 39:11, 39:15
definitely [1] - 26:8
delays [1] - 31:6
denied [3] - 7:8, 7:14, 25:3
deny [3] - 41:10, 41:12, 41:13
DEPARTMENT [1] - 1:15
described [1] - 7:21
destroyed [1] - 37:10
details [2] - 34:22, 39:8
determine [2] - 23:14, 44:4
difference [1] - 9:7
different [5] - 6:24, 31:5, 34:11, 39:17, 45:9
difficult [1] - 8:5
digest [1] - 30:4
digested [1] - 31:8
digesting [1] - 6:16
directly [3] - 16:7, 44:24, 47:13
disbelief [2] - 23:23, 27:9
disciplinary [11] - 10:16, 11:13, 19:13, 23:7, 23:11, 24:10, 32:22, 38:1, 40:9, 42:6, 43:12
discipline [1] - 6:2
disclose [3] - 5:9, 40:16, 40:20
disclosure [4] - 30:2, 37:14, 40:17, 40:25
discussing [1] - 12:13
discussion [2] - 6:14, 13:22
disparaged [1] - 13:3
disputed [1] - 9:13
disputing [1] - 6:25
dissemination [3] - 37:2, 40:19, 41:3
distinct [1] - 39:21
distinctly [1] - 13:21
distraction [1] - 28:15
DISTRICT [3] - 1:1, 1:1, 1:10
district [5] - 19:25, 20:6, 23:17, 23:21, 38:12
District [1] - 1:23, 49:12
DIVISION [2] - 1:2, 1:15
docket [10] - 5:17, 7:10, 23:8, 24:7, 24:16, 24:24, 26:5, 33:4, 35:13, 48:22
documents [3] - 5:5, 26:11, 29:20
domain [1] - 40:7
Don [1] - 3:25
DONALD [1] - 2:2
done [15] - 6:18, 14:17, 16:6, 28:6, 29:25, 30:17, 32:16, 32:24, 33:18, 35:19, 40:2, 41:19, 43:3, 44:10, 45:2
down [3] - 28:9, 30:4, 38:14
Drive [1] - 2:3
due [2] - 18:8, 21:7

engaged [1] - 13:24
engaging [2] - 6:1, 30:25
entertaining [1] - 10:5
entitled [1] - 49:9
entity [1] - 8:10
episode [1] - 6:17
essentially [6] - 5:18, 6:8, 21:7, 31:1, 41:11, 45:20
et [1] - 10:18
evaluation [1] - 39:25
evening [1] - 7:19
evidence [6] - 6:5, 6:7, 19:1, 22:6, 43:21, 44:8
evidentiary [1] - 20:23
ex [16] - 5:3, 5:12, 7:1, 8:19, 8:25, 9:1, 12:1, 12:5, 13:6, 14:20, 18:19, 21:23, 24:13, 26:6, 36:3, 36:25
ex-parte [2] - 5:3, 5:12
exactly [8] - 4:4, 7:6, 10:9, 10:12, 11:21, 20:10, 24:4, 27:9
except [1] - 27:15
exclamation [1] - 13:12
exhibits [1] - 7:22
expect [4] - 35:22, 44:22, 47:12, 48:15
explain [3] - 4:24, 10:12, 19:13
explanation [1] - 16:4
extending [1] - 41:19
extension [1] - 34:25
extent [1] - 40:24
extremely [2] - 9:17, 38:4
eye [1] - 34:24

## E

earth [1] - 14:21
East [2] - 1:23, 49:13
easy [1] - 29:10
echo [1] - 34:2
EDWARD [1] - 2:8
effect [2] - 14:9, 45:1
effort [2] - 26:5, 27:1
either [7] - 9:6, 15:22, 17:25, 22:10, 33:25, 38:5, 39:13, 42:20, 46:23
electronic [1] - 24:14
email [3] - 16:24, 16:25, 17:24
emails [6] - 13:10, 17:6, 19:6, 22:3, 35:11, 35:13
emergency [2] - 18:19, 20:25
Emily [1] - 3:14
EMILY [1] - 1:13
end [2] - 6:10, 24:15
endorse [1] - 34:4
engage [1] - 23:7

face [2] - 15:20, 17:18
facing [1] - 30:3
fact [5] - 6:12, 16:22, 27:15, 43:9, 44:2
fair [1] - 32:14
false [4] - 12:3, 13:3, 25:15, 44:15
far [7] - 6:9, 21:4, 27:21, 28:18, 32:6, 35:8, 42:14
fashion [1] - 41:7
February [1] - 28:13
federal [3] - 8:11, 19:25, 36:11
feeding [1] - 20:16
fellow [2] - 11:20, 39:15
felt [4] - 17:5, 30:13, 37:13, 38:7
few [1] - 28:25
fides [1] - 48:1
Fifth [1] - 14:11
figure [7] - 20:25, 22:25, 28:9, 30:23, 31:7, 31:8,

34:12
figured [1] - 26:25
file [8] - 11:23, 15:24, 16:3, 24:12, 33:10, 44:18, 45:8, 47:18
filed [18] - 5:2, 7:3, 7:14, 7:18, 8:16, 9:9, 9:18, 9:22, 10:1, 17:9, 23:8, 24:8, 25:2, 26:3, 35:13, 35:20, 47:2, 48:2
files [2] - 12:6, 12:12
filing [17] - 7:20, 10:6, 16:13, 19:5, 20:7, 21:5, 23:17, 23:19, 24:5, 24:18, 25:10, 36:9, 43:16, 44:23, 48:6, 48:8, 48:9
filings [39] - 4:22, 8:14, 9:18, 10:4, 10:5, 10:25, 11:2, 11:14, 16:6, 16:7, 16:16, 19:17, 19:20, 20:2, 20:4, 25:21, 26:23, 27:4, 27:13, 27:17, 28:7, 28:16, 28:23, 28:25, 29:3, 29:4, 30:11, 31:18, 31:19, 36:12, 42:13, 42:15, 44:11, 44:21, 45:5, 46:25, 47:13, 48:3, 48:11
findings [2] - 18:2, 19:6
fine [3] - 25:13, 31:19, 48:11
finish [1] - 23:13
finished [1] - 32:16
firm [5] - 12:6, 12:8, 12:10, 12:11, 22:2
first [12] - 6:25, 7:7, 7:11, 7:13, 11:22, 14:5, 27:14, 27:22, 36:3, 36:17, 46:2, 47:6
flabbergasted [1] - 46:21
flack [1] - 28:23
Floor [1] - 1:16
FLORIDA [1] - 1:1
Florida [11] - 1:3, 1:24, 2:10, 2:12, 5:23, 6:3, 39:4, 39:7, 42:4, 42:8, 49:13
focus [6] - 28:10, 28:14, 31:16, 32:17, 39:20
Foley [1] - 4:10
FOLEY [1] - 2:9
following [1] - 3:4
footing [1] - 19:9
FOR [4] - 1:12, 1:17, 2:2, 2:11
foregoing [1] - 49:7
foremost [1] - 11:22
forfeiture [2] - 32:15, 35:5
forget [1] - 38:3
form [1] - 6:2
format [1] - 13:23
forms [1] - 6:24
Fort [3] - 1:24, 2:12, 49:13

**forum** [2] - 16:1, 24:9
**forward** [6] - 15:25, 30:24, 33:19, 35:21, 36:7, 46:16
**frame** [1] - 31:20
**frankly** [5] - 7:21, 9:22, 37:22, 41:11, 47:24
**FRAUD** [1] - 1:15
**front** [8] - 9:4, 10:8, 20:4, 24:11, 26:9, 29:22, 33:25, 39:3
**frustrated** [1] - 28:8
**full** [5] - 10:12, 16:5, 18:8, 19:8, 20:22
**fully** [2] - 29:8, 34:24
**future** [7] - 5:9, 29:16, 29:20, 29:21, 33:13, 46:25, 47:12

## G

**GARLAND** [1] - 2:3
**genesis** [1] - 39:5
**Georgia** [3] - 1:19, 2:4, 2:7
**given** [7] - 6:25, 12:14, 19:9, 19:11, 30:3, 41:14, 45:13
**glad** [1] - 4:18
**govern** [1] - 18:22
**governing** [1] - 23:22
**government** [22] - 3:8, 3:10, 3:15, 4:18, 5:7, 5:8, 6:7, 8:24, 18:12, 22:9, 29:7, 29:15, 29:19, 29:23, 37:8, 37:15, 37:20, 38:2, 39:24, 40:16, 46:11
**GOVERNMENT** [1] - 1:12
**grant** [2] - 28:11, 41:13
**granted** [1] - 25:8
**granting** [1] - 34:25
**grievance** [3] - 10:7, 10:10, 38:1
**grievances** [1] - 26:5
**ground** [1] - 9:18
**guess** [7] - 9:12, 13:8, 13:13, 15:23, 17:16, 20:13, 25:20
**Gurskis** [2] - 3:8, 3:14
**GURSKIS** [1] - 1:13
**guys** [6] - 30:12, 34:20, 39:13, 40:2, 41:6, 48:23

## H

**habit** [1] - 7:8
**half** [3] - 20:12, 21:24, 27:13
**hand** [1] - 17:25
**handle** [1] - 35:10
**hands** [1] - 10:10
**happy** [3] - 15:19, 16:19, 27:23

**harassing** [1] - 7:24
**hard** [2] - 19:9, 19:12
**head** [1] - 27:3
**healthcare** [1] - 4:2
**HEALTHCARE** [1] - 2:11
**hear** [6] - 10:1, 18:11, 18:13, 33:20, 34:17, 47:3
**heard** [4] - 5:21, 9:21, 12:21, 16:1, 23:10, 30:20, 33:12, 36:3, 36:15, 42:1, 46:2, 46:23, 47:4, 48:17
**hearing** [21] - 5:12, 7:2, 7:6, 7:12, 8:15, 8:23, 9:3, 12:2, 14:15, 15:2, 19:22, 21:23, 23:20, 26:6, 31:21, 32:14, 36:3, 36:25, 37:4, 42:7, 42:16
**hearings** [2] - 5:3, 12:6
**hearsay** [1] - 20:8
**heels** [1] - 33:21
**held** [1] - 29:24
**hell** [1] - 27:24
**helm** [1] - 41:21
**helping** [3] - 25:21, 28:7, 28:8
**hereby** [1] - 49:7
**hmm** [1] - 17:20
**hoc** [3] - 10:10, 18:7, 27:8
**honestly** [1] - 23:3
**Honor** [14] - 3:13, 3:22, 19:20, 30:6, 33:22, 34:1, 34:8, 36:16, 36:20, 36:23, 38:16, 38:17, 40:15, 41:24
**Honorable** [1] - 1:22
**HONORABLE** [1] - 1:9
**hope** [2] - 7:16, 29:23
**hopefully** [2] - 4:25, 41:22
**horn** [1] - 41:8
**host** [1] - 9:24
**HOSTETLER** [1] - 2:5
**hours** [4] - 4:14, 31:10, 35:10, 40:6

## I

**iceberg** [1] - 34:15
**idea** [3] - 15:9, 17:21, 34:18
**II** [2] - 1:9, 1:22
**illegal** [2] - 25:16, 38:22
**illegally** [2] - 17:2, 37:5
**ILONA** [2] - 1:21, 49:11
**images** [3] - 7:22, 11:15, 24:21
**imagine** [7] - 9:5, 11:2, 17:14, 27:10, 33:24, 39:11, 39:12
**immediately** [2] - 4:17, 29:24
**impact** [9] - 6:15, 14:15,

19:1, 25:25, 28:20, 32:19, 33:4, 33:19, 43:7
**impacted** [2] - 6:9, 23:5
**impacting** [2] - 22:10, 33:9
**impeachment** [3] - 21:2, 32:6, 32:7
**impertinent** [2] - 8:14, 24:6
**important** [4] - 5:8, 25:20, 37:23, 39:10
**importantly** [1] - 4:20, 36:23
**improper** [2] - 22:13, 45:21
**inappropriate** [4] - 7:21, 8:14, 17:5, 47:18
**inappropriately** [1] - 36:7
**inbox** [1] - 35:9
**inclined** [1] - 37:7
**include** [1] - 23:2
**included** [1] - 46:11
**includes** [1] - 46:13
**including** [3] - 9:20, 23:22, 25:2
**incorrect** [1] - 46:20
**incumbent** [3] - 4:16, 5:9, 29:17
**indeed** [3] - 23:7, 24:9, 43:12
**independently** [1] - 32:24
**indicate** [1] - 12:18
**indicated** [1] - 5:13
**indicating** [1] - 7:4
**individual** [1] - 17:5
**individuals** [1] - 27:16
**inflammatory** [1] - 36:5
**information** [12] - 3:9, 11:17, 19:18, 19:23, 20:17, 21:6, 26:12, 30:10, 33:16, 40:20, 46:10, 46:17
**informed** [1] - 34:24
**initiated** [1] - 43:12
**inquire** [1] - 38:21
**insinuates** [1] - 21:8
**insinuating** [1] - 28:17
**insinuation** [1] - 36:6
**instructions** [1] - 3:5
**integrity** [1] - 36:17
**intent** [1] - 7:5
**intentional** [1] - 19:21
**intentionally** [1] - 19:18
**interaction** [1] - 13:7
**interest** [5] - 29:1, 34:5, 39:17, 39:18, 48:12
**internal** [1] - 35:11
**internally** [1] - 45:11
**interviews** [1] - 18:9
**intimidating** [1] - 46:1
**introduce** [1] - 3:20
**investigate** [3] - 10:7, 32:22, 35:2

**investigated** [1] - 18:10
**investigation** [8] - 14:17, 15:25, 16:12, 18:8, 26:10, 27:7, 30:22, 44:10
**investigative** [1] - 26:14
**invite** [1] - 14:19
**invited** [2] - 22:1, 22:9
**invoke** [1] - 14:11
**involve** [1] - 5:10
**involved** [1] - 36:6
**involvement** [1] - 41:19
**involving** [1] - 29:20
**issue** [23] - 16:10, 16:21, 18:25, 23:11, 25:16, 31:23, 32:3, 32:7, 32:22, 33:20, 36:18, 37:21, 38:14, 38:21, 40:12, 40:14, 43:6, 45:8, 45:10, 45:11, 45:25, 47:19, 47:25
**issues** [5] - 28:17, 34:23, 36:1, 41:18, 47:22
**issuing** [1] - 18:14
**it'll** [1] - 10:17
**itself** [2] - 6:18, 16:9

## J

**jail** [1] - 11:25
**JAMIE** [1] - 1:12
**Jamie** [1] - 3:13
**Jason** [1] - 4:9
**JASON** [1] - 2:8
**JOHN** [1] - 1:14
**joint** [1] - 28:11
**Jon** [1] - 3:14
**Judge** [4] - 10:17, 19:14, 19:16, 31:11
**JUDGE** [1] - 1:10
**judge** [4] - 8:3, 8:11, 20:1, 38:21
**Judicial** [1] - 8:9
**judicial** [3] - 8:12, 23:23, 41:18
**jurist** [1] - 36:10
**JUSTICE** [1] - 1:15

## K

**keep** [8] - 5:5, 16:13, 34:21, 34:23, 34:24, 37:7, 48:22
**key** [1] - 41:4
**knowing** [3] - 19:7, 19:8, 23:20
**knowledge** [8] - 5:22, 6:13, 11:17, 12:7, 15:4, 15:22, 42:8, 45:17
**known** [1] - 10:14
**knows** [2] - 24:18, 29:10

## L

**lab** [1] - 15:18
**lack** [1] - 39:15
**LARDNER** [1] - 2:9
**Lardner** [1] - 4:10
**large** [2] - 6:7, 32:3
**last** [11] - 4:14, 4:15, 4:22, 8:13, 9:10, 11:10, 17:10, 31:10, 35:9, 35:20, 36:10
**Lauderdale** [3] - 1:24, 2:12, 49:13
**law** [14] - 5:23, 6:13, 12:6, 12:10, 12:11, 17:1, 18:14, 18:18, 19:11, 37:1, 37:3, 37:11, 39:5, 44:2
**LAW** [2] - 1:18, 2:11
**laws** [2] - 42:8, 43:24
**lawsuits** [1] - 44:20
**lawyer** [1] - 36:8
**lawyers** [10] - 4:20, 7:19, 9:23, 11:20, 18:18, 20:2, 20:14, 28:22, 35:13, 46:20
**lead** [3] - 3:9, 27:12, 45:1
**leadership** [1] - 35:2
**leading** [1] - 27:1
**leads** [1] - 15:25
**least** [7] - 5:13, 9:5, 9:18, 13:23, 15:6, 28:18, 37:8
**led** [1] - 7:25
**left** [3] - 6:14, 26:14, 45:2
**legally** [2] - 37:6, 45:22
**license** [1] - 19:11
**light** [3] - 4:21, 27:21, 28:2
**lightly** [2] - 11:19, 28:24
**limit** [1] - 41:3
**limited** [3] - 32:5, 41:7, 44:9
**listen** [2] - 20:16, 45:10
**litany** [3] - 8:2, 8:11, 13:1
**literally** [1] - 22:6
**LLP** [2] - 2:5, 2:9
**LOEB** [1] - 2:3
**logic** [1] - 36:24
**look** [9] - 6:20, 7:2, 15:19, 26:15, 27:22, 30:7, 35:15, 40:9, 43:19
**looked** [2] - 17:7, 24:16
**looking** [1] - 17:18
**loop** [1] - 34:21
**lose** [1] - 29:1
**Louisiana** [2] - 15:12, 15:17
**Lupowitz** [1] - 49:11
**LUPOWITZ** [2] - 1:21, 49:11

## M

**ma'am** [1] - 6:22
**main** [3] - 5:11, 39:5, 41:23
**major** [1] - 32:8

**malign** [1] - 11:16
**manifested** [1] - 16:9
**Maple** [1] - 2:3
**March** [2] - 10:22, 35:5
**massive** [2] - 28:15, 37:19
**material** [9] - 5:8, 5:19, 9:2, 9:12, 17:11, 19:1, 24:7, 38:3, 38:7
**materials** [1] - 9:21
**matter** [5] - 6:8, 14:13, 22:7, 34:16, 49:9
**matters** [3] - 16:17, 28:2, 30:9
**mean** [11] - 24:7, 29:4, 30:12, 33:6, 35:8, 35:12, 36:8, 37:20, 39:17, 39:20, 44:19
**means** [1] - 4:5
**medium** [2] - 45:9, 47:6
**meeting** [3] - 8:20, 14:21, 23:4
**MEHTA** [6] - 2:8, 4:9, 36:16, 38:16, 38:20, 41:24
**Mehta** [23] - 4:8, 4:9, 4:19, 5:14, 5:21, 6:10, 7:1, 12:4, 13:6, 15:22, 18:3, 18:21, 22:11, 29:10, 35:23, 38:22, 39:23, 40:5, 41:8, 41:23, 42:22, 43:21, 45:16
**Mehta's** [1] - 39:3
**member** [1] - 20:5
**memorandum** [1] - 44:25
**memory** [1] - 13:17
**mention** [2] - 5:24, 28:17
**merit** [2] - 9:19, 15:5
**messages** [2] - 7:23, 22:3
**met** [1] - 47:6
**Miami** [1] - 1:3
**Michaels** [1] - 3:14
**MICHAELS** [1] - 1:14
**microphone** [1] - 11:9
**middle** [1] - 38:12
**might** [4] - 20:6, 29:20, 35:24, 39:25
**Minal** [2] - 3:3, 48:6
**MINAL** [2] - 1:6, 2:11
**mind** [1] - 10:5
**mine** [1] - 18:15
**minimum** [1] - 9:22
**missing** [2] - 18:12, 24:17
**mmm-hmm** [1] - 17:20
**moment** [4] - 4:5, 23:25
**moments** [3] - 5:2, 6:19, 12:24
**months** [2] - 31:21, 48:22
**morning** [1] - 12:23
**most** [8] - 3:17, 4:20, 10:6, 19:16, 21:2, 36:23, 37:23, 40:18

**mostly** [1] - 39:3
**motion** [11] - 7:3, 7:15, 7:18, 7:25, 8:15, 21:17, 28:11, 30:17, 41:10, 44:25, 45:18
**motions** [14] - 9:4, 9:8, 20:11, 28:12, 34:3, 35:1, 35:18, 41:20, 43:8, 45:2, 46:12, 47:11, 47:23, 48:9
**move** [1] - 36:13
**MR** [13] - 3:19, 3:22, 3:25, 4:9, 27:15, 33:22, 34:1, 34:8, 36:16, 38:16, 38:20, 39:14, 41:24
**MS** [62] - 3:13, 4:2, 9:16, 10:2, 11:22, 12:12, 12:16, 12:21, 14:4, 14:8, 15:1, 16:2, 16:19, 17:13, 17:20, 17:23, 19:10, 19:15, 20:10, 20:15, 20:18, 21:13, 21:16, 22:14, 22:21, 24:4, 24:12, 24:20, 24:25, 25:13, 26:13, 26:16, 26:19, 30:6, 31:11, 31:13, 32:20, 32:25, 33:7, 38:21, 39:1, 39:6, 40:14, 41:16, 42:2, 42:19, 42:21, 42:25, 43:10, 43:25, 44:6, 44:15, 45:8, 46:5, 46:8, 46:15, 46:18, 47:3, 47:22, 48:4, 48:6, 48:16

## N

**N.E** [1] - 2:12
**name** [1] - 27:13
**narrative** [1] - 36:2
**NATALIE** [1] - 2:8
**Natalie** [1] - 4:10
**NE** [1] - 2:3
**necessarily** [1] - 33:16
**necessary** [1] - 40:21
**need** [24] - 6:6, 7:15, 10:1, 16:19, 19:4, 20:2, 25:1, 29:13, 30:13, 30:19, 30:23, 33:10, 34:14, 34:21, 34:22, 35:12, 37:15, 39:20, 40:1, 40:4, 40:10, 44:11, 48:17, 48:22
**needed** [2] - 3:9, 4:20
**needs** [7] - 28:9, 28:14, 29:15, 35:12, 35:16, 41:25, 48:19
**NEF** [1] - 35:9
**never** [15] - 9:20, 11:23, 12:8, 12:21, 18:11, 19:25, 21:3, 32:6, 32:7, 36:17, 42:8, 43:23, 44:1, 46:1, 46:14
**New** [1] - 1:16
**new** [3] - 27:4, 31:24, 36:4
**night** [4] - 7:20, 8:13,

11:15, 17:10
**NO** [1] - 1:2
**nobody** [1] - 25:18
**nonconsensual** [1] - 39:4
**none** [10] - 15:1, 16:10, 18:24, 23:8, 24:7, 25:3, 25:21, 25:25, 28:20, 47:7
**nonlawyer** [1] - 14:20
**nonstarter** [1] - 21:3
**notes** [1] - 35:4
**nothing** [13] - 11:7, 14:14, 16:8, 23:5, 23:18, 24:6, 25:5, 26:17, 33:22, 33:25, 44:12, 46:11, 48:7
**notice** [2] - 34:9, 48:25
**number** [11] - 3:2, 3:4, 4:17, 6:24, 8:16, 13:16, 17:18, 25:4, 25:6, 28:6, 41:10
**numerous** [2] - 5:16, 5:24
**NW** [1] - 1:18

## O

**o'clock** [1] - 11:15
**objection** [2] - 39:12, 40:21
**obligations** [5] - 37:14, 40:17, 40:21, 40:25, 41:2
**obtained** [4] - 15:3, 15:7, 15:21, 37:11
**obviously** [8] - 24:1, 30:13, 31:5, 31:18, 31:20, 37:3, 40:8, 40:24
**occur** [1] - 47:4
**occurred** [3] - 30:10, 39:7, 42:8
**OF** [6] - 1:1, 1:3, 1:9, 1:15, 1:18, 2:8
**offended** [2] - 25:18, 25:19
**offering** [1] - 21:9
**OFFICE** [1] - 1:18
**officer** [1] - 20:7
**Official** [2] - 1:22, 49:12
**okaying** [1] - 11:23
**ON** [1] - 2:8
**once** [3] - 6:18, 7:5, 29:24
**one** [24] - 4:17, 6:25, 8:15, 15:12, 15:17, 17:11, 22:19, 24:14, 25:4, 27:22, 27:24, 28:6, 31:3, 31:4, 31:5, 35:12, 38:21, 39:17, 41:10, 41:13, 47:15
**ones** [1] - 45:6
**ongoing** [2] - 16:11, 17:15
**open** [1] - 23:9
**opened** [2] - 7:20, 19:20
**opening** [3] - 12:4, 13:4, 17:8
**opinion** [1] - 9:7
**opportunity** [9] - 7:2, 8:18, 10:12, 23:15, 29:12, 33:11,

41:14, 43:14, 45:13
**order** [8] - 12:23, 18:14, 25:6, 25:9, 37:17, 37:20, 40:3, 44:8
**Order** [1] - 3:1
**ordered** [1] - 37:10
**orders** [4] - 35:19, 37:18, 40:18, 41:2
**ore** [1] - 30:18
**otherwise** [1] - 40:22
**ourselves** [1] - 4:25
**overseeing** [1] - 32:23
**own** [2] - 14:10, 35:3

**P**

**P.A** [1] - 2:11
**p.m** [3] - 1:5, 49:3
**Pages** [1] - 1:7
**PALM** [1] - 1:2
**paperless** [1] - 35:19
**part** [8] - 6:7, 8:25, 20:24, 25:8, 32:3, 32:8, 41:13
**parte** [16] - 5:3, 5:12, 7:1, 8:19, 8:25, 9:1, 12:1, 12:5, 13:6, 14:20, 18:19, 21:23, 24:13, 26:6, 36:3, 36:25
**partial** [1] - 21:17
**particular** [4] - 13:7, 17:4, 25:17, 32:7
**parties** [4] - 3:4, 18:16, 37:17, 41:3
**party** [10] - 5:14, 5:25, 15:12, 15:17, 22:11, 22:14, 22:15, 22:16, 22:19, 43:3
**pass** [3] - 14:13, 21:2, 29:13
**PATEL** [2] - 1:6, 2:11
**Patel** [28] - 3:3, 3:23, 3:25, 4:3, 5:15, 6:18, 6:24, 9:8, 10:21, 11:2, 11:7, 11:22, 14:15, 16:8, 16:17, 23:5, 23:18, 26:3, 27:20, 27:23, 28:1, 28:8, 33:5, 39:17, 39:20, 43:7, 44:24, 47:14
**Patel's** [5] - 6:6, 28:19, 30:24, 34:4, 48:12
**PC** [2] - 1:18, 2:3
**Peachtree** [1] - 1:18
**Peactree** [1] - 2:6
**pending** [5] - 23:9, 35:18, 41:17, 43:6, 47:11
**people** [2] - 17:1, 17:18
**per** [1] - 12:4
**perhaps** [2] - 4:19, 30:22
**period** [1] - 28:4
**periphery** [1] - 28:18
**permitted** [2] - 12:5, 32:4
**permitting** [1] - 36:7
**perpetuated** [1] - 25:15

**person** [5] - 15:11, 22:4, 22:12, 24:13, 45:1
**personal** [3] - 12:7, 15:3, 15:22
**perspective** [1] - 28:24
**pertaining** [1] - 45:18
**perturbing** [1] - 36:5
**phase** [1] - 32:14
**phone** [1] - 17:7
**PHYSICIANS** [1] - 2:11
**picture** [2] - 16:6, 20:22
**piece** [1] - 44:8
**place** [8] - 6:11, 18:4, 22:12, 27:18, 29:3, 32:11, 48:3, 48:14
**play** [2] - 14:12, 29:16
**played** [1] - 13:20
**point** [19] - 10:12, 15:23, 18:8, 19:12, 20:24, 22:13, 23:1, 26:18, 30:15, 30:21, 32:21, 34:10, 34:12, 36:15, 38:9, 41:8, 41:19, 42:12, 44:13
**pointed** [1] - 45:16
**pointer** [1] - 19:25
**points** [1] - 13:12
**pornographic** [2] - 7:22, 11:15
**position** [5] - 4:25, 14:19, 19:13, 39:9, 43:16
**postconviction** [5] - 6:23, 16:17, 23:19, 28:12, 31:2
**postjudgment** [3] - 6:23, 31:2, 45:2
**posttrial** [2] - 35:1, 41:20
**potential** [3] - 5:15, 5:18, 38:6
**potentially** [2] - 6:12, 34:18
**practice** [3] - 19:24, 26:8
**predicted** [1] - 27:11
**prefer** [1] - 30:21
**premature** [1] - 31:8
**prepare** [1] - 35:3
**preparing** [1] - 35:19
**prepping** [1] - 28:14
**prerogative** [1] - 37:3
**present** [2] - 11:18, 23:4
**presented** [4] - 5:1, 13:8, 14:24, 15:6
**presenting** [1] - 46:10
**preserve** [3] - 31:23, 32:12, 33:3
**preserving** [1] - 31:19
**presiding** [1] - 11:6
**presumably** [1] - 13:19
**pretrial** [1] - 6:1
**pretty** [1] - 30:18
**prevent** [1] - 40:19
**primarily** [1] - 32:6

**primary** [1] - 27:3
**problem** [6] - 6:21, 35:10, 37:16, 37:22, 39:13, 39:23
**problematic** [1] - 9:5
**procedural** [1] - 4:24
**procedure** [3] - 22:8, 32:2, 48:10
**proceeding** [8] - 42:7, 42:11, 42:13, 44:20, 45:12, 45:21, 45:23, 47:20
**proceedings** [10] - 7:10, 16:12, 23:8, 24:1, 24:10, 35:5, 36:7, 43:6, 43:12, 49:8
**process** [3] - 18:8, 21:8, 31:17
**procure** [2] - 21:6, 39:24
**procured** [1] - 22:3
**professional** [5] - 6:2, 18:23, 45:4, 48:1, 48:13
**prohibited** [2] - 41:1, 41:6
**promptly** [1] - 40:2
**proof** [1] - 13:8
**proper** [7] - 6:17, 10:18, 23:2, 23:12, 29:25, 30:1, 44:10
**prosecutions** [2] - 29:17, 29:21
**prosecutors** [2] - 30:8
**protect** [2] - 36:8, 41:3, 42:9
**protected** [2] - 8:4, 42:10
**protection** [2] - 8:4, 21:9
**protective** [2] - 40:18, 41:2
**provide** [1] - 10:18
**provided** [4] - 13:13, 13:23, 18:21, 48:10
**prudish** [1] - 24:22
**PSI** [1] - 35:4
**public** [8] - 7:6, 17:11, 24:7, 29:18, 37:6, 37:9, 40:7, 40:11
**purely** [2] - 22:10, 23:11
**purported** [2] - 10:13, 46:3
**purportedly** [1] - 12:19
**purporting** [1] - 7:22
**pursuant** [2] - 3:4, 5:21
**pursuing** [1] - 44:19
**put** [7] - 9:25, 10:10, 27:5, 40:6, 40:23, 45:18, 47:19
**putting** [2] - 7:17, 20:3

**Q**

**Qualifications** [1] - 8:10
**qualifier** [1] - 20:5
**quite** [6] - 7:21, 9:22, 23:3, 37:22, 41:10, 47:24
**quizzical** [1] - 17:18
**quote** [1] - 42:24

**R**

**Rafferty** [8] - 3:23, 4:21, 7:1, 25:24, 27:2, 30:19, 33:24, 43:22
**RAFFERTY** [3] - 2:5, 3:22, 34:1
**raise** [1] - 24:9
**raised** [4] - 8:13, 39:14, 47:8, 47:20
**reach** [1] - 48:23
**reached** [1] - 36:20
**reaching** [1] - 34:11
**read** [7] - 5:7, 11:18, 14:5, 15:6, 18:1, 20:11, 29:7
**reading** [1] - 23:13
**ready** [2] - 6:19, 7:5
**real** [1] - 6:14
**reality** [2] - 19:16, 47:1
**really** [16] - 5:11, 9:1, 9:2, 17:10, 20:1, 20:3, 26:21, 30:17, 33:4, 33:9, 35:11, 41:15, 43:4, 44:3, 44:11, 44:12
**reason** [3] - 5:5, 5:20, 19:21
**reasoning** [1] - 36:24
**reasons** [1] - 36:25
**rebut** [1] - 8:20
**received** [1] - 35:9
**recess** [1] - 49:1
**recessed** [1] - 49:3
**recommendation** [1] - 19:24
**record** [25] - 3:5, 3:7, 7:9, 8:19, 8:24, 14:3, 14:22, 15:12, 15:17, 20:9, 21:11, 21:23, 21:25, 22:8, 25:5, 25:24, 29:18, 31:20, 33:11, 36:1, 37:6, 41:5, 45:24, 48:9
**recorded** [12] - 5:20, 5:22, 13:15, 13:19, 13:23, 15:3, 15:11, 15:14, 17:2, 37:5, 42:4, 42:14
**recording** [12] - 6:13, 10:13, 12:19, 12:21, 13:6, 13:24, 15:13, 18:22, 22:5, 22:20, 25:16, 39:4
**recordings** [11] - 12:3, 12:15, 18:4, 20:23, 22:2, 26:11, 32:18, 37:1, 38:22, 39:6, 39:22
**redact** [1] - 17:6
**redacted** [4] - 17:14, 24:19, 24:20, 24:22
**refer** [1] - 44:9
**reference** [4] - 7:15, 15:10, 23:22, 27:17
**references** [2] - 8:9, 9:23
**referral** [2] - 10:16, 23:14
**reflect** [1] - 5:13

**regard** [3] - 32:3, 40:25, 44:12
**regarding** [9] - 11:2, 16:17, 24:2, 26:6, 39:21, 42:13, 45:3, 46:12, 47:25
**Reggie** [1] - 3:14
**REGINALD** [1] - 1:13
**related** [5] - 16:21, 40:25, 44:20, 44:24, 47:13
**relation** [1] - 16:24
**relationship** [1] - 11:3
**released** [1] - 30:14
**relevance** [1] - 43:6
**relevant** [2] - 23:6, 41:3
**relief** [6] - 6:24, 7:14, 8:6, 25:3, 25:7, 42:5, 43:5, 48:9
**relieved** [1] - 47:3
**reluctantly** [1] - 11:8
**remaining** [1] - 9:6
**remember** [4] - 13:21, 14:2, 14:6, 18:14
**REPORTED** [1] - 1:20
**reported** [1] - 15:7
**reportedly** [3] - 19:23, 20:4, 22:20
**Reporter** [2] - 1:22, 49:12
**reporter** [2] - 5:3, 12:24
**represent** [1] - 27:20
**representation** [6] - 30:24, 34:10, 34:23, 47:14, 47:25, 48:1
**representations** [7] - 8:2, 12:5, 13:5, 15:4, 15:21, 43:3, 46:22
**represented** [6] - 5:13, 5:25, 8:1, 13:15, 21:16, 36:21
**representing** [2] - 6:23, 44:24
**reputation** [3] - 42:9, 45:4, 48:13
**reputational** [1] - 28:23
**request** [3] - 5:4, 7:7, 37:10
**requested** [3] - 8:6, 25:4, 42:23
**requesting** [2] - 8:16, 42:15
**required** [1] - 30:16
**requirements** [1] - 20:7
**requires** [1] - 45:13
**reseal** [1] - 38:10
**resolved** [2] - 32:15, 45:11
**respect** [1] - 28:22
**respectfully** [1] - 19:16
**respond** [2] - 28:13, 45:13
**responsibility** [1] - 18:24
**rest** [4] - 3:11, 13:25, 18:13, 23:11
**retained** [1] - 31:16
**reviewed** [1] - 27:10

**rights** [1] - 22:10
**RMR** [2] - 1:21, 49:11
**road** [1] - 38:14
**Robin** [1] - 4:2
**ROBYN** [1] - 2:11
**RODOLFO** [1] - 1:9
**Rodolfo** [1] - 1:22
**role** [4] - 4:13, 9:2, 14:12, 29:16
**RPR** [2] - 1:21, 49:11
**RUIZ** [1] - 1:9
**Ruiz** [2] - 1:22, 31:11
**rule** [2] - 18:23, 36:12
**ruled** [1] - 25:2
**rules** [2] - 6:3, 48:10
**ruling** [6] - 29:12, 32:4, 43:20, 43:21, 43:23, 44:1, 44:8
**rulings** [5] - 6:4, 29:9, 29:10, 32:8, 43:8
**rumors** [1] - 25:15

# S

**SADOW** [6] - 1:17, 1:18, 3:19, 27:15, 34:8, 39:14
**Sadow** [20] - 3:18, 3:19, 4:21, 7:1, 8:7, 8:8, 12:5, 13:6, 13:11, 15:22, 25:23, 27:2, 27:12, 30:21, 33:21, 34:2, 34:7, 39:12, 43:21, 48:21
**SAMUEL** [4] - 2:2, 2:3, 3:25, 33:22
**Samuel** [7] - 3:25, 4:21, 18:21, 27:2, 30:19, 33:14, 43:22
**sat** [2] - 12:1, 36:2
**satisfy** [2] - 40:16, 40:21
**saved** [1] - 10:6
**saw** [5] - 5:17, 11:7, 13:23
**scandalous** [3] - 8:14, 12:2, 24:6
**SCANLAN** [1] - 1:14
**Scanlon** [1] - 3:14
**scheduled** [1] - 35:6
**seal** [14] - 5:5, 9:22, 17:7, 17:9, 24:13, 24:14, 30:16, 40:2, 40:5, 40:7, 40:22, 40:23, 41:9, 41:10
**sealed** [14] - 17:9, 17:10, 17:12, 24:15, 24:16, 24:19, 24:23, 29:8, 29:9, 35:17, 37:8, 42:17, 42:22, 43:1
**sealing** [5] - 37:19, 37:22, 38:17, 39:12, 41:6
**second** [1] - 36:20
**SECTION** [1] - 1:15
**see** [18] - 3:6, 3:17, 7:4, 7:6, 7:20, 15:6, 15:7, 16:16, 30:4,

32:2, 37:9, 38:2, 38:25, 41:20, 44:15, 44:23, 47:12, 48:15
**seeing** [2] - 35:12
**seek** [1] - 42:5
**seeking** [1] - 48:9
**seem** [1] - 9:8
**send** [2] - 18:16, 32:23
**sending** [1] - 19:6
**sense** [4] - 8:6, 10:3, 35:22, 44:14
**sent** [6] - 12:18, 12:20, 17:5, 22:4, 37:25, 40:9
**sentence** [1] - 16:18
**sentenced** [1] - 38:13
**sentencing** [13] - 10:22, 23:9, 23:18, 25:22, 27:3, 28:14, 28:19, 30:2, 31:6, 32:14, 41:21, 43:7, 44:25
**separate** [3] - 33:19, 39:21, 44:17
**serious** [1] - 9:19
**served** [1] - 36:10
**serves** [1] - 13:17
**setting** [1] - 21:20
**several** [1] - 16:23
**short** [1] - 48:25
**show** [2] - 22:4, 43:22
**shown** [4] - 12:17, 13:16, 14:1, 14:25
**side** [1] - 27:11
**sidebar** [2] - 25:24, 33:17
**silence** [1] - 20:12
**similarly** [1] - 46:21
**simplify** [1] - 41:12
**simply** [2] - 8:20, 23:13
**single** [5] - 23:2, 23:3, 31:13, 31:14, 47:15
**sit** [6] - 8:19, 11:14, 11:16, 28:9, 30:4, 41:18
**situation** [1] - 21:15
**slanderous** [2] - 42:9, 42:24
**solely** [1] - 14:16
**solid** [1] - 19:8
**someone** [2] - 13:14, 22:8
**somewhat** [1] - 24:21
**soon** [1] - 35:18
**sorry** [2] - 12:10, 25:17
**sort** [6] - 8:7, 15:25, 16:12, 16:25, 21:7, 35:1
**sorts** [1] - 28:17
**sound** [1] - 13:20
**SOUTHERN** [1] - 1:1
**space** [1] - 35:14
**speaking** [2] - 12:19, 31:13
**spearhead** [1] - 31:24
**Sporn** [1] - 7:23
**staff** [1] - 18:2

**stake** [1] - 35:21
**stakes** [2] - 19:9, 19:11
**standing** [1] - 48:21
**standpoint** [1] - 25:17
**start** [4] - 5:4, 19:20, 35:19, 43:16
**started** [1] - 18:20
**state** [8] - 3:10, 8:10, 15:12, 15:17, 36:11, 37:1, 37:2, 37:11
**statement** [1] - 13:5
**statements** [3] - 12:3, 13:3, 22:20
**STATES** [4] - 1:1, 1:3, 1:10, 1:15
**States** [3] - 1:23, 3:3, 49:12
**status** [3] - 5:20, 8:24, 48:23
**STATUS** [1] - 1:9
**STENOGRAPHICALLY** [1] - 1:20
**step** [1] - 7:13
**Steve** [2] - 3:14, 3:19
**STEVEN** [3] - 1:14, 1:17, 1:18
**still** [5] - 6:16, 32:15, 34:25, 38:13, 40:3
**stop** [3] - 16:14, 17:16, 28:7
**strategy** [5] - 8:20, 14:20, 22:9, 22:10, 31:4
**stray** [1] - 28:16
**Street** [3] - 1:18, 2:6, 2:9
**stricken** [2] - 47:16, 47:17
**stuff** [10] - 19:19, 25:19, 31:9, 31:22, 32:16, 33:10, 35:11, 35:15, 47:4, 48:6
**stunned** [1] - 20:11
**styled** [1] - 11:4
**subject** [1] - 5:19
**submitted** [1] - 13:25
**substance** [1] - 16:11
**sufficient** [1] - 43:14
**suggesting** [1] - 39:16
**suggestion** [1] - 38:9
**suit** [1] - 44:17
**Suite** [3] - 1:19, 2:6, 2:9
**summation** [1] - 39:3
**support** [2] - 11:7, 23:4
**supportive** [1] - 20:9
**supposed** [1] - 45:22
**surprise** [1] - 26:24
**surreptitiously** [1] - 5:22
**SZTYNDOR** [60] - 2:11, 4:2, 9:16, 10:2, 11:22, 12:12, 12:16, 12:21, 14:4, 14:8, 15:1, 16:2, 16:19, 17:13, 17:20, 17:23, 19:10, 19:15, 20:10, 20:15, 20:18, 21:13, 21:16, 22:14, 22:21, 24:4,

24:12, 24:20, 24:25, 25:13, 26:13, 26:16, 26:19, 31:11, 31:13, 32:20, 32:25, 33:7, 38:21, 39:1, 39:6, 41:16, 42:2, 42:19, 42:21, 42:25, 43:10, 43:25, 44:6, 44:15, 45:8, 46:5, 46:8, 46:15, 46:18, 47:3, 47:22, 48:4, 48:6, 48:16

**Sztyndor** [17] - 4:2, 4:5, 4:22, 5:17, 6:12, 6:21, 7:25, 8:4, 8:18, 9:14, 14:7, 31:1, 36:20, 37:25, 41:11, 44:23, 47:13

### T

**Tampa** [2] - 2:9, 2:10
**team** [19] - 3:11, 3:17, 3:20, 6:5, 9:7, 9:10, 10:21, 10:23, 11:1, 14:1, 14:23, 18:13, 26:22, 26:23, 27:3, 27:16, 27:24, 37:24, 39:11
**ten** [2] - 13:18, 36:10
**tend** [1] - 13:4
**tenus** [1] - 30:18
**term** [1] - 39:15
**termed** [1] - 6:22
**terms** [4] - 6:2, 6:18, 38:6, 43:2
**testified** [1] - 7:23
**testimony** [1] - 32:5
**text** [2] - 7:23, 22:3
**texted** [1] - 15:13
**that'll** [1] - 10:17
**THE** [79] - 1:9, 1:12, 1:17, 2:2, 3:2, 3:16, 3:21, 3:24, 4:1, 4:4, 4:12, 9:17, 10:3, 12:10, 12:14, 12:17, 13:10, 14:5, 14:9, 15:23, 16:3, 17:9, 17:16, 17:21, 17:24, 19:11, 19:24, 20:11, 20:16, 20:19, 21:14, 22:7, 22:18, 22:22, 24:5, 24:17, 24:21, 25:1, 25:20, 26:14, 26:17, 26:20, 28:5, 30:12, 31:12, 32:1, 32:21, 33:1, 33:14, 33:24, 34:6, 34:20, 37:12, 38:19, 38:24, 39:2, 39:8, 39:19, 40:23, 41:17, 41:25, 42:12, 42:20, 42:22, 43:1, 43:11, 44:1, 44:7, 44:19, 45:10, 46:6, 46:9, 46:16, 46:19, 47:5, 47:24, 48:5, 48:8, 48:17
**themselves** [2] - 3:20, 26:23
**theory** [1] - 9:1
**therein** [1] - 37:14
**they've** [2] - 9:6, 12:8

**third** [8] - 5:14, 5:25, 17:25, 22:11, 22:14, 22:15, 22:16, 22:19
**third-hand** [1] - 17:25
**third-party** [7] - 5:14, 5:25, 22:11, 22:14, 22:15, 22:16, 22:19
**three** [7] - 9:10, 9:18, 21:24, 27:16, 27:20, 30:22, 31:3
**throw** [1] - 19:5
**timeline** [1] - 29:25
**tip** [1] - 34:15
**today** [11] - 3:4, 5:12, 7:3, 25:7, 27:5, 29:3, 33:18, 35:19, 40:2, 41:9, 41:13
**today's** [3] - 5:20, 7:15, 47:10
**took** [4] - 13:14, 18:4, 24:23
**TRANSCRIPT** [1] - 1:9
**transcript** [20] - 11:11, 12:18, 12:22, 13:9, 13:12, 14:6, 14:25, 18:1, 18:5, 37:4, 37:7, 38:25, 39:2, 42:16, 42:24, 43:15, 43:19, 43:23, 48:20
**transcription** [2] - 7:10, 49:8
**transcripts** [25] - 5:2, 5:6, 5:13, 6:19, 7:3, 7:5, 7:16, 8:16, 10:18, 11:18, 12:23, 15:6, 19:8, 25:6, 25:8, 29:8, 29:15, 30:10, 30:18, 36:24, 38:10, 40:2, 41:9, 41:14, 47:11
**transition** [2] - 31:15, 31:17
**tread** [1] - 11:19
**treading** [2] - 9:15, 9:17
**trial** [24] - 5:4, 5:16, 5:17, 6:9, 6:18, 7:24, 11:6, 14:12, 16:10, 16:15, 16:22, 18:20, 19:3, 21:10, 21:18, 23:5, 25:25, 27:25, 29:25, 30:13, 31:4, 32:8, 32:9
**tried** [1] - 19:19
**true** [5] - 13:4, 19:22, 42:5, 46:18, 46:19
**trust** [1] - 25:18
**truthfully** [1] - 23:5
**try** [1] - 4:24
**trying** [3] - 16:15, 26:5, 43:2
**turn** [5] - 9:14, 11:9, 11:19, 18:6, 27:13
**turned** [2] - 11:12, 22:19
**turns** [1] - 42:3
**two** [5] - 11:10, 25:6, 31:21, 34:11, 35:20
**types** [1] - 10:25

### U

**Uber** [1] - 22:5
**ultimately** [5] - 6:5, 14:13, 19:2, 21:1, 23:7
**unaware** [1] - 27:17
**unbeknownst** [1] - 10:13
**unbelievable** [1] - 20:8
**uncomfortable** [1] - 25:17
**under** [11] - 5:5, 9:22, 17:7, 17:9, 24:12, 24:14, 40:7, 40:22, 40:23, 41:10, 48:10
**understood** [3] - 43:10, 46:5, 48:14
**underway** [1] - 35:4
**unfortunately** [1] - 38:15
**UNITED** [4] - 1:1, 1:3, 1:10, 1:15
**United** [3] - 1:23, 3:3, 49:12
**unless** [7] - 20:1, 20:3, 24:17, 32:1, 41:25, 44:23, 47:13
**unquote** [1] - 42:24
**unredacted** [1] - 17:15
**unseal** [1] - 30:1
**unsealed** [3] - 12:25, 30:17, 37:5
**unsealing** [2] - 30:7, 36:24
**unsupported** [1] - 21:22
**unusual** [1] - 11:5
**up** [9] - 7:7, 10:17, 19:20, 23:24, 28:25, 34:10, 35:20, 41:22, 43:13
**upset** [7] - 12:1, 13:2, 14:16, 17:14, 21:20, 24:1, 25:14

### V

**value** [1] - 15:21
**variance** [1] - 44:25
**various** [2] - 12:3, 12:6
**vehicle** [5] - 15:24, 42:10, 43:8, 44:11, 45:14
**venture** [1] - 20:13
**venue** [3] - 15:24, 24:9, 33:2
**version** [3] - 17:14, 17:15, 20:19
**VIA** [1] - 1:9
**VIDEOCONFERENCING** [1] - 1:9
**view** [6] - 9:19, 16:5, 17:11, 28:6, 38:5, 42:24
**viewed** [1] - 38:6
**views** [1] - 45:3
**violated** [2] - 6:12, 44:2
**violating** [1] - 19:6
**violation** [7] - 5:23, 18:24, 21:8, 37:1, 37:2, 37:11, 39:4

**visit** [2] - 11:22, 31:14
**voice** [1] - 31:3
**vs** [1] - 1:5

### W

**waiting** [1] - 41:20
**Washington** [1] - 1:16
**weekend** [2] - 18:19, 18:20
**weeks** [2] - 9:11, 16:23
**weigh** [1] - 31:11
**WEST** [1] - 1:2
**whatsoever** [2] - 18:2, 36:18
**white** [12] - 4:7, 4:19, 5:10, 5:15, 5:22, 6:8, 13:25, 29:21, 30:9, 36:18, 38:13, 40:25
**WHITE** [1] - 2:8
**White** [5] - 4:11, 12:19, 13:18, 21:6, 22:15
**White's** [2] - 21:25, 30:8
**whole** [2] - 9:24, 11:1
**withdraw** [5] - 7:25, 11:5, 25:11, 25:13, 46:3
**withdrawn** [9] - 5:18, 14:18, 21:12, 21:14, 22:12, 31:1, 41:11, 41:12, 43:3
**withdrew** [7] - 14:3, 16:23, 17:2, 17:3, 21:19, 21:24
**witness** [23] - 5:15, 5:19, 5:23, 7:23, 8:4, 9:2, 10:13, 10:14, 14:7, 14:24, 18:22, 21:9, 22:11, 22:14, 22:15, 22:16, 22:19, 23:1, 29:21, 30:9, 45:23, 45:25
**witnesses** [3] - 5:25, 11:3
**worried** [1] - 32:13
**write** [1] - 18:15
**writing** [2] - 9:25, 47:16
**wrongdoing** [1] - 23:22

### Y

**years** [2] - 21:24, 36:10
**yesterday** [5] - 7:19, 24:13, 24:18, 25:4, 25:10
**York** [1] - 1:16
**yourself** [2] - 23:10, 37:24

### Z

**Zoom** [2] - 17:18, 25:18