```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
              CASE NO. 19-80181-CRIMINAL-RUIZ/REINHART


UNITED STATES OF AMERICA,          Miami, Florida

            Plaintiff,             February 24, 2022

       vs.                         10:03 a.m. to 10:24 a.m.

MINAL PATEL,

            Defendant.             Pages 1 to 20
_____

                 GARCIA/RULE 44(c) HEARING
                    CONDUCTED VIA ZOOM
            BEFORE THE HONORABLE BRUCE E. REINHART,
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE GOVERNMENT:      JOHN SCANLON, ESQ.
                         U.S. DEPARTMENT OF JUSTICE
                         CRIMINAL DIVISION, FRAUD SECTION
                         1400 New York Avenue, Northwest
                         Washington, D.C. 20005

                         REGINALD CUYLER, JR., ESQ.
                         U.S. DEPARTMENT OF JUSTICE
                         CRIMINAL DIVISION, FRAUD SECTION
                         12020 Miramar Parkway
                         Miramar, Florida 33025

FOR THE DEFENDANT:       STEVEN H. SADOW, ESQ.
                         STEVEN H. SADOW, P.C.
                         260 Peachtree Street, Northwest
                         Suite 2502
                         Atlanta, Georgia 30303
```

```
 1   APPEARANCES, CONT'D:

 2   FOR THE DEFENDANT:        ROBIN LYNN SZTYNDOR, ESQ.
                               ROBIN LYNN SZTYNDOR, P.A.
 3                             233 Phoenetia Avenue
                               Suite 8
 4                             Coral Gables, Florida 33134

 5                             DONALD F. SAMUEL, ESQ.
                               GARLAND, SAMUEL & LOEB, P.C.
 6                             3151 Maple Drive, Northeast
                               Atlanta, Georgia 30305
 7

 8   FOR JAMES SIMMONS:        JOSHUA S. LOWTHER, ESQ.
                               LOWTHER WALKER, LLC
 9                             101 Marietta Street, Northwest
                               Suite 3325
10                             Atlanta, Georgia 30303

11
     ALSO APPEARING:           BRIAN F. McEVOY, ESQ.
12                             BAKER HOSTETLER
                               1170 Peachtree Street
13                             Suite 2400
                               Atlanta, Georgia 30309
14
                               THE DEFENDANT
15
                               JAMES SIMMONS (Telephonically)
16

17   REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Reporterlisaedwards@gmail.com
18                             (305) 439-7168

19

20

21

22

23

24

25
```

1          THE COURT:  Good morning, everybody.
2          This is Case No. 19-80181, United States of America
3   versus Minal Patel.
4          We're here for the continuation of the *García* conflict
5   of interest hearing.  And I apologize and thank everyone for
6   having to come back this one last time.
7          But let me begin with appearances.
8          May I have counsel for Mr. Patel.
9          MR. SADOW:  Good morning, your Honor.  Steve Sadow,
10  lead counsel for Mr. Patel.
11         THE COURT:  Good morning, Mr. Sadow.
12         MS. SZTYNDOR:  Good morning, your Honor.  Robin
13  Sztyndor, counsel for Mr. Patel.
14         THE COURT:  Good morning, Ms. Sztyndor.
15         MR. SAMUEL:  Don Samuel, also for Mr. Patel, your
16  Honor.
17         THE COURT:  And good morning, Mr. Samuel.
18         And counsel for the United States, please?
19         MR. SCANLON:  Good morning, your Honor.  This is John
20  Scanlon for the United States.  I also have on the line
21  Mr. Reginald Cuyler.
22         THE COURT:  Good morning to both of you.
23         And the record should reflect Mr. Patel is also on the
24  call.
25         And also for the potential witness, James Simmons, who

1 is on the call by telephone? Do we have counsel for
2 Mr. Simmons?
3     MR. LOWTHER: Good morning, your Honor. Joshua Lowther
4 for Mr. Simmons.
5     THE COURT: Mr. Lowther, welcome to the case.
6     Okay, everybody. The reason I had asked everyone to
7 get back together was we had two prior hearings in this case.
8 The issue before the Court is whether Baker Hostetler should be
9 permitted to represent Mr. Patel and I guess more precisely
10 whether Mr. Patel should be permitted to make a knowing,
11 voluntary and fully informed waiver of his right to
12 conflict-free counsel at his upcoming trial.
13     And I've already questioned Mr. Patel several times. I
14 don't think I need to question him further today, but I may
15 briefly.
16     The main purpose of today was to have Mr. Simmons come
17 on with counsel because it had previously been reported to the
18 Court that Mr. Lowther had been retained as independent counsel
19 on behalf of Mr. Simmons, that Mr. Lowther would be taking over
20 representing Mr. Simmons to the extent the Government wants to
21 interview Mr. Simmons and Mr. Simmons thereafter wanted to seek
22 any sort of benefit for that interview or any further
23 cooperation.
24     But, Mr. Lowther, you were in trial, so we didn't have
25 a chance to speak with you and to speak with Mr. Simmons in

1    your presence.  So that's the purpose of this morning, is I
2    just wanted to question Mr. Simmons and Mr. Lowther and get a
3    clear record of where we are.
4            So before I go down that road, does anybody else have
5    anything else they think we need to cover this morning,
6    starting with the Government?
7            MR. SCANLON:  No, your Honor, subject to anything
8    coming up in connection with the questioning.
9            THE COURT:  Sure.  Thank you, Mr. Scanlon.
10           Mr. Sadow, on behalf of Mr. Patel, do you agree that's
11   the last box I need to check off here?
12           MR. SADOW:  I believe so, your Honor.
13           THE COURT:  Great.
14           Mr. Lowther, then, and Mr. Simmons.  Mr. Simmons, I
15   know I can't see you, but do you swear that any answers and any
16   testimony you will give here this morning will be the truth,
17   the whole truth and nothing but the truth?
18           MR. SIMMONS:  Yes.
19           THE COURT:  And you understand -- I know I've sworn you
20   before in this matter -- but if you were to intentionally make
21   any false statements here this morning, you could be committing
22   a new crime, which is punishable by up to five years in prison?
23   Do you understand?
24           MR. SIMMONS:  Yes, sir.
25           THE COURT:  Thank you very much.

1      So, Mr. Lowther, maybe you can just bring me up to date
2 on whether my understanding of the nature of your
3 representation and the duties that you've undertaken is
4 correct.  Obviously, I'm not asking you to waive any privileged
5 communications or to tell me anything that is privileged.
6      MR. LOWTHER:  Your Honor, the scope of that
7 representation is exactly as you stated earlier.
8      THE COURT:  And again, not disclosing any
9 communications, the content of any communications, have you at
10 least been in contact with the Government about their request
11 to interview Mr. Simmons?
12      MR. LOWTHER:  No, your Honor.  I've not contacted the
13 Government at this point.  I was actually waiting on this
14 hearing to happen to see exactly what the Court's ruling would
15 be.
16      But I have been in contact with Mr. Simmons, obviously,
17 and I've addressed the conflict issue with him in great detail,
18 which he's prepared to discuss with the Court today.
19      THE COURT:  Thank you.
20      MR. LOWTHER:  Post-hearing, I will be in touch with the
21 Government to proceed with Mr. Simmons's part in this.
22      THE COURT: Very good.  Thank you.  I appreciate that.
23      So, Mr. Simmons, I am going to question you in a
24 second.  But let me just lay out kind of where the Court is in
25 this situation for everybody.

1        So the Court has two interests that it has to protect.
2   And I appreciate for those of us who live in this world, these
3   sort of *García* hearings are pretty commonplace, where there's a
4   potential for a conflict or perhaps even an actual conflict and
5   the parties come before the Court and make full disclosure to
6   the Court, and then the Court either says you can go forward or
7   you can't.
8        And there's really two interests being protected.  One
9   is Mr. Patel's interest under the Sixth Amendment to effective
10  representation of counsel, which includes the right to be
11  represented at trial by counsel who are free of any conflict of
12  interest.
13       And I've already explored that with Mr. Patel, and
14  we've discussed the fact that the plan is to put in place
15  certain prophylactic measures such as Mr. Sadow or perhaps
16  Mr. Samuel, but someone who's not previously represented
17  Mr. Simmons, would conduct any cross-examination if Mr. Simmons
18  becomes a witness at the trial, that there are protections in
19  place to make sure that if Baker Hostetler is permitted to
20  represent Mr. Patel that the confidences that Mr. Simmons has
21  reposed in Baker Hostetler would be protected, et cetera.
22       And so I've conducted the sufficient colloquy to
23  determine whether Mr. Patel's Sixth Amendment rights can be
24  adequately protected.
25       The other concern that the Court is required to look

```
 1   into is -- it's not quite phrased this way, but it's the
 2   appearance issue.  Is there something about allowing a lawyer
 3   to represent a defendant when they've previously represented a
 4   cooperating -- potentially cooperating witness or even
 5   simultaneously to represent those people?  Is there something
 6   sufficiently uncomfortable about that that the Court should not
 7   allow that representation to go forward?
 8          And so that doesn't really affect Mr. Patel's rights.
 9   It doesn't really affect Mr. Simmons's rights.  It's an
10   independent duty that the Court is required to undertake.
11          My concern here -- I think I've been clear with the
12   parties -- has been that the Government has said, look, they
13   want to talk to Mr. Simmons, but because of ethical --
14   potential ethical obligations and conflicts that may exist on
15   behalf of the Baker Hostetler lawyers, there was an inability
16   to make that sort of interview come together.
17          Now, it's possible the Government will talk to
18   Mr. Simmons and then conclude they don't want to call him as a
19   witness.  That's perfectly fine.  Maybe the Government talks to
20   Mr. Simmons and decides they do want to call him as a witness.
21   That's perfectly fine, too.
22          The Court's concern has been that Mr. Simmons just
23   needed to have a lawyer who could fully advise him of what's in
24   his best interest and only his best interest.  And that's where
25   Mr. Lowther comes in.
```

```
 1              So with that warmup and windup, let me turn to
 2   Mr. Simmons.
 3              Mr. Simmons, do you understand the Court's concern and
 4   why it is that we're here today?
 5              MR. SIMMONS:  Yes, your Honor.
 6              THE COURT:  And it's really meant to protect you from
 7   both an appearance, but also at least the potential that, in
 8   the vernacular, you'll get thrown under the bus by lawyers who
 9   have an interest and a duty to protect Mr. Patel.
10              So have you had a chance to talk to Mr. Lowther about
11   the scope of his representation and whether you're comfortable
12   that he can provide the kind of independent representation to
13   you that you need in terms of deciding whether you want to be
14   interviewed by the Government, having that interview and then
15   going forward with whatever comes from that interview?
16              MR. SIMMONS:  I have discussed it with him and I am
17   comfortable.
18              THE COURT:  You've had enough time, you believe, to
19   speak to Mr. Lowther?
20              MR. SIMMONS:  Yes, sir.
21              THE COURT:  Is Mr. Lowther someone that you hired on
22   your own or did somebody else hire Mr. Lowther for you?
23              MR. SIMMONS:  He was referred to me by Mr. McEvoy.
24              THE COURT:  But are you paying for Mr. Lowther's
25   services?
```

1          MR. SIMMONS: Correct.

2          THE COURT: Okay. Let me turn to the Government for a

3   second.

4          Mr. Scanlon, I know you had previously expressed some

5   concern or maybe Mr. Cuyler or both of you had expressed some

6   concern that the Government was not comfortable going forward

7   with an interview of Mr. Simmons if he were represented by the

8   Baker Hostetler firm for reasons that may be obvious. You

9   don't want to interview a witness in front of the lawyer for

10  the Defendant.

11         Is the Government -- I understand you haven't spoken to

12  Mr. Lowther yet. But assuming Mr. Lowther is an independent

13  lawyer who is only there to represent Mr. Simmons, is the

14  Government at least comfortable in having discussions with

15  Mr. Lowther about moving forward with an interview of

16  Mr. Simmons?

17         MR. SCANLON: Yes, your Honor. The Government is

18  comfortable speaking with Mr. Simmons with Mr. Lowther there as

19  his counsel.

20         I just have one -- I actually had the same thought,

21  your Honor, that you just brought up in your previous question

22  to Mr. Simmons about the payment structure. It is something

23  that came up in *United States v. Schneider*.

24         And I just wanted to make sure that the payments are --

25  they're just going directly from just -- basically, there's no

```
 1   involvement of the Baker Hostetler firm in the payment of those
 2   fees.
 3           MR. LOWTHER:  Your Honor, I can confirm there's no
 4   involvement from Baker Hostetler in the payment of fees.
 5           THE COURT:  Thank you, Mr. Lowther.  I appreciate that.
 6           MR. McEVOY:  This is Mr. McEvoy.  I can confirm that as
 7   well.
 8           THE COURT:  Thank you.  I accept that representation.
 9           And I thank you for raising that, Mr. Scanlon.
10           But again, my biggest concern was I just wanted to make
11   sure that Mr. Simmons's ability to decide whether to have a
12   conversation with the Government, have that conversation if he
13   chooses to do so, and then proceed however he wants to proceed,
14   is fully protected and is being advanced by a lawyer whose sole
15   ethical duties are to Mr. Simmons.
16           And, Mr. Simmons, you are satisfied that Mr. Lowther
17   can perform that service for you?
18           MR. SIMMONS:  Yes, I am.
19           THE COURT:  With that, I don't think I had anything
20   else that I wanted to go over because I don't believe
21   Mr. Lowther has a conflict.
22           You understand, Mr. Simmons, obviously, for Mr. Lowther
23   to prepare for that interview and to advise you about that
24   interview, he may have to talk to Mr. McEvoy and there may be
25   limited -- and when I say Mr. McEvoy, I mean Mr. McEvoy's
```

1 team -- there may be limits on what Mr. McEvoy can share with
2 Mr. Lowther about some of the information about the case. You
3 understand that?
4     MR. SIMMONS: Yes.
5     THE COURT: And it is at least theoretically possible
6 that because the Baker Hostetler team is limited in some of
7 what it can share with Mr. Lowther that Mr. Lowther may not be
8 as fully prepared to advise you as perhaps the Baker Hostetler
9 lawyers would be. Do you understand that?
10     MR. SIMMONS: Yes.
11     THE COURT: And understanding that that might be a
12 limitation on Mr. Lowther's ability to represent you, are you
13 willing to accept Mr. Lowther with that limitation and to waive
14 any prejudice to you that might arise from that limitation?
15     MR. SIMMONS: Yes, I am.
16     THE COURT: Okay. Let me go back around the room one
17 more time.
18     To the Government, does the Government believe there's
19 any inquiry I need to make of either -- Mr. Patel, you've been
20 very patient and, Mr. Sadow, you've been very patient. Is
21 there anything that you believe I need to cover here or any
22 questions you would like me to propound to any party?
23     MR. SADOW: Your Honor, on behalf of Mr. Patel, the
24 only thing I would like you to add is in speaking to
25 Mr. Lowther that he acknowledges that whatever transpires

1   between Mr. Simmons and Mr. Lowther and the Government will not
2   be disclosed by Mr. Lowther to the Patel defense people team,
3   that he is totally separate and independent in that regard.
4          THE COURT:  Mr. Lowther, I assume that is the case.
5   But for the record, if you would just acknowledge that.
6          MR. LOWTHER:  I am aware of that, obviously.
7          THE COURT:  And I also should ask Mr. Lowther, I assume
8   you -- to the extent they ethically can, has the Baker
9   Hostetler team shared with you their files as it relates to
10  Mr. Simmons?
11         MR. LOWTHER:  Yes, your Honor.
12         And I wanted to add that, based on one of your previous
13  comments, Mr. McEvoy and Mr. Rafferty have shared information
14  with me to the extent they could within the scope of the
15  representation of Mr. Simmons.  I've also reviewed the
16  documents in this case; for example, Document 249.  So even
17  though I've not spoken directly with the Government, I am aware
18  at least generally of what the subject matter is regarding the
19  potential cooperation.
20         And so I spoke with Mr. Simmons in preparation for this
21  hearing with that in mind.  So I believe he's fully informed.
22         THE COURT:  Great.  I appreciate that.  So thank you.
23         Let me turn to the Government.  Does the Government
24  believe there's any other inquiries or inquiry that I need to
25  pursue?

```
 1          MR. SCANLON:  With regard to discussing the knowing
 2   waiver of any conflicts, no, your Honor.
 3          I just want to make sure that the Government's position
 4   is clear that it was sort of a point that I made the last time
 5   we were here, so we are okay meeting with Mr. Simmons with his
 6   new conflict-free counsel.  And that's -- you know, the
 7   situation, I think, can remedy the situation temporarily.
 8          But if the United States does determine that it is
 9   likely going to call Mr. Simmons as a witness at trial, I think
10   that the law is pretty crystal-clear that Baker Hostetler
11   would -- setting aside the knowing waivers, that they would be
12   disqualified from representing Mr. Patel.  So the United States
13   will endeavor to -- obviously, your Honor may agree or disagree
14   with that -- but the United States -- I'll throw this out
15   there -- that the United States will endeavor to meet with
16   Mr. Simmons as quickly as possible.
17          THE COURT:  I was going to say, it seems to me, I
18   know -- or I should also note since our last get-together,
19   Judge Ruiz has continued the trial in this case until --
20   November?  Or October?
21          MR. SADOW:  That's right.
22          THE COURT:  To take up on Mr. Scanlon's point,
23   sometimes the best rulings are the rulings you don't have to
24   make.
25          So if it turns out that the Government can meet with
```

```
 1    Mr. Simmons, with Mr. Lowther, and make whatever decision it
 2    makes, if the Government's decision is they're not going to
 3    call Mr. Patel [sic] as a witness at the trial, then maybe I
 4    don't even have to rule on this issue, or it certainly makes
 5    that ruling clearer and easier.
 6              If on the other hand the Government intends to call
 7    Mr. Patel -- or Mr. Simmons as a witness, the sooner the Court
 8    can know that, the better, because Mr. Patel's team needs to
 9    know that, that Baker Hostetler is not going to be allowed to
10    represent Mr. Patel.  He may want to get substitute counsel.
11    Not that Mr. Sadow and Ms. Sztyndor or Mr. Samuel need it, but
12    maybe he feels he wants additional counsel.  And that's
13    certainly his right.  I want to make sure he has enough time to
14    get lawyers who can prepare for the case.  I also don't want
15    him to spend money on Baker Hostetler lawyers who didn't get to
16    represent him.
17              So I would ask the Government to do that as quickly as
18    possible, to meet with Mr. Lowther and Mr. Simmons and advise
19    the Court of your decision, because that was going to be my
20    last question to the parties.
21              It seems to me, then, what I ought to do is simply take
22    this pending motion under advisement until I get further
23    notification as to whether the Government intends to call
24    Mr. Simmons as a witness.  That's the last thing I want to do.
25    I haven't reached my decision yet.  But let's say I concluded
```

1  there was a disqualifying conflict and it became moot
2  thereafter.  I think that's an unnecessary amount of work for
3  the Court.  It's not necessary to have on a public record
4  somewhere that I found a law firm to be having a disqualifying
5  conflict; not that they did anything wrong, et cetera.
6            So it would seem to me I should take the matter under
7  advisement for some period of time pending further notice from
8  the Government.
9            What's the Government's position on that?
10           MR. SCANLON:  I think that's fair, your Honor.
11           THE COURT:  Mr. Sadow?
12           MR. SADOW:  Your Honor, I'm not going to disagree that
13 that's probably the best position for the Court to be in.
14           Just so the record is clear -- and I know the Court is
15 already aware of this -- we do not agree in any way with the
16 Government's position that disqualification under any
17 circumstances is appropriate here.  But again, I agree with the
18 Court that you don't have to make a ruling at this point.  And
19 if we're going to have that fight, it will only come up when
20 the Government makes a decision after speaking to Mr. Simmons.
21           THE COURT:  Understood.
22           Again, truly, I have not made up my mind.  I may very
23 well agree with the defense there is no disqualifying conflict
24 here.  I'm not prejudging anything.
25           I would also like to make sure, Mr. Sadow, again, I

```
 1   don't want to tie you down too much; but if I said to the
 2   Government:  File a notice within -- what's today? -- 60 days
 3   as to whether they intend to call him as a witness or not, does
 4   that still -- assuming at this point I allow Baker Hostetler to
 5   stay on the case or I don't, either way, does that then afford
 6   Mr. Patel sufficient time for his counsel to be ready for the
 7   trial in November?  Or do you need to know sooner than that?
 8          MR. SADOW:  With all due respect, I'd like to know
 9   sooner than that, because the way the defense has chosen to
10   kind of divvy up assignments and responsibilities, Baker
11   Hostetler is working with Robin to be the healthcare specialist
12   side of this; and I am, along with Mr. Samuel, concentrating on
13   other matters.  So as quickly as the Government can put itself
14   in the position of notifying the Court, the better off that we
15   would be.
16          THE COURT:  Understood.  Having been in trials in
17   healthcare cases where I played the role of healthcare counsel,
18   you've got a lot of paperwork to look through when you're
19   healthcare counsel like this, a lot of documents to digest.  So
20   I do know that's a labor-intensive and a time-intensive
21   procedure.
22          Here's what I'm going to do:  I'm going to direct that
23   the Government shall provide a notice to the Court within 30
24   days of just the status of the case.
25          I also recognize, given Mr. Simmons's situation and
```

```
 1   some of the issues we've had in the past, just having
 2   communications with Mr. Simmons and meetings with Mr. Simmons,
 3   that it may not be feasible for the Government to conduct that
 4   interview and make that decision in the next 30 days.
 5            But I don't want to lose track of this case.  So I'm
 6   going to order the Government -- what's today? -- by March
 7   24th, 2022, to simply file a notice of the status of the case.
 8   The status is either going to be, I guess:  He's a witness;
 9   he's not a witness; we haven't been able to meet with him yet;
10   or we haven't made up our mind yet.
11            And then based on whatever the notice says, I'll issue
12   further orders to try to keep things moving along.  But I do
13   want to be mindful of protecting Mr. Patel's rights again to
14   have effective representation at trial; and sort of waiting
15   until the last minute to decide if he gets to have a lawyer for
16   his case is not optimizing that.
17            Okay.  Mr. Lowther, does that seem reasonable to you,
18   given your schedule?  Do you think, at least assuming other
19   logistical issues can go away, that 30 days may be enough time
20   to at least start this process?
21            MR. LOWTHER:  That's more than sufficient as far as I'm
22   concerned.  Our biggest obstacle, obviously, is dealing with
23   the Bureau of Prisons.  It took almost two weeks simply to get
24   an unmonitored call between Mr. Simmons and myself, not to
25   mention a visit is -- I didn't even try that.
```

```
1          So just having said that, regarding my schedule, 30
2    days would be more than enough time, assuming the Government's
3    available to meet with him.  But overcoming the Bureau of
4    Prisons obstacle shouldn't be a problem.
5          THE COURT:  I'll --
6          MR. LOWTHER:  Notwithstanding the Bureau of Prisons
7    obstacle, rather, I should say.
8          THE COURT:  I understand.
9          I'll leave it to Mr. Scanlon and the good offices of
10   the Department of Justice to lean on their sister agency to
11   maybe get some cooperation there.
12         I think that was all that I wanted to cover this
13   morning.  Again, does the Government believe there's any other
14   questions I need to ask of Mr. Simmons on the record while
15   we're all together?
16         MR. SCANLON:  No, your Honor.
17         THE COURT:  Do you believe there's anything I need to
18   ask of Mr. Patel on the record while we're all together?
19         MR. SCANLON:  No, your Honor.
20         THE COURT:  Thank you.
21         How about you, Mr. Sadow?  One more time back to you.
22   Anything you believe I need to ask of either Mr. Patel or
23   Mr. Simmons?
24         MR. SADOW:  No, your Honor.
25         THE COURT:  Mr. Lowther?
```

```
 1             MR. LOWTHER:  No, your Honor.
 2             THE COURT:  I thank you all very much.  I will wait to
 3   hear from the Government.
 4             But I'm now at least satisfied I've made the factual
 5   record I would need to have if I need to make a ruling on this
 6   matter.  I thank you all very much.  I'll excuse the parties
 7   with the Court's thanks.  Have a good day and a good weekend,
 8   everybody.
 9             MS. SZTYNDOR:  Thank you.
10             MR. SAMUEL:  You, too, your Honor.
11             MR. SCANLON:  Thank you.
12             MR. SADOW:  Thank you, your Honor.
13             (Proceedings concluded.)
14
15
16
                         C E R T I F I C A T E
17
18        I hereby certify that the foregoing is an
19   accurate transcription of the proceedings in the
20   above-entitled matter produced to the best of my ability.
21
22
     _____        /s/Lisa Edwards
23      DATE             LISA EDWARDS, RDR, CRR
                         (305) 439-7168
24                       Reporterlisaedwards@gmail.com
25
```