UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80181

UNITED STATES OF AMERICA

v.

MINAL KUMAR PATEL

  Defendant.

**PIETRAGALLO GORDON ALFANO BOSICK
& RASPANTI, LLP**

Tama Beth Kudman, Esq.
Kevin E. Raphael (admitted *pro hac vice*)
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Tel: (561) 472-0811; Facsimile: (561) 828-0210

By: /s/ Tama Kudman
   Florida Bar No. 637432
   tbk@pietragallo.com
   Kevin E. Raphael
   ker@pietragallo.com

**MINAL KUMAR PATEL'S REPLY IN SUPPORT OF HIS MOTION
FOR A NEW TRIAL PURSUANT TO FED R. CRIM. P 33(a)**

Minal Kumar Patel ("Patel"), by and through the undersigned counsel, submits his Reply in Support of his Motion for New Trial Pursuant to Fed. R. Crim. P. 33 (a):

I. **THE GOVERNMENT'S RESPONSE FAILS TO ADDRESS SEVERAL OF PATEL'S ARGUMENTS AND EMPLOYS THE WRONG LEGAL STANDARD WHEN RESPONDING TO OTHERS**

The Government's Response in Opposition to Defendant's Motion for New Trial ("Response") fails to address the important issues raised in Patel's Memorandum of Law in Support of His Motion for New Trial ("Memorandum"). Rather, the government attempts to divert the Court's attention to its trial evidence and downplays the alleged conflicts and the impact such conduct had on Mr. Patel's trial.

First, as set forth below, the government ignores entirely Patel's argument that Trial Counsel usurped Patel's Sixth Amendment right to make fundamental defense decisions. *See* Memorandum at 26-28.

Second, the government ignores many of the disturbing personal conflicts effecting the loyalties of the defense team. These personal conflicts had a direct effect on Trial Counsel's performance and their conduct at trial. However, instead of acknowledging the seriousness of the conduct and its effect on the defense, the Government complains that, "Patel asks the Court to slog through hundreds of pages of extraneous communications between Ms. Szyntdor and other members of the defense team." *Response* at 1. This ***evidence*** establishes, without any doubt, the existence of the conflicts, their effect on Trial Counsel's tactics and strategic decisions, and the conclusion that Patel's best interests were secondary to Trial Counsels' self-interests.

Third, the government does not address the lack of independent counsel at the *Garcia* hearings that were conducted. Under the circumstances, an attorney that was not a member of the

trial team should have counseled Patel about the impact Trial Counsel's conflicts would have on the trial.

The Response also fails to utilize the correct legal standards applicable to the issues raised in Patel's Memorandum. The Government acknowledges that "to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest <u>adversely effected his lawyers performance</u>." *Response* at 9. (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)) (emphasis added). The Response, however, attempts to divert the Court's attention to whether the evidence adduced at trial supports the jury's verdict. *See Response* at 3-6, 9-10. The government then spends considerable time arguing that Patel was not *prejudiced* by the conflicts raised, though prejudice is irrelevant. The only question before the Court is whether Patel's Trial Counsel's actual conflicts <u>adversely effected their performance</u> – such as limiting cross-examination of government witnesses to protect their other clients or deciding not to present a defense promised to, and expected by, Patel because of those conflicts. The evidence shows this to be the inescapable conclusion.

The government conjoins adverse effect with prejudice and uses the terms interchangeably. However, "[a]dverse effect is not the equivalent of prejudice, [which is] the reasonable probability of a different result." *Nealy v. Cabana*, 782 F. 2d 1362, 1365 (5th Cir. 1986). Rather, to establish "**adverse effect**," Mr. Patel "must show (1) the lawyer <u>could</u> have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." *U.S. v. Soldevila-Lopez,* 17 F. 3d 480, 486 (1st Cir. 1994) (**emphasis added**).

An actual conflict of interest exists when "an attorney's and defendant's interest diverge with respect to a material fact or legal issue or to a course of action." *U.S. v. Schwartz*, 283 F.3d.

76, 91 (2nd Cir. 2002). However, a defendant need not prove the quality of the representation effected the outcome of the case, or that counsel's defense strategy would have been different if the conflict did not exist. *U.S. v. Muflahi*, 317 F.Supp.2d 208, 212 (W.D.NY 2003)(*citing U.S. v. Malpiedi*, 62 F.3d 465, 468 (2nd Cir. 1995). A defendant need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. *U.S. v. Harris*, 846 F.Supp 121, 128 (D.C.DC 1994) (*citing U.S. v. Fuhey,* 769 F.2d 829, 836 (1st Cir. 1985). "The foregone strategy or tactic is not even subject to a requirement of reasonableness[,]" *U.S. v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994), "[T]he test is a strict one because a defendant has a right to an attorney who can make strategic and tactical choices free from any conflict of interest." *U.S. v. Williams*, 372 F.3d 96, 106 (2d Cir. 2004).

Courts have found actual conflicts and granted new trials in far less egregious situations. *See U.S. v. Harris*, 846 F.Supp 121, 129 (D.C.DC 1994)(*citing U.S. v. Fuhey,* 769 F.2d 829, 836 (1st Cir. 1985)(Granting new trial because defense counsel was involved in relationship with testifying police officer, and Court determined that defense counsel's cross-examination of police officer was inadequate); *U.S. v. Schwartz*, 283 F.3d 76, 95 (2nd Cir 2002)(Finding actual conflict and granting new trial, in part, because of defense counsel's representation of both defendant and of the Policeman's Benevolent Association precluded defense counsel from pursuing an alternative defense strategy at trial). *See U.S. v. Muflahi*, 317 F.Supp.2d 208 (W.D.N.Y 2003)(finding actual conflict and disqualifying counsel from representing employees even though counsel had already withdrawn from representing employer, due to plea offer made to employees); *U.S. v. Chinnici*, 431 F.Supp.3d 470 (D. Vt. 2019)(Granting new trial and finding defendant's waiver of conflict invalid because defendant did not fully comprehend the ramification the waiver would have on his defense or defense counsel's cross-examination).

4

Patel has sufficiently demonstrated the existence of actual conflicts concerning Saliba, the Aleems, and Satary, as well as myriad other serious personal conflicts of Trial Counsel. *See* Memorandum at 6-12; 19-24. Patel has sufficiently demonstrated that these conflicts "adversely effected his lawyers' performance," by their failure to (1) conduct areas of cross-examination[1]; (2) call certain favorable witnesses[2]; and (3) present Patel's chosen defenses of good faith and advice of counsel.

Finally, the government erroneously states that Patel's Motion for a New Trial is premised on the discovery of new evidence. *Response* at 8-9. In fact, Patel moves for a new trial pursuant to Rule 33 (a) – due to the conflicts that adversely effected Trial Counsel's performance, the interest of justice requires a new trial.

II. **THE GOVERNMENT FAILS TO RESPOND TO PATEL'S ARGUMENT THAT HIS SIXTH AMENDMENT RIGHT WAS VIOLATED BECAUSE PRIOR COUNSEL USURPED PATEL'S DEFENSE STRATEGY**

Patel was entitled to participate in and determine the legal strategy for his defense. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1507 (2018). Notably, the Government fails to address Patel's legal arguments regarding the deprivation of this right. *See* Memorandum at 26-28. Instead, the Government summarily dismisses the issue in a single sentence: "Patel's seasoned defense lawyers made an entirely reasonable strategic judgment in declining to call Watt or other witnesses, and Patel was wise to heed their judgment." *Response* at *15*.

---

[1] For example, there was no cross-examination as to the fact that Ramamurthy and Griner were fired by Patel for their non-compliance and Patel agreed to rehire Ramamurthy on the condition that he not be involved with Telemedicine. Ramamurthy violated this agreement unbeknownst to Patel. There was also no cross examination regarding Ms. Roebuck's interactions with Saliba as opposed to Mr. Patel.

[2] None of Patel's billers or consultants were called to establish the legitimate reasons for the billing codes utilized in furtherance of a good faith defense or as impeachment of the Government's witnesses. Further, Attorney Watts and other witnesses not called, over Mr. Patel's objections, to establish the advice of counsel and good faith defenses that Trial Counsel promised Patel. Indeed, evidence showing that counsel did review and advise LabSolutions with respect to Telemedicine contracts and as to other areas was avoided by counsel because it would have implicated Saliba and the Aleems.

The Government again misapprehends the applicable law. The issue here is defendant's autonomy; not counsels' competence or counsels' freedom to make strategic decisions within the confines of the defendant's choice of defense. Where a defendant's right to make a fundamental choice about his own defense is usurped by counsel, a new trial is granted without a showing of prejudice. *See generally McCoy*, 138 S. Ct. at 1510-11.

Here, trial counsel usurped Patel's right to pursue advice of counsel and good faith defenses. Though the court inquired about Patel's decision to not testify and not call any witnesses, the Court did so two days after the defense had rested. Further, Sadow has admitted that Patel did not agree with the decision to not call witnesses or put on a defense, but he nonetheless instructed Patel to answer the Court in the affirmative.[3]

### III.  THE GOVERNMENT FAILED IN ITS OBLIGATION TO REPORT A KNOWN CONFLICT TO THE COURT

The government acknowledges that it was aware of the Saliba conflict prior to trial.[4] It tries to justify its failure to notify the Court by claiming that no actual conflict existed because the government never conducted an interview of Saliba. There is no question that the tension between the competing interests and jeopardy of Saliba and Patel is the classic quandary implicated in the jurisprudence and ethical rules surrounding conflicts of interest. The government seeks to evade its responsibility and the consequences for its inaction by pretending there was no actual conflict. The Government's failure to report the conflict to the Court denied the Court and Patel the opportunity to be notified of the conflict and to fully explore its impact upon Patel' defense. It

---

[3] *See* Defendant's Motion for New Trial affidavit of Jeff Danik.

[4] As stated more fully in Defendant's Motion, the government was aware of this representation from the beginning of the investigation and should have raised the conflict when it became aware that Samuel was also representing Patel. The fact that the government fully litigated Sadow's conflict with LabSolutions is irrelevant to this actual conflict.

was Patel's right to a fair trial, due process and conflict-free counsel that was impacted. Indeed, the Government has an affirmative obligation to protect those rights.

Interestingly, while the government objected to Samuel representing Saliba due to the conflict with Patel, the government did not similarly tell Samuel he could not represent Patel or notify the Court of the conflict so that Patel could be properly apprised of this very troubling actual conflict. As the government should know, the Saliba conflict was the same conflict vis-à-vis Patel and such conflict placed Patel's defense team in a position where the defense strategy for one client would necessarily place the other in harm's way.[5]

In its Response, the government details several other conflicts that were brought to the Court's attention by the Government, seemingly as an attempt to mitigate its failure to notify the Court about the Saliba conflict. However, in doing so, the government only highlights its awareness of its obligations and its fundamental failure regarding Saliba. At the end of the day, this crucial issue is not about placing blame on the government, but about Patel's right to Constitutional due process; the right to conflict free counsel and fairness.

### IV. THE GOVERNMENT'S ATTEMPTS TO DOWNPLAY THE OTHER ACTUAL CONFLICTS AND THEIR EFFECTS UPON PATEL'S DEFENSE FAIL

The Government argues that, because the period of the charged Conspiracy began in 2016 when the Aleems were at the end of their time running and advising LabSolutions, there exists no actual conflict with Sadow's representation of Patel in the criminal case, despite his conflict with the Aleems. However, it was the Aleems who set up the genetic testing at LabSolutions, which was already running a fully compliant blood and toxicology lab. The marketing and business contracts, testing protocols, business relationships and billing protocols at issue in Patel's trial

---

[5] Ultimately, Mr. Saliba never did obtain other counsel. Either way, Samuel's ethical and legal obligations to Saliba never ceased.

were all created and maintained with the advice and management of the Aleems through 2016 and continued by Saliba (who was hired by the Aleems), who then ran the day-to-day operations of LabSolutions. The Aleems also set up other genetic labs that subsequently faced Indictment, most notably the lab owned by Satary, another individual with whom Trial Counsel was conflicted. Patel could not obtain a fair trial without being able to tell this story, which was integral to his good faith and advice of counsel defenses; yet the conflicts between counsel and these other individuals and businesses precluded the cross-examination of witnesses and presentation of evidence necessary to raise these desired defenses. This is the essence of why conflicts are vigorously precluded by ethics rules in every jurisdiction and so carefully screened by courts.

Indeed, because Patel's Trial Counsel's conflicts prevented them from telling Patel's narrative to the jury, the government was empowered to tell a false narrative without fear of impeachment. Such false narrative was elicited from Ramamurthy – who told the jury that Patel started the genetic lab business after he saw how much money labs were able to bill during Patel's hospitalization. In fact, it was the Aleems that convinced Mr. Patel to go into genetic lab testing years later due to its ability to assist in preventive medicine, not greed. Yet, the government cites to Ramamurthy unchallenged testimony in support of its incorrect "sufficient evidence" standard, to sustain Patel's conviction. *Response* at 3.

The government posits that because Patel's counsel made plausible strategic choices at trial, Patel suffered no harm and should not be afforded a new trial. However, this argument places the "adverse effect" analysis on its head. The existence of conflicted counsel requires a new trial where, as here, counsel was precluded from pursuing strategies and tactics due to conflicts – even if these strategies might not have been successful at trial. *See* Harris, 846 F. Supp at 121, (A defendant need not show that the defense would have been successful).

For example, the Government posits that Sadow's decision to not cross-examine Government witnesses Sporn and Hirsch extensively as to Saliba was legitimate defense strategy. *Response* at 13. It was Patel's desire and intent to put on a good faith and advice of counsel defense, and this defense was promised to him. Part of that defense was to demonstrate that Patel instructed, and relied upon, other decision-makers to ensure that LabSolutions was compliant. Sporn had told the Government in debriefings that Saliba was the decision maker at LabSolutions.[6] At trial, Sporn contradicted this, but was not confronted on cross-examination with this prior inconsistent statement by Sadow. Had Sadow and Samuel not been conflicted regarding Saliba and the Aleems, Patel's desired trial strategy would have made such cross-examination an imperative.

Further, billers and other employees of LabSolutions could have been called to testify as to the Aleems and Saliba's management and decision-making at LabSolutions.[7] Attorneys and other witnesses could have been called, as urged by Patel, to develop the good faith/advice of counsel defenses.[8] Indeed, government's Exhibits 1 and 2, the 302s of the government's interviews with Watt and Holden, demonstrate that Saliba was the point person for LabSolutions in charge of keeping LabSolutions compliant with legal advice proactively sought by Patel. Ultimately, as a result, Watt advised the Government that he didn't think "… Patel should be prosecuted." *See* Exhibit 1 at 15 (HLX_32-00000317). Further, Holden stated that he did not deal with Patel often, but dealt with Saliba and another individual who ran business development. See Exhibit 2 at 3 (HLX_32_0000000050).

---

[6] *See* **Exhibit N** (Sporn FBI Interview 5/26/21).

[7] Indeed, Patel believed that the defense had intended to call these witnesses, and trial subpoenas were, in fact, issued.

[8] Attorney Tobin Watts was subpoenaed to trial and flew to Florida before being released from the subpoena by Patel's Trial Counsel, over Patel's strenuous objection.

V. **THE GOVERNMENT'S RESPONSE DOES NOT EXCUSE ITS *BRADY* VIOLATION**

The government essentially argues that because the Vollaro case was "charged by a different prosecutorial office (the U.S. Attorney's Office, not DOJ's Fraud Section, which prosecuted Patel's case)," the government does not possess the same obligations regarding *Brady* material in that other office's possession. *Response* at 18. The government also speculates that, "[t]o the extent emails or documents in the Vollaro search warrant contained information regarding the relationship between Griner and Vollaro, or communications between Vollaro and Patel, such records would have been included in the materials produced to the defense in this case (and Patel would independently have his own emails)." *Id*. However, the government is notably silent about whether it reviewed such materials to reach this conclusion, appearing to ***assume*** that all *Brady* material would have been produced by Griner and his email servers.

The government ignores the fact that exculpatory evidence for Vollaro and his business (CHC) would also be exculpatory for Patel, since Griner's testimony was adduced for the proposition that Vollaro's marketing services to Patel were conducted in an illegal manner.[9] Finally, the government concludes that, "The United States produced to Patel all the information needed to effectively cross-examine Griner on his relationship with Vollaro, but, despite having access to such voluminous materials, Patel chose not to even mention Vollaro." It is self-evident that the government is not the arbiter of what evidence is "sufficient" for cross-examination, nor

---

[9] Indeed, in the Motion for New Trial filed by Vollaro's co-defendant Covallo, he cites to emails from CHC employees and law firm(s) terminating the services of a call center who CHC believed wasn't performing according to CHC standards, email communications between CHC employees and its attorneys regarding "safe harbor" considerations, and an email from a CHC Legal Assistant to certain CHC employees advising an immediate change in policy toward selling/marketing in certain states, because those states' regulations prohibited such selling/marketing. All of these emails show CHC compliance efforts and would support Patel's good faith defense.

10

should the government justify the deprivation of *Brady* by virtue of a strategy that might have been altered had the defense been in possession of the withheld exculpatory information.

The materials were exculpatory enough to cause a mistrial for Vollaro. To the extent that these materials implicate any of the testimony about Vollaro, his contracts, his relationship with Griner, his relationship with Patel and LabSolutions, the materials are *Brady* and the government was required to provide them.

### VI. PATEL'S MOTION MUST ALSO BE GRANTED BECAUSE THE CUMULATIVE IMPACT OF COUNSEL'S CONDUCT REQUIRES A NEW TRIAL

The Government wholly fails to address the cumulative impact of conflicted counsel, ethical violations, deprivation of the defendant's autonomy, and the Government's *Brady* violation. The Government also fails to address the perceived unfairness of what occurred at Patel's trial. Even if this court finds no single error mitigating in favor of a new trial, one is nonetheless appropriate. Where error is lacking, the court may nonetheless grant a new trial. *U.S. v. Vicaria*, 12 F. 3d 195, 198 (11th Cir. 1994); *see also Baptiste*, 8 F. 4th at 40 ("A judge may grant a new trial in the interest of justice based on perceived unfairness of something not amounting to reversible error"). The perceived unfairness of what occurred during Patel's trial warrants a new trial in the interest of justice.

### VII. CONCLUSION

Conflicts, professional and legal misconduct, misrepresentations, and ethical violations, whether taken separately—or considered in the aggregate—all establish the gross mishandling of Patel's case and the violation of his Fifth and Sixth Amendment Rights. In sum, the interest of justice requires that Patel receive a new trial.

Dated: July 12, 2023                                Respectfully submitted,

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

Tama Beth Kudman, Esq.
Kevin E. Raphael (admitted *pro hac vice*)
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Tel: (561) 472-0811; Facsimile: (561) 828-0210

By: /s/ Tama Kudman
     Florida Bar No. 637432
     tbk@pietragallo.com
     Kevin E. Raphael
     ker@pietragallo.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been filed via CM/ECF and has been furnished electronically to all counsel of record on July 12, 2023.

By: /s/ Tama Kudman